# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| The CALIFORNIA INSTITUTE OF TECHNOLOGY,<br><br>Plaintiff,<br><br>vs.<br><br>BROADCOM LIMITED, BROADCOM CORPORATION, AVAGO TECHNOLOGIES LIMITED, APPLE INC., AND CYPRESS SEMICONDUCTOR CORPORATION,<br><br>Defendants. | CASE NO. 2:16-cv-3714-GW-AGRx<br><br>**ESI STIPULATION AND [PROPOSED] ORDER**<br><br>Ctrm: 9D, 350 West 1st Street<br>Judge: George H. Wu<br><br>[Proposed Order submitted concurrently herewith] |

Plaintiff and Counterclaim-Defendant California Institute of Technology ("Plaintiff") and Defendants Broadcom Limited and Avago Technologies Limited, and Defendants and Counterclaim-Plaintiffs Broadcom Corporation, Apple Inc., and Cypress Semiconductor Corporation (collectively, "Defendants") hereby agree that the following procedures shall govern discovery of Electronically-Stored Information ("ESI") in this case:

**1.     Email production requests**.

(a)     General ESI production requests under Federal Rules of Civil Procedure 34 and 45 shall not include email or other forms of electronic correspondence (collectively "email"). To obtain email, parties must propound specific email production requests.

(b)     Email production requests shall only be propounded for specific issues, rather than general discovery of a product or business/institution.

(c)     Email production requests shall be phased to occur after the parties have exchanged initial disclosures and basic documentation about the patents, the prior art, the accused instrumentalities, and the relevant finances. Email production requests may start on April 19, 2017. While this provision does not require the production of such information, the Court encourages prompt and early production of this information to promote efficient and economical streamlining of the case.

**2.     Custodian names and search terms to be exchanged.**

(a)     Email production requests shall identify the custodian, search terms, and time frame. The parties shall cooperate to identify the proper custodians, proper search terms and proper timeframe.

(b)     The parties shall limit email production requests to a total of sixteen (16) custodians per side. The parties may jointly agree to modify this limit without the Court's leave. The Court shall consider contested requests for additional custodians per producing party, upon showing a distinct need based on the size, complexity, and issues of this specific case.

(c) The parties shall limit their email production requests to a total of ten (10) search terms per custodian. The parties may jointly agree to modify this limit without the Court's leave. The search terms shall be narrowly tailored to particular issues. Indiscriminate terms, such as the producing company's name or its product name, are inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction. A conjunctive combination of multiple words or phrases (*e.g.*, "computer" and "system") narrows the search and shall count as a single search term. A disjunctive combination of multiple words or phrases (*e.g.*, "computer" or "system") broadens the search, and thus each word of phrase shall count as a separate search term unless they are variants of the same word. Use of narrowing search criteria (*e.g.*, "and," "but not," "w/x") is encouraged to limit the production and shall be considered when determining whether to shift costs for disproportionate discovery.

(d) Notwithstanding prior agreement on the search terms to be used for electronic searches, should a search produce an unreasonably large number of non-responsive or irrelevant results, the parties shall (at the producing party's request) meet and confer to discuss application of further negative search restrictions. The party receiving production shall not unreasonably oppose such further restrictions designed to filter immaterial search results.

**3.     Technology assisted review, responsiveness review, and privilege.**

(a) Nothing in this Order prevents a party from using technology assisted review and/or other techniques insofar as their use improves the efficiency of discovery.

(b) Nothing in this Order prevents a producing party from reviewing and analyzing information identified by search terms to determine whether that information is responsive to a request for production and withholding documents determined to be non-responsive.

(c) Nothing in this Order imposes any obligation on any party to disclose information regarding the identification, collection, processing, review, or production of information that is protected by the attorney-client privilege and/or work product protection, including a party's use or non-use of technology assisted review.

(d) Production of ESI pursuant to this ESI Stipulation and Order is subject to the terms of the Stipulated Protective Order in this case, including without limitations the protections for inadvertent disclosure of privileged material set forth in Section 16 of the Stipulated Protective Order. The receiving party shall not use ESI that the producing party asserts is attorney-client privileged or work product protected to challenge the privilege or protection. Pursuant to Federal Rule of Evidence 502(d), the inadvertent production of a privileged or work product protected ESI is not a waiver in the pending case or in any other federal or state proceeding.

