**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
James R. Asperger (Bar No. 083188)
jimasperger@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100

Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
Todd M. Briggs (Bar No. 209282)
toddbriggs@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone:  (650) 801-5000
Facsimile:  (650) 801-5100

Attorneys for Plaintiff the California
Institute of Technology

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| The CALIFORNIA INSTITUTE OF TECHNOLOGY, a California Corporation,<br><br>                Plaintiff,<br><br>        vs.<br><br>BROADCOM LIMITED, BROADCOM CORPORATION, AVAGO TECHNOLOGIES LIMITED, APPLE INC., AND CYPRESS SEMICONDUCTOR CORPORATION<br><br>                Defendants. | CASE NO. 2:16-cv-3714-GW-AGRx<br><br>**CALTECH'S RESPONSE TO DEFENDANTS' SUPPLEMENTAL SUBMISSION CONCERNING MOTION TO DISQUALIFY DR. MATTHEW SHOEMAKE**<br><br>Hearing Date:    May 1, 2017<br>Time: 8:30 A.M.<br>Judge:  Hon. George H. Wu<br><br>Fact Discovery Cutoff: Aug. 18, 2017<br>Pretrial Conference: TBD<br>Trial Date: TBD |

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

## TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ...................................................................................... 1

II.  ARGUMENT ............................................................................................ 4

    A.  Defendants' *In Camera* Filing Was Improper ........................................ 4

    B.  Defendants' Arguments About The Scope Of Discovery Are Incorrect And Irrelevant ........................................................................ 6

    C.  Defendants' Prior Cases Did Not Involve  Error Correction Coding ....................................................................................................... 9

        1.  *Wi-LAN 1* and *Wi-LAN 2* ............................................................ 11

        2.  *Ericsson* ........................................................................................ 13

III.  CONCLUSION ........................................................................................ 14

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Apple Inc. v. Samsung Elecs. Co.*, No. 11-CV-01846-LHK,
    2015 WL 3863249 (N.D. Cal. June 19, 2015) ..................................................4

*Broadcom v. Qualcomm*, No. 05-467, Dkt. 1600 (C.D. Cal. Jan. 9, 2009)..............14

*Commonwealth Scientific and Industrial Research Organization v Cisco*,
    809 F.3d 1295 (Fed. Cir. 2015) ......................................................................9

*Finisar Corp. v. Nistica, Inc.*, No. 13-cv-03345,
    2015 U.S. Dist. LEXIS 94975 at *28 (N.D. Cal. July 15, 2015) ...................13

*Hewlett-Packard Co. v. EMC Corp.*,
    330 F. Supp. 2d 1087 (N.D. Cal. 2004). .........................................1, 3, 11, 13

*Life Techs. Corp. v. Biosearch Techs., Inc.*  No. C-12-00852 WHA JCS,
    2012 WL 1604710, at *7 (N.D. Cal. May 7, 2012) ........................................14

*Oracle Am., Inc. v. Innovative Tech. Distribs., LLC*, No. 11-CV-01043-LHK,
    2011 WL 2559825 (N.D. Cal. June 28, 2011) ..................................................4

*Reed v. NBTY, Inc.*, No. EDCV130142JGBOPX,
    2014 WL 12284044 (C.D. Cal. Nov. 18, 2014)................................................5

*S.P.E.P. Acquisition Corp. v. Douglas Trailer Supply Co.*, LLC, No. 13-cv-09237
    (C.D. Cal. Feb. 18, 2014) ................................................................................6

*Stencel v. Fairchild Corp.*, 174 F. Supp. 2d 1080 (C.D. Cal. 2001) ...................4, 14

*Twin City Fire Ins. Co. v. Misubishi Motors Credit of Am., Inc.*, No. 04-0043,
    2006 WL 5164249 (C.D. Cal. Nov. 6, 2006)................................................3, 13

*United States ex rel. Giles v. Sardie*,
    191 F. Supp. 2d 1117 (C.D. Cal. 2000)...........................................................2

**Rules**

Local Rule 79-6.2 ....................................................................................1, 4, 5

CALTECH RESPONSE TO DEFENDANTS' SUPPLEMENTAL SUBMISSION CONCERNING
MOTION TO DISQUALIFY DR. MATTHEW SHOEMAKE

<u>REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL</u>

## I.      INTRODUCTION

Plaintiff California Institute of Technology ("Caltech"), submits this response to Defendants' supplemental submission concerning their motion to disqualify Dr. Matthew Shoemake.

