1  QUINN EMANUEL URQUHART
      & SULLIVAN, LLP
2  James R. Asperger (Bar No. 083188)
   jimasperger@quinnemanuel.com
3  865 S. Figueroa St., 10th Floor
   Los Angeles, California 90017
4  Telephone: (213) 443-3000
   Facsimile: (213) 443-3100
5
   Kevin P.B. Johnson (Bar No. 177129)
6  kevinjohnson@quinnemanuel.com
   Todd M. Briggs (Bar No. 209282)
7  toddbriggs@quinnemanuel.com
   555 Twin Dolphin Drive, 5th Floor
8  Redwood Shores, California 94065
   Telephone: (650) 801-5000
9  Facsimile: (650) 801-5100

10 Attorneys for Plaintiff the California
   Institute of Technology
11

12                  UNITED STATES DISTRICT COURT

13                  CENTRAL DISTRICT OF CALIFORNIA

14

15 The CALIFORNIA INSTITUTE OF            CASE NO. 2:16-cv-3714-GW-AGRx
   TECHNOLOGY, a California
16 Corporation,

17              Plaintiff,                **MEMORANDUM IN SUPPORT OF
                                          CALTECH'S MOTION TO STRIKE
18        vs.                             PORTIONS OF THE EXPERT
                                          REPORT OF DR. BRENDAN FREY
19 BROADCOM LIMITED,                      REGARDING INVALIDITY OF
   BROADCOM CORPORATION,                  PATENTS-IN-SUIT**
20 AVAGO TECHNOLOGIES LIMITED,
   APPLE INC., AND CYPRESS
21 SEMICONDUCTOR CORPORATION              Hon. George H. Wu
                                          United States District Court Judge
22          Defendants.                   Hearing Date: September 10, 2018
                                          Time: 8:30 am
23                                        Place: Courtroom 9D

24

25

26

27

28

# **TABLE OF CONTENTS**

Page

I.   INTRODUCTION .................................................................................. 1

II.  BACKGROUND .................................................................................... 4

III. LEGAL STANDARD .......................................................................... 8

IV.  THE NUMBER OF PRIOR ART REFERENCES IN THE FREY
     REPORT EXCEEDS THE LIMITS SET BY THE COURT'S
     ORDERS ............................................................................................... 9

     A.   The Court's Orders Make Clear That a Subset Of A Prior Art
          Reference Combination Is Itself An Additional Prior Art
          Reference .................................................................................... 10

     B.   Defendants Violate the Court's Orders By Including Subsets Of
          Prior Art Combinations In Excess Of The Court's Orders
          Limiting The Number Of Prior Art References, And Defendants
          Improperly Include New Subsets That Were Not Disclosed In
          Their Final Invalidity Contentions .......................................... 11

V.   THE FREY REPORT INCLUDES OPINIONS BASED ON NEW
     PRIOR ART REFERENCES THAT DEFENDANTS FAILED TO
     DISCLOSE IN THEIR PRIOR ART RANKING .......................... 14

VI.  THE FREY REPORT INCLUDES NEW INVALIDITY THEORIES
     REGARDING THE CLAIMED "LOW-DENSITY GENERATOR
     MATRIX" NOT DISCLOSED IN DEFENDANTS' FINAL
     INVALIDITY CONTENTIONS .................................................... 16

     A.   Defendants' Final Invalidity Contentions Disclosed A Limited
          Set of Specific Obviousness Theories ...................................... 17

     B.   The Frey Report Asserts Invalidity Theories Regarding The
          "Low-Density Generator Matrix" That Defendants Failed To
          Disclose In Their Final Invalidity Contentions ....................... 19

VII. DEFENDANTS IMPROPERLY RELY ON "PFISTER/PFISTER
     SLIDES" AND "FREY/FREY SLIDES" TO MULTIPLY THEIR
     PRIOR ART REFERENCE COMBINATIONS ........................... 23

VIII. CONCLUSION ................................................................................ 25

# TABLE OF AUTHORITIES

**Page**

## Cases

*Allergan, Inc., et al. v. Athena Cosmetics, Inc. et al.*, No. SACV 07-1316 JVS (RNBx), Dkt. 1059 (C.D. Cal. Feb. 28, 2013) ................................................. 20

*BreathableBaby, LLC v. Crown Crafts, Inc.*, Civil No. 12–94 (PJS/TNL), 2014 WL 3928526 (D. Minn. Aug. 12, 2014) ................................................. 11

*Changzhou Kaidi Elec. Co. v. Okin Am., Inc.*, 112 F. Supp. 3d 330 (D. Md. 2015) .... ................................................................................................................. 11

*Chapco, Inc. v. Woodway USA, Inc.*, 282 F. Supp. 3d 472 (D. Conn. 2017).............. 9

*Digital Reg of Texas, LLC v. Adobe Sys., Inc.*, No. 4:12-cv-01971-CW, 2014 WL 4090550 (N.D. Cal. Aug. 19, 2014). ................................................. 16

*Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) ............. 8

*Labyrinth Optical, Techs. LLC v. Alcatel-Lucent USA Inc.*, No. SACV1200759AGDFMX, 2015 WL 12681652 (C.D. Cal. Jan. 13, 2015) ..... 9

*Largan Precision Co. v. Genius Elec. Optical Co.*, No. 13-2502, 2014 WL 6882275 (N.D. Cal. Dec. 5, 2014) ................................................. 20

*LML Patent Corp. v. JPMorgan Chase & Co.*, No. 2:08-CV-448, 2011 WL 5158285 (E.D. Tex. Aug. 11, 2011) ................................................. 12

*MediaTek Inc. v. Freescale Semiconductor, Inc.*, No. 11-5341, 2014 WL 690161 (N.D. Cal. Feb. 21, 2014) ................................................. 14

*Mitsubishi Elec. Corp. v. Sceptre, Inc.*, No. 2:14-CV-04994-ODW, 2015 WL 2369557 (C.D. Cal. May 18, 2015) ................................................. 22, 23

*Mortg. Grader, Inc. v. Costco Wholesale Corp.*, No. SACV1300043AGANX, 2014 WL 10763261 (C.D. Cal. Oct. 27, 2014) ................................................. 8

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355 (Fed. Cir. 2006)... ................................................................................................................. 9, 22

*Tyco Healthcare Grp. LP v. Applied Med. Res. Corp.*, No. CIV.A. 9:06-CV-151, 2009 WL 5842062 (E.D. Tex. Mar. 30, 2009) ................................................. 12

## Rules

Fed. R. Civ. P. 16 ................................................................................................................. 8

Fed. R. Civ. P. 37 ................................................................................................................. 8

MEMORANDUM IN SUPPORT OF CALTECH'S MOTION TO STRIKE PORTIONS OF THE EXPERT REPORT OF DR. BRENDAN FREY REGARDING INVALIDITY OF PATENTS-IN-SUIT

## I.    INTRODUCTION

On June 21, 2018 Defendants served the Expert Report of Dr. Brendan Frey Regarding Invalidity of Patents-in-Suit ("Frey Report").  The Frey Report contains numerous invalidity theories that: (a) exceed the limits on the number of prior art combinations set by the Court and/or (b) were not previously disclosed by Defendants.  The Court limited Defendants to *seven* prior art references per patent, but the Frey Report asserts *ten* references against two of the patents-in-suit.  These new, additional references should be stricken.  Defendants also have offered no justification for the addition of the new theories set forth in the Frey Report that they failed to disclose in their Final Invalidity Contentions, nor have they moved for leave to supplement their contentions to include any such theories.  Nor could they, as there is no good cause for their failure to disclose such theories.  Caltech accordingly requests that the Court strike the offending portions of the Frey Report for at least the following reasons.

*First*, the number of prior art reference combinations in the Frey Report exceeds the limits set by the Court's case-narrowing orders.  In December 2017 the Court limited Defendants to five prior art references per patent—where "[a] 'prior art reference' is a single prior art reference that is asserted to anticipate a claim, or a combination of prior art references asserted to render a claim obvious."  (Dkt. 375 at 2.)  Under this definition, a *subset* of the prior art references selected from a given combination is itself another "prior art reference."  For example, "Ping in view of Luby98, Divsalar, and Luby97" is one prior art reference and "Ping in view of Luby98 and Divsalar" is a different prior art reference.  (Dkt. 512 at 6.)  Five months after the Court issued its order, Defendants moved to increase the number of prior art references from five per patent to ten.  Defendants argued, in part, that they needed the additional references because they may need to rely on such subsets of combinations.  Despite finding that Defendants had not "provided a good cause basis to assert additional prior art invalidity grounds," the Court permitted

Defendants to assert an additional two combinations per patent for a total of seven per patent. (Dk. 528 at 3.) But Defendants ignored the Court's order and proceeded to assert three more subsets of prior art references for a total of *ten* references for both the '032 and '781 Patents in the Frey Report—the same number of references that the Court specifically denied them leave to assert. The three new references should be stricken from the Frey Report for both patents.

***Second***, the Frey Report cites to *seven new* prior art references not included in the list of ranked prior art references that Defendants filed with the Court. Defendants filed a Ranking of Asserted Prior Art on May 10, 2018 and a Supplemental Ranking of Asserted Prior Art on May 14, 2018. In both filings Defendants identified only eight alleged prior art documents (in fact, as explained below, the number is ten, given that the Frey Report confirms that the Frey Paper, Frey Slides, Pfister Paper and Pfister Slides are separate references). Yet the Frey Report includes an additional *seven* prior art documents on which he relies to argue for the invalidity of the patents-in-suit. These documents were not identified in Defendants prior art rankings and should therefore be stricken from the Frey Report.

***Third***, the Frey Report contains several obviousness theories directed to the "low-density generator matrix" limitations found in the asserted claims of the '710 and '781 Patents. However, none of these theories are disclosed in Defendants' May 31, 2018 Final Invalidity Contentions ("Final Invalidity Contentions"). Section II.B of the cover pleading to Defendants' Final Invalidity Contentions sets forth the specific alleged motivations to combine the asserted prior art references upon which Defendants' obviousness combinations are based. Defendants' Final Invalidity Contentions set forth three primary prior art references—Pfister/Pfister Slides, Divsalar, and Ping—and several secondary prior art references that Defendants contend may be combined therewith to meet specific limitations of the asserted claims. Such limitations include "irregularity," "streams of bits," "second accumulator," and so on. For example, Defendants' Final Invalidity Contentions

allege that to the extent Pfister/Pfister Slides fails to teach the "irregularity," it would have been obvious to combine Pfister/Pfister Slides with Frey/Frey Slides or Luby98 as a secondary reference to arrive at the limitations of the asserted claims. The Frey Report repeats these assertions.  But the Report goes further in additionally alleging that these secondary references should also be combined with the primary references to meet the "low-density generator matrix" limitations of the asserted claims.  No such argument appears in Defendants' Final Invalidity Contentions. Accordingly, these new arguments should be stricken from the Frey Report.

*Fourth*, Defendants improperly rely on the so-called "Pfister/Pfister Slides" and "Frey/Frey Slides" references to further increase the number of prior art combinations asserted in the Frey Report.  In opposing Defendants' motion to add prior art references, Caltech argued that these two pairs of references are properly considered as two prior art references each, because they are separate documents.  In response, Defendants argued to the Court that each pair should be considered as one reference because they each allegedly disclose one "invention."  At the time, the Court declined to resolve this particular issue.  (Dkt. 528 at 2.)  Now, the Frey Report asserts the Frey Paper and the Frey Slides as individual references, arguing that each reference may be used as a substitute for the other.  For example, where Dr. Frey asserts that "Frey/Frey Slides" should be combined with, *e.g.*, the Luby97 reference, Dr. Frey actually relies on the combination of the Frey Paper and Luby97 and separately on the additional combination of the Frey Slides and Luby97.  In other words, Dr. Frey asserts twice the number of combinations under the guise of a single "Frey/Frey Slides" reference.  The same is true of "Pfister/Pfister Slides." Because Defendants' strategy in the Frey Report effectively doubles the number of prior art combinations for each such use of "Frey/Frey Slides" or "Pfister/Pfister Slides," Defendants' Supplemental Ranking of Prior Art (Dkt. 512) actually asserts thirteen references against the '710 Patent, nine references against the '032 Patent, and nine references against the '781 Patent, for a total of 31 references instead of the

-3-

Case No. 2:16-cv-3714-GW-AGRx

MEMORANDUM IN SUPPORT OF CALTECH'S MOTION TO STRIKE PORTIONS OF THE EXPERT REPORT OF DR. BRENDAN FREY REGARDING INVALIDITY OF PATENTS-IN-SUIT

1  21 total permitted by the Court's order.  Caltech respectfully submits that this issue

2  is now ready for the Court to resolve as the Frey Report confirms that each of

3  "Frey/Frey Slides" and "Pfister/Pfister Slides" consists of two distinct references.

4       The purpose of invalidity contentions is to put a patent owner on notice of an

5  alleged infringer's invalidity theories so that it can prepare its case for trial.

6  Moreover, in this case, all of the references have been known and available to

7  Defendants' since the original lawsuit was filed.[1]  The Frey Report undermines this

8  fundamental notice function by surprising Caltech with previously undisclosed

9  invalidity theories at a late stage in the case.  Defendants have had two years since

10  Caltech filed the instant lawsuit in which to prepare their invalidity theories.  And

11  Defendants have had the further opportunity to hone their invalidity theories through

12  no less than ten *inter partes* review proceedings filed against the patents-in-suit.

13  There is no justification for the numerous discrepancies between their Final

14  Invalidity Contentions and the Frey Report.   Accordingly, Caltech respectfully

15  requests that the Court strike the portions of the Frey Report as detailed herein.[2]

16  ## II.    BACKGROUND

17       On April 16, 2018 the parties submitted a joint scheduling stipulation—

18  subsequently approved by the Court—whereby Defendants would serve a ranked list

19  of asserted prior art references pursuant to the Court's earlier December 18, 2017

20  Order.  (Dkts. 375, 489, 494.)  At the time, Defendants were permitted no more than

21  five prior art references per asserted patent, where "[a] 'prior art reference' is a

22  single prior art reference that is asserted to anticipate a claim, or a combination of

23  prior art references asserted to render a claim obvious."  (Dkt. 375 at 2.)  Further,

---

24   [1]   Indeed, all prior art references currently asserted against Caltech were

25  previously cited by Defendants' counsel in the prior case of *The Cal. Inst. of Tech.*
    *v. Hughes Commc'ns Inc. et al*, No. 2:13-cv-07245-MRP-JEM (C.D. Cal.).  *See,*

26  *e.g.*, 2:13-cv-07245, Dkts. 208-3, 251-10, 251-12, 251-37.

27   [2]   Caltech reserves the right to strike or otherwise preclude additional testimony
    from Dr. Frey or the Frey Report.  (Dkt. 494.)

28

MEMORANDUM IN SUPPORT OF CALTECH'S MOTION TO STRIKE PORTIONS OF THE EXPERT REPORT
OF DR. BRENDAN FREY REGARDING INVALIDITY OF PATENTS-IN-SUIT

1  the Court held that "[a]n identification of prior art references without an
2  identification of corresponding invalidity theories leaves open the possibility for
3  Defendants to ultimately assert an unduly burdensome number of invalidity theories
4  in this litigation." (*Id.*)  On May 10, 2018, Defendants served their Ranking of
5  Asserted Prior Art, but without identifying any corresponding invalidity theories
6  notwithstanding the Court's order.  (Dkt. 508.)   The following day, the Court
7  ordered *sua sponte* Defendants to file a Supplemental Ranking identifying the
8  asserted claims relevant to each of Defendants' prior art reference combinations.
9  (Dkt. 509.)  On May 14, 2018 Defendants filed their Supplemental Ranking, this
10 time listing the claims allegedly rendered obvious thereby.  (Dkt. 512.)

11      On May 8, 2018 Defendants filed a motion seeking to double the number of
12 permitted prior art references from five per patent to ten per patent.  (Dkt. 507.)  As
13 recognized by the Court, Defendants argued that they "need[ed] additional prior art
14 grounds because an additional obviousness combination with *fewer* references
15 would constitute a separate reference under the Court's directive regarding prior art
16 references." (Dkt. 528 at 2 n.2 (citing Dkt. 507-1 at 6-8) (emphasis original).)  In
17 other words, Defendants conceded that each *subset* of references within a given
18 prior art combination would itself constitute another prior art combination.  Caltech
19 opposed Defendants' motion on several grounds, including that Defendants were
20 asserting certain pairs of documents as single prior art references.   Specifically,
21 Caltech argued that each of Defendants' ranked prior art references "Frey/Frey
22 Slides" and "Pfister/Pfister Slides" is properly considered as two prior art references
23 because each pair consists of two separate documents.  (Dkt. 515 at 3, 7-8.)

24      The Court found that "Defendants [had not] provided a good cause basis to
25 assert additional prior art invalidity grounds in the matter."   (Dkt. 528 at 3.)
26 Nonetheless, the Court granted in part Defendants' motion by allowing them to
27 select up to seven references per patent, rather than the requested ten.  At the time,
28 the Court "decline[d] to make a determination regarding whether certain disclosures

MEMORANDUM IN SUPPORT OF CALTECH'S MOTION TO STRIKE PORTIONS OF THE EXPERT REPORT
OF DR. BRENDAN FREY REGARDING INVALIDITY OF PATENTS-IN-SUIT

1  in the ranking (namely, 'Pfister/Pfister Slides' and 'Frey/Frey Slides') constitute a
2  single document as understood under 35 U.S.C. 102(a)."  (*Id.* at 1.)

3       On May 31, 2018, Defendants served their Final Invalidity Contentions
4  ("Final Invalidity Contentions").   (Declaration of Todd M. Briggs, Ex. B.)[3]
5  Defendants' Final Invalidity Contentions included a cover pleading and three claim
6  charts (Exhibits A-C), each chart being directed to one of the three asserted patents.
7  (*Id.*)   However, Defendants' Final Invalidity Contentions failed to provide fair
8  notice of Defendants' invalidity theories.  Each chart spanned hundreds of pages and
9  listed every prior art reference for every limitation of every asserted claim, without
10  reference to any particular invalidity theory.  Moreover, the cover pleading included
11  broad contentions such as: "One of ordinary skill in the art would have been
12  motivated to combine the teachings of two or more of Divsalar, Ping, Luby97,
13  Luby98, Richardson99, MacKay, Frey/Frey Slides, and Pfister/Pfister Slides."  (*Id.*
14  at 20.)   And Defendants broadly asserted that "each item of prior art . . . either
15  anticipates or renders obvious each asserted claim."   (*Id.* at 3.)   On their face,
16  Defendants' Final Invalidity Contentions violated the letter and the spirit of the
17  Court's case narrowing order.   They also contained multiple ambiguities that
18  obfuscated the actual theories Defendants may intend to rely on at trial, and lacked
19  both specificity and clear notice as required.   Accordingly, Caltech requested an
20  immediate meet and confer with Defendants to understand the scope of Defendants'
21  actual contentions.  (Ex. I (June 4 email).)

22       During the parties' June 4, 2018 meet and confer, Defendants agreed, among
23  other things, that they would not assert subsets of selected prior art combinations,
24  that they would not assert any anticipation arguments, and that Section II.B of their
25  cover pleading disclosed their obviousness theories.   (Ex. K (June 6 Letter).)
26  Specifically, Defendants represented to Caltech:

27
28    [3]  All exhibits are attached to the Declaration of Todd M. Briggs, filed herewith.

Case No. 2:16-cv-3714-GW-AGRx
MEMORANDUM IN SUPPORT OF CALTECH'S MOTION TO STRIKE PORTIONS OF THE EXPERT REPORT
OF DR. BRENDAN FREY REGARDING INVALIDITY OF PATENTS-IN-SUIT

> Defendants do not intend that the combinations identified above (which Defendants identified in Defendants' Supplemental Ranking of Prior Art and Final Invalidity Contentions) include subsets of particular combinations. Defendants agree that to assert subsets of any particular-identified combination against any asserted claim, Defendants would seek leave of Court and comply with any requirements imposed by the Court (e.g., if the Court requires good cause, Defendants would show such good cause).

(*Id.* at 2.)   With respect to the seemingly overbroad claim charts in their Final Invalidity Contentions, Defendants also represented that Section II.B of the cover pleading provided a guide by which Caltech could understand which prior art disclosures corresponded to which obviousness invalidity theories.  (*Id.* at 3 ("For example, Section II.B.1.c identifies that Pfister/Pfister Slides in view of Frey/Frey Slides and Luby97 render obvious Claims 20, 22, and 23 of the '710 patent.").)

The following day, in a good-faith effort to resolve the issue, Caltech prepared a chart summarizing its understanding of Defendants' Final Invalidity Contentions based on Defendants' representation that Section II.B of the cover pleading described how Defendants contended the prior art references should be combined.  (Ex. J (June 5 Letter).)   Unlike the exhibits to Defendants' Final Invalidity Contentions, Caltech's charts mapped each prior art reference to each element of each asserted claim based on Section II.B of Defendants' cover pleading. (*Id.*)  Defendants, however, refused to confirm or deny the accuracy of those charts. (Ex. K (June 6 Letter) at 3.)

On June 21, 2018 Defendants served the Expert Report of Dr. Brendan Frey Regarding Invalidity of Patents-in-Suit ("Frey Report").  (Ex. A (Frey Report).) Upon review of the Frey Report, Caltech found that it contained several invalidity theories not previously disclosed in Defendants' Final Invalidity Contentions.  As just one example (discussed in more detail below), Dr. Frey included arguments that the Frey/Frey Slides and Luby97 references should be combined with Pfister/Pfister Slides to meet the "low density generator matrix" limitation found in claim 20 of the '710 Patent—an argument not disclosed in Defendants' Final Invalidity

-7-

MEMORANDUM IN SUPPORT OF CALTECH'S MOTION TO STRIKE PORTIONS OF THE EXPERT REPORT OF DR. BRENDAN FREY REGARDING INVALIDITY OF PATENTS-IN-SUIT

Contentions. Tellingly, Defendants sent Caltech a letter a mere *two hours* before serving the Frey Report belatedly attempting to insert this argument into their Final Invalidity Contentions. (Ex. M (June 21 Letter) at 2-3.) This was the first time Defendants substantively responded to Caltech's June 5 charts mapping Defendants' obviousness theories to the elements of the asserted claims.

Following its close review of the Frey Report, Caltech identified several additional invalidity theories that were not disclosed in Defendants' Final Invalidity Contentions. Caltech prepared a detailed letter identifying such inconsistencies, including updated charts mapping Defendants' obviousness theories to the claims. (Ex. N (July 17 Letter).) Defendants refused to concede there were any discrepancies. (Ex. O (July 30 Letter).) The parties met and conferred again on July 31, 2018, but no agreement was reached.

## III.   LEGAL STANDARD

Federal Rule of Procedure 16(b)(4) provides that "[a] schedule may be modified only for good cause and with the judge's consent." "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). When a party "fails to obey a scheduling or other pretrial order," Federal Rule of Civil Procedure 16(f)(1)(C) authorizes the court to preclude that party from "supporting or opposing designated claims or defenses, or from introducing designated matters in evidence" under Rule 37(b)(2)(A)(ii).

While this District has not adopted local patent rules, courts in this District have paralleled other districts in setting schedules to require, as it did in this case, that the parties file final infringement and invalidity contentions. *See, e.*g., *Mortg. Grader, Inc. v. Costco Wholesale Corp.*, No. SACV-13-00043 AG (ANx), 2014 WL 10763261, at *2 (C.D. Cal. Oct. 27, 2014) ("Patent rules, such as the Court's Standing Patent Rules, require 'both the plaintiff and the defendant in patent cases to provide early notice of their infringement and invalidity contentions, and to proceed

-8-

Case No. 2:16-cv-3714-GW-AGRx

MEMORANDUM IN SUPPORT OF CALTECH'S MOTION TO STRIKE PORTIONS OF THE EXPERT REPORT OF DR. BRENDAN FREY REGARDING INVALIDITY OF PATENTS-IN-SUIT

with diligence in amending those contentions when new information comes to light in the course of discovery. The rules thus seek to balance the right to develop new information in discovery with the need for certainty as to the legal theories.'") (quoting *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.,* 467 F.3d 1355, 1365–66 (Fed. Cir. 2006)); *Labyrinth Optical, Techs. LLC v. Alcatel-Lucent USA Inc*., No. SACV-12-00759 AG (DFMx), 2015 WL 12681652, at *10 (C.D. Cal. Jan. 13, 2015) (applying N.D. Cal. Patent Local Rules requiring that "[i]f obviousness is alleged, an explanation of why the prior art renders the asserted claim obvious, including an identification of any combinations of prior art showing obviousness" to exclude theories raised for the first time in summary judgment).

Disclosures of invalidity contentions "require parties to crystallize their theories of the case early in the litigation so as to prevent the 'shifting sands' approach to claim construction." *See O2 Micro*, 467 F.3d at 1364 (discussing invalidity and infringement contentions under the local patent rules of the Northern District of California) (internal quotations omitted).  In districts without patent local rules, courts have found that scheduling orders setting requirements for invalidity contentions share the same purpose—and violation of such scheduling orders results in the same consequences. *See Chapco, Inc. v. Woodway USA, Inc.,* 282 F. Supp. 3d 472, 489 (D. Conn. 2017) ("Even though this District does not have a specific local patent rule, the court's Scheduling Order clearly required the use of infringement and invalidity contentions . . . and the attempt to use new theories, absent a request to amend, violates the court's Order.").

## IV.   THE NUMBER OF PRIOR ART REFERENCES IN THE FREY REPORT EXCEEDS THE LIMITS SET BY THE COURT'S ORDERS

In December 2017, the Court originally limited Defendants to five prior art references per patent.  (Dkt. 375 at 2.)  Five months later, Defendants moved the Court to increase that number to ten.  (Dkt. 507.)  Despite finding that Defendants had not "provided a good cause basis to assert additional prior art invalidity grounds

-9-

in this matter," the Court permitted Defendants to assert an additional two references for a total of seven per patent. (Dkt. 528 at 3.) Nonetheless, Defendants asserted *ten* prior art references for both the '032 and '781 Patents in the Frey Report, disregarding the Court's order. The three new references should be stricken.

### A. The Court's Orders Make Clear That a Subset Of A Prior Art Reference Combination Is Itself An Additional Prior Art Reference

The Court previously ordered that "[a] 'prior art reference' is a single prior art reference that is asserted to anticipate a claim, or a combination of prior art references asserted to render a claim obvious." (Dkt. 375 at 2.) Accordingly, any subset of a prior art combination is itself an additional "prior art reference." This point is not in dispute, as it has been conceded by Defendants in prior pleadings, as noted above. By way of further example, in their Supplemental Ranking of Asserted Prior Art, Defendants ranked "Ping in view of Luby98, Divsalar, and Luby97" as their first prior art reference for the '032 Patent and separately ranked "Ping in view of Luby98 and Divsalar" as their seventh prior art reference. (Dkt. 512 at 6.) The latter is a subset of the former, missing only Luby97. In other words, Defendants recognized that if they wanted to assert less than the entirety of a combination of prior art references against one or more claims and still comply with the Court's orders, they had to separately list such a subset in their ranking of prior art references. Defendants confirmed this understanding in no uncertain terms to Caltech: "Defendants agree that to assert subsets of any particular-identified combination against any asserted claim, Defendants would seek leave of Court and comply with any requirements imposed by the Court (*e.g.*, if the Court requires good cause, Defendants would show such good cause)." (Ex. K (June 6 Letter) at 2.)

Accordingly, in their Final Invalidity Contentions, Defendants asserted the following seven prior art references against the '032 Patent (Dkt. 512 at 6):

| Rank | Prior Art Combination | Claims |
|---|---|---|
| 1 | Ping in view of Luby98, Divsalar, and Luby97 | 3, 11, 17, 18 |
| 2 | Ping in view of Richardson99, Divsalar, and Luby97 | 3, 11, 17, 18 |
| 3 | Ping in view of MacKay and Pfister/Pfister Slides | 3, 11, 17, 18 |

| Rank | Prior Art Combination | Claims |
|------|----------------------|--------|
| 4 | Ping in view of Luby98 and Pfister/Pfister Slides | 3, 11, 17 |
| 5 | Divsalar in view of MacKay and Luby97 | 3, 11, 17, 18 |
| 6 | Ping in view of MacKay, Divsalar, and Luby97 | 3, 11, 17, 18 |
| 7 | Ping in view of Luby98 and Divsalar | 3, 11, 17, 18 |

Note that combination seven is a subset of combination one, and combination five is a subset of combination six.  Similarly, Defendants asserted the following seven prior art references against the '781 Patent (*id.* at 7):

| Rank | Prior Art Combination | Claims |
|------|----------------------|--------|
| 1 | Divsalar in view of Ping and Richardson99 | 6, 9, 13, 22 |
| 2 | Divsalar in view of Luby97 and Luby98 | 6, 9, 13, 22 |
| 3 | Divsalar in view of Ping and Frey/Frey Slides | 6, 9, 13, 22 |
| 4 | Ping in view of Luby98 | 13, 22 |
| 5 | Pfister/Pfister Slides in view of Luby97 and Luby98 | 6, 9, 13, 22 |
| 6 | Divsalar in view of Ping and Luby98 | 6, 9, 13, 22 |
| 7 | Divsalar in view of Luby97 and Richardson99 | 6, 9, 13, 22 |

Note that combination four is a subset of combination six.

**B.     Defendants Violate the Court's Orders By Including Subsets Of Prior Art Combinations In Excess Of The Court's Orders Limiting The Number Of Prior Art References, And Defendants Improperly Include New Subsets That Were Not Disclosed In Their Final Invalidity Contentions**

Notwithstanding the express representations they made both to the Court and to Caltech, Defendants now assert *ten* prior art references against both the '032 Patent and the '781 Patent in the Frey Report.  Moreover, these additional prior art reference combinations were not disclosed in Defendants' Final Invalidity Contentions or in their Supplemental Ranking of Prior Art (Dkt. 512).  An expert's report "may not present theories premised on combinations of prior art or references within the prior art not previously disclosed."  *Changzhou Kaidi Elec. Co. v. Okin Am., Inc.*, 112 F. Supp. 3d 330, 335 (D. Md. 2015).  Courts have precluded parties from "us[ing] previously identified prior art to assert . . . new prior art combinations that were not included in its earlier" disclosures. *BreathableBaby, LLC v. Crown Crafts, Inc.,* Civil No. 12–94 (PJS/TNL), 2014 WL 3928526, at *4 (D. Minn. Aug. 12, 2014) (excluding those theories).  *See also LML Patent Corp. v. JPMorgan Chase & Co.,* No. 2:08-CV-448, 2011 WL 5158285, at *1, *7 (E.D. Tex. Aug. 11,

Case No. 2:16-cv-3714-GW-AGRx

MEMORANDUM IN SUPPORT OF CALTECH'S MOTION TO STRIKE PORTIONS OF THE EXPERT REPORT OF DR. BRENDAN FREY REGARDING INVALIDITY OF PATENTS-IN-SUIT

2011) (granting a motion to strike new obviousness combinations from an expert's reports, even those based on previously identified prior art references); *Tyco Healthcare Grp. LP v. Applied Med. Res. Corp.*, No. CIV.A. 9:06-CV-151, 2009 WL 5842062, at *3 (E.D. Tex. Mar. 30, 2009) (excluding expert testimony regarding all prior art combinations not disclosed in invalidity contentions).

Specifically, Dr. Frey selected subsets of Defendants' previously ranked prior art combinations and relies on those subsets in his obviousness analysis for claims 11 and 17 of the '032 Patent and claim 6 of the '781 Patent.  For example, for the combination ranked number five against the '032 Patent, Defendants represented to the Court that the combination of Divsalar, MacKay, and Luby97 renders obvious claims 3, 11, 17, and 18 of the '032 Patent.  (Dkt. 512 at 6.)  But Dr. Frey relies only on a combination of Divsalar and MacKay—without Luby97—in his obviousness analysis for claims 11 and 17 of the '032 Patent.  (*See* Ex. A (Frey Report) §§ IX.E.iii-iv, pp. 286-293.)  More specifically, Dr. Frey opines as follows:

| Claim Element | Dr. Frey's Opinion |
|---|---|
| [11A]: "A device comprising:" | "Divsalar discloses this preamble." (¶ 822) |
| [11B]: "an encoder configured to receive a collection of message bits and encode the message bits to generate a collection of parity bits" | "Divsalar discloses this limitation." (¶ 823) |
| [11C]: "in accordance with the following Tanner graph: [Tanner Graph]" | "The combination of Divsalar and MacKay discloses this limitation." (¶ 826) |
| [12] "The device of claim 11, wherein the encoder is configured to generate the collection of parity bits as if a number of inputs into nodes vi was not constant." | "The combination of Divsalar in view of MacKay discloses this limitation." (¶ 843) |
| [17] "The device of claim 12, further comprising a second accumulator configured to determine a second sequence of parity bits that defines a second condition that constrains the random sequence of repeats of the message bits." | "Divsalar discloses this limitation." (¶ 846) |

(Paragraph (¶) numbers refer to Ex. A (Frey Report).)  By contrast, for claims 3 and 18 of the '032 Patent, Dr. Frey relies on the full combination of Divsalar, MacKay, and Luby97.  (*See id.* ¶ 819 ("The combination of Divsalar, MacKay, and Luby97 discloses this limitation"), ¶ 848 (same).)  Dr. Frey similarly asserts new subsets of

Defendants' combinations ranked two and six.  (*See id.* § IX.B.iii-iv, pp. 241-246 (relying on Ping, Divsalar, and Richardson99, but not Luby97) and § IX.F.iii-iv, pp. 301-302 (relying on Ping, Divsalar, and MacKay, but not Luby97).)

Thus, the prior art combinations in the Frey Report asserted against the claims of the '032 Patent can be summarized as follows, with *redlines* indicating the new combinations not found in Defendants' Final Invalidity Contentions:

| Rank | Prior Art Combination | Claims | Frey Report (§, pp.) |
|------|----------------------|--------|----------------------|
| 1 | Ping in view of Luby98, Divsalar, and Luby97 | 3, ~~11, 17,~~ 18 | IX.A.i-ii (pp. 195-217), IX.A.v (pp. 228-235) |
| 2 | Ping in view of Richardson99, Divsalar, and Luby97 | 3, ~~11, 17,~~ 18 | IX.B.i-ii (pp. 235-241), IX.B.v (pp. 247-248) |
| 3 | Ping in view of MacKay and Pfister/Pfister Slides | 3, 11, 17, 18 | IX.C (pp. 248-271) |
| 4 | Ping in view of Luby98 and Pfister/Pfister Slides | 3, 11, 17 | IX.D (pp. 271-277) |
| 5 | Divsalar in view of MacKay and Luby97 | 3, ~~11, 17,~~ 18 | IX.E.i-ii (pp. 277-281), IX.E.v (pp. 294-297) |
| 6 | Ping in view of MacKay, Divsalar, and Luby97 | 3, ~~11, 17,~~ 18 | IX.F.i-ii (pp. 297-301), IX.F.v (pp. 302-303) |
| 7 | Ping in view of Luby98 and Divsalar | 3, 11, 17, 18 | IX.A.iii-iv (pp. 217-228), IX.G (pp. 303-308) |
| *New* | *Ping in view of Divsalar, and Richardson99* | *11, 17* | *IX.B.iii-iv (pp. 241-246)* |
| *New* | *Divsalar in view of MacKay* | *11, 17* | *IX.E.iii-iv (pp. 286-294)* |
| *New* | *Ping in view of Divsalar, and MacKay* | *11, 17* | *IX.F.iii-iv (pp. 301-302)* |

(Section (§) and page (pp.) numbers refer to Ex. A (Frey Report).)  Similarly, the prior art combinations asserted in the Frey Report against the claims of the '781 Patent can be summarized as follows, again with improper new combinations in *red*:

| Rank | Prior Art Combination | Claims | Frey Report (§, pp.) |
|------|----------------------|--------|----------------------|
| 1 | Divsalar in view of Ping and Richardson99 | ~~6,~~ 9, 13, 22 | X.A.i (pp. 309-311), X.A.iii-v (pp. 314-326) |
| 2 | Divsalar in view of Luby97 and Luby98 | ~~6,~~ 9, 13, 22 | X.B.i (pp. 326-329), X.B.iii-v (pp. 330-335) |
| 3 | Divsalar in view of Ping and Frey/Frey Slides | ~~6,~~ 9, 13, 22 | X.C.i (p. 335), X.C.iii-v (pp. 337-340) |
| 4 | Ping in view of Luby98 | 13, 22 | X.D (pp. 340-344) |
| 5 | Pfister/Pfister Slides in view of Luby97 and Luby98 | ~~6,~~ 9, 13, 22 | X.E.i (pp. 344-345), X.E.iii-v (pp. 350-353) |
| 6 | Divsalar in view of Ping and Luby98 | ~~6,~~ 9, 13, 22 | X.F.i (pp. 353-354), X.F.iii-v (pp. 355-357) |
| 7 | Divsalar in view of Luby97 and Richardson99 | ~~6,~~ 9, 13, 22 | X.G.i (p. 358), X.G.iii-v (pp. 359-362) |

Case No. 2:16-cv-3714-GW-AGRx

MEMORANDUM IN SUPPORT OF CALTECH'S MOTION TO STRIKE PORTIONS OF THE EXPERT REPORT OF DR. BRENDAN FREY REGARDING INVALIDITY OF PATENTS-IN-SUIT

| Rank | Prior Art Combination | Claims | Frey Report (§ , pp.) |
|------|----------------------|--------|----------------------|
| New | Divsalar in view of Ping | 6 | X.A.ii (pp. 311-314), X.C.ii (pp. 335-336), X.F.ii (pp. 354-355) |
| New | Divsalar in view of Luby97 | 6 | X.B.ii (pp. 329-330), X.G.ii (pp. 358-359) |
| New | Pfister/Pfister Slides in view of Luby97 | 6 | X.E.ii (pp. 345-350) |

Defendants previously moved to assert ten prior art references per patent (Dkt. 507), but the Court limited them to seven.  (Dkt. 528.)  In so limiting, the Court also referred expressly to "Defendants' arguments in its opening brief that it needs additional prior art grounds because an additional obviousness combination with *fewer* references would constitute a separate reference under the Court's directive regarding prior art references."  (Dkt. 528 at 1 n.2 (emphasis original).)  Accordingly, the three additional prior art references asserted against each of the '032 and '781 Patents in the Frey Report should be stricken.  Where a court has previously "specifically excluded as invalidity reference[s]," striking those portions of the expert report attempting to re-introduce those theories is particularly warranted.  *MediaTek Inc. v. Freescale Semiconductor, Inc.*, No. 11-5341, 2014 WL 690161, at *2-3 (N.D. Cal. Feb. 21, 2014) (striking portion of expert report relying on a reference that was the subject of a failed motion to amend).

Because the prior art combinations for the '032 and '781 Patents in the Frey Report exceed the seven per patent that Defendants are permitted under the Court's Order (Dkt. 528), and differ from the combinations Defendants previously identified (Dkt. 512), Caltech respectfully moves to strike these new combinations.  Specifically, Caltech moves to strike the portions of the Frey Report highlighted in red above—*i.e.*, sections IX.B.iii-iv (pp. 241-246), IX.E.iii-iv (pp. 286-294), IX.F.iii-iv (pp. 301-302), X.A.ii (pp. 311-314), X.B.ii (pp. 329-330), X.C.ii (pp. 335-336), X.E.ii (pp. 345-350), X.F.ii (pp. 354-355), and X.G.ii (pp. 358-359).

## V.     THE FREY REPORT INCLUDES OPINIONS BASED ON NEW PRIOR ART REFERENCES THAT DEFENDANTS FAILED TO DISCLOSE IN THEIR PRIOR ART RANKING

In complete disregard of the Court's order to limit the number of asserted prior art references, the Frey Report also includes opinions based on *seven additional* references not included in Defendants' Supplemental Ranking of Asserted Prior Art (Dkt. 512).  Specifically, Dr. Frey relies on:

- MacKay, D. J. C, and Neal, R. M. "Near Shannon Limit Performance of Low Density Parity Check Codes," *Electron. Lett.*, 1997. ("MacKay97") (¶¶ 633, 641)

- MacKay, D. J. C, and Neal, R. M. "Near Shannon Limit Performance of Low Density Parity Check Codes," *Electronics Letters*, vol. 32, pp. 1645-46, 1996 ("MacKay96") (¶¶ 641, 649, 651)

- Judea Pearl, *Reverend Bayes on Inference Engines: A Distributed Hierarchical Approach*, Proceedings of the Second National Conference on Artificial Intelligence Pittsburgh, PA 133-136 (1982) ("Pearl") (¶¶ 637 n.45, 850 n.51, 857)

- Kschischang and Frey, "Iterative decoding of compound codes by probability propagation in graphical models," *IEEE Journal on Selected Areas in Communications*, vol. 16, no. 2, pp. 219-30, 1998 ("Kschischang") (¶ 650)

- R. J. McEliece, D. J. C. MacKay, and J.-F. Cheng, "Turbo decoding as an instance of Pearl's 'belief propagation' algorithm," *IEEE J. Select. Areas Commun.*, vol. 16, pp. 140–152, Feb. 1998 ("McEliece") (¶¶ 763, 768, 856)

- B. J. Frey, F. R. Kschischang, H.-A. Loeliger and N. Wiberg (presented at the Allerton Conference in September 1996, proceedings published in May 1997) ("Frey97") (¶¶ 765, 768, 856)

- B. J. Frey and F. R. Kschischang (Presented at the Allerton Conference in September 1995, proceedings published in May 1996) ("Frey96") (¶¶ 768, 856)

(Paragraph citations are to Ex. A (Frey Report).

In correspondence to Caltech, Defendants aver that these "references present no 'new' invalidity theories, but are provided to offer additional technical detail and elaboration." (Ex. O (July 30 Letter) at 3.)  To the contrary, Dr. Frey relies directly on these references as allegedly disclosing certain limitations of the asserted claims. For example, Claim 18 of the '032 Patent recites "a message passing decoder."  In section IX.A.v of his report, Dr. Frey purports to rely on a combination of "Ping in view of Luby98, Divsalar, and Luby97" to render claim 18 obvious.  (Ex. A (Frey Report) at pp. 195, 228-235.)  As Dr. Frey concedes, "Ping does not specify a

1  particular decoding algorithm." (*Id*. ¶ 641.)  Instead, Dr. Frey relies on a new

2  reference, "MacKay96," as disclosing "an approximate belief propagation

3  algorithm." (*Id*.)  According to Dr. Frey, "it would have been obvious to use the

4  'message passing decoders' taught by MacKay[96], Divsalar, and/or Luby97 to

5  decode the LDPC-accumulate codes of Ping." (*Id*.)  Importantly, this MacKay96

6  reference is not the same "MacKay" reference disclosed in Defendants' ranking of

7  prior art.  The disclosed "MacKay" reference is listed as having a publication date of

8  1999, not 1996.  (Dkt. 512 at 4.)  Even if it were the same MacKay reference,

9  Defendants did not include a combination of Ping, Luby98, Divsalar, Luby97, and

10  MacKay in their prior art ranking.  (*Id.* at 6.)

     In *Digital Reg v. Adobe*, the court rejected the notion that a defendant could

12  rely on additional references as "background" prior art to circumvent the court's

13  case narrowing order.  *Digital Reg of Texas, LLC v. Adobe Sys., Inc.*, No. 4:12-cv-

14  01971-CW, 2014 WL 4090550, at *9 (N.D. Cal. Aug. 19, 2014).  Defendant Adobe

15  argued that such references show "the scope of the prior art generally and the

16  knowledge held by one of ordinary skill in the art."  *Id.*  The court disagreed:

> But such a document, demonstrating a separate limitation is disclosed in the prior art, constitutes another prior art reference that should have been disclosed in its Prior Art Election. There is no such exception to the Court-mandated Prior Art Election; holding otherwise would allow Adobe to completely circumvent the limits of that Election and add unlimited extra references. This would defeat the purpose of limiting the number of prior art references that each side must review.

21  *Id.*  Accordingly, Caltech respectfully moves to strike all references in the Frey

22  Report to these previously undisclosed prior art references, including the citations in

23  paragraphs  633, 637, 641, 649, 650, 651, 763, 765, 768, 850, 856, and 857.

24  **VI.  THE FREY REPORT INCLUDES NEW INVALIDITY THEORIES REGARDING THE CLAIMED "LOW-DENSITY GENERATOR MATRIX" NOT DISCLOSED IN DEFENDANTS' FINAL INVALIDITY CONTENTIONS**

26

27     The Frey Report contains several obviousness theories based on the "low-

28  density generator matrix" limitations found in the asserted claims of the '710 and

MEMORANDUM IN SUPPORT OF CALTECH'S MOTION TO STRIKE PORTIONS OF THE EXPERT REPORT OF DR. BRENDAN FREY REGARDING INVALIDITY OF PATENTS-IN-SUIT

'781 Patents.  These theories were not disclosed in Defendants' Final Invalidity Contentions and should therefore be stricken.

### A.  Defendants' Final Invalidity Contentions Disclosed A Limited Set of Specific Obviousness Theories

The cover pleading to Defendants Final Invalidity Contentions is organized hierarchically by patent, then by primary references asserted against each patent (*i.e.*, references that allegedly disclose most claim limitations), and finally by secondary references (*i.e.*, references that allegedly disclose a limitation not found in a primary reference) to be combined with the primary reference against each patent. The secondary references are further categorized by the claim limitation against which they are asserted in combination with a given primary reference.  Defendants also make arguments that they allege show motivations to combine the secondary references with the primary reference for specific claim limitations.  The following discussion illustrates an example.

For the '710 Patent, Defendants assert Pfister/Pfister Slides and Divsalar as primary references.  (*See* Ex. B (Final Invalidity Contentions) at § II.B.1.c, pp. 22-29 (Pfister/Pfister Slides) and § II.B.1.d, pp. 29-43 (Divsalar).)  For obviousness arguments based on Pfister/Pfister Slides as a primary reference, Defendants assert that one or more of Frey/Frey Slides, Luby98, and/or Luby97 can be combined as secondary references with Pfister/Pfister Slides.  (*Id.* at 22.) Frey/Frey Slides and Luby98 are categorized as "irregularity" secondary references—meaning that Defendants assert that these references may be combined with Pfister/Pfister Slides to allegedly meet the "irregularity" claim limitations, such as "repeat said stream of bits *irregularly*" in '710 Claim 15 (from which asserted Claims 20, 22, and 23 depend).  (*Id.* at 22-28.)  More specifically, Defendants contend that "[t]o the extent Pfister/Pfister Slides fails to teach [irregularity], it would have been obvious to combine" Pfister/Pfister Slides with one of these secondary references "to arrive at the limitations of the asserted claims."  (*Id.* at 22.)  Defendants also make arguments

that they allege reflect how a person of ordinary skill in the art ("POSITA") would purportedly be motivated to combine Frey/Slides or Luby98 with Pfister/Pfister Slides to meet the "irregularity" limitations. (*Id.* at 22-28.) Similarly, Luby97 is categorized as a "streams of bits" secondary reference—meaning that Defendants specifically assert that this reference may be combined with Pfister/Pfister Slides to allegedly meet the "stream of bits" claim limitations, such as "receive a *stream of bits*" and "repeat said *stream of bits*" in '710 Claim 15. (*Id.* at 28-29.)

For obviousness arguments based on Divsalar as a primary reference, Defendants assert that one or more of Ping, Luby97, Luby98, Richardson99, MacKay, Frey/Frey Slides, and/or Pfister/Pfister Slides can be combined as secondary references with Divsalar. (*Id.* at 29-30.) MacKay, Richardson99, Frey/Frey Slides, and Luby98 are categorized as "irregularity" secondary references. (*Id.* at 30-39.) Similarly, Luby97 is categorized as a "stream of bits" secondary reference. (*Id.* at 39-40.) And Pfister/Pfister Slides is categorized as a "second accumulator" secondary reference. (*Id.* at 39-43.) Again, Defendants make arguments that they allege reflect a POSITA's purported motivation to combine these references for these specific limitations.

Thus, the obviousness invalidity theories for the '710 Patent in Defendants' Final Invalidity Contentions can be summarized as follows:

| '710 Limitation Missing from Primary Reference | Secondary Reference(s) to Be Combined with Primary Reference to Meet Missing '710 Limitation | |
|---|---|---|
| | Pfister/Pfister Slides | Divsalar |
| "irregularity" | Frey/Frey Slides (pp. 22-25) or Luby98 (pp. 25-28) | MacKay (pp. 30-32), Richardson99 (pp. 32-34), Frey/Frey Slides (pp. 34-36), or Luby98 (pp. 36-39) |
| "stream of bits" | Luby97 (pp. 28-29) | Luby97 (pp. 39-40) |
| "second accumulator" | N/A | Pfister/Pfister Slides (pp. 39-43) |

(Page citations are to Ex. B (Final Invalidity Contentions). *See also* Ex. J (June 5 Letter) at 4 and Ex. N (July 17 Letter) at 10, providing a more detailed summary of Defendants' Final Invalidity Contentions in chart form.) Significantly, the cover

pleading to Defendants' Final Invalidity Contentions does not identify any other missing claim limitations to be found in any secondary references proposed for combination with the Pfister/Pfister Slides or Divsalar primary references. Nor does it provide any arguments regarding any motivation to combine any secondary references for any such limitations.

The obviousness invalidity theories for the '781 Patent in Defendants' Final Invalidity Contentions can be summarized in similar fashion:

| '781 Limitation Missing from Primary Reference | Secondary Reference(s) to Be Combined with Primary Reference to Meet Missing '781 Limitation | | |
|---|---|---|---|
| | Divsalar | Ping | Pfister/Pfister Slides |
| "irregularity" | Richardson99 (pp. 78-80), Luby98 (pp. 80-83), or Frey/Frey Slides (pp. 84-85) | MacKay (pp. 88-91), Luby98 (pp. 91-94), Richardson99 (pp. 94-96), Frey/Frey Slides (pp. 96-98) | Luby98 (pp. 99-101) |
| "mod-2 or XOR summation" | Ping (pp. 86-87), Luby97 (p. 87) | N/A | Luby97 (pp. 101-102) |

(Page citations are to Ex. B (Final Invalidity Contentions). *See also* Ex. J (June 5 Letter) at 6 and Ex. N (July 17 Letter) at 13. Again, the cover pleading to Defendants' Final Invalidity Contentions does not identify any other missing claim limitations to be found in any secondary references proposed for combination with these primary references. Nor does it provide any motivations to combine any secondary references to meet any additional missing limitations.

**B.    The Frey Report Asserts Invalidity Theories Regarding The "Low-Density Generator Matrix" That Defendants Failed To Disclose In Their Final Invalidity Contentions**

The Frey Report discloses new invalidity theories regarding the "low-density generator matrix" (or "LDGM") claim limitations that were not included in Defendants' Final Invalidity Contentions. Claim 20 of the '710 Patent and Claim 5 of the '781 Patent both recite a "low density generator matrix." Dr. Frey opines that POSITA would have been motivated to combine the purported "low-density generator matrix" of Frey/Frey Slides and/or Luby97 with Pfister/Pfister Slides to

meet the limitations of '710 claim 20. (*See* Ex. A (Frey Report) ¶¶ 354, 356, 359-361, 363-366, 394.) Similarly, Dr. Frey opines that POSITA would have been motivated to combine Luby97 with Divsalar to meet the same limitations. (*See id.* ¶¶ 433-434, 460-461, 473-474, 496-497, 513-514.) And Dr. Frey also opines that POSITA would have been motivated to combine the purported "low-density generator matrix" of Luby97 with Divsalar or Pfister/Pfister Slides to meet the limitations of '781 claim 5. (*See id.* ¶¶ 967, 1037, 1077.) None of these arguments are in Defendants' Final Invalidity Contentions. They are therefore improper. "A party may not use an expert report to introduce . . . new invalidity theories . . . not disclosed in the parties' . . . invalidity contentions." *Largan Precision Co. v. Genius Elec. Optical Co.*, No. 13-2502, 2014 WL 6882275, at *1 (N.D. Cal. Dec. 5, 2014) (quotes omitted); *Allergan, Inc., et al. v. Athena Cosmetics, Inc. et al.*, No. SACV 07-1316 JVS (RNBx), Dkt. 1059 at 2 (C.D. Cal. Feb. 28, 2013) (striking paragraphs from expert report because the grounds for invalidity were not disclosed in defendant's invalidity contentions).

Following the format of the example above, the obviousness theories disclosed in the Frey Report for the '710 Patent may be summarized as follows, with previously undisclosed theories in *red*:

| '710 Limitation Missing from Primary Reference | Secondary Reference(s) to Be Combined with Primary Reference to Meet Missing '710 Limitation | |
|---|---|---|
| | Pfister/Pfister Slides | Divsalar |
| "irregularity" | Frey/Frey Slides (¶¶ 325-335) or Luby98 (¶¶ 371-386) | MacKay (¶¶ 402-410), Richardson99 (¶¶ 443-451), Frey/Frey Slides (¶¶ 479-489), or Luby98 (¶¶ 502-506) |
| "stream of bits" | Luby97 (¶¶ 336-338) | Luby97 (¶¶ 411-412) |
| "second accumulator" | N/A | Pfister/Pfister Slides (¶¶ 466-468) |
| *"low-density generator matrix"* | *Frey/Frey Slides (¶¶ 354, 356, 365-366) or Luby97 (¶¶ 354, 359-361, 363-364, 366, 394)* | *Luby97 (¶¶ 433-434, 460-461, 473-474, 496-497, 513-514)* |

(Paragraph citations are to Ex. A (Frey Report).

Similarly, the obviousness theories in the Frey Report for the '781 Patent may

-20-

MEMORANDUM IN SUPPORT OF CALTECH'S MOTION TO STRIKE PORTIONS OF THE EXPERT REPORT OF DR. BRENDAN FREY REGARDING INVALIDITY OF PATENTS-IN-SUIT

be summarized as follows, again with previously undisclosed theories in *red*:

| '781 Limitation Missing from Primary Reference | Secondary Reference(s) to Be Combined with Primary Reference to Meet Missing '781 Limitation | | |
|---|---|---|---|
| | Divsalar | Ping | Pfister/Pfister Slides |
| "irregularity" | Richardson99 (¶¶ 443-451, 926), Luby98 (¶¶ 502-506, 969), or Frey/Frey Slides (¶¶ 479-489, 990) | Luby98 (¶¶ 520-533, 1013) | Luby98 (¶¶ 371-386, 1039) |
| "mod-2 or XOR summation" | Ping (¶¶ 908-911), Luby97 (¶¶ 957-961) | N/A | Luby97 (¶¶ 957-961, 1038) |
| *"low-density generator matrix"* | *Luby97(¶¶ 967,1077)* | N/A | *Luby97(¶ 1037)* |

A straightforward comparison between Defendants' Final Invalidity Contentions and the Frey Report, as illustrated by the tables above, reveals the inconsistencies between them.  For example, with respect to the "stream of bits" limitation in the '710 Patent, Dr. Frey opines that "[t]o the extent . . . that Divsalar does not disclose 'a stream of bits,' this limitation would have been obvious based on Divsalar in combination with Luby97."  (Ex. A (Frey Report) ¶ 428.)  This is consistent with the theory previously disclosed in Defendants Final Invalidity Contentions: "To the extent that 'streams' were not obvious in view of Divsalar alone, it would have been obvious to apply Luby97's teaching of 'stream' to make the encoder capable of receiving and processing streams."  (Ex. B (Final Invalidity Contentions) at 40.)  However, Dr. Frey goes on to opine that it also "would have been obvious to incorporate . . . a low-density generator matrix . . . as taught by Luby97 into . . . Divsalar."  (Ex. A (Frey Report) ¶ 461.)  There is no corresponding disclosure of this new theory in Defendants' Final Invalidity Contentions.  Similarly, with respect to the '781 Patent, Dr. Frey opines that "Luby97 discloses a low-density generator matrix . . . and it would have been obvious to incorporate Luby97's teaching into Divsalar."  (*Id.* ¶ 967.)  Again, there is no corresponding disclosure of this new theory in Defendants' Final Invalidity Contentions.

Defendants may claim that the charts in Exhibits A and C of their Final

Invalidity Contentions somehow disclose their new "low-density generator matrix" arguments.  (Ex. O (July 30 Letter at 1.)  But for reasons Caltech has already explained in multiple correspondences to Defendants, these charts—each of which spans hundreds of pages—do not put Caltech on notice of Defendants' actual invalidity theories and therefore do not disclose Defendants' new invalidity theories. (*See* Ex. I (June 4 Email), J (June 5 Letter), L (June 12 Letter), N (July 17 Letter).) The reason is simple.  On their face, the charts allege that every prior art reference discloses every limitation of every asserted claim—creating ambiguities and leaving open the possibility that Defendants might assert scores of new anticipation and obviousness theories.  For example, Exhibit C to Defendants' Final Invalidity Contentions includes excerpts from all eight prior art references charted against the "low density generator matrix" limitation of '781 Claim 5.  (Ex. C (Final Invalidity Contentions Exhibit C) at 173-216.)  The chart alleges that each of Divsalar, MacKay, Ping, Luby98, Richardson99, Frey/Frey Slides, Pfister/Pfister Slides, and Luby97 "discloses and/or renders obvious various methods and systems for encoding signals . . . via a low density generator matrix transformation."  (*Id.* at 173-176.)  But the chart does not explain how or even if the references should be combined to meet this claim limitation (or any other limitation, for that matter). Such generalized contentions are "insufficient to provide a crystalized view of invalidity theories," *Mitsubishi Elec. Corp. v. Sceptre, Inc*., No. 2:14-CV-04994-ODW, 2015 WL 2369557, at *2 (C.D. Cal. May 18, 2015), and are "virtually meaningless as a mechanism for shaping the conduct of discovery and trial preparation."  *O2 Micro*, 467 F.3d at 1366.  Indeed, the Court previously admonished Defendants against relying on this sort of disclosure the first time it ordered Defendants to serve amended prior art rankings, noting that "[a]n identification of prior art references without an identification of corresponding invalidity theories leaves open the possibility for Defendants to ultimately assert an unduly burdensome number of invalidity theories in this litigation."  (Dkt. 375 at 2.)

-22-

Case No. 2:16-cv-3714-GW-AGRx

MEMORANDUM IN SUPPORT OF CALTECH'S MOTION TO STRIKE PORTIONS OF THE EXPERT REPORT OF DR. BRENDAN FREY REGARDING INVALIDITY OF PATENTS-IN-SUIT

After Caltech raised this serious issue with Defendants, Defendants conceded that the charts are not intended to be read so broadly.  (Ex. K (June 6 Letter) at 2-3.)  Indeed, during the parties' June 4, 2018 meet and confer, Defendants informed Caltech that Section II.B of the cover pleading to their Final Invalidity Contentions was intended as a guide to understand Defendants actual obviousness theories.  (*Id.* at 2-3.)  But for this concession, Caltech would have moved to strike Defendants' Final Invalidity Contentions more than a month ago.  *See, e.g.*, *Mitsubishi*, 2015 WL 2369557, at *3 (C.D. Cal. May 18, 2015) (striking defendant's invalidity contentions for failing to chart any of its obviousness combinations and only generally asserting that any element of any reference could be combined with the same element of another reference).  Importantly, as described above, Section II.B of the cover pleading does not disclose any prior art combinations or motivations to combine on the basis of the "low-density generator matrix" limitations of the '710 and '781 Patents.  Defendants cannot now properly renege on their concession that Section II.B controls, nor can they properly rely on their vague and overbroad invalidity charts in an attempt to save an obviousness argument that simple does not appear in their Final Invalidity Contentions.

Accordingly, Caltech respectively moves the Court to strike paragraphs 354, 356, 359-361, 363-366, 394, 433-434, 460-461, 473-474, 496-497, 513-514, 967, 1037, and 1077 of the Frey Report.

## VII.  DEFENDANTS IMPROPERLY RELY ON "PFISTER/PFISTER SLIDES" AND "FREY/FREY SLIDES" TO MULTIPLY THEIR PRIOR ART REFERENCE COMBINATIONS

In its Opposition to Defendants' Motion to Add Prior Art References, Caltech argued that Defendants' ranked prior art reference "Frey/Frey Slides" is properly considered as two prior art references because it is actually *two* separate documents.  (Dkt. 515 at 3, 7-8.)  Caltech argued the same with respect to the alleged "Pfister/Pfister Slides" reference.  (*Id.*)  At the time, the Court "decline[d] to make a determination regarding whether certain disclosures in the ranking (namely,

-23-

Case No. 2:16-cv-3714-GW-AGRx

MEMORANDUM IN SUPPORT OF CALTECH'S MOTION TO STRIKE PORTIONS OF THE EXPERT REPORT OF DR. BRENDAN FREY REGARDING INVALIDITY OF PATENTS-IN-SUIT

1  'Pfister/Pfister Slides' and 'Frey/Frey Slides') constitute a single document as

2  understood under 35 U.S.C. 102(a)." (Dkt. 528 at 1.) Caltech respectfully submits

3  that this issue is ripe for decision now with the added context of the Frey Report.

4        Significantly, Defendants recently served expert reports from Dr. Frey and

5  Dr. Paul Siegel, both of which confirm that the Pfister Paper (Ex. G), Pfister Slides

6  (Ex. H), Frey Paper (Ex. E), and Frey Slides (Ex. F) are all separate and district

7  prior art references under Section 102. For example, the Frey Report does not rely

8  on "Frey/Frey Slides" and "Pfister/Pfister Slides" as singular "invention[s]" under

9  35 U.S.C. § 102(a). Rather, Dr. Frey relies on these as separate references to be

10  used in the alternative as "substitut[ions]" for one another. (*See, e.g.*, Ex. A (Frey

11  Report) ¶ 242 ("[T]he Frey Slides may be substituted for the Frey paper in all of the

12  positions explained below.").) The June 21, 2018 Expert Report of Paul Siegel

13  ("Siegel Report") goes further, devoting an entire section comparing and contrasting

14  the disclosure of the Pfister Paper against the Pfister Slides. (*See, e.g.*, Ex. D (Siegel

15  Report) § IV, pp. 11-21; ¶¶ 59-61 (explaining that "the Pfister Paper is more

16  general" than the Pfister Slides).)

17        Defendants do not dispute that "Frey/Frey Slides" and "Pfister/Pfister Slides"

18  each constitute two documents. (*See, e.g.*, Dkt. 517 at 11-12 (acknowledging Pfister

19  Paper, Pfister Slides, Frey Paper, and Frey Slides each as separate documents).) In

20  defense of their prior art rankings, Defendants argued that each pair could

21  nonetheless be considered as a single reference because it allegedly constitutes a

22  single "invention" under 35 U.S.C. § 102(a). (*Id.* at 12.) However, Defendants also

23  asserted that all four documents "qualify as prior art under § 102(a)'s 'printed

24  publication' provision" and expressly "preserv[ed] both § 102 grounds." (*Id.*)

25        Defendants cannot have it both ways. Defendants argued that "Frey/Frey

26  Slides" and "Pfister/Pfister Slides" should each be considered as one prior art

27  reference for purposes of complying with the Court's case-narrowing orders. (Dkt.

28  517 at 11-12.) Yet Defendants also seek to "preserv[e]" the right to assert all four

-24-

Case No. 2:16-cv-3714-GW-AGRx

MEMORANDUM IN SUPPORT OF CALTECH'S MOTION TO STRIKE PORTIONS OF THE EXPERT REPORT
OF DR. BRENDAN FREY REGARDING INVALIDITY OF PATENTS-IN-SUIT

references individually.  (*Id.*)  The upshot is that wherever Defendants assert "Frey/Frey Slides" or "Pfister/Pfister Slides," they get two prior art references for the price of one.  For example, for their third ranked prior art combination against the '781 Patent, Defendants assert "Divsalar in view of Ping and Frey/Frey Slides." (Dkt. 512 at 7.)   Under their "preserv[ed]" invalidity theory, Defendants might therefore assert "Divsalar in view of Ping and Frey Paper" and/or "Divsalar in view of Ping and Frey Slides."   Indeed, the Frey Report makes this possibility explicit, stating that "the Frey Slides may be substituted for the Frey paper in all of the positions explained below."  (Ex. A (Frey Report) ¶ 242.)

If, as Defendants claim, "the operative disclosures of the papers and slides are the same" (Dkt. 517 at 12), then Defendants should have no difficulty in committing to one or the other.  The reason, presumably, that Defendants have not so committed is that the slides and papers in fact do not contain identical disclosures.  To take a simple example, the eight-page Frey Paper does not contain the "CCSDS" graphs found on pages 10-12 of the 13-page Frey Slides.  (*Compare* Ex. E (Frey Paper) *with* Ex. F (Frey Slides).)  Similarly, the ten-page Pfister Paper does not contain the "Word-error-probability" graph found on page 21 of the 23-page Pfister Slides. (*Compare* Ex. G (Pfister Paper) *with* Ex. H (Pfister Slides).)

Defendants' strategy effectively doubles the number of prior art combinations for each use of "Frey/Frey Slides" or "Pfister/Pfister Slides."  Accordingly, Caltech respectfully requests that the Court order Defendants to select one of either the "Frey Slides" or "Frey Paper" references and one of either the "Pfister Slides" or "Pfister Paper" references and strike the non-selected references from Sections VI, VIII.A, VIII.B, VIII.E, VIII.F, IX.C, IX.D, X.C, and X of the Frey Report.

## VIII.  CONCLUSION

For the foregoing reasons, Caltech respectfully requests the Court grant its motion to strike the portions of the Expert Report of Dr. Brendan Frey as set forth in the proposed order submitted concurrently herewith.

1

2    DATED: August 7, 2018              Respectfully submitted,

3

4

5
                                   By  /s/ James R. Asperger
6                                      James R. Asperger
                                       jimasperger@quinnemanuel.com
7                                      QUINN EMANUEL URQUHART &
                                       SULLIVAN, LLP
8                                      865 S. Figueroa St., 10th Floor
                                       Los Angeles, California 90017
9                                      Telephone:  (213) 443-3000
                                       Facsimile:  (213) 443-3100
10

11                                     *Attorneys for Plaintiff California*
                                       *Institute of Technology*
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM IN SUPPORT OF CALTECH'S MOTION TO STRIKE PORTIONS OF THE EXPERT REPORT
OF DR. BRENDAN FREY REGARDING INVALIDITY OF PATENTS-IN-SUIT