QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
James R. Asperger (Bar No. 083188)
jimasperger@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100

Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
Todd M. Briggs (Bar No. 209282)
toddbriggs@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone:  (650) 801-5000
Facsimile:  (650) 801-5100

Attorneys for Plaintiff the California
Institute of Technology

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| The CALIFORNIA INSTITUTE OF TECHNOLOGY, a California Corporation, | CASE NO. 2:16-cv-3714-GW-AGRx |
| Plaintiff, | **PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF VALIDITY UNDER 35 U.S.C. § 103 BASED ON IPR ESTOPPEL UNDER 35 U.S.C. § 315(e)(2)** |
| vs. | |
| BROADCOM LIMITED, BROADCOM CORPORATION, AVAGO TECHNOLOGIES LIMITED, AND APPLE INC., | |
| Defendants. | Hon. George H. Wu United States District Court Judge Hearing Date: December 6, 2018 Time: 8:30 AM Place: Courtroom 9D |

Case No. 2:16-cv-3714-GW-AGRx

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF VALIDITY UNDER 35 U.S.C. § 103
BASED ON IPR ESTOPPEL UNDER 35 U.S.C. § 315(e)(2)

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................ 1

II.     BACKGROUND ................................................................................................ 4

        A.      Defendants' IPR Petitions ................................................................. 4

        B.      The PTAB's Institution Decisions ................................................... 6

        C.      The PTAB's Final Written Decisions ............................................. 7

        D.      Defendants Refuse To Withdraw Their Estopped Invalidity
                Challenges ............................................................................................. 8

III.    LEGAL STANDARD ...................................................................................... 8

IV.     ARGUMENT .................................................................................................. 11

        A.      Defendants Assert The Exact Same Combinations They Raised
                In Their IPR Petition ....................................................................... 11

        B.      Defendants Assert Combinations They Knew About And
                Reasonably Could Have Raised During the IPR Process ........... 13

                1.      '032 Patent, Claim 11 ........................................................... 14

                2.      '032 Patent, Claim 18 ........................................................... 16

                3.      '781 Patent, Claims 13 and 22 ........................................... 17

        C.      Defendants Cut And Pasted Their District Court Combinations
                From Their IPR Filings ................................................................... 19

V.      CONCLUSION ............................................................................................... 21

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF VALIDITY UNDER 35 U.S.C. § 103
BASED ON IPR ESTOPPEL UNDER 35 U.S.C. § 315(e)(2)

# TABLE OF AUTHORITIES

Page

## Cases

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ................................................8

*Apotex Inc. v. Wyeth LLC*, No. IPR2015-00873, Paper 8 (P.T.A.B. Sept. 16, 2015)11

*Aqua Prods. Inc. v. Matal*, 872 F.3d 1290 (Fed. Cir. 2017).........................................4

*BioDelivery Sci. Int'l, Inc. v. Aquestive Therapeutics, Inc.*, 898 F.3d 1205 (Fed. Cir. 2018)..........................................................................................................................10

*Biscotti Inc. v. Microsoft Corp.*, No. 13-CV-01015-JRG-RSP, 2017 WL 2526231 (E.D. Tex. May 11, 2017) ...........................................................................................12

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)............................................................8

*Cobalt Boalts, LLC v. Sea Ray Boats, Inc.*, No. 2:15cv21, 2017 WL 2605977 (E.D. Va. June 5, 2017)........................................................................................................3

*Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 2131 (2016) ........................................6

*Douglas Dynamics, LLC v. Meyer Prods. LLC*, No. 14-cv-886-jdp, 2017 WL 1382556 (W.D. Wis. Apr. 18, 2017)..................................................................3, 10

*iLife Techs, Inc. v. Nintendo of Am., Inc.*, No. 13-cv-4987-M, 2017 U.S. Dist. LEXIS 87769 (N.D. Tex. May 30, 2017) ...........................................................3, 13, 15

*Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91 (2011)................................................6

*Microsoft Corp. v. Proxyconn, Inc.*, 789 F.3d 1292 (Fed. Cir. 2015)........................3

*Milwaukee Elec. Tool Corp. v. Snap-On Inc.*, 271 F. Supp. 3d 990 (E.D. Wis. 2017) ...................................................................................................................2, 9, 12

*Network-1 Techs., Inc. v. Alcatel-Lucent USA, Inc.*, No. 11-cv-492-RWS-KNM, 2017 WL 4478236 (E.D. Tex. Sept. 26, 2017) ........................................................13

*Oil-Dri Corp. of Am. v. Nestle Purina Petcare Co.*, No. 15-CV-1067, 2017 WL 3278915 (N.D. Ill. Aug. 2, 2017)..............................................................................3

*Parallel Networks Licensing, LLC v. Int'l Bus. Machs. Corp.*, No. 13-2072, 2017 WL 1045912 (D. Del. Feb. 22, 2017) ............................................................passim

*Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348 (Fed. Cir. 2007) ......................................6

*SAS Institute Inc. v. Iancu*, 138 S. Ct. 1348 (2018)..............................................7, 9

*Shaw Industries Group, Inc. v. Automated Creel Systems, Inc*, 817 F.3d 1293 (Fed. Cir. 2016)..................................................................................................................9

*SiOnyx, LLC v. Hamamatsu Photonics K.K.*, No. 15-13488, 2018 WL 4177941 (D. Mass. Aug. 30, 2018) ..................................................................................9, 10, 15

Case No. 2:16-cv-3714-GW-AGRx

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF VALIDITY UNDER 35 U.S.C. § 103 BASED ON IPR ESTOPPEL UNDER 35 U.S.C. § 315(e)(2)

**Statutes**

35 U.S.C. § 103 ................................................................................. 1, 4, 5

35 U.S.C. § 311(b) ..................................................................................... 5

35 U.S.C. § 315(e)(2) ........................................................................ passim

35 U.S.C. § 316(e) ..................................................................................... 6

35 U.S.C. §§ 101 ........................................................................................ 4

35 U.S.C. §§ 101, 112 ............................................................................... 4

35 U.S.C. §§ 102 ........................................................................................ 5

Leahy-Smith America Invents Act ("AIA"), Pub. L. No. 112-29, 125 Stat. (2011)...5

**Other Authorities**

154 Cong. Rec. S9989 (daily ed. Sept. 25, 2008) (statement of Sen. Kyl.)..........4, 10

H.R. Rep. No. 112-98 (2011) .............................................................3, 10

*Patent Reform: The Future of American Innovation: Hearing Before the Senate Comm. On the Judiciary*, 110th cong. 13 (2007) (statement of Director Jon Dudas) ....................................................................................................10

**Rules**

Fed. R. Civ. P. 56 ...................................................................................... 8

Case No. 2:16-cv-3714-GW-AGRx
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF VALIDITY UNDER 35 U.S.C. § 103 BASED ON IPR ESTOPPEL UNDER 35 U.S.C. § 315(e)(2)

# I.    INTRODUCTION

Caltech respectfully moves for partial summary judgment of validity under 35 U.S.C. § 103 of claims 13 and 22 of the U.S. Patent Nos. 7,916, 781 ("the '781 Patent") and claims 11 and 18 of the 7,421,032 ("the '032 Patent") based on *Inter Partes* Review ("IPR") estoppel under 35 U.S.C. § 315(e).  Defendants previously attempted to invalidate these claims through the IPR process before the U.S. Patent and Trademark Office's Patent Trial and Appeal Board ("PTAB").  They failed—and should not get a do-over in this Court.

Under the fundamental principles of estoppel, Defendants should not be permitted to abuse the legal system by relitigating the same defenses and counter-claims in successive legal fora.  In patent law, this traditional canon of estoppel extends not only to invalidity defenses that were actually raised but also those that "reasonably *could have* [been] raised."  35 U.S.C. § 315(e)(2) (emphasis added).  The reason for this rule is clear:  litigants seeking to challenge the validity of a patent can make their challenges *either* in federal court *or* through the IPR process before the PTAB—but not both.

Defendants asserted their defenses and counterclaims for invalidity on August 31, 2016.  (Dkt. 47).  However, soon thereafter, from November 15, 2016 through January 20, 2017, Defendants[1] elected to file ten IPR petitions against claims in each of the patents then asserted.[2]  Now, Defendants attempt to relitigate in this Court invalidity defenses that they either raised during the IPR process—unsuccessfully—

---

[1]    Apple Inc. ("Apple") is identified as the petitioner in all of the IPRs at issue, and Broadcom Corp. ("Broadcom") is identified as a real party-in-interest. Broadcom Corp. and Avago Technologies Ltd. are each subsidiaries of Broadcom Ltd., which is now known as Broadcom Inc. (Dkt. 36 ¶¶ 8-9; Dkt. 47 ¶¶ 8-9; Dkt. 583).

[2]    While U.S. Patent No. 8,284,833 was asserted at the time, that patent has since been withdrawn from this case.

or that they could have raised since all of the printed publications on which they now rely were known to them at the time.[3]  The fact that Defendants now repackage their challenges with different printed publications in various combinations does not save them from estoppel.

There is no question Defendants had knowledge of all ten printed publications they now assert prior to filing their IPRs given that the very same publications were cited in documents previously filed by Defendants.  *See infra* Section IV.B; (*see also* Ex. A).[4]  In fact, during the IPR process, they relied expressly on four of the *exact same combinations* against *the same claim*.  *See infra* Section IV.A.  And they reasonably could have raised their other asserted combinations before the PTAB—their chosen forum—rather than holding them in reserve, in the hope of getting a second bite at the apple in district court with the same, or repackaged, combinations.  Accordingly, the PTAB's Final Written Decisions ("FWD") concluding that Defendants failed to show that Caltech's claims were unpatentable precludes further review of both the arguments Defendants actually made, and those invalidity arguments they could have but elected not to make before the PTAB.

As numerous courts have recognized, "in order for IPR to fulfill its mission of streamlining patent litigation in the district courts and promoting efficient dispute resolution, a petitioner cannot be left with the option to institute a few grounds for IPR while holding some others in reserve for a second bite at the invalidity apple once in the district court."  *Milwaukee Elec. Tool Corp. v. Snap-On Inc.*, 271 F. Supp. 3d 990, 1029 (E.D. Wis. Sep. 22, 2017); *accord Parallel Networks Licensing, LLC v.*

---

[3]  Caltech does not concede that all of these publications discussed herein qualify as prior art under 35 U.S.C. §§ 102(a)-(b).

[4]  Citations to "Ex. _" refer to the exhibits attached the  Declaration of Todd M. Briggs in Support of Plaintiff's Motion for Partial Summary Judgment of Validity Under 35 U.S.C. § 103 Based on IPR Estoppel under 35 U.S.C. § 315(e)(2), filed concurrently herewith.

*Int'l Bus. Machs. Corp.*, No. 13-2072, 2017 WL 1045912, at *12 (D. Del. Feb. 22, 2017) ("Allowing [Defendants] to raise arguments here that [they] elected not to raise during the IPR would give [them] a second bite at the apple and allow [them] to reap the benefits of the IPR without the downside of meaningful estoppel."); *Douglas Dynamics, LLC v. Meyer Prods. LLC*, No. 14-cv-886-jdp, 2017 WL 1382556, at *4 (W.D. Wis. Apr. 18, 2017) ("If the defendant pursues the IPR option, it cannot expect to hold a second-string invalidity case in reserve in case the IPR does not go defendant's way.").

The plain language and legislative history of Section 315(e)(2) confirm that Defendants' invalidity challenges to claims 13 and 22 of the '781 Patent and claims 11 and 18 of the '032 Patent are barred by the doctrine of estoppel.  Indeed, the statutory language could not be clearer:  "The petitioner in an inter partes review of a claim in a patent . . . that results in a final written decision . . . may not assert . . . in a civil action . . . that the claim is invalid on any ground that the petitioner raised or reasonably could have raised during that inter partes review." 35 U.S.C. § 315(e)(2).  A "ground" is "the basis or bases on which a petitioner challenges a claim."  *iLife Techs, Inc. v. Nintendo of Am., Inc.*, No. 13-cv-4987-M, 2017 U.S. Dist. LEXIS 87769, at * 9 (N.D. Tex. May 30, 2017).  The statutory language makes plain that "estoppel applies to grounds that the petitioner . . . could have raised in the IPR petition or at the IPR itself."  *Cobalt Boats*, *LLC v. Sea Ray Boats, Inc*., No. 2:15cv21, 2017 WL 2605977, at * 3 (E.D. Va. June 5, 2017); *see also Oil-Dri Corp. of Am. v. Nestle Purina Petcare Co.*, No. 15-CV-1067, 2017 WL 3278915, at *10 (N.D. Ill. Aug. 2, 2017) ("[E]stoppel applies to grounds that a party failed to raise in an IPR petition that the party reasonably could have raised."). *See infra* Section IV.

This reading is consistent with the legislative history, which further confirms that Defendants' invalidity claims are barred.  "Congress created the new IPR proceeding for the purpose of 'providing quick and cost effective alternatives to litigation.'" *Microsoft Corp. v. Proxyconn, Inc.*, 789 F.3d 1292, 1303 (Fed. Cir. 2015)

(quoting H.R. Rep. No. 112-98 at 48 (2011)), *overruled on other grounds by Aqua Prods. Inc. v. Matal*, 872 F.3d 1290 (Fed. Cir. 2017).  Indeed, a central purpose of the statute is "to force a party to bring all of [its] claims in one forum . . . and therefore to eliminate the need to press any claims in other fora."  154 Cong. Rec. S9989 (daily ed. Sept. 25, 2008) (statement of Sen. Kyl).  Thus, by attempting to pursue validity challenges in both the PTAB and this Court, Defendants undermine the very essence of the statutory scheme.  *See infra* Sections III, IV.

In short Defendants are re-asserting challenges to patentability they already made during IPR, and challenging patentability on grounds they reasonably could have raised during the IPR process.  As matter of law, Defendants are estopped from doing so.  Accordingly, Caltech is entitled to partial summary judgment of validity under § 103 on claims 13 and 22 of the '781 Patent and claims 11 and 18 of the '032 Patent.

## II.   BACKGROUND

### A.   Defendants' IPR Petitions

On May 26, 2016, Caltech filed its patent infringement lawsuit in federal district court, alleging *inter alia* that Defendants were infringing Caltech's '781 and '032 Patents, both of which generally relate to methods and devices for encoding and decoding Irregular Repeat and Accumulate ("IRA") codewords. (Dkt. 1).  On August 15, 2016, Caltech filed an Amended Complaint.  (Dkt. 36).  Defendants asserted defenses and counter-claims of invalidity under *inter alia* 35 U.S.C. § 103 in their answer to Caltech's Amended Complaint on August 31, 2016.  (Dkt. 47).[5]  Although Defendants had the option of pursuing their invalidity defenses in either federal court, where the case was being litigated, or before the PTAB, they chose the latter, which has a lower evidentiary burden than federal court.

---

[5]   Defendants have asserted other defenses and counterclaims, including inequitable conduct and invalidity under 35 U.S.C. §§ 101, 112, that are not the subject of the instant motion.

Pursuant to the Leahy-Smith America Invents Act ("AIA"), Pub. L. No. 112-29, 125 Stat. 284 (2011), a party may petition the PTAB through the IPR process "to cancel as unpatentable 1 or more claims of a patent only on a ground that could be raised under [35 U.S.C. §§ 102, 103] and only on the basis of prior art consisting of patents or printed publications." 35 U.S.C. § 311(b).  After receiving a petition, the PTAB will determine whether to institute the petition for review, with a final decision on patentability to be issued in an FWD after trial.

Armed with this statutory ammunition, Defendants elected to challenge the validity of Caltech's patents in the PTAB filing a total of *ten* IPR petitions.   On December 12, 2016, Defendants filed two IPR petitions challenging *inter alia* claims 9, 13, and 22 of the '781 Patent.  (Exs. B, C).  A month later, on January 20, 2017, they filed three petitions challenging *inter alia* claims 3, 11, 17, and 18 of the '032 Patent.  (Exs. D, E, F).  The PTAB subsequently instituted IPR on claims 13 and 22 of the '781 Patent (but not claim 9), and instituted IPR on claims 11 and 18 of the '032 Patent (but not claims 3 and 17).  (Exs. G, H, I, J, K).  Accordingly, Caltech only seeks partial summary judgment of validity under 35 U.S.C. § 103 as to claims 13 and 22 of the '781 Patent and claims 11 and 18 of the '032 Patent.[6]

In pursuing their petitions, Defendants expressly relied on the following combinations of references to argue that Caltech's claimed inventions relating to the encoding and decoding of IRA codewords would have been "obvious"[7] to a person of ordinary skill in the art, and thus, invalid:

---

[6]   The PTAB has also instituted review of asserted claims 20 and 22 of U.S. Patent No. 7,116,710.  The PTAB has not yet issued an FWD with respect to these claims.  If the PTAB also confirms the validity of these claims, Defendants will also be estopped from raising their invalidity challenges to those claims for the same reasons set forth in the present motion.

[7]   To demonstrate "obviousness," the challenger bears the burden of proving that "a skilled artisan would have been motivated to combine the teachings of the prior art references to achieve the claimed invention, and that the skilled artisan would have

- Ping & MacKay printed publications ('781 Patent, claims 13 and 22)

- Ping, MacKay & Divsalar printed publications ('032 Patent, claim 11)

- Ping, MacKay, Divsalar & Luby97 printed publications ('032 Patent, claim 18).

(Exs. C, D, F).

### B.   The PTAB's Institution Decisions

Ultimately, of the ten IPR petitions filed by Defendants, three were denied in their entirety, six were instituted in part, and one was instituted in full. Only three of these IPRs are relevant to the present motion. Specifically, on July 5, 2017, based on one petition, the PTAB instituted review of claims 13 and 22 of the '781 Patent for review. (Ex. H).[8] Specifically, the PTAB instituted review based on the combination of the printed publications authored by Li Ping et al. ("Ping") and David MacKay et al. ("MacKay"). (*Id.*). Similarly, on August 4, 2017, based on two petitions, the PTAB instituted claims 11 and 18 of the '032 Patent for review. (Exs. I, K). More specifically, the PTAB instituted review of claim 11 based on the combination of Ping and MacKay, as well as a printed publication authored by Dariush Divsalar et al. ("Divsalar"). (Ex. I). The PTAB also instituted review of claim 18 based on the combination of Ping, MacKay, Divsalar, and a printed publication authored by Michael Luby et al. ("Luby97"). (Ex. K). In order to reach its final determination

---

had a reasonable expectation of success in doing so." *Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1361 (Fed. Cir. 2007). Notably, unlike in district court, where "challenger must prove invalidity by 'clear and convincing evidence,'" the challenger in an IPR, "must establish unpatentability 'by a preponderance of the evidence.'" *Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 2131, 2144 (2016) (quoting 35 U.S.C. § 316(e); *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011)).

[8]   Defendants' IPR petition against claims 13 and 22 of the '781 Patent is IPR2017-000423. After institution, however, this IPR was consolidated with IPR2017-00297—another petition challenging the '781 Patent—with all filings made in IPR2017-000297.   (Ex. H).

Case No. 2:16-cv-3714-GW-AGRx

1  with respect to the patentability of these claims, the PTAB scheduled further briefing

2  and oral argument for each of the instituted IPRs, in which both parties participated.

3  **C.    The PTAB's Final Written Decisions[9]**

4  On June 29, 2018, after oral argument, the PTAB issued its FWD for claims 13

5  and 22 of the '781 Patent.  (Ex. L).  The PTAB upheld these claims against

6  Defendants' validity attack, ruling that Defendants had failed to show that these

7  claims were obvious in light of the combination of the Ping and MacKay publications.

8  In so ruling, the PTAB found expressly that Defendants had failed to show why a

9  skilled artisan would have been motivated to combine the results of Ping with

10  MacKay, and further, failed to show that a skilled artisan would have had a reasonable

11  expectation of success in doing so.  (*See, e.g.*, Ex. L at 24-25).

12  Similarly, on August 2, 2018 and August 20, 2018, after oral argument, the

13  PTAB issued its FWD for claims 11 and 18, respectively, of the '032 Patent.  (Exs.

14  M, N).  As with the '781 Patent, the PTAB upheld these claims, ruling that Defendants

15  had failed to demonstrate that either claim 11 or claim 18 were obvious.  In so ruling,

16  the PTAB found that Defendants had failed to demonstrate that claim 11 was obvious

17  in light of the combination of Ping, MacKay, Divsalar, and that Defendants had not

18  demonstrated that claim 18 was obvious in light of the combination of Ping, MacKay,

19  Divsalar and Luby97.  (*See, e.g.*, Ex. M at 22-23; Ex. N at 22-23).

---

21  [9]  On April 24, 2018, the Supreme Court held that the PTAB may not institute an
22  IPR on less than all claims challenged in a petition.  *SAS Institute Inc. v. Iancu*, 138
    S. Ct. 1348, 1355, 1359-60 (2018).  Following that decision, on May 2 and 3, 2018,
23  the PTAB modified its decisions in two of the three relevant IPRs to "include review
    of all challenged claims and all grounds presented in the Petitions . . . ."  (Ex. FF; *see*
24  Ex. GG) (The 728 IPR was instituted in full and therefore was not impacted by SAS.)
    At oral argument on May 8, 2018, the parties notified the PTAB of their agreement to
25  jointly withdraw the originally non-instituted claims and grounds such that they shall
26  not be subject to a final written decision and the PTAB subsequently agreed.  (Exs.
    O, P, Q, R).  Because claims 13 and 22 of the '781 Patent and claims 11 and 18 of the
27  '032 Patent had been originally instituted, this agreement relating to originally non-
28  instituted claims and grounds has no impact on the present motion.

**D.**    **Defendants Refuse To Withdraw Their Estopped Invalidity Challenges**

After the PTAB issued its FWDs, upholding the validity of claims 13 and 22 of the '781 Patent and claims 11 and 18 of the '032 Patent, Caltech requested that Defendants withdraw their invalidity challenges to these claims.  Specifically, in a letter to Defendants dated September 11, 2018 and during a meet and confer on September 21, 2018, Caltech explained that Defendants were estopped from pursuing these invalidity theories under 35 U.S.C. § 103 for these claims under 35 U.S.C. § 315(e) because they raised or reasonably could have raised these theories in their IPRs.  (Ex. S at 2).  Defendants refused to withdraw their claims leaving Caltech with no choice but to move for partial summary judgment pursuant to Federal Rule of Civil Procedure 56.

III.   **LEGAL STANDARD**

Summary judgment is appropriate when, drawing all justifiable inferences in the non-movant's favor, there exists "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  A court should grant a motion for summary judgment if the moving party establishes an absence in the record of any substantial evidence in support of an essential element of the plaintiff's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-325 (1986).  To oppose summary judgment, a party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248.  If the non-moving party's evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 249-250.

The determination of whether a party is estopped from raising an invalidity ground is a question of law.  *See Parallel Networks*, 2017 WL 1045912, at *10 n.13.  At the summary judgment stage, the court may find that a party is "estopped from asserting . . . [certain] prior art references." *Id.* at *11; *see also Milwaukee Elec.*, 271

F. Supp. 3d at 1030-33.  In so determining, courts may examine the prior art references (and combinations thereof) raised in an expert's report on invalidity in order to determine whether the prior art references and combinations upon which the expert relies are subject to estoppel.  *See, e.g.*, *Milwaukee Elec.*, 271 F. Supp. 3d at 1030-33 (applying estoppel with respect to references identified in expert's invalidity report); *Parallel Networks*, 2017 WL 1045912, at *10-12 (same); *SiOnyx, LLC v. Hamamatsu Photonics K.K.*, No. 15-13488-FDS, 2018 WL 4177941, at *16-21 (D. Mass. Aug. 30, 2018) (same).  If, based on the application of estoppel, "it appears that no prior art references or combinations remain," a court may "grant [a] motion for summary judgment eliminating [an] obviousness [or other invalidity] defense."  *Parallel Networks*, 2017 WL 1045912, at *12 ("[I]n light of the estoppel, IBM cannot show that the asserted claims would have been obvious.").

As indicated above, under the plain language of the statute, courts must look not only to the arguments the IPR petitioner raised but those arguments it "reasonably could have raised" to determine whether the arguments are barred.  315 U.S.C. § 315(e)(2).[10]  This approach is confirmed by the plain language of Section 315(e)(2)

---

[10]   In *SAS Institute Inc. v. Iancu*, 138 S. Ct. 1348 (2018), the Supreme Court implicitly overruled a narrow line of cases beginning with *Shaw Industries Group, Inc. v. Automated Creel Systems, Inc.*, 817 F.3d 1293 (Fed. Cir. 2016), holding that estoppel should not apply to those instances where a petitioner attempted to raise a ground, but was prevented from doing so because the PTAB did not institute on all grounds.  After the Court's *SAS* ruling, the situation described in *Shaw* will no longer occur because the PTAB will no longer partially institute an IPR petition—either with respect to claims or grounds.  *See BioDelivery Sci. Int'l, Inc. v. Aquestive Therapeutics, Inc.*, 898 F.3d 1205, 1209 (Fed. Cir. 2018) ("We agree that *SAS* requires institution on all challenged claims and all challenged grounds.").  *SAS* thus forecloses the type of partial institution *Shaw* addressed, and there "will be no such thing as a ground raised in the petition as to which review was not instituted," and any ground raised *during* the IPR is one that was petitioned.  *See SiOnyx*, 2018 WL 4177941, at *19.  Therefore "for the words 'reasonably could have raised' to have any meaning at

and its legislative history, which render any other reading of the "reasonably could have raised" language superfluous and contrary to the AIA's core goal of ensuring that its procedures "are not to be used as tools for harassment or a means to prevent market entry through repeated litigation and administrative attacks on the validity of a patent." H.R. Rep. No. 112-98 at 48 (2011).  For that reason, the statute requires that litigants bring all the arguments challenging a patent based on patents or printed publications they have or could bring in their selected forum.  *See Douglas Dynamics*, 2017 WL 1382556, at *4   ("[T]he legislative history . . . clearly suggests that Congress intended IPR to serve as a complete substitute for litigating validity in the district court."); *accord Patent Reform: The Future of American Innovation: Hearing Before the Senate Comm. On the Judiciary*, 110th cong. 13 (2007) (statement of Director Jon Dudas) ("[T]he estoppel needs to be quite strong that says on the second window any issue that you raised or could have raised you can bring up no place else. That second window . . . is intended to allow nothing—a complete alternative to litigation."); 154 Cong. Rec. S9989 (daily ed. Sept. 27, 2008) (statement of Sen. Kyl) (A primary purpose of the AIA is "to force a party to bring all of [its] claims in one forum . . . and therefore to eliminate the need to press any claims in other fora.").

Under these standards, summary judgment is clearly warranted since Defendants either expressly raised, or reasonably could have raised, each of the obviousness arguments they assert now.  To permit Defendants to withhold challenges they either raised or clearly could have raised during the IPR process, and then advance them in the district court after the IPRs did not go their way would contravene both the letter and the spirit of 35 U.S.C § 315(e)(2), and subject Caltech to ongoing harassment and litigation in violation of the strong protections and efficiencies Congress afforded.  Caltech therefore respectfully requests that its motion be granted.

_____

all, they must refer to grounds that were not actually in the IPR petition, but reasonably could have been included." *Id.*

IV.   **ARGUMENT**

The factual basis for Caltech's motion is irrefutable:  at the time Defendants pursued their IPRs, they had full knowledge of the ten printed publications they now bring before this Court.  Now, as set forth in the opening expert report of Defendants' invalidity expert Dr. Brendan Frey, Dr. Frey relies upon various combinations of *the same ten printed publications*.  Thus, Defendants are attempting to circumvent and undermine the very purposes of the bifurcated IPR/District Court process and craftily obtain a second chance to litigate contentions they either already raised before the PTAB or "reasonably could have raised."   35 U.S.C. § 315(e)(2); *see Parallel Networks*, 2017 WL 1045912 at *11 ("[E]stoppel under § 315(e) is broad, and the prior art references (or combinations) a petitioner 'could have raised' includes any references that were known to the petitioner or that could reasonably have been discovered by 'a skilled searcher conducting a diligent search.'" (quoting *Apotex Inc. v. Wyeth LLC*, No. IPR2015-00873, Paper 8 at 6 (P.T.A.B. Sept. 16, 2015))).

A.   **Defendants Assert The Exact Same Combinations They Raised In Their IPR Petition**

As shown in the chart below, Defendants expressly relied on the combination of the Ping, MacKay, Divsalar, and Luby97 printed publications in their unsuccessful challenge to claim 18 of the '032 Patent.  And now they assert this *same exact combination* in their invalidity challenge to the *same exact claim* before this Court. Because Defendants specifically raised this same combination in the IPR, and it was rejected, estoppel extends to this combination of printed publications.  *See, e.g.*, *Milwaukee Elec.*, 271 F. Supp. 3d at 1030 ("[T]hose [references] upon which IPR was instituted . . . are clearly subject to estoppel.").

| Patent | Claim | References Asserted in IPR | References Asserted in District Court |
|---|---|---|---|
| 7,421,032 | 18 | Ping, MacKay, Divsalar & Luby97 | Ping, MacKay, Divsalar & Luby97<br>Divsalar, MacKay & Luby97 |

(Ex. N; Ex. T ¶ 1).  In addition, Defendants rely on a combination of three printed publications that is merely a subset of a combination they relied on in their IPR, Divsalar, MacKay, and Luby97.  Defendants' express reliance on printed publications on which the PTAB has already ruled is clearly improper and evinces an attempt to manipulate the legal process in order to get two chances to assert the same arguments.  Such duplication is clearly barred by estoppel, "as any subset or alternative combination of the instituted references is barred, since such subsets or combinations undoubtedly could have been raised, but were not, during the IPR proceedings." *Milwaukee Elec.*, 271 F. Supp. 3d at 1030.

The case law supports this conclusion.  Indeed, in most cases, defendants do not even dispute the application of estoppel in such situations. *See, e.g.*, *id.* (noting that the defendant did not even "attempt to resist this interpretation of the instituted-grounds principle").  Defendants, however, are doing just the opposite, refusing to withdraw these clearly precluded combinations.  In *Biscotti Inc. v. Microsoft Corp.*, the court confronted an analogous attempt to relitigate arguments already made during IPR.  *Biscotti Inc. v. Microsoft Corp.*, No. 13-CV-01015-JRG-RSP, 2017 WL 2526231, at *8 (E.D. Tex. May 11, 2017).  There, the defendant sought to assert invalidity grounds comprised of subsets of prior art references raised in the IPR.  *Id.* The relevant IPR was issued on the basis of three references—Kenoyer, Briere, and Hurley.  *Id.*  The court concluded that the defendant "should be estopped from asserting Kenyoer and Briere as a basis for obviousness," and "[s]imilarly, [the defendant] should be estopped from asserting Kenoyer *alone*."  *Id.* (emphasis original).  Defendants are attempting the same maneuver here, and the same result should apply—preclusion of their invalidity challenges as to claim 18 that were raised in IPR.

**B.**     **Defendants Assert Combinations They Knew About And Reasonably Could Have Raised During the IPR Process**

In addition to the combinations of printed publications they expressly raised during the IPR process, Defendants now rely on a series of new combinations of the same printed publications and other printed publications of which they had knowledge long before they filed their petitions to challenge the validity of the claims 11 and 18 of the '032 Patent and claims 13 and 22 of the '781 Patent.  Accordingly, all of these new combinations are barred, and Caltech is entitled to summary judgment, because Defendants "reasonably could have raised" each of these printed publication combinations, as required by 35 U.S.C. § 315(e)(2).

Courts routinely apply estoppel in similar circumstances.  In *Network-1*, for instance, the Court applied estoppel to preclude obviousness arguments based on five prior art references, where the defendant "chose not to raise the specific references before the PTAB," although the defendant "knew that [each of those references] existed, at least eight months before filing its IPR petition."  *Network-1 Techs., Inc. v. Alcatel-Lucent USA, Inc.*, No. 11-cv-492-RWS-KNM, 2017 WL 4478236, at *6 (E.D. Tex. Sept. 26, 2017).  Similarly, in *Parallel Networks*, the Court held that the defendant "reasonably could have raised its prior art combinations during the IPR proceedings" where the defendant "was aware [of those prior art combinations] before it filed its IPR petitions," as demonstrated by previously-served invalidity contentions and expert report.  *Parallel Networks*, 2017 WL 1045912, at *11.  And in *iLife*, the court applied estoppel to preclude the use of references about  the defendant which had prior knowledge, as demonstrated by its identification of those references in its invalidity contentions.  *iLife*, 2017 U.S. Dist. LEXIS 87769, at *19 .

These precedents, and many others, are perfectly analogous to the facts of this case.  Defendants took their best shot at invalidating Caltech's patents at the PTAB and lost.  They should not now be rewarded with a second chance to invalidate Caltech's patents in this Court by repackaging their printed publications into different

combinations when they could have raised the exact same combinations in their IPRs. Both to protect Caltech and the bifurcated PTAB/District Court process Congress established to promote efficiency, avoidance of harassment and finality, Defendants should be estopped from, once again, challenging the validity of claims 11 and 18 of the '032 Patent and claims 13 and 22 of the '781 Patent under § 103.

## 1.   '032 Patent, Claim 11

As the below chart demonstrates, Defendants assert in this Court seven combinations of prior art in their invalidity challenge to claim 11 of the '032 Patent. Six of these combinations use two or three of the same printed publications and the seventh uses one of the same printed publications on which Defendants expressly relied in their IPR Petition.

| Patent | Claim | References Asserted in IPR | References Asserted in District Court[11] |
|--------|-------|----------------------------|-------------------------------------------|
| 7,421,032 | 11 | Ping, MacKay & Divsalar | ***Ping***, Luby98, ***Divsalar*** & Luby97 |
| | | | ***Ping***, Richardson99, ***Divsalar*** & Luby97 |
| | | | ***Ping***, ***MacKay*** & Pfister/Pfister Slides |
| | | | ***Divsalar***, ***MacKay*** & Luby97 |
| | | | ***Ping***, ***MacKay***, ***Divsalar*** & Luby97 |
| | | | ***Ping***, Luby98 & ***Divsalar*** |
| | | | ***Ping***, Luby98 & Pfister/Pfister Slides |

(Ex. M; Ex. T ¶ 1).

As shown above, in an effort to escape the clear application of estoppel, Defendants engage in fancy footwork; they rearrange and tack onto the printed publications they raised in the IPRs five additional printed publications in order to claim that they are "new" combinations outside the purview of estoppel. But this transparent attempt to avoid estoppel is clearly improper since Defendants had

---

[11]   The bolded italicized publications in each of the charts are those that are now asserted in the district court, which were previously raised in the IPR.

knowledge of all of these additional publications prior to the filing of their petition, and reasonably could have, and should have, included them, *see* 35 U.S.C. § 315(e)(2), rather than holding them in reserve to take a second shot at invalidity in this Court if they lost before the PTAB (as was the case).  Allowing parties to "abstain from asserting known references in the IPR and reserv[ing] them to relitigate validity in the district court . . . is counter to the AIA's purpose of achieving expeditious and economical final resolution by substituting an agency tribunal for district court proceedings on aspects of patent validity." *iLife*, 2017 U.S. Dist. LEXIS 87769, at *17 (citations and quotations omitted).  Because of this, estoppel extends to "any references that were known to the petitioner or that could reasonably have been discovered by a skilled searcher conducting a diligent search." *Parallel Networks*, 2017 WL 1045912, at *11(quotation marks and citations omitted); *see also SiOnyx*, 2018 WL 4177941, at *19 (adopting the same standard).

Here, Defendants' knowledge of each printed publication is conclusively demonstrated by their own IPR petitions (and supporting expert declarations), their Invalidity Contentions, and their Answer.  These documents prove that Defendants knew of the five printed publications they now incorporate into their arguments, namely a paper dated 1997 by Michael Luby et al. ("Luby97"); a paper dated 1998 by Michael Luby et al. ("Luby98)"; a paper dated April 1999 by Thomas Richardson et al. ("Richardson99"); a paper dated March 20, 2000 by Henry Pfister et al. ("Pfister"); and a slide presentation purportedly presented by Paul Siegel at a conference in 1999 ("Pfister Slides") (collectively ("Pre-Known Publications").

It is indisputable that Defendants knew of each of these Pre-Known Publications as shown by, for example:

- On August 31, 2016, in their Answer to Caltech's AC, Defendants identified Luby98 and Richardson99 in connection with their allegations concerning inequitable conduct.  (Dkt. 47 ¶ 149).

- In their December 22, 2016 invalidity contentions, Defendants identified Luby98, Pfister, Pfister Slides, and Richardson99 as prior art for each of the patents asserted by Caltech.  (Ex. W at 3-10).

- In their own petitions against the '032 Patent filed on January 20, 2017, Apple and its expert, Dr. James Davis, cited the Luby98 and Pfister Slides in connection with other petitioned claims and a discussion of the prior art.  (*See* Ex. D at 20, 37-38; Ex. X ¶¶ 60, 97).

In short, as evidenced by papers Defendants themselves have filed, there is no plausible dispute of fact as to Defendants knowledge of these references.

## 2.   '032 Patent, Claim 18

Defendants assert six combinations of prior art in their invalidity challenge to claim 18 of the '032 Patent.  As discussed above two of these combinations are comprised entirely of prior art actually raised before the PTAB.  Thus, they are barred. *See supra* at IV.A.  With respect to the other four combinations, each uses two or three of the same printed publications on which Defendants expressly relied in their IPR Petition, along with other publications of which Defendants had advance knowledge.  *See supra* at IV.B.1.

| Patent | Claim | References Asserted in IPR | References Asserted in District Court |
|--------|-------|-----------------------------|----------------------------------------|
| 7,421,032 | 18 | Ping, MacKay, Divsalar & Luby97 | *Ping*, *MacKay*, *Divsalar* & *Luby97* |
| | | | *Divsalar*, *MacKay* & *Luby97* |
| | | | *Ping*, *MacKay* & Pfister/Pfister Slides |
| | | | *Ping*, Richardson99, *Divsalar* & *Luby97* |
| | | | *Ping*, Luby98, *Divsalar* & *Luby97* |
| | | | *Ping*, Luby98 & *Divsalar* |

(Ex. N; Ex. T ¶ 1).

As with claim 11 of the '032 Patent, Defendants' knowledge is clearly established by their own IPR petitions (and supporting expert declarations), their Invalidity Contentions, and their Answer.  (*See* Ex. D at 20, 37-38 (citing Luby98 and Pfister Slides); Ex. X ¶¶ 60, 97 (same); Ex. W at 3-10 (citing Luby98, Pfister, Pfister Slides, Richardson99); Dkt. 47 ¶ 149 (citing Luby98 and Richardson99).  Since Defendants knew of all of these publications, they reasonably could have raised their

four additional combinations, but did not.  Accordingly, all of these invalidity combinations should be barred.

### 3.   '781 Patent, Claims 13 and 22

Defendants' attempt to manipulate and relitigate their unsuccessful invalidity challenges to the '781 Patent fares no better.  As the below chart demonstrates, Defendants assert in this Court seven combinations of prior art in their invalidity challenges to claims 13 and 22 of the '781 Patent.  Four of these combinations include Ping, one of the main printed publications they used in their IPR petition.

| Patent | Claim | References Asserted in IPR | References Asserted in District Court |
|---|---|---|---|
| 7,916,781 | 13, 22 | Ping & MacKay | Divsalar, *Ping* & Richardson99 |
| | | | Divsalar, Luby97 & Luby98 |
| | | | Divsalar, *Ping* & Frey/Frey Slides |
| | | | *Ping* & Luby98 |
| | | | Pfister/Pfister Slides, Luby97 & Luby98 |
| | | | Divsalar, *Ping* & Luby98 |
| | | | Divsalar, Luby97 & Richardson99 |

(Ex. L; Ex. U ¶ 1).

As with claims 11 and 18 of the '032 Patent, Defendants seek to avoid estoppel by substituting printed publications, and by including additional publications, in repackaged combinations.  Specifically, Defendants rely on the same printed publications discussed above with respect to the '032 Patent, along with an additional Pre-Known Publication—a paper dated March 20, 2000 by Brendan Frey et al. ("Frey"), and a slide presentation purportedly presented by Brendan Frey and David MacKay at a conference in 1999 ("Frey Slides").  However, since Defendants knew of each of these publications prior to filing their December 12, 2016 IPR petition against the '781 Patent, they reasonably could have raised these combinations in their IPRs.  Once again, Defendants' knowledge of these publications is clearly revealed in Defendants' own IPR petitions (and supporting expert declarations), their

Invalidity Contentions, their Answer, and IPR filings they concede they have reviewed. Defendants' knowledge of each of these Pre-Known Publications is indisputable:

- In their own petitions against the '781 Patent, each filed December 12, 2016, Apple cited each of Luby97, Luby98, Frey, and Divsalar in connection with other petitioned claims and its discussion of the scope of the prior art. (Ex. C at ii, 17-18).

- In supporting that petition, Apple's expert, Dr. Davis, cited each of Luby97, Luby98, and Frey. (Ex. Y ¶¶ 57, 59-60).

- In connection with an IPR petition filed on November 15, 2016 against another asserted patent, U.S. Patent No. 7,116,710, Apple cited each of Divsalar, Frey, Frey Slides, Luby97, Luby98, Pfister Slides, and Richardson99. (Ex. Z at ii, 5, 19-20, 32, 48).

- In Defendants' December 22, 2016 invalidity contentions, Defendants identified Divsalar, Frey, Frey Slides, Luby97, Luby98, Pfister, Pfister Slides, Richardson99 as prior art for each of the patents asserted by Caltech. (Ex. W at 3-10).

- On August 31, 2016, in their Answer to Caltech's AC, Defendants identify Luby98 and Richardson99 in connection with their allegations concerning inequitable conduct. (Dkt. 47 ¶ 149).

- In its petition challenging the '781 Patent, Apple attached and cited extensively to the PTAB's Final Written Decision in an earlier IPR against the '781 Patent filed by Hughes Network Systems, LLC. (Ex. C at i, 19-20, 43-45). In this decision, undeniably reviewed by Defendants, the PTAB cited Divsalar and Pfister. (Ex. AA at 2, 20).

In sum, Defendants had everything they needed to assert these combinations in their IPR petitions. That they did not, and held them in reserve for a second bite at the apple in federal court, precludes them from consideration by this Court. Indeed, the *only* way Defendants could defeat the application of estoppel is to show that they had no knowledge of *any* of non-petitioned references prior to filing their IPR petitions.[12] However, as demonstrated above, they cannot make such a showing because their knowledge is clearly revealed in their own filings. *See supra* Section

---

[12] With respect to the '781 Patent, the non-petitioned references are Divsalar, Frey, Frey Slides, Luby97, Luby98, Pfister, Pfister Slides, and Richardson99. With respect to the '032 Patent, the non-petitioned references are Pfister, Pfister Slides, Luby98, and Richardson99.

IV.B.  Moreover, less than ten days after they submitted their IPR petition against the '781 Patent, and nearly a month before submitting their IPR petitions against the '032 Patent, Defendants issued invalidity contentions directly identifying *every reference* they now assert.  (Ex. W at 3-10).  It would strain credulity to believe that Defendants suddenly learned of all these references in the ten days prior to service of their invalidity contentions.  In any case, they could have easily discovered them through reasonable investigation, as their subsequent production of such papers in such a short time-frame demonstrates

### C.   Defendants Cut And Pasted Their District Court Combinations From Their IPR Filings

Defendants' attempts to evade the estoppel effects of 35 U.S.C. § 315(e)(2) and engage in abusive and duplicative validity challenges are further revealed in the liberal "cut and paste" approach to evidence presented during the IPR process their expert, Dr. Frey, has demonstrated.  For instance, Dr. Frey's discussion in his expert report before this Court of the simulations he performed to combine Ping with MacKay are copied verbatim from his reply declaration in one of the '032 IPRs.  The chart below shows one such example:

| Frey Report | Frey Declaration from IPR |
|---|---|
| The below plot shows that applying irregularity to Ping's $H^d$ matrix resulted in an improvement in BER. That is, the irregular version of Ping's code outperformed the original, regular, version of Ping's code. . . . | The below plot shows that applying MacKay's uneven column weights to Ping's $H^d$ matrix resulted in an improvement in BER.  That is, the irregular version of Ping's code outperformed the original, regular, version of Ping's code. . . . |
| Applying MacKay's irregularity to Ping's $H^d$ matrix such that the matrix had column weights of four, five, or nine and a common row weight of five resulted in an approximately 0.25dB improvement in BER. . . . | Applying MacKay's irregularity to Ping's $H^d$ matrix such that the matrix had column weights of four, five, or nine and a common row weight of five resulted in an approximately 0.25dB improvement in BER. . . . |

(*Compare* Ex. V ¶ 292 *with* Ex. BB ¶ 55; *compare* Ex. V ¶¶ 279-93 (describing a software simulation purporting to show that irregularity taught by MacKay could be added to Ping) *with* Ex. BB ¶¶ 42-56 (same)).  Similarly, in his invalidity report, Dr. Frey copied wholesale portions of the arguments advanced in the declarations Dr. Davis filed during the IPR process with respect to another patent not at issue in this motion, U.S. Patent No. 7,116,710.  When raising those arguments anew in this case, Dr. Frey merely substituted one reference for another.  For example, ¶ 374 of Dr. Frey's invalidity report is nearly identical to ¶¶ 422-23 of Dr. Davis' IPR declaration, with only one change—Pfister/Pfister Slides substituted for Divsalar:

| Frey Report | Davis Declaration from IPR |
|---|---|
| Thus, one of ordinary skill would have understood | Accordingly, a person of ordinary skill in the art would have known |
| that the irregularity of Luby98 could readily be incorporated into the RAA codes of Pfister/Pfister Slides | that the irregularity of Luby could readily be incorporated into the RA codes of Divsalar |
| by modifying the number of times each message bit is repeated, so that some message bits are repeated more times than others (*e.g.*, some *q* times and others *p* times). | by modifying the number of times each message bit is repeated, so that some message bits are repeated more times than others (for example, some *q* times and others *p* times). |

(*Compare* Ex. HH ¶ 374 ("Thus, one of ordinary skill would have understood that the irregularity of Luby98 could readily be incorporated into the RAA codes of Pfister/Pfister Slides") *with*  Ex. CC ¶¶ 422-23 ("Accordingly, a person of ordinary skill in the art would have known that the irregularity of Luby could readily be incorporated into the RA codes of Divsalar"); *compare* Frey Invalidity Report, *supra* ("by modifying the number of times each message bit is repeated, so that some message bits are repeated more times than others (e.g., some *q* times and others *p* times") with Davis, *supra* ("by modifying the number of times of each message bit is repeated, so that some message bits are repeated more times than others (for example, some *q* times and others *p* times")).  This is precisely the sort of gamesmanship that

Congress intended to prevent when enacting the IPR estoppel provisions.  Having failed in its attempts to invalidate the patents in IPR, Defendants now present the District with not only the same arguments, but the same cut and pasted words.  The congressional requirement that all arguments and references be introduced in a chosen forum (PTAB or District Court), rather than rehashed in the non-chosen forum if unsuccessful, is designed precisely to avoid such duplicative litigation tactics.

V.   **CONCLUSION**

For the reasons stated, Caltech's Motion for Partial Summary Judgment should be granted.


DATED: October 16, 2018            Respectfully submitted,




By  */s/ James R Asperger*
James R. Asperger
jimasperger@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100

*Attorneys for Plaintiff California Institute of Technology*