QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
James R. Asperger (Bar No. 083188)
jimasperger@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
Todd M. Briggs (Bar No. 209282)
toddbriggs@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Attorneys for Plaintiff the California Institute of Technology

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE CALIFORNIA INSTITUTE OF TECHNOLOGY, a California Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>BROADCOM LIMITED, BROADCOM CORPORATION, AVAGO TECHNOLOGIES LIMITED, AND APPLE INC.,<br><br>Defendants. | CASE NO. 2:16-cv-3714-GW-AGRx<br><br>**CALTECH'S OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION**<br><br>Hon. George H. Wu<br>United States District Court Judge<br>Hearing Date: March 7, 2019<br>Time: 8:30 AM<br>Place: Courtroom 9D |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................ 1

II. ARGUMENT ...................................................................................................... 3

    A. Defendants' "Known or Used" Theories Are Not "Meaningfully Different" From Their Printed Publication Theories ............................. 3

    B. Defendants' "Supporting Evidence" For Their Pfister Invention Theory Does Not Make That Theory "Meaningfully Different" ............ 5

    C. Estoppel Applies Because Defendants Could Have but did Not Raise Pfister in IPR ................................................................................ 10

    D. Defendants Fail to Show that Reconsideration Is Warranted ............... 11

    E. Defendants' "Supporting Evidence" For Their Frey Invention Theory Does Not Make That Theory "Meaningfully Different" .......... 12

III. CONCLUSION ................................................................................................ 12

# TABLE OF AUTHORITIES

**Page**

## Cases

*Audionics Sys., Inc. v. AAMP of Fla., Inc.*,
  No. 12-cv-10763, 2015 WL 11201243 (C.D. Cal. Nov. 4, 2015) ..........................9

*Clearlamp, LLC v. LKQ Corp.*,
  No. 12-cv-2533, 2016 WL 4734389 (N.D. Ill. Mar. 18, 2016) ..........................4, 5

*Finnigan Corp. v. Int'l Trade Comm'n*,
  180 F.3d 1354 (Fed. Cir. 1999).......................................................................5

*In re Hyundai & Kia Fuel Econ. Litig.*,
  No. 13-cv-2424, 2015 WL 12747655 (C.D. Cal. July 2, 2015) .......................3, 11

*SiOnyx, LLC v. Hamamatsu Photonics K.K.*,
  330 F. Supp. 3d 574 (D. Mass. 2018) ...........................................................2, 4, 5

*Star Envirotech, Inc. v. Redline Detection, LLC*,
  No. 12-cv-01861, 2015 WL 4744394 (C.D. Cal. Jan. 29, 2015)................5, 6, 7, 8

*Yeda Research v. Mylan Pharm. Inc.*,
  906 F.3d 1031 (Fed. Cir. 2018).........................................................................6

## Rules and Regulations

Local Rule 7-18 ................................................................................................3, 11

## I. INTRODUCTION

In its February 7 Tentative Order, the Court agreed that Caltech had "certainly shown that Defendants' 'known or used' prong invalidity theories are similar to their previous printed publication invalidity theories." (Dkt. 888-3 at 10). But the Court also tentatively reversed its previous conclusion regarding IPR estoppel, stating: Caltech "has not shown that *the evidence* Defendants intend to present *all emanates* from the written documents, as appeared to be true based on the record previously presented to the Court. The Court finds, *in this way*, Defendants have submitted evidence to support their 'known or used' prong invalidity theory that is *meaningfully different* from the evidence they would be permitted to use to support a printed publication invalidity theory." (*Id.* at 10-11 (emphasis added)).[1]

Caltech respectfully submits that there are two issues that require further consideration by the Court. *First*, what is the proper legal standard for determining whether the "known or used" grounds presented by Defendants are "meaningfully different" from the grounds set forth in the printed references that Defendants raised or could have raised in the IPR proceedings? *Second*, does the evidence offered by Defendants–*i.e.*, testimony, emails and other evidence Defendants cite–truly present theories that are "meaningfully different" from their printed publication theories?

As explained in detail below, the standard for determining whether a "known or used" theory is "meaningfully different" must start with the claimed invention. For Defendants' "known or used" theory to be "meaningfully different" from their printed publication theory, their "known or used" evidence must disclose at least one claim limitation that is not disclosed in the printed publications that were raised or could

---

[1] Neither Defendants in their briefs, nor the Court's tentative ruling identifies what specifically is "*meaningfully* different" in Defendants' purported "known or used" theory, and why their purported different "evidence" will result in anything more than a rehash of the same substantive issues that were raised or could have been raised before the Patent Trial and Appeal Board ("PTAB") based on what Defendants contend are printed publications.

reasonably have been raised before the PTAB.  Indeed, in its December 28, 2018 Order, the Court itself stated that the "Defendants have not identified, for instance, circumstances *where the only citation for a limitation* relies on testimony of a contemporary in the field at the time of the invention."  (Dkt. 830 at 27 (emphasis added); *see also* Dkt. 888-3 at 7 n.7 (quoting December 28 Order)).  This approach is supported by other district courts that have addressed this issue.  For example, in *SiOnyx, LLC v. Hamamatsu Photonics K.K.*, the district court found that IPR estoppel did not apply because the "known or used" prior art system (and not the corresponding printed publication) was "the only citation for certain claim limitations."  330 F. Supp. 3d 574, 603 (D. Mass. 2018).  *See* Section II.A, *infra.*  Thus, for an invalidity theory to be "meaningfully different," it is not enough for Defendants to simply provide different "supporting evidence."  The supporting evidence must disclose a claim limitation that is not disclosed in the related printed publication.

Here, notwithstanding Defendants' lengthy recitation of deposition testimony and other evidence to support their "known or used" theories, none of Defendants' purported evidence discloses any claim limitation that is not disclosed in the related printed publications.  For example, the disclosures made in the Pfister Paper and Slides reflect the results of the simulations, discussions, and research performed by Drs. Pfister and Siegel pertaining to the addition of a second accumulator to Divsalar's "Repeat Accumulate" (RA) codes.  This work relates to "Repeat Accumulate-Accumulate" (RAA) codes.  This is exactly the same work and substance that forms the Pfister Invention invalidity theory advanced by Defendants.  Whether framed as the Pfister Invention, Pfister Paper, or Pfister Slides, each invalidity theory is based on the same disclosure of regular repetition and accumulation,[2] but not other key

---

[2]  Dr. Siegel himself opined in his expert report that, unlike the asserted claims of Caltech's IRA patents, "the Pfister Paper and Pfister Slides *repeats the bits regularly*."  (Dkt. 864-12 ¶ 140 (emphasis added); *see also* Dkt. 740-25 ¶ 250

claim limitations such as irregular repetition of information bits, summation of subsets of information bits, and accumulation of sums of subsets of information bits.

In short, Defendants have not shown that the "supporting evidence" for their "known or used" theories reflects a "meaningful difference" from their printed publication theories. For example, there is simply nothing in Defendants' proffered evidence for the Pfister Invention that is meaningfully different from the disclosures of Pfister/Pfister Slides, or the claim limitations purportedly disclosed in those printed publications. Indeed, neither Dr. Siegel's expert report nor Dr. Frey's expert report, deposition, or other related evidence contend that the Pfister Invention discloses a different claim limitation in a way that makes it meaningfully different.

Finally, Defendants cannot show that reconsideration is warranted under Local Rule 7-18 because Defendants' basis for reconsideration relies solely on facts and arguments that they "could have made before, but did not." *In re Hyundai & Kia Fuel Econ. Litig.*, No. 13-cv-2424, 2015 WL 12747655, at *5 (C.D. Cal. July 2, 2015). Defendants' claims of purported new evidence from expert testimony are simply not true, as all of the points they make were either known to them from Frey, discovery, or other evidence long ago disclosed. Nevertheless, Caltech agrees that the Court's orders on IPR estoppel should be applied consistently across the asserted patents based on the proper application of the law and a complete factual record.[3]

## II. ARGUMENT

### A. Defendants' "Known or Used" Theories Are Not "Meaningfully Different" From Their Printed Publication Theories

To show a "meaningful difference" and avoid IPR estoppel in this case,

---

("Pfister/Pfister Slides teaches regular repeat-accumulate (RA) codes rather than irregular repeat-accumulate codes.")).

[3] If the Court is inclined to reconsider any of its rulings based on its current understanding of the law and factual record, Caltech would also respectfully request reconsideration of the issues raised in Caltech's renewed motion on the Frey/Frey Slides combination in the '781 patent. *See infra* Section II.D.

Defendants must show that the evidence supporting their "know or used" theories discloses at least one claim limitation not found in their related printed publications supporting that theory. Otherwise, a "known or used" theory would result in a rehash of the exact same grounds that were or reasonably could have been raised before the PTAB. This would eviscerate IPR estoppel.

Several courts have held that defendants may rely on non-printed publication invalidity theories (*e.g.*, invalidity theories based on a product or system) when the non-printed publication invalidity theory discloses a claim limitation that is not disclosed in the related printed publications.[4] For example, in *SRAM*, the court allowed the defendant to rely on a prior art device although it "was depicted in a printed publication," but only because "it was not depicted at an appropriate angle or in enough detail to show its relevant [claimed] feature of offset tooth tips."[5] *SRAM, LLC v. RFE Holding (Can.) Corp.*, No. 15-cv-11362, ECF No. 102 at 11-12 (N.D. Ill. Jan. 25, 2019) [Dkt. 891-2]. In reaching its conclusion, the court reasoned that "a party cannot cloak its reliance upon [prior art] as a product, so as to avoid § 315(e)(2) estoppel, when it is *or could be relying on a depiction of the product in a printed publication*." *Id*. (emphasis added) (quoting *Clearlamp, LLC v. LKQ Corp.*, No. 12-cv-2533, 2016 WL 4734389, at *9 (N.D. Ill. Mar. 18, 2016)). Similarly, the *SiOnyx* court allowed reliance on evidence that *could* be raised as printed publications, in conjunction with a manufacturing specification that the defendant contended was not a printed publication, specifically because the manufacturing specification had been the ***sole evidence*** cited "for certain claim limitations." *SiOnyx*, 330 F. Supp. 3d at

---

[4] This is not a case where Defendants seek to rely on a prior art system independent of related printed publication; rather, they seek to circumvent IPR estoppel by introducing the printed publication and dressing it up with additional evidence that adds nothing of substance (*i.e.*, an additional claim limitation).

[5] "SRAM alleges that Race Face has copied its chainring, infringing several claims of the '027 patent, *all of which involve inboard-offset tooth tips*." *Id*. at 1 (emphasis added).

603-04; *see also Star Envirotech, Inc. v. Redline Detection, LLC*, No. 12-cv-01861, 2015 WL 4744394, at *3-4 (C.D. Cal. Jan. 29, 2015) (allowing reliance on a non-printed publication prior art reference (*i.e.*, a physical machine) when it could be shown that such a reference "discloses features claimed" in the patent beyond the related printed publication). Here, Defendants have not identified any claim limitations that are disclosed by the Pfister Invention that are not disclosed by Pfister/Pfister Slides. Nor could they. Accordingly, under the reasoning set forth in *SRAM*, *SiOnyx*, *Clearlamp*, and *Star Envirotech*, and the general principles underlying § 315(e)(2), IPR estoppel applies to the Pfister Invention.

In short, a defendant seeking to avoid IPR estoppel through reliance on a non-printed publication invalidity theory can show that the theory is "meaningfully different" from the printed publication itself only if the non-printed publication evidence discloses at least one additional claim limitation not found in the printed publication itself. Otherwise, defendants could easily circumvent IPR estoppel by dressing up printed publication invalidity theories with testimony or other evidence that provides no substantive difference between the non-printed publication and printed publication invalidity theories. Allowing defendants to make changes to their "supporting evidence" and then proceed on purportedly different "known or used" theories in district court would render IPR estoppel completely meaningless.[6]

### B. Defendants' "Supporting Evidence" For Their Pfister Invention Theory Does Not Make That Theory "Meaningfully Different"

In the December 28 Order, the Court rejected Defendants' "known or used" theory based on the Pfister Paper, the Pfister Slides, Dr. Siegel's report, Dr. Frey's

---

[6] To the extent Defendants attempt to change their Pfister Invention theory to avoid any reliance on Pfister/Pfister Slides, that theory would necessarily fail as it would be supported only by uncorroborated *post hoc* expert testimony. *Finnigan Corp. v. Int'l Trade Comm'n*, 180 F.3d 1354, 1369 (Fed. Cir. 1999) ("[C]orroboration is required of any witness whose testimony alone is asserted to invalidate a patent, regardless of his or her level of interest.").

1  report, and the expected testimony of Drs. Siegel and Pfister because "Defendants . . 
2  . had failed to demonstrate . . . that . . . [the] theories they intended to present at trial . 
3  . . were meaningfully different from the printed publication theories they raised or 
4  reasonably could have raised before the PTAB."  (Dkt. 888-3 at 6-7; Dkt. 830 at 24-
5  27).  Although Defendants now allege additional "supporting evidence," none of this 
6  evidence discloses a claim limitation that is not disclosed in the related printed 
7  publications, and thus estoppel is still "appropriate."  (Dkt. 830 at 24).

8  Defendants allege eight categories of evidence to support their claim that the 
9  Pfister Invention is meaningfully different from Pfister/Pfister Slides.  (Dkt. 888-1 at 
10 7-9).  Tellingly, however, not one of these eight categories of alleged "supporting 
11 evidence" contains any relevant disclosure of claim limitations beyond what is in the 
12 documents themselves.[7]  Instead, they all disclose the exact same substance and claim 
13 elements as Pfister/Pfister Slides standing alone.  (*See*, *e.g.*, Dkt. 888-1 at 7 
14 (conceding "Dr. Pfister and Dr. Siegel's RAA code invention is demonstrated by . . . 
15 published papers and presentations")).  More specifically, Pfister/Pfister Slides 
16 disclose a type of code known as Repeat-Accumulate-Accumulate (or RAA).  (*See id.* 
17 at 7 ("Pfister . . . . is an embodiment of RAA codes."); *id.* ("Dr Siegel presented the 
18 experimental results obtained from that [RAA code] software at the 1999 Allerton 
19 conference.")).  Pfister aimed to improve upon the repeat-accumulate code of Divsalar 
20 by adding an additional accumulator.  As Dr. Siegel himself admits, the RAA codes 
21 described in Pfister/Pfister Slides "repeats the bits regularly," unlike Caltech's IRA 
22 codes.  (Dkt. 864-12 ¶ 140).  This regular repetition is illustrated by the following 
23 figure from the Pfister Slides (*i.e.*, each information bit is repeated *q* times):

---

[7] The supporting evidence Defendants identify does not offer new substance, but is merely directed to explaining the documents and describing a motivation to combine Pfister/Pfister Slides with other prior art, which Defendants could have done in IPR.  *See, e.g.*, *Yeda Research v. Mylan Pharm. Inc.*, 906 F.3d 1031, 1041 (Fed. Cir. 2018) (allowing PTAB to consider expert's reliance on non-prior art reference to show what POSITA would have been motivated to do).

[Diagram: N → Repeat bit q times → qN → P → qN → 1/(1+D) Rate=1 → qN → P → qN → 1/(1+D) Rate=1 → qN]

This code structure is very different from the IRA code structure, and, importantly, does not disclose or discuss the irregular repetition of information bits.

### 1. Dr. Frey's Expert Report and Deposition Testimony

Defendants' first two categories of so-called "supporting evidence" rely on the expert report and deposition testimony of Dr. Frey. (Dkt. 888-1 at 8). Every paragraph in Dr. Frey's expert report relating to invalidity based on Pfister/Pfister Slides, however, relies exclusively on the disclosures in the printed publications and, in particular, the limitations they disclose as to "RAA codes." (*E.g.*, Dkt. 740-25 ¶¶ 242-53). The Court was therefore correct in its December 28 Order when it reviewed Dr. Frey's report and determined with respect to the Pfister Invention that all of Defendants' purported evidence emanates from the documents. (Dkt. 830 at 27).

Dr. Frey's testimony similarly offers no substantive analysis of the Pfister Invention that does not derive from the documents themselves.[8] (*E.g.*, Dkt. 888-7 at 121:14-149:3 (focusing on "what's taught in this paper by Pfister and also in the Pfister slides" and how one would "look at the repeat-accumulate code paper," and describing "Pfister/Pfister Slides" as the documents alone), 123:22 ("The Pfister paper describes . . . ."); *see also, e.g.*, *id.* at 124:9 ("the teachings in the paper"), 125:11 ("What I take from the paper is . . .")). Indeed, Dr. Frey conceded during deposition that Pfister/Pfister Slides are directed to "the class of codes called repeat-accumulate-accumulate codes." (*See id.* at 122:15-17). At bottom, the Pfister Invention discloses no more than RAA codes and the full range of the Pfister Invention's features are described within the four corners of the Pfister/Pfister Slides documents.

---

[8] Dr. Frey has never claimed to have *personal* knowledge regarding the Pfister Invention beyond what is disclosed in Pfister/Pfister Slides.

### 2. Dr. Siegel's Report

For an additional two items of supporting evidence, Defendants turn to Dr. Siegel's report. (Dkt. 888-1 at 7). In his report, "Dr. Siegel describes the Pfister Paper . . . [and] describes the Pfister Slides." (*Id*. at 7). Defendants' own words make clear that Dr. Siegel's report provides no substantive disclosure beyond what the documents themselves reveal. (*Id*.; *see also id*. at 2 (referring in short-hand to these first and second items of supporting evidence as "(1) Pfister Paper" and "(2) Pfister Slides")). Dr. Siegel simply describes the Pfister Slides—and, in particular, the RAA codes described therein—and copies and pastes portions of the slides into the body of the report. (*See, e.g.*, Dkt. 864-12 ¶¶ 86-88 (describing slides 20-22)). Similarly, Dr. Siegel's recounting of the Allerton presentation boils down to rote description of each of the Pfister Slides (which describe RAA codes) one-by-one. (*E.g.*, *id*. ¶ 58). In fact, paragraphs 56 through 88 of Dr. Siegel's report all cite the Pfister Paper, Pfister Slides, or both. Dr. Siegel's report does not present any Pfister Invention that is meaningfully different from Pfister/Pfister Slides and indeed underscores a critical difference between Defendants' theory and the claimed invention. (*See* Dkt. 864-12 ¶ 140 ("The one difference between claim 15 and the Pfister Paper and Pfister Slides is that claim 15 repeats the bits irregularly whereas ***the Pfister Paper and Pfister Slides repeats the bits regularly***." (emphasis added))). Defendants' reliance on Dr. Siegel's report, if accepted, will eviscerate estoppel by opening an escape hatch to those who simply reframe printed publications as evidence of an invention "known or used."

### 3. Dr. Siegel and Dr. Pfister Emails

Defendants also argue, to no avail, that emails involving Drs. Siegel and Pfister provide support for their "known or used" theory. (Dkt. 888-1 at 7-8). These emails are ultimately inconsequential to estoppel because they offer no disclosure that is not within Pfister/Pfister Slides. (Dkt. 888-1 at 8 (conceding that the emails show merely the "dissemination of the RAA codes invention" presented at the Allerton

conference)). Each of these emails refers to the Pfister paper, not to any simulation or other purported "invention" separate and apart from that paper. For example, in the October 5, 1999 email, Dr. Siegel simply states that he "sent [a recent graduate] Henry[] [Pfister's] Allerton'99 paper," as "he was quite interested after the talk [he] gave on it." (Dkt. 854-11). The other two emails similarly involve requests for copies of the Pfister paper. (Dkt. 854-10; Dkt. 854-12). Tellingly, despite "review[ing] a collection of emails that were sent between Dr. Pfister and [himself] shortly after the conference," Dr. Siegel did not identify *any* emails that discuss the substance of any purported "Pfister Invention." (Dkt. 864-12 ¶ 98). Likewise, Defendants have not identified any e-mails that discuss the substance of the Pfister Invention and disclosure of any claim limitations of the '032 or '781 patent—the cited e-mails merely reference the Pfister paper.

### 4. Dr. Siegel's and Dr. Pfister's Expected Testimony

Relatedly, Defendants point to anticipated testimony from Drs. Siegel and Pfister. (Dkt. 888-1 at 7). This purported "evidence" does not even exist, and Defendants' speculation about what it could reveal cannot defeat a motion for summary judgment. *Audionics Sys., Inc. v. AAMP of Fla., Inc.*, No. 12-cv-10763, 2015 WL 11201243, at *15 (C.D. Cal. Nov. 4, 2015). Given that Drs. Siegel and Pfister were retained by Defendants, and Defendants represented that both would submit expert reports, any testimony Defendants intended to elicit from Drs. Siegel and Pfister in support of a "known or used" theory should have been included in expert reports under Rule 26(a)(2)(B).[9] Moreover, as Dr. Siegel's report confirms and as Defendants concede, the RAA code simulations and software are described in their entirety in Pfister/Pfister Slides—thus, the anticipated testimony cannot be expected to provide substance beyond the printed publications. (*See, e.g.*, Dkt. 888-1 at 1, 7).

---

[9] (Dkt. 685-7 ("Defendants intend to submit expert reports from . . . Siegel . . . [and] Pfister"); *see also, e.g.* Dkt. 698-2 at 4).

### 5. Dr. Jin's Thesis

Defendants purport to find further support for their "known or used" theory in the 2001 Ph.D. thesis of Dr. Hui Jin, a co-inventor of the asserted patents. (Dkt. 888-1 at 8). As an initial matter, Dr. Jin's thesis is a printed publication, and thus could have been raised in IPR. Regardless, Dr. Jin's thesis does no more than refer to RAA codes and cite to the Pfister *paper* as well as a paper co-authored by Dr. Divsalar. (Dkt. 854-14 at 46, Dkt. 854-18 at 161). Nothing in Dr. Jin's thesis even suggests the existence of a "Pfister Invention" that is not wholly disclosed within Pfister/Pfister Slides. Instead, it cites to the *paper* as the relevant disclosure of RAA codes.

### 6. Caltech's Experts

Lastly, Defendants argue that estoppel should not apply because "Caltech's experts are expected to testify about RAA codes, and in particular Dr. Mitzenmacher" testified about Pfister and the Pfister Slides. (Dkt. 888-1 at 8). The testimony and opinions of Caltech's experts, like the invalidity theories they rebut, address the Pfister Paper and Slides themselves. (*See* Dkt. 888-5 ¶¶ 149-51, 171-72 (rebutting Defendants' invalidity arguments by addressing Pfister and the Pfister Slides); Dkt. 772-5 ¶¶ 136-38 (same); Dkt. 772-6 ¶¶ 102-03 (same); Dkt. 890-1 ¶¶ 250-63 (same)). Caltech's experts' testimony will thus not show the Pfister Invention discloses any limitation beyond what is in Pfister/Pfister Slides. Defendants also misrepresent Dr. Mitzenmacher's deposition testimony. Not only was Dr. Mitzenmacher "talking about the *papers*" in relation to the '710 patent, (Dkt. 888-4 at 204:23-25 (emphasis added)), he did not testify that one would have combined Frey and Pfister, and in fact affirmed the opposite, (Ex. A at 63:19-65:8; Ex. B ¶ 275 ("[A] person of ordinary skill in the art would . . . not be motivated to combine [Frey/Frey Slides] with Pfister/Pfister Slides"); *see also* Ex. B at 72-74).

### C. Estoppel Applies Because Defendants Could Have but did Not Raise Pfister in IPR

Defendants contend that estoppel is not appropriate because they did not

actually litigate their Pfister-based challenge of the validity of claims 13 or 22 or the '781 patent or claims 11 and 18 of the '032 patent in IPR. (Dkt. 888-1, 11-12). As the Court's February 7 Tentative and December 28 Order make clear, estoppel applies to any reference that could reasonably have been raised in IPR. (Dkt. 830 at 23; Dkt. 888-3 at 2). Defendants could have raised but did not raise Pfister or Pfister Slides as grounds for invalidating claims 13 and 22 of the '781 and claims 11 and 18 of the '032 patent. (*See, e.g.*, Dkt. 830 at 11).

### D. **Defendants Fail to Show that Reconsideration Is Warranted**

Each of the eight categories of "supporting evidence" Defendants allege to make up that "more complete record" was either (1) available for Defendants to include in their original opposition, or (2) immaterial to the question of estoppel because, as explained above, it fails to establish any meaningful difference. As such, reconsideration is not warranted under Local Rule 7-18 because Defendants' alleged grounds for reconsideration are based solely on facts and arguments that they "could have made before, but did not." *In re Hyundai & Kia Fuel Econ. Litig.*, No. 13-cv-2424, 2015 WL 12747655, at *5 (C.D. Cal. July 2, 2015).[10]

However, Caltech agrees that the factual record before the Court is now more complete, and the Court should consistently apply the legal standard it determines to

---

[10] While Defendants try to blame Caltech, the record shows that Defendants can only blame themselves for failing to timely present the facts and arguments they now raise. (*See* Dkt. 888-1 at 5, 9-10). Caltech's initial motion for summary judgment was based on Defendants' invalidity theories as of October 16, 2018, which made no distinction between Defendants' invalidity theory based on Pfister/Pfister Slides, and their new "known or used" theory. (Dkt. 740). Defendants then began changing their "known or used" theory when they opposed Caltech's IPR estoppel motion on November 6, 2018 and had every opportunity to fully set forth the facts and arguments to support their theory at that time. But as the Court recognized, Defendants failed to do so. (Dkt. 767; *see also* Dkt. 888-3 at 6-7 ("[Defendants] had [thus far] failed to demonstrate, through their positions before the PTAB and this Court, that they had legitimate 'known or used' theories . . . ."). Accordingly, Defendants have failed to show that reconsideration is warranted.

1  be appropriate to the facts for each of the claims and prior art combinations at issue
2  on all asserted patents.  If the Court is inclined to reconsider any of its rulings, Caltech
3  respectfully requests that the Court also reconsider and apply the same legal standard
4  to the issues raised in Caltech's renewed motion on the Frey/Frey Slides combination
5  in the '781 patent, or permit Caltech to file a formal motion making such a request.

### E. Defendants' "Supporting Evidence" For Their Frey Invention Theory Does Not Make That Theory "Meaningfully Different"

For the same reasons Defendants' Pfister Invention invalidity theory is not "meaningfully different" from their theories based on Pfister/Pfister Slides, Defendants' Frey Invention invalidity theory is not "meaningfully different" from their theories based on Frey/Frey Slides.[11]  None of Defendants' proffered Frey testimony, emails or evidence, or any of Defendants' other evidence pertaining to Frey discloses any claim limitation not contained in Frey/Frey Slides.  Rather, Frey/Frey slides disclose results of simulations that use irregular repetition of information bits with *turbo codes*.  Dr. Frey himself confirmed that Frey/Frey Slides disclose the results of his simulations and research at that time.  (*See* Dkt. 740-25 ¶ 231).  It is also undisputed that there is no material difference between the Frey Paper and the Frey Slides.  (Dkt. 616 at 25 (Defendants concede "the disclosures in the papers and slides are materially the same for purposes of invalidity."); *see also* Dkt. 599-4 ¶ 242; Dkt. 740-34 ¶ 118; Dkt. 830 at 25).  Critically, the PTAB considered the disclosure of the Frey Paper (which is the same as the disclosure of the Frey Slides and Frey Invention) and rejected Defendants' invalidity arguments on the merits.  (Dkt. 834-1 at 26-27; *see also* Dkt. 891).

### III. CONCLUSION

For the foregoing reasons, Caltech respectfully requests that this Court deny Defendants' Motion for Reconsideration.

---

[11] The Court has also treated the analysis of Frey Invention similarly to that of Pfister Invention.  (Dkt. 888-3 at 11).

1 | DATED: February 21, 2019      Respectfully submitted,

By */s/ James R. Asperger*
James R. Asperger
jimasperger@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

*Attorneys for Plaintiff California Institute of Technology*