**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

MARK D. SELWYN (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Tel:   (650) 858-6000
Fax:   (650) 858-6100

JAMES M. DOWD (SBN 259578)
james.dowd@wilmerhale.com
AARON S. THOMPSON (SBN 272391)
aaron.thompson@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
350 South Grand Avenue, Suite 2100
Los Angeles, California 90071
Tel:   (213) 443-5300
Fax:   (213) 443-5400

Attorneys for Defendants and Counter-Claim Plaintiffs *Broadcom Limited, Broadcom Corporation, Avago Technologies Limited, and Apple Inc.*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE CALIFORNIA INSTITUTE OF TECHNOLOGY,<br><br>                    Plaintiff,<br><br>     vs.<br><br>BROADCOM LIMITED, BROADCOM CORPORATION, AVAGO TECHNOLOGIES LIMITED, AND APPLE INC.,<br><br>                    Defendants. | CASE NO. 2:16-cv-3714-GW(AGRx)<br><br>**BROADCOM AND APPLE'S MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT ON CALTECH'S PURPORTED "COPYING" SECONDARY CONSIDERATION OF NON-OBVIOUSNESS**<br><br>**FILED UNDER SEAL**<br><br>Hon. George H. Wu<br>United States District Judge<br>Hearing Date:  September 12, 2019<br>Time:  8:30 AM<br>Place:  Courtroom 9D |

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

BROADCOM LIMITED, BROADCOM CORPORATION, AVAGO TECHNOLOGIES LIMITED, AND APPLE INC.,

Counterclaim-Plaintiffs,

vs.

THE CALIFORNIA INSTITUTE OF TECHNOLOGY,

Counterclaim-Defendant.

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

## I.   INTRODUCTION

Caltech's theory that 802.11 Working Group members copied the patented irregular repeat-accumulate ("IRA") code lacks competent evidentiary support and should be rejected.  *First*, Caltech's theory centers on a November 2003 presentation Eric Jacobsen gave to the Working Group ("November 2003 Presentation").  Because the earliest patent did not issue until October 2006, Mr. Jacobsen could not have copied any actual patent claims.[1]  *Second*, the LDPC code Mr. Jacobson proposed was regular, not irregular.  And as Mr. Jacobsen testified, the code he presented was never used in 802.11.  Caltech identifies no witness or other evidence to contradict Mr. Jacobsen's testimony.  *Third*, Caltech has offered no analysis comparing the code in Mr. Jacobsen's November 2003 Presentation to any asserted patent claim.  Caltech has thus failed to establish the required nexus between the claimed invention and the alleged copying evidence.  Accordingly, Defendants respectfully request summary judgment against Caltech's secondary consideration of non-obviousness theory based upon purported copying.

## II.   BACKGROUND: DR. SHOEMAKE'S THEORY

Dr. Shoemake's theory that the LDPC codes in the 802.11 Standard copied the claimed IRA codes hinges upon a lengthy chain of interdependent steps, *each of which* Caltech must prove to be true to reach his conclusion.  First, Dr. Shoemake contends that Dr. Hui Jin described IRA codes in his 2001 thesis. (Dkt. 895-2 [Shoemake Second Supp. Rpt.] at ¶¶ 96, 108.)  Second, Dr. Shoemake asserts that Dr. William Ryan and his students (the "University of Arizona researchers") copied the error correcting code from Dr. Jin's thesis in their research papers. (*Id.*)  Third, Dr. Shoemake insists that Mr. Jacobsen copied some version of those papers in his November 2003 Presentation. (*Id.* at ¶ 111.)  Dr. Shoemake never provides any detail for his fourth step, but Dr. Shoemake next presumes that

---

[1] The patent application was kept secret at Caltech's request.  *See* Dkt. 942-38 [Provisional Application] at 54.

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

some unnamed set of individuals in the 802.11n Working Group copied the code from the November 2003 Presentation to develop the optional LDPC codes in the standard.  The fifth step, which Dr. Shoemake left unaddressed, assumes that the University of Arizona researchers, Mr. Jacobsen, or the 802.11n Working Group intentionally copied the claimed invention of the patents-in-suit *because* they perceived that the claimed invention had merit.  Dr. Shoemake just assumes the nexus he is required to prove.

To demonstrate that the University of Arizona researchers copied IRA codes, Dr. Shoemake relies on several versions of a paper regarding the "Design of Efficiently Encodable Moderate Length High-Rate ***Irregular*** LDPC Codes."  For example, Dr. Shoemake compares a figure in a version of that paper to a figure in Dr. Jin's thesis, and declares that, because they appear similar, there is evidence of copying.  (*Id.* at ¶¶ 97-98.)  Dr. Shoemake also identifies that the authors mention one type of irregular LDPC code they describe "***resemble[s]*** the systematic version of the irregular repeat-accumulate (IRA) codes [11], ***except*** for systematic IRA codes, the matrix $H_1^T$ in Fig. 1(a) which has dimension $k \times (n - k)$ is ***replaced*** by a $k \times n$ low-density generator matrix ($n > k$)."  (*Id.* at ¶ 96.)[2]

Dr. Shoemake next contends that Mr. Jacobsen copied part of the University of Arizona researchers' paper for his November 2003 presentation, but beyond simplistic comparison based on how the figures look, Dr. Shoemake does not provide any detail about why the alleged similarity in the images supports his copying conclusion.  Equally important, Dr. Shoemake says nothing about whether the figures in Mr. Jacobsen's presentation relate to ***regular*** LDPC codes (which have been known since 1963) or ***irregular*** LDPC codes (which are the type of codes described in the University of Arizona researchers' paper).

## III.   ARGUMENT

### A.   Caltech Cannot Demonstrate That Mr. Jacobsen, The 802.11

[2] Emphasis appearing in quotations has been added unless otherwise noted.

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

**Working Group, Or The University Of Arizona Researchers Were Aware Of The Patents-In-Suit Or Claimed Invention.**

The earliest of the patents-in-suit issued in October 2006. All alleged copying activity took place at least three years earlier. Caltech cannot demonstrate that Mr. Jacobsen, the 802.11 Working Group, or the University of Arizona researchers copied the patents, because they did not exist.

Further, nothing from the official documents in the 802.11 Working Group (or anything else) suggests that any member was aware of the patents or Dr. Jin's IRA work. Caltech has not identified any documents or other evidence that Dr. Jin's IRA codes were ever discussed or considered by any member of the Working Group. Further, Defendants' 802.11 standard expert, Dr. Stephens, searched the records of the 802.11 projects and found no reference to Dr. Jin's work, no reference to IRA codes, and only a single reference to work by the other inventors (unrelated to IRA codes). (Ex. A-2 [Stephens Rpt.] at ¶¶ 95-97, 162.) Dr. Stephens' search demonstrated that "the participants who developed this standard did so without knowledge of the patents . . . or their . . . inventions." (*Id.* at ¶ 97.)

**B.     Mr. Jacobsen's November 2003 Presentation Describes Regular Codes—Not Irregular Repeat Accumulate Codes.**

The figures Caltech cites in the November 2003 Presentation do not describe irregular LDPC codes. Instead, as the presentation states, Mr. Jacobsen's codes were *regular* LDPC codes—specifically, regular LDPC codes he had been working on at Intel. (Ex. 2 [Jacobsen Tr.] at 29:2-6, 31:3-32:25; Ex. 3 [Jacobsen Ex. 8] at 11 (regular matrix H1), 30 (same); Ex. 4 [Jacobsen Ex. 19] at 8 (TGn Sync submission to 802.11), 99 (information bits have degree 4), 111 ("regular matrix H1").)

In particular, Caltech's argument is based upon a matrix "H1" identified as a "Candidate LDPC Code" in figures of the Presentation. But Slide 11 explains that "H1" is *regular*, not irregular. (Ex. 3 [Jacobsen Ex. 8] at 11.)

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**



(Ex. 5 [1/15/19 Shoemake Tr.] at 516:8-21.)

(*Id.* at 517:24-518:6; *see also id.* at 516:22-517:10

)

*Id.* at 518:21-519:7.

*Id.* at 519:20-520:3.

The Intel patent application that Caltech marked at Mr. Jacobsen's deposition likewise also confirms that Intel's proposed code was regular. Like the November 2003 Presentation's code, the application explains that in Intel's proposed code, "check nodes all have degree eighteen, the variable nodes related to information bits ***all have degree four***." (Ex. 4 [Jacobsen Ex. 19] at 99.) It confirms: "The matrix H = [H1 H2] comprises a ***regular*** matrix H1 with [a] constant column weight 4 . . . ." (*Id.* at 111.) It also includes a list file that describes the size of the matrix, including the column weights (4 for the first 1600 columns). (*Id.* at 117-132.) Because all information bits have degree four and constant column weight, the code is regular, not irregular.[3]

[3] Another Intel patent application marked by Caltech confirms Jacobsen's proposed code was regular since the H1 portion of the example LDPC matrix has the same

-4-

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

Mr. Jacobsen's November 2003 Presentation code thus differs from the Caltech patents on the exact aspect that Caltech says makes its patent claims inventive. Mr. Jacobsen's code is a *regular* LDPC code. Caltech argues its claims are patentably novel because they recite an *irregular* repeat-accumulate code. (Dkt. 36 [Am. Cmplt.] at ¶ 35; *see also* Ex. 6 [6/21/18 Shoemake Op. Rpt. Vol. 1] at ¶¶ 44, 72, 107-108.) Indeed, alleged "irregular repeat" is at the heart of Caltech's contention that the 802.11 Standards infringe.

This same difference distinguishes the code described in Mr. Jacobsen's Presentation from the *irregular* LDPC codes in the University of Arizona researchers' paper—breaking yet another link in Dr. Shoemake's logic chain.

**C.    Caltech's Theory Fails To Connect Mr. Jacobsen's November 2003 Presentation To The Codes Used In The 802.11 Standard.**

802.11n standard development took place from approximately May 2002 to September 11, 2009, and was based on a consensus-driven process that selected among numerous different proposals. (Ex. A-2 [Stephens Rpt.] at ¶ 68-97.) The task group charged with drafting the standard considered numerous changes—only one of which was the inclusion of a second form of forward error correction. (*Id.*) The November 2003 Presentation was but a single contribution from a single participant in the process. Caltech identifies no evidence the Working Group adopted Mr. Jacobsen's proposed code or that it influenced development.

The evidence proves the contrary. *First*, as Mr. Jacobsen testified, he was working on a code with adaptive bit loading. (Ex. 2 [Jacobsen Tr.] at 40:20-41:3; 140:12-24; Ex. 4 [Jacobsen Depo. Ex. 19] at 99.) But the 802.11 standard does not use an LDPC code with adaptive bit loading. *Second*, Mr. Jacobsen's code was never included in the standard. (Ex. 2 [Jacobsen Tr.] at 160:1-7 (the November 2003 Presentation "is talking about a specific code that we had developed at Intel that was *not* the codes that were used in 802.11n").) *Third*, the 802.11n and ac column weights. (Ex. 9 [Jacobsen Ex. 18] at 7, 38.)

-5-

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

standards include a section defining an optional LDPC code.  (*See, e.g.*, Ex. 7 [802.11n standard] at 289-293, 480-482.)   None of the figures that Caltech identifies in the November 2003 Presentation is present in the standard.  (*Compare id., with* Ex. 3 [Jacobsen Ex. 8] at 30.)   *Fourth*, Caltech alleges that the 802.11 code is irregular, but Mr. Jacobsen's candidate code was indisputably regular.

**D.    Caltech's Theory Does Not Connect The Allegedly Copied Codes To the Claims Of The Patents-In-Suit Or A Nexus To Novelty.**

Neither Caltech nor its expert ever compares Mr. Jacobsen's Presentation or the University of Arizona researchers' paper to any claim of the patents-in-suit. This failure is fatal to Caltech's copying theory as a matter of law.  Copying can be a secondary consideration of nonobviousness, but only if what was copied was "the claimed invention," *Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995, 1000 (Fed. Cir. 1986), which "requires evidence of efforts to replicate a specific product." *Tokai Corp. v. Easton Enters., Inc.*, 632 F.3d 1358, 1370 (Fed. Cir. 2011). Infringement, "taken alone, is not probative of copying."  *Id.*  Moreover, purported copying evidence is "legally irrelevant" unless the thing allegedly copied was "an ***embodiment of the claims***."  *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1366 (Fed. Cir. 2001); *see also U.S. Ethernet Innovations, LLC v. Acer, Inc.*, 2014 WL 5812175, at *4 (N.D. Cal. Nov. 7, 2014) ("[Patentee] must first show that the product allegedly copied . . . embodied the asserted claims.").  Thus, Caltech must show that what the Working Group allegedly copied "include[d] ***all elements*** of th[e] claims." *Asyst Techs., Inc. v. Empak, Inc.*, 2007 WL 120845, at *1 (N.D. Cal. Jan. 11, 2007).  Otherwise, Caltech's "evidence" is legally irrelevant. *See, e.g.*, *Leapfrog Enters., Inc. v. Fisher-Price, Inc.*, 2005 WL 1331216, at *1 (D. Del. June 6, 2005).  Dr. Shoemake never even attempted to demonstrate that the codes he alleges to be copies practice the asserted claims.  Caltech thus has no basis to assert that its patent claims including all their elements have been copied. *See Amazon.com*, 239 F.3d at 1366.

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

Further, to qualify as a secondary consideration of non-obviousness, the alleged copying must also have been undertaken because of "a nexus [to] the patented features." *Apple Inc. v. Samsung Elecs*. Co., 816 F.3d 788, 798 (Fed. Cir. 2016), *vacated in part on reh'g en banc*, 839 F.3d 1034 (Fed. Cir. 2016).  A patentee must establish a specific "'nexus between the evidence [of secondary considerations] and *the merits of* the claimed invention,'" as opposed to the aspects of the invention that incorporate useful prior art.  *Wyers*, 616 F.3d at 1246 (Fed. Cir. 2010) (emphasis added) (quoting *In re GPAC Inc.*, 57 F.3d 1573, 1580 (Fed. Cir. 1995) (purported evidence of copying had little weight because applicant did not "detail what aspect(s) of the invention claimed . . . was (were) targeted by industry copyists")).  In other words, Caltech must demonstrate a nexus "between the copying and the *novel aspects of the claimed invention* . . . ."  *Wm. Wrigley Jr. Co. v. Cadbury Adams USA LLC*, 683 F.3d 1356, 1364 (Fed. Cir. 2012).

Caltech cannot demonstrate that the alleged copying of the patents claims occurred because of their allegedly novel aspects.  Caltech claims that the point of novelty is that IRA codes are irregular, while the prior art repeat-accumulate codes were regular.  (*See, e.g.*, Dkt. 1 [Cmplt.] at ¶ 23; Ex. 6 [6/21/18 Shoemake Op. Rpt.] at ¶¶ 44, 72, 107, 108.)  But the codes in Mr. Jacobsen's November 2003 Presentation were regular.  Further, Jacobsen Exhibit 19 shows Intel viewed the University of Arizona researchers' approach to be a negative because it resulted in a "design searching process [that] is very time-consuming" and since "finding an appropriate code (for reasonable time) is not guaranteed especially for high-rate code design." (Ex. 4 [Jacobsen Ex. 19] at 106-107; Ex. 10 [Frey Third Supp. Rpt.] at ¶¶ 43-45, 80.)  Intel thus opted for a different, regular code to propose to the 802.11n Working Group.  (*Id.*)  Caltech has failed to "establish a nexus between the evidence and *the merits of* the claimed invention." *In re GPAC*, 57 F.3d at 1580 (no copying without "detail[ing] what aspect(s) of the invention claimed . . . was (were) targeted").

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

## IV.    CONCLUSION

For these reasons, Broadcom and Apple respectfully request the Court grant partial summary judgment on Caltech's assertion of copying of the patents-in-suit by the 802.11 standard or University of Arizona researchers as a secondary consideration of non-obviousness.

DATED: June 20, 2019                         Respectfully submitted,

By:    /s/ James M. Dowd
       JAMES M. DOWD (SBN 27239)
       james.dowd@wilmerhale.com
       AARON S. THOMPSON (SBN 272391)
       aaron.thompson@wilmerhale.com
       WILMER CUTLER PICKERING
         HALE AND DORR LLP
       350 South Grand Avenue, Suite 2100
       Los Angeles, California 90071
       Tel:   (213) 443-5300
       Fax:   (213) 443-5400

       MARK D. SELWYN (SBN 244180)
       mark.selwyn@wilmerhale.com
       WILMER CUTLER PICKERING
         HALE AND DORR LLP
       950 Page Mill Road
       Palo Alto, California 94304
       Tel:   (650) 858-6000
       Fax:   (650) 858-6100


       Attorneys for Defendants and Counter-Claim Plaintiffs *Broadcom Limited, Broadcom Corporation, Avago Technologies Limited, and Apple Inc.*