MARK D. SELWYN (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Tel:   (650) 858-6000
Fax:   (650) 858-6100

JAMES M. DOWD (SBN 259578)
james.dowd@wilmerhale.com
AARON S. THOMPSON (SBN 272391)
aaron.thompson@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
350 South Grand Avenue, Suite 2100
Los Angeles, California 90071
Tel:   (213) 443-5300
Fax:   (213) 443-5400

Attorneys for Defendants and Counter-Claim Plaintiffs *Broadcom Limited, Broadcom Corporation, Avago Technologies Limited, and Apple Inc.*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| THE CALIFORNIA INSTITUTE OF TECHNOLOGY,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>BROADCOM LIMITED, BROADCOM CORPORATION, AVAGO TECHNOLOGIES LIMITED, AND APPLE INC.,<br><br>　　　　Defendants. | CASE NO. 2:16-cv-3714-GW(AGRx)<br><br>**APPLE AND BROADCOM'S MOTION TO SEVER AND STAY CALTECH'S CLAIMS AGAINST APPLE**<br><br>Hon. George H. Wu<br>United States District Judge<br>Hearing Date: August 8, 2019<br>Time: 8:30 AM<br>Place: Courtroom 9D |

BROADCOM LIMITED, BROADCOM CORPORATION, AVAGO TECHNOLOGIES LIMITED, AND APPLE INC.,

      Counterclaim-Plaintiffs,

 vs.

THE CALIFORNIA INSTITUTE OF TECHNOLOGY,

      Counterclaim-Defendant.

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*CMAX, Inc. v. Hall*,
    300 F.2d 265 (9th Cir. 1962)........................................................................5

*Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*,
    402 U.S. 313 (1971).....................................................................................4

*In re Google Inc.*,
    588 Fed. Appx. 988 (Fed. Cir. 2014)..........................................................3

*In re Nintendo of America, Inc.*,
    756 F.3d 1363 (Fed. Cir. 2014)......................................................1, 2, 3, 4, 5

*Katz v. Lear Siegler, Inc.*,
    909 F.2d 1459 (Fed. Cir. 1990).................................................................2, 4

*Landis v. N. Am. Co.*,
    299 U.S. 248 (1936)....................................................................................3

*Saint Lawrence Commc'ns v. Apple Inc.*,
    2017 WL 3712912 (E.D. Tex. July 12, 2017)............................................3

*Spread Spectrum Screening LLC v. Eastman Kodak Co.*,
    657 F.3d 1349 (Fed. Cir. 2011)...................................................................3

Broadcom and Apple move to (1) sever Caltech's claims against Apple from those against Broadcom and (2) stay the claims against Apple until the predicate infringement claims against Broadcom and Broadcom's invalidity defenses are resolved, including the completion of any appeals.

Last month, the parties filed a Stipulation Regarding Representative Products for the Purposes of Evaluating Infringement or Non-Infringement (Dkt. 1038) in which they agreed that findings of infringement as to the accused Broadcom chips will be imputed to other accused products incorporating the infringing product. That stipulation confirms that Caltech's core dispute regarding alleged infringement is with Broadcom, not Apple. Caltech's claims against Apple are based solely on the incorporation of allegedly infringing Broadcom chips in Apple's iPhone, Mac, and other devices that support 802.11n or 802.11ac. These claims are entirely derivative of Caltech's claims against Broadcom: Broadcom manufactures the accused chips, while Apple is merely an indirect downstream party whose products incorporate the accused chips. Accordingly, the claims that Caltech has against Apple depend on establishing that the accused Broadcom chips infringe the patents and that the patents-in-suit are not invalid.

The Federal Circuit has addressed how courts should handle overlapping infringement claims such as these. In *In re Nintendo of America, Inc.*, 756 F.3d 1363, 1366 (Fed. Cir. 2014), the Federal Circuit granted a writ of mandamus and ruled that claims against the manufacturer "must proceed first," while claims against the downstream retailer should be severed and stayed. Many courts, citing considerations of judicial economy, have followed the *Nintendo* approach.

A stay would serve the same efficiency interests here as well. If the Court grants a stay and either Caltech fails to prove infringement or Broadcom prevails in demonstrating invalidity (or both), Caltech will have no claims left against Apple. Moreover, Caltech's infringement theories are directed at products developed and

manufactured by Broadcom alone. All the technical information needed to evaluate and rebut Caltech's claims belongs to Broadcom, not Apple.

Finally, Apple is willing to agree to be bound by any rulings on infringement/non-infringement with respect to the accused Broadcom chips and validity/invalidity in the trial against Broadcom. Thus, no matter how the claims against Broadcom are resolved, a stay will streamline the issues to be litigated against Apple.

## I. BACKGROUND

As put by Caltech, "[t]he products at issue in this case are Broadcom's Wi-Fi chips" ("Accused Broadcom Chips"), and "Apple's products that use those Wi-Fi chips" (the "Accused Apple Products"). (Dkt. 993 [First Joint Rpt.] at 4.) Caltech asserts that LDPC encoders/decoders in the Broadcom Wi-Fi chips infringe the patents-in-suit. (*See id.*; Dkt. 36 [Am. Compl.] ¶ 40.)

Caltech's claims against both Broadcom and Apple are based entirely on the internal layout and operation of the Accused Broadcom Chips. (*See* Dkt. 1068-9 [6/21/18 Shoemake Volume II Rpt.] ¶ 3.) The accused functionality within the Accused Broadcom Chips is governed by proprietary source code developed solely by Broadcom. Under Caltech's theory of infringement, the Accused Apple Products play no role in the alleged infringement other than their housing of the Accused Broadcom Chips. Consequently, Caltech has served a single set of infringement contentions that relies on Broadcom confidential information to support Caltech's infringement claims against both parties in this case.

## II. LEGAL STANDARD

Where a patent owner sues both a manufacturer and the downstream party whose product incorporates the manufacturer's product, courts routinely sever and stay the claims against the downstream party pending resolution of the manufacturer's suit. *See, e.g.*, *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed.

Cir. 1990) ("[L]itigation against or brought by the manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer."); *Saint Lawrence Commc'ns v. Apple Inc.*, No. 2:16-cv-82-JRG, 2017 WL 3712912, at *1 (E.D. Tex. July 12, 2017) (explaining that Federal Circuit recognizes Rule 21 authorizes severance of any claim "when a patent owner has sued both a manufacturer and its customers for infringement of the same patents based on the same accused products"). In this circumstance, severance avoids "imposing the burdens of trial" on the downstream party, "for it is the manufacturer who is generally the 'true defendant' in the dispute." *In re Nintendo*, 756 F.3d at 1365.

A stay of the suit against the downstream party is especially warranted where "the record strongly suggests there will be substantial similarity involving the infringement and invalidity issues in all the suits." *In re Google Inc.*, 588 Fed. Appx. 988, 990 (Fed. Cir. 2014). In such cases, "substantial savings of litigation resources can be expected" because it is possible to "moot[] or at least advanc[e] the 'major premises'" in the case against the downstream party. *Id.* at 991. Even if some issues will not be resolved by the manufacturer lawsuit, the convenience of first resolving the common issues in the suit against the manufacturer weighs in favor of a stay. *See Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1358 (Fed. Cir. 2011) ("[T]he manufacturer's case need only have the potential to resolve the 'major issues' concerning the claims against the customer—not every issue—in order to justify a stay of the customer suits.").

Moreover, this Court also has inherent discretion to stay the claims against Apple in order to prevent burdensome and duplicative litigation that would waste judicial and party resources. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).

### III. ARGUMENT

The claims against Apple should be severed and stayed because they are

-3-

derivative of Caltech's claims against Broadcom, and otherwise impose on the Court and parties duplicative and unduly burdensome litigation.

### A. Caltech's Claims Against Apple Should Be Stayed Because They Are Derivative and Duplicative of Its Claims Against Broadcom.

Caltech alleges that Broadcom manufactures the Accused Broadcom Chips and Apple incorporates those chips into its downstream products. (*See, e.g.*, Dkt. 36 [Am. Compl.] ¶ 40 ("Broadcom markets and sells Wi-Fi products to customers such as Apple with the knowledge that those products will be incorporated into other products.").) Where, as here, the claims against the downstream party are derivative of the claims against the manufacturer, severance and stay are appropriate to promote judicial efficiency. *Katz*, 909 F.2d at 1464.

In *Nintendo*, for example, the Federal Circuit reversed the district court's failure to sever and stay claims against parties downstream of the manufacturer-defendant. *In re Nintendo*, 756 F.3d at 1366. There, the downstream parties were customers accused of infringement based solely on their use of the manufacturer's components. *Id.* at 1364. The Federal Circuit concluded that "the case against Nintendo must proceed first" because this "would resolve these claims more efficiently and conveniently" and a successful defense against Nintendo "would preclude suit" against the customers. *Id.* at 1366.

The logic of *Nintendo* strongly favors staying the claims against Apple because resolving the issues of infringement and validity in a trial against Broadcom will moot those issues with respect to Apple. As in *Nintendo*, Caltech's claims against Broadcom and Apple cover the same issues of infringement and validity. Caltech "has no claim against [Apple] unless the infringement claims against [Broadcom] are resolved in [Caltech's] favor." *Id.* at 1366. Thus, finding that the Accused Broadcom Chips infringe "is a predicate to recovery from any defendants." *Id.* at 1365.

The same is true regarding validity. If Broadcom proves the patents invalid

in a first trial, Caltech will have no rights left to assert against Apple. *Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 350 (1971).

### B.   The Traditional Factors Also Weigh In Favor Of Severing And Staying Claims Against Apple.

Granting severance and stay also advances the same judicial-economy goals identified in traditional stay cases. *See CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (identifying judicial considerations in traditional stay cases).

First, a stay would serve the "orderly course of justice" by substantially "simplifying . . . issues, proof, and questions of law" in this case. *Id.* Finding that the Accused Broadcom Chips infringe "is [a] predicate to recovery from any [] defendants." *In re Nintendo*, 756 F.3d at 1366. As the developer and manufacturer of the Accused Broadcom Chips—the actual technology at issue—Broadcom is in the best position to provide facts and evidence necessary to resolve Caltech's infringement claims.

Second, Apple will face substantial "hardship or inequity . . . in being required to go forward." *CMAX, Inc.*, 300 F.2d at 268. Absent a stay, Apple would need to engage in pre-trial and trial practice in parallel with Broadcom even though Apple's presence in this litigation is unnecessary to the resolution of infringement or validity. Caltech's claims will be extinguished if the Accused Broadcom Chips are found not to infringe or the patents-in-suit are found invalid. Under these circumstances, requiring Apple to remain in the current litigation would waste substantial judicial resources and impose a significant and unnecessary burden on both this Court and the parties.

Finally, any "possible damage which may result" from a stay is minimal. *Id.* Caltech's ability to develop its case will be unimpeded if it is required to proceed against Broadcom alone, and (if warranted) Caltech can pursue its claims against Apple once the critical issues of invalidity and infringement are resolved in its claims against Broadcom.

| | | |
|---|---|---|
| 1 | | Respectfully submitted, |
| 2 | | |
| 3 | DATED: Juy 11, 2019 | By: /s/ *James M. Dowd* |
| | | JAMES M. DOWD (SBN 259578) |
| 4 | | james.dowd@wilmerhale.com |
| | | AARON S. THOMPSON (SBN 272391) |
| 5 | | aaron.thompson@wilmerhale.com |
| | | WILMER CUTLER PICKERING |
| 6 | |   HALE AND DORR LLP |
| 7 | | 350 South Grand Avenue, Suite 2100 |
| | | Los Angeles, California 90071 |
| 8 | | Tel:  (213) 443-5300 |
| | | Fax:  (213) 443-5400 |

MARK D. SELWYN (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Tel:  (650) 858-6000
Fax:  (650) 858-6100

Attorneys for Defendants and Counter-Claim Plaintiffs *Broadcom Limited, Broadcom Corporation, Avago Technologies Limited, and Apple Inc.*