**4. Filtering of per se non-responsive files.**

(a) Each party will use its best efforts to filter out common system files and application executable files by using a commercially reasonable hash identification process. Hash values that may be filtered out during this process are located in the National Software Reference Library ("NSRL") NIST hash set list.

(b) Additional culling of file types based on file extension may include, but are not limited to: WINNT, LOGS, DRVS, WAV, C++ Program File (c), C++ Builder 6 (cpp), Channel Definition Format (cdf), Creatures Object Sources (cos), Dictionary file (dic), Executable (exe), Hypertext Cascading Style Sheet (css), JavaScript Source Code (js), Label Pro Data File (IPD), Office Data File (NICK), Office Profile Settings (ops), Outlook Rules Wizard File (rwz), Scrap Object, System File (dll), Temporary File (tmp), Windows Error Dump (dmp), Windows Media Player Skin Package (wmz), Windows NT/2000 Event View Log file (evt), Python Script files (.py, .pyc, .pud, .pyw), and Program Installers.

3

**5. Deduplication.**

(a) Each party shall use best efforts to produce only a single copy of a responsive document per Custodian using a commercially reasonable deduplication process. For emails with attachments, the hash value is generated based on the parent/child document grouping.

(b) A party may also de-duplicate "near-duplicate" email threads as follows: In an email thread, only the final-in-time document need be produced, assuming that all previous emails in the thread are contained within the final message. Where a prior email contains an attachment, that email and attachment shall not be removed as a "near-duplicate."

(c) To the extent that de-duplication through MD5 hash values is not possible, the parties shall meet and confer to discuss any other proposed method of de-duplication.

**6. Format for production of documents – documents existing in electronic format.** Except as otherwise provided for in this Stipulation, all documents existing in electronic format shall be produced either in (1) multiple page, searchable PDF format at a resolution of at least 300 dpi; or (2) in single page TIFF images at a resolution of at least 300 dpi.

(a) For documents produced as PDFs, these requirements apply:
    (i) PDF files shall be produced along with Concordance/Opticon image load files that indicate the beginning and ending of each document.
    (ii) Each PDF file shall be named according to a unique corresponding bates range associated with the document.
    (iii) Each page of the PDF file shall be branded according to the Bates number and the confidentiality designations defined in any protective order that may issue.

4

        (iv)    Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape).

        (v)    Email attachments shall be produced sequentially after the parent email.

(b)    For documents produced as TIFFs, the requirements apply:

        (i)    Single page Group IV TIFFs should be provided, at least 300 dots per inch (dpi) for all documents.

        (ii)    Each TIFF image shall be named according to a unique corresponding bates number associated with the document.

        (iii)    Each image shall be branded according to the Bates number and the confidentiality designations defined in any protective order that may issue.

        (iv)    Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape).

        (v)    Email attachments shall be produced sequentially after the parent email.

(c)    Each document production will be accompanied by two load files: an image load file and a metadata load file. Those load files shall be produced in Concordance format (.DAT file using Concordance standard delimiters for the metadata load files, and .OPT file using Concordance standard fields for the image load files). The image load file shall provide image and document break information for the TIFF files produced that correspond to the beginning Bates numbers contained in the metadata load file. Every TIFF file in each production must be referenced in the production's corresponding image load file. The total number of TIFF files referenced in a production's image load file should match the number of TIFF files in the production. For documents that do not contain redactions, the producing party will produce an extracted text file, in UTF format where appropriate, for each electronic document and an Optical Character Recognition ("OCR") text file for each

imaged paper document. For documents that contain redactions, the producing party will provide an OCR text file made from the redacted images. All searchable text including extracted text and OCR is to be provided as multi-page searchable text (.TXT) files. All searchable text including extracted text and OCR is to be provided as multi-page searchable text (.TXT) files.

(d) When it is impracticable for an electronic document to be produced as a PDF or TIFF file, including because any information contained in the document would be omitted, distorted, reorganized, or otherwise made more difficult to read or understand than the document's native format, a party may produce the document in its native format. When the production of an electronic document, such as an excel document, would lead to an excessive number of pages when converted to a TIFF file, such document should be produced in its native format.

(e) **Metadata.** Load files should include, where applicable, the information listed in the Table of Metadata Fields, attached as Exhibit A. However, the parties are not obligated to include metadata for any document that does not contain such metadata in the original, if it is not possible to automate the creation of metadata when the document is collected. The parties reserve their rights to object to any request for the creation of metadata for documents that do not contain metadata in the original.

(f) **Production media and encryption of productions.** Unless otherwise agreed, the parties shall provide document productions in the following manner: The producing party shall provide the production data on CDs, DVDs, external hard drives or secure FTP, as appropriate. The producing party shall encrypt the production data, and the producing party shall forward the password to decrypt the production data separately from the CD, DVD, external drive or secure FTP on which the production data is saved.

**7. Format for production of documents – hardcopy or paper documents.** All documents that are hardcopy or paper files shall be scanned and produced in the same manner as documents existing in electronic format, above.

**8. Source code.** This Stipulation does not govern the format for production of source code, which shall be produced pursuant to the relevant provision of the Stipulated Protective Order.

**9. Native files.** The parties will meet and confer to discuss requests for the production of files in native format, on a case-by-case basis. If the parties are unable to reach agreement with regard to requests for additional documents in native format, the parties reserve the right to seek relief from the Court. Documents produced natively shall be represented in the set of imaged documents by a slipsheet indicating the production identification number and confidentiality designation for the native file that is being produced.

**10. Databases.** In responding to a Fed. R. Civ. P. 34 request, a party may opt to produce relevant and responsive information from structured data sources ("databases") in a reasonably accessible form, such as comma-separated value (csv) files, tab-delimited value files, or appropriate native formats. Nothing in this Stipulation constitutes an agreement to produce information from a structured data source or a waiver of any objection to production of information from a structured data source.

**11. Requests for higher-resolution or color documents.** The parties agree to respond to reasonable and specific requests for the production of higher resolution or color images. Nothing in this Stipulation shall preclude a producing party from objecting to such requests as unreasonable in number, timing or scope. The producing party shall have the option of responding by producing a native-file version of the document. If a dispute arises with regard to requests for higher resolution or color images, the parties will meet and confer in good faith to try to resolve it.

**12. Foreign language documents.** All documents shall be produced in their original language. Where a requested document exists in a foreign language and the producing party also has an English-language version of that document that it prepared for non-litigation purposes prior to filing of the lawsuit, the producing party shall produce both the original document and all English-language versions. In addition, if the producing party has a certified translation of a foreign-language document that is being produced, (whether or not the translation is prepared for purposes of litigation) the producing party shall produce both the original document and the certified translation. Nothing in this agreement shall require a producing party to prepare a translation, certified or otherwise, for foreign language documents that are produced in discovery.

**13. Document preservation.**

(a) **Litigation holds.** The parties have discussed their preservation obligations and needs and agree that preservation of potentially relevant ESI will be reasonable and proportionate. The parties have issued "litigation holds" to individuals potentially possessing relevant documents or information. Without waiving any rights to assert that the dates and recipients of "litigation hold" communications are subject to the attorney work-product privilege or other privileges, the parties agree that the contents of "litigation hold" communications constitute privileged information subject to the attorney work-product privilege or other privileges, and that disclosure of such information will not be required in this case.

(b) **Date limitation.** To reduce the costs and burdens of discovery, particularly with respect to the identification of attorney-client privileged and work product material, the parties agree that documents (whether ESI or otherwise) that were created after May 26, 2016 – the date on which the complaint in this case was filed – that are subject to the attorney-client privilege or work product immunity need not be logged on a privilege log.

(c) **Scope of preservation.** To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the parties agree that ESI the parties reasonably anticipate being relevant to the case shall be preserved, with the exception of sources listed in subsection (d);

(d) **Exceptions to preservation.** These information sources are not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B) and ESI from these sources will not be preserved, searched, reviewed, or produced, unless otherwise ordered by the Court upon a motion of a party:

(i) backup systems and/or tapes used for disaster recovery;

(ii) systems no longer in use that cannot be accessed;

(iii) voicemail and instant messaging messages;

(iv) information from handsets, mobile devices, personal digital assistants, and tablets that is duplicative of information that resides in a reasonably accessible data source;

(v) automatically saved versions of documents and emails;

(vi) deleted, slack, fragmented, or other data only accessible by forensics;

(vii) random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system;

(viii) temporary internet files, history, cache, cookies, and the like;

(ix) dynamic fields of databases or log files that are not retained in the usual course of business;

(x) information created or copied during the routine, good-faith performance of processes for the deployment,

9

maintenance, retirement, and disposition of computer equipment;

(xi) data in metadata fields that are frequently updated automatically, such as last opened dates; and

(xii) postings and comments to social media sites.

**14. Reservation of rights.** The parties have not yet identified other sources of electronically stored information that (a) could contain relevant information but (b) under the proportionality factors, should not be preserved but reserve the right to identify such sources, should they be found.

**15. Miscellaneous ESI provisions**.

(a) The mere production of ESI in a litigation as part of a production shall not itself constitute a waiver for any purpose.

(b) Notwithstanding anything to the contrary herein, any party that produces documents produced to it by a third party, such as in response to a subpoena, may produce such documents in the format in which they were produced by the third party.

**16. Modification.** The parties may jointly agree to modify this Stipulation without the Court's leave. Any such modification shall be in a writing signed by the parties or their respective counsel. If the parties cannot resolve their disagreements regarding a proposed modification, the parties reserve the right to seek relief from the Court.

IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.

DATED: January 19, 2017          By:  /s/Todd M. Briggs

                                  Todd M. Briggs
                                  toddbriggs@quinnemanuel.com
                                  QUINN EMANUEL URQUHART &
                                  SULLIVAN, LLP
                                  555 Twin Dolphin Drive, 5th Floor

Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

*Attorneys for Plaintiff California Institute of Technology*

By: /s/ *Mark D. Selwyn*
    Mark D. Selwyn

Mark D. Selwyn
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Tel: (650) 858-6000
Fax: (650) 858-6100
*Attorneys for Defendants Broadcom Limited, Broadcom Corporation, Avago Technologies Limited, Apple Inc., and Cypress Semiconductor Corporation*

**IT IS SO ORDERED.**

DATED: January __, 2017

_____
Hon. George H. Wu
United States District Judge

## Exhibit A - Table of Metadata Fields

| | |
|---|---|
| SOURCE | DATE TIME SENT |
| CUSTODIAN | DATE TIME CRTD |
| AUTHOR | DATE TIME SVD |
| BEGDOC# | DATE TIME MOD |
| ENDDOC# | DATE TIME RCVD |
| DOCID | DATE TIME ACCD |
| PGCOUNT | FILE SIZE |
| GROUPID | FILE NAME |
| PARENTID | APPLICATION |
| ATTACHIDS | FILE EXTENSION |
| ATTACHLIST | FILE PATH |
| BEGATTACH | NATIVE LINK |
| ENDATTACH | FOLDER ID |
| PROPERTIES | PARAGRAPH REQUEST NUMBER |
| RECORD TYPE | MD5 HASH |
| FROM | MESSAGEHEADER |
| TO | ATTACHMCOUNT |
| CC | FILE TYPE |
| BCC | COMMENTS |
| SUBJECT | MESSAGE TYPE |
| CONVINDEX | EXTENDED PROPERTIES |
| DOCDATE | |
| TEXT FILEPATH | |

## FILER'S ATTESTATION OF CONCURRENCE

Pursuant to Civil L.R. 5-4.3.4(a)(2) relating to documents requiring multiple signatures, I, Todd M. Briggs, attest that all other signatories concur in the content of the foregoing document and authorize the filing of the same.

*/s/ Todd M. Briggs*
Todd M. Briggs