Defendants improperly filed their supplemental submission *in camera*, thereby depriving Caltech of its right to fully respond.  Defendants not only failed to seek leave to make an *in camera* submission, in violation of Local Rule 79-6.2, but also do not, and cannot, justify an *in camera* submission.[1]  It is well established in our adversary system that Defendants cannot ask for disqualification of an expert based on allegedly privileged information while at the same time denying the opposing party access to that information.  Accordingly, Caltech respectfully submits that the Court should decline to consider Defendants' *in camera* submission and should deny Defendants' motion to disqualify forthwith.

On the merits, Defendants' have utterly failed to satisfy their burden of "point[ing] to specific and unambiguous disclosures that if revealed would prejudice" Defendants in this case.  *Hewlett-Packard Co. v. EMC Corp.*, 330 F. Supp. 2d 1087, 1094 (N.D. Cal. 2004).  In opposing Defendants' motion, Caltech demonstrated that Defendants did not previously share any confidential information with Dr. Shoemake that relates to the error correction coding technology in the present case.  (Dkt. 154, Opposition Br. at 12-15).  The only information that Defendants even alleged in their opening brief had been provided to Dr. Shoemake was technical information from the *Wi-LAN 1* case.  (Dkt. 103 at 11-12).

---

[1]   Before Defendants made their most recent filing, the parties corresponded about an offer by Defendants to withdraw their motion to disqualify, which Defendants have now apparently revoked (without explanation).  (Dowd/Asperger April 21-26, 2017 email chain, Shyr Decl. Ex. 15.)  Not once during the parties' exchanges did Defendants disclose that they intended to submit anything *in camera*, (footnote continued)

-1-                        Case No. 2:16-cv-03714-GW-AGRx

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

1  Defendants provided no evidence, however, that the technical information available

2  to Dr. Shoemake in the *Wi-LAN 1* case was confidential, or that it had any relevance

3  to the present case.  In fact, Defendants' opening brief did not even mention ███

4  ████████████  Defendants' failure was not surprising since the *Wi-LAN* cases

5  involved modulation carrier offset recovery, which ████████████████████

6  ████████████████████████████████████  (Dkt. 155-1 at ¶¶ 29-

7  32 ("Shoemake Decl.")).  As the Court recognized in its tentative ruling, the patent

8  at issue in the *Wi-LAN* cases related to "a technology for multiple access between

9  transceivers in wireless communications using orthogonal frequency domain

10 modulation ("OFDM") spread spectrum, and in no manner claims any sort of error

11 correcting code technology, let alone IRA codes claimed in the Asserted Patents;

12 and Defendants fail to show any overlap between the two."  (Dkt. 171 at 5).

13       After failing to satisfy their burden in the moving papers, Defendants

14 improperly submitted seven ***new*** exhibits from the *Wi-LAN 1* case with their reply

15 brief.  (Dkt. 164-2 to 8); *United States ex rel. Giles v. Sardie*, 191 F. Supp. 2d 1117,

16 1127 (C.D. Cal. 2000)("It is improper for a moving party to introduce new facts or

17 different legal arguments in the reply brief than those presented in the moving

18 papers.").  These new exhibits did nothing to advance Defendants' motion.  They do

19 not contain information that is relevant to the present case, and the information in

20 them that Defendants cited was not confidential.  (Caltech's Apr. 20, 2017 Hearing

21 Presentation Slides, Shyr Decl. Ex. 9 at pp. 9-12.)  As a result, the Court correctly

22 found in its tentative ruling that Defendants failed to "specifically and

23 unambiguously identify confidential information that they purportedly disclosed to

24 Shoemake and demonstrate whether (or how) that information is relevant to this

25 action."  (Dkt. 171 at 5).

26 _____

27 generally identify what the purportedly privileged information was, or propose a
   mechanism for making the filing without prejudicing Caltech's ability to respond.

28

-2-                          Case No. 2:16-cv-03714-GW-AGRx

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

1   Having failed twice before, Defendants have made a last ditch effort to

2   convince the Court by improperly shielding their "evidence" in an *in camera*

3   submission.   (Dkt. 172, "Defs. Supp. Submission").   But even though Caltech

4   improperly has been denied access to the substance of the *in camera* information, it

5   is clear that Defendants have simply re-hashed their same flawed arguments.

6   Defendants once again make misleading and incorrect assertions about the scope of

7   Caltech's discovery requests (an argument that was raised in their Reply brief and

8   rejected in the Court's tentative ruling).   Contrary to Defendants assertions,

9   however, the record makes clear that both parties have focused discovery on the

10  accused error correction coding functionality.   Defendants also list ten additional

11  documents from the *Wi-LAN 1* case in their attorney declaration.   (Dkt. 172-1).

12  Regardless of what is in these documents, they cannot change the fact that ███

13  ████████████████████████████████████████████████████████████

14  ████████████████████████████████████████ that provided access to

15  information of "particular significance or [that] can readily be identified as either

16  attorney work product or within the scope of the attorney-client privilege." *Hewlett-*

17  *Packard*, 330 F. Supp. 2d at 1094.   Even if the documents cited by Defendants, or

18  similar materials, were somehow relevant to this case (which they are not), they

19  cannot support disqualification because "[o]nly the disclosure of confidential

20  information that the opposing party would be unable to obtain through discovery

21  should form a basis for disqualification of an expert witness."   *Twin City Fire Ins.*

22  *Co. v. Mitsubishi Motors Credit of Am., Inc.*, No. 04-0043, 2006 WL 5164249, at *4

23  (C.D. Cal. Nov. 6, 2006).

24  The delays resulting from Defendants' unsupportable allegations are causing

25  prejudice to Caltech by precluding its expert from reviewing material that is critical

26  to this case.   Accordingly, for the reasons set forth herein, Caltech respectfully asks

27  the Court to reject Defendants' recent tactic of filing material *in camera* such that

28  Caltech cannot provide a substantive response, and deny Defendants' motion.

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

1 **II.     ARGUMENT**

2     **A.     Defendants' *In Camera* Filing Was Improper**

3 There is no dispute that Defendants bear the burden of proving that

4 disqualification of Dr. Shoemake is proper.  *Stencel v. Fairchild Corp.*, 174 F. Supp.

5 2d 1080, 1083 (C.D. Cal. 2001).  Unable to meet this burden, Defendants instead

6 resort to improperly filing material *in camera*, thereby depriving Caltech of its right

7 to respond.

8 It is a fundamental tenet of our judicial system that "[a] party in civil

9 litigation cannot put the contents of a document at issue and ask the Court to

10 consider the contents of that document in deciding an issue on the merits while at

11 the same time shielding its adversary from also considering the contents of that

12 document. ***Litigating a case in that fashion is inconsistent with both the adversary***

13 ***system and due process***."  *Apple Inc. v. Samsung Elecs. Co.*, No. 11-CV-01846-

14 LHK, 2015 WL 3863249, at *12 (N.D. Cal. June 19, 2015)(emphasis added).

15 Indeed, Defendants themselves concede that this is the law.  (Defs. Supp.

16 Submission at p. 3).  For example, in *Oracle Am., Inc. v. Innovative Tech. Distribs.,*

17 *LLC*, Oracle moved to disqualify certain of ITD's counsel and requested permission

18 to submit privileged documents in support of its motion for *in camera* review.  No.

19 11-CV-01043-LHK, 2011 WL 2559825, at *1-2 (N.D. Cal. June 28, 2011).  The

20 court flatly rejected Oracle's request, holding emphatically that "[i]f Oracle wants

21 the Court to consider the documents it considers privileged in connection with the

22 disqualification motion, then Oracle cannot, at the same time, deny ITD access to

23 the same materials. . . . Otherwise, Oracle would obtain the ***improper advantage*** of

24 using the privileged documents as both shield and sword."  *Id.* at *2 (emphasis

25 added).

26 Under the controlling law, Defendants in this case should not be permitted to

27 rely on information submitted *in camera* in support of their disqualification motion.

28 As an initial matter, Defendants violated the local rules because they did not even

-4-

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

1  request permission to submit information *in camera*.  Local Rule 79-6.2 states that

2  "No document may be presented for review *in camera* without prior approval of the

3  Court."  Defendants neither sought nor obtained prior approval.  Although the Court

4  indicated at the hearing that it would ████████████████████████████

5  ███████████████████████████████████████████████████ the

6  Court did not give Defendants authorization to file anything *in camera*, and

7  certainly did not order Defendants to do so.  (Apr. 20, 2017 Hearing Tr. at p. 31;

8  Defs. Supp. Submission at p. 4)(emphasis added).  Thus, the portions of Defendants

9  supplemental submission submitted *in camera* should not be considered by the

10  Court.  *See generally Reed v. NBTY, Inc.,* No. EDCV130142JGBOPX, 2014 WL

11  12284044, at \*2, fn. 5 (C.D. Cal. Nov. 18, 2014) ("Plaintiffs did not attempt to

12  comply with the rules for filing documents under seal.  The Court therefore does not

13  consider the chambers copy of the unredacted opposition.")

14      Defendants have also failed to comply with the Local Rules because they

15  have not described the general nature of the information, or established "why it

16  should be reviewed *in camera*, citing the applicable legal standard."  Local Rule 79-

17  6.2.  To the contrary, the legal authority cited by Defendants establishes that the

18  information should not be admitted *in camera*.  Moreover, it appears likely that the

19  information submitted *in camera* by Defendants is not even privileged.  The

20  Declaration of James Dowd filed with Defendants' supplemental submission

21  includes the following as exhibits: (1) Dr. Shoemake's expert report from the *Wi-*

22  *LAN 2* case, (2) his witness statement from the *Ericsson* case, and (3) ten documents

23  that were produced by Broadcom in the *Wi-LAN 1* case.  (Dkt. 172-1).  Based on

24  their descriptions, none of those documents can possibly be privileged, yet

25  Defendants filed them *in camera* and did not provide copies to Caltech.  And

26  considering that Defendants' attorneys in this case did not represent Broadcom in

27

28

Case No. 2:16-cv-03714-GW-AGRx
CALTECH RESPONSE TO DEFENDANTS' SUPPLEMENTAL SUBMISSION CONCERNING
MOTION TO DISQUALIFY DR. MATTHEW SHOEMAKE

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

1  the *Wi-LAN 1* case, or Apple in the *Ericsson* case, it is unlikely that anything in

2  Defendants' supplemental submission is privileged.[2]   Rather than legitimately

3  seeking to protect privilege, it appears that Defendants' *in camera* submission is

4  merely an attempt to prejudice Caltech by improperly withholding the very

5  information that Defendants' contend supports their motion.

6       Even if Defendants' supplemental submission contains privileged

7  information, the Court nevertheless should disregard it.  "In camera review is

8  generally disfavored, as it prevents any other party in the litigation from seeing the

9  materials produced to the court."  *S.P.E.P. Acquisition Corp. v. Douglas Trailer*

10 *Supply Co.*, LLC, No. 13-cv-09237 (C.D. Cal. Feb. 18, 2014).  As in *Oracle*, by

11 moving to disqualify Dr. Shoemake, Defendants have taken the affirmative act of

12 placing privileged information from their prior cases at issue here.  If Defendants

13 now wish to rely on such information, they were required produce it to Caltech so

14 Caltech could respond.  *See Oracle Am., Inc.*, No. 11-CV-01043-LHK, 2011 WL

15 2559825, at *2.

16      **B.     Defendants' Arguments About The Scope Of Discovery Are**

17           **Incorrect And Irrelevant**

18      Rather than meeting their burden of showing specific and unambiguous

19 disclosures that, if revealed, would prejudice Defendants in this case, Defendants

20 instead attempt to manufacture a relationship between their prior cases and the

21 present case by mischaracterizing Caltech's discovery requests.  Defendants argue

22 that Dr. Shoemake's prior work is relevant because Caltech has supposedly sought

23 discovery of all aspects of the accused Wi-Fi chips, and not just those aspects

24

25      [2]   Because Defendants did not submit any substantive declarations with their
supplemental submission, it would appear that Defendants have failed to provide
26 evidence of any attorney work product or privileged information from their prior
cases that is relevant to the current case.   Mere attorney argument in their
27 supplemental submission is not evidence.

28

CALTECH RESPONSE TO DEFENDANTS' SUPPLEMENTAL SUBMISSION CONCERNING
MOTION TO DISQUALIFY DR. MATTHEW SHOEMAKE

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

1 | relating to error correction codes.  Defendants also argued at the April 20 hearing

2 | ████████████████████████████████████████████████████████████████

3 | ██████████████████████████████████████████████ Neither of these

4 | assertions is correct.

5 | First, correspondence between the parties makes clear that Caltech has

6 | focused discovery on documents relating to the accused LDPC error correction

7 | coding functionality.  For example, in an October 28, 2016 letter Caltech

8 | emphasized that it is focused on ██████████████████████████████████

9 | ████████████████████████████████████████████████████████████████

10 | ████████████████████████████ (Oct. 28, 2016 Briggs Ltr., Shyr Decl. Ex. 11)

11 | (emphasis added).  Likewise, during a meet and confer earlier this year, Caltech

12 | confirmed that its request for documents ████████████████████████████

13 | ████████████████████████████████████████████████████████████████

14 | ██████████████████ (Feb. 21, 2017 Dowd Ltr., Shyr Decl. Ex. 12.)  Although

15 | Caltech's requests may refer generally to the accused Wi-Fi chips, Defendants are

16 | simply incorrect in asserting that Caltech seeks discovery about "all aspects of

17 | 802.11n and 802.11ac, including not only error correcting codes, but the complete

18 | set of features defined by the 802.11n and 802.11ac standards."  (Defs. Supp.

19 | Submission at p. 2).

20 | Second, contrary to Defendants' representations about source code, Caltech

21 | has consistently made clear that it is only interested in source code relating to the

22 | accused error correction coding functionality.  In October 2016, Caltech emphasized

23 | its need for ████████████████████████████████████████████████

24 | ████████████████████████████████████████████████ Shyr Decl. Ex. 11.

25 | Defendants own statements to this Court show that they plainly understood Caltech

26 | was focused on the LDPC coding functionality, as Defendants expressly represented

27 | to the Court in December that "[t]he amount of code that's at issue in this case is

28 | actually quite discrete. . . . [W]e're talking about a very small portion of the chip

-7-

**<u>REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL</u>**

1  and, correspondingly, a very small portion of the source code." (Dec. 28, 2015

2  Hearing Tr. at p. 8). When the Court ordered Defendants to produce relevant source

3  code last year, Defendants produced only the code relating to the accused

4  functionality, and Caltech never took issue with the narrow scope of that production.

5  To the contrary, it was only after ████████████████████████████████

6  ████████████████████████████████████████████████████████████████████

7  ████████████████████████████████████████████████████████████████████

8  (Jan. 28, 2017 Hammon Email, Shyr Decl. Ex. 13). Thus, to the extent that

9  Defendants have produced ████████████████████████████████████████████

10  ███████████████ Caltech never asked for that production, nor has anyone associated

11  with Caltech ever even looked at that additional code. [3] Defendants current

12  characterizations to this Court are inaccurate at best, and appear to be affirmatively

13  misleading.

14        Defendants' arguments about Caltech's email discovery requests are similarly

15  misleading. (Defs. Supp. Submission at p. 2). Caltech identified "802.11*" as a

16  search term in connection with custodians whose work is specifically focused on the

17  accused error correction coding. For example, Andrew Blanksby's LinkedIn page

18  states that he led "development of Low-Density Parity-Check (LDPC) technology

19  for WLAN used in all major smart phones, tablets, and access points by companies

20  such as Apple, Samsung, and LG." (Shyr Decl. Ex. 14). Thus, it is reasonable for

21  Caltech to expect that these custodians' emails will inherently be focused on error

22  correction coding, as opposed to other aspects of 802.11. These requests by Caltech

23  do not somehow make anything that Dr. Shoemake did in any prior cases relevant to

24  the current case.

25

26        [3]   Defendants inaccurately asserted at the April 20th hearing that Defendants

27  █████████████████████████████████████████████████████ (*See* Apr. 20, 2017
Hearing Tr. at p. 29).

28

Case No. 2:16-cv-03714-GW-AGRx
CALTECH RESPONSE TO DEFENDANTS' SUPPLEMENTAL SUBMISSION CONCERNING
MOTION TO DISQUALIFY DR. MATTHEW SHOEMAKE

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

1    Defendants also incorrectly argue that information from their prior cases is

2    relevant because Caltech is required to apportion the value attributable to the

3    claimed inventions for damages purposes.  (Defs. Supp. Submission at pp. 2-3).

4    This argument is a strawman.  The law does not require Caltech to apportion the

5    value of the patents by analyzing each of the features of Defendants' chips.

6    Apportionment can be done in many ways, including by looking at comparable

7    licenses.  *See Commonwealth Scientific and Industrial Research Organization v*

8    *Cisco*, 809 F.3d 1295, 1303-04 (Fed. Cir. 2015) (finding that "comparable license

9    valuations . . . may be the most effective method of estimating the asserted patent's

10    value").  But even if Caltech were to apportion by isolating the value of the accused

11    error correction coding functionality, that analysis would involve a damages expert

12    (not Dr. Shoemake) ***excluding*** from the royalty base the features in the chip other

13    than accused error correction coding.  In other words, those other features would be

14    excluded because they are not relevant.  Moreover, Defendants' assertions involve

15    rank speculation, and there is no reason to believe that any apportionment analysis

16    on damages issues would involve any of the information from the *Wi-LAN* cases, let

17    alone any information that is confidential.  For example, contrary to Defendants'

18    assertions at the April 20 hearing, there is no indication at all in Dr. Shoemake's *Wi-*

19    *LAN 1* report that he ██████████████████████████████████ (Apr. 20,

20    2017 Hearing Tr. at 13:20-14:8.)  ██████████████████████████████

21    ████████████████████████████████████████████████

22    ████████████████ (Dkt. 105-1 (Thompson Decl. Ex. A) at ¶¶ 19-20).

23    **C.    Defendants' Prior Cases Did Not Involve**

24    **Error Correction Coding**

25    Caltech's patents in the present case involve a specific and novel form of

26    error correction codes.  In opposing Defendants' motion, Caltech demonstrated that

27    Defendants had failed to identify any confidential information that they previously

28    shared with Dr. Shoemake relating to error correction coding.  (Dkt. 154, Opposition

-9-

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

1  Br. at 12-15).  In fact, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

2  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  The only confidential information that Defendants

3  even alleged in their opening brief had been provided to Dr. Shoemake was some

4  technical information that was purportedly shared by Broadcom during the *Wi-LAN*

5  *1* case, over six years ago.  (Dkt. 103 at 11-12).  Defendants provided no evidence,

6  however, that the technical information available to Dr. Shoemake in the *Wi-LAN 1*

7  case was confidential, or that it had any relevance to the present case.

8      Having failed to satisfy their burden in the moving papers, Defendants

9  submitted seven ***new*** exhibits from the *Wi-LAN 1* case with their reply brief that

10  pertain generally to 802.11n.  (Dkt. 164-2 to 8).  These new Exhibits were not only

11  improperly submitted as part of Defendants' reply brief, but they also failed to

12  demonstrate that Dr. Shoemake previously received confidential information that is

13  relevant to the present case.[4]  Of the seven new exhibits submitted with Defendants'

14  Reply brief, Defendants only argued that two of them ▮▮▮▮▮▮▮▮▮▮▮▮

15  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  (Dkt. 164-7 and 8, Reply

16  at 2-3 and 6-7).  But, as Caltech demonstrated at the April 20 hearing, ▮▮

17  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

18  (Caltech's Apr. 20, 2017 Hearing Presentation Slides, Shyr Decl. Ex. 9 at 8-12).

19      After twice failing to identify any relevant, confidential information,

20  Defendants have now submitted additional purported "evidence" that they have

21  improperly shielded from Caltech.  Despite having been deprived of the ability to

22  fully respond to the substance of Defendants' submission, Caltech is confident that

23  Defendants have not "point[ed] to specific and unambiguous disclosures that if

24  revealed would prejudice" Defendants in this case.  *Hewlett-Packard Co. v. EMC*

25

26

_____

27  [4]  Defendants even refused to allow Dr. Shoemake to see their Reply Brief in a transparent effort to prejudice Caltech's ability to respond at the hearing to the new

28  (footnote continued)

-10-

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

1   *Corp.*, 330 F. Supp. 2d 1087, 1094 (N.D. Cal. 2004). The simple fact is that ███

2

3

4

5           **1.**     *Wi-LAN 1* and *Wi-LAN 2*

6       Ten of the new exhibits that Defendants submitted with their supplemental

7 submission are documents that Broadcom apparently produced in the *Wi-LAN 1*

8 case. (Dkt. 172-1). Caltech has not had an opportunity to review these documents,

9 but from their descriptions in the Dowd Declaration, they appear to be more of the

10 same type of information submitted with Defendants prior briefs, which was plainly

11 insufficient to carry Defendants' burden.

12       As is clear from his expert report cited in Defendants' moving papers, Dr.

13 Shoemake's work in the *Wi-LAN 1* case was focused on ████████████

14 ████████████████ (*See* Dkt. 105-1). The *Wi-LAN 2* case involved the

15 ████████ but Dr. Shoemake's work for Apple in *Wi-LAN 2* was limited to

16 ████████████████████████

17 ████████ Shoemake Decl. at ¶ 38.

18       The '222 patent in the *Wi-LAN* cases was filed on March 31, 1992, issued on

19 January 25, 1994, and describes systems and methods for performing a type of

20 differential modulation that avoids the need for clock or carrier offset recovery. (*Id.*

21 at ¶¶ 30-32). The '222 patent in the *Wi-LAN 1* case has nothing to do with error

22 correction coding. (*Id.*). (Dkt. 105-1 at p. 29). The '222 patent relates to a form of

23 differential signal modulation that eliminated the need for carrier offset recovery.

24 Carrier offset recovery has to do with automatically tuning to the correct channel

25

26 evidence and arguments that Defendants had submitted. (Apr. 19, 2017 Thompson

27 Email, Shyr Decl. Ex. 10).
    [5] Broadcom was not involved in *Wi-LAN 2*.

28

CALTECH RESPONSE TO DEFENDANTS' SUPPLEMENTAL SUBMISSION CONCERNING MOTION TO DISQUALIFY DR. MATTHEW SHOEMAKE

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

1   and has no relationship to error correction coding. Shoemake Decl. at ¶¶ 30-32. Dr.

2   Shoemake's report in the *Wi-LAN 1* case focused on ████████████

3 ████████████████████████████████████████████

4 ████████████████████████████████ (Dkt. 105-1

5   at pp. 59-130).

6       None of Dr. Shoemake's work in the *Wi-LAN 1* case involved ████████

7 ████████████████ (Shoemake Decl. at ¶ 32). Dr. Shoemake never

8 ████████████████████████████████████████████

9 ████████████████ (*Id.*) In fact, Dr. Shoemake stated in his declaration

10   that he does not ████████████████████████████████████

11 ████████████████████████████ (*Id.*). The accused IRA

12   codes were not a part of the 802.11 standard until the 802.11n amendment was

13   adopted in 2008.

14       Based on their descriptions, the documents provided with Defendants'

15   supplemental submission appear to relate to 802.11n and to certain Broadcom Wi-Fi

16   chips, such as the BCM4318, 4329, 4321 and 4331. It is not surprising, however,

17   that Dr. Shoemake would have had access to this information. ████████

18 ████████████████████████████████████████████

19 ████████████████████████████████████████████

20 ████████████████████████ LDPC codes were not part of

21   802.11a or 802.11g. And because 802.11n was relatively new at that time, and

22   LDPC codes were an optional part of 802.11n, many early 802.11n products did not

23   use LDPC codes. For example, Defendants submitted a document with their reply

24   brief concerning ████████████████████████████████

25 ████████████ (Dkt. 164-4 at BCM1093510). In any event, ████████

26 ████████████████ the scope of Dr. Shoemake's engagement in *Wi-*

27   *LAN 1* did not encompass such issues nor can Defendants meet their burdens of

28   confidentiality or prejudice.

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

1  For example, even if the documents cited by Defendants, or similar materials,

2  were somehow relevant to this case (which they are not), Defendants would be

3  required to produce them during discovery.  Thus, these documents cannot support a

4  claim of prejudice because, if relevant, Caltech should already have access to the

5  documents.  *See Twin City Fire Ins. Co. v. Mitsubishi Motors Credit of Am., Inc.*,

6  No. 04-0043, 2006 WL 5164249, at *4 (C.D. Cal. Nov. 6, 2006) ("Only the

7  disclosure of confidential information that the opposing party would be unable to

8  obtain through discovery should form a basis for disqualification of an expert

9  witness."); *Finisar Corp. v. Nistica, Inc.*, No. 13-cv-03345, 2015 U.S. Dist. LEXIS

10  94975 at *28 (N.D. Cal. July 15, 2015) ("'technical information as opposed to legal

11  advice is not considered confidential for the purpose of this analysis.'").  Notably,

12  Defendants do not appear to have produced any of the cited documents in this case.

13  The bottom line is that Dr. Shoemake's work on the *Wi-LAN* cases took place

14  over six years ago and involved numerous Defendants ▇▇▇▇▇▇▇

15  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Dr. Shoemake did

16  not ▇▇▇▇▇▇▇▇▇▇▇ in those cases that involved Dr.

17  Shoemake gaining access to information of "particular significance or [that] can

18  readily be identified as either attorney work product or within the scope of the

19  attorney-client privilege."  *Hewlett-Packard*, 330 F. Supp. 2d at 1094.  ▇▇

20  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇ And

21  Defendants have not pointed to a single piece of evidence that any Broadcom or

22  Apple attorney ever even spoke with Dr. Shoemake in connection with those cases.

### 2.    *Ericsson*

24  Defendants also appear to have cited to portions of the sealed ITC hearing

25  transcript from the *Ericsson* case.  As previously established, however, ▇▇▇

26  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

27  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

28  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

1 ███████████████████████████████████████████████ The

2 patents describe an "enhanced radio telephone [that] can selectively operate as either

3 a conventional radio telephone or as an improved IP telephone."  (U.S. Patent No.

4 6,157,620, Shyr Decl. Ex. 16 at 2:2-4.)  Thus, the patents did not have anything to

5 do with Wi-Fi technology and neither patent even mentions 802.11, Wi-Fi, error

6 correction codes, LDPC codes, or IRA codes.

7       Furthermore, anything that Dr. Shoemake may have testified about at the ITC

8 hearing "undermines [Defendants'] claim of a confidential relationship, since

9 testifying experts must reveal the underlying sources relied upon in reaching their

10 conclusions at deposition and on cross examination." *Stencel*, 174 F. Supp. 2d at

11 1084; *see also Broadcom v. Qualcomm*, No. 05-467, Dkt. 1600, at 2 (C.D. Cal. Jan.

12 9, 2009).  Certainly, Dr. Shoemake's testimony at the ITC hearing did not involve

13 matters that were privileged or attorney work product.  And given the lack of

14 similarity in subject matter, there is no reason to believe that the testimony is of

15 significance to the present case.  Indeed, the most that Defendants have ever said

16 about the *Ericsson* case (in any of the briefs that Caltech has been able to see) is that

17 the *Ericsson* case involved ███████████████ (Dkt. 105-10 at 4).  This district

18 squarely rejected such an overly broad relatedness argument when it was advanced

19 by Broadcom in the *Qualcomm* case.  *See Broadcom*, No. 05-467, Dkt. 1600, at 2

20 ("While the '051 Patent and the Agere Litigation Patents all deal with

21 telecommunications, there is virtually no substantive overlap with the Agere

22 Litigation Patents.").  The Northern District similarly flatly reject such a field of use

23 argument. *Life Techs. Corp. v. Biosearch Techs., Inc.*  No. C-12-00852 WHA JCS,

24 2012 WL 1604710, at *7 (N.D. Cal. May 7, 2012) (rejecting movant's argument that

25 both cases "exist in the same field" and finding that "such a superficial similarity,

26 without more" did not support disqualification.)

27 **III.   CONCLUSION**

28

Case No. 2:16-cv-03714-GW-AGRx
CALTECH RESPONSE TO DEFENDANTS' SUPPLEMENTAL SUBMISSION CONCERNING
MOTION TO DISQUALIFY DR. MATTHEW SHOEMAKE

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

1  For the foregoing reasons, Caltech respectfully requests that the Court refuse

2  to consider Defendants' *in camera* submission and deny Defendants' motion to

3  disqualify Dr. Shoemake.  In the alternative, if the Court wishes to give any further

4  consideration to Defendants' submission, Caltech respectfully requests that it be

5  provided access to that submission and a further opportunity to respond.

6

7  DATED: April 27, 2017          Respectfully submitted,

8

9

10                                By */s/ James R. Asperger*
                                     James R. Asperger
11                                   jimasperger@quinnemanuel.com
                                     QUINN EMANUEL URQUHART &
12                                   SULLIVAN, LLP
                                     865 S. Figueroa St., 10th Floor
13                                   Los Angeles, California 90017
                                     Telephone:  (213) 443-3000
14                                   Facsimile:  (213) 443-3100

15                                   *Attorneys for Plaintiff California*
                                     *Institute of Technology*

16
17
18
19
20
21
22
23
24
25
26
27
28

CALTECH RESPONSE TO DEFENDANTS' SUPPLEMENTAL SUBMISSION CONCERNING MOTION TO DISQUALIFY DR. MATTHEW SHOEMAKE