**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

MARK D. SELWYN (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Tel:  (650) 858-6000
Fax:  (650) 858-6100

JAMES M. DOWD (SBN 259578)
james.dowd@wilmerhale.com
AARON S. THOMPSON (SBN 272391)
aaron.thompson@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
350 South Grand Avenue, Suite 2100
Los Angeles, California 90071
Tel:  (213) 443-5300
Fax:  (213) 443-5400

Attorneys for Defendants and Counter-Claim Plaintiffs *Broadcom Limited, Broadcom Corporation, Avago Technologies Limited, and Apple Inc.*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| THE CALIFORNIA INSTITUTE OF TECHNOLOGY,<br><br>                Plaintiff,<br><br>     vs.<br><br>BROADCOM LIMITED, BROADCOM CORPORATION, AVAGO TECHNOLOGIES LIMITED, AND APPLE INC.,<br><br>                Defendants. | CASE NO. 2:16-cv-3714-GW(AGRx)<br><br>**BROADCOM AND APPLE'S OPPOSITION TO CALTECH'S MOTION TO EXCLUDE CERTAIN OPINIONS OF DR. LORIN HITT, DR. WAYNE STARK, DR. ANDREW BLANKSBY, AND MR. VINCENT THOMAS RELATING TO DAMAGES**<br><br>Hon. George H. Wu<br>Hearing Date: September 12, 2019<br>Time: 8:30 AM<br>Place: Courtroom 9D |

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

| | |
|---|---|
| 1 | BROADCOM LIMITED, BROADCOM CORPORATION, AVAGO TECHNOLOGIES LIMITED, AND APPLE INC., |
| 2 | |
| 3 | |
| 4 | Counterclaim-Plaintiffs, |
| 5 | vs. |
| 6 | THE CALIFORNIA INSTITUTE OF TECHNOLOGY, |
| 7 | |
| 8 | Counterclaim-Defendant. |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................... 1

II. LEGAL STANDARD ..................................................................................... 1

    A. Apportionment Is Required When Assessing Patent Damages. ............ 1

    B. Factual Objections Go To Weight, Not Admissibility. ......................... 3

III. ARGUMENT .................................................................................................. 3

    A. Dr. Hitt And Mr. Thomas Apply Apportionment Methodologies That Have Been Widely Accepted By Courts Across The Country ..................................................................................................... 3

    B. The Four Apportionment Methodologies Are Economically Sound ........................................................................................................ 5

    C. Dr. Hitt's And Mr. Thomas' Apportionment Opinions Are Grounded In The Record Evidence ........................................................ 7

IV. CONCLUSION ............................................................................................. 13

Case 2:16-cv-03714-GW-AGR   Document 1331-2   Filed 07/18/19   Page 4 of 17   Page ID #:103009

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

<h1 style="text-align:center"><u>TABLE OF AUTHORITIES</u></h1>

Page(s)

**Federal Cases**

*Chrimar Holding Co., LLC v. ALE USA, Inc.*,
    732 Fed Appx. 876 (Fed. Cir. 2018) ...................................................................... 2

*CSIRO v. Cisco Sys.*,
    809 F.3d 1295 (Fed. Cir. 2015) ............................................................................. 3

*Enovsys LLC v. AT&T Mobility LLC*,
    No. 11-cv-5210-SS, 2015 WL 10383057 (C.D. Cal. Aug. 10, 2015) .................... 2

*Ericsson, Inc. v. D-Link Sys., Inc.*,
    773 F.3d 1201 (Fed. Cir. 2014) ......................................................................... 1, 3

*Exmark Mfg. Co. v. Briggs & Stratton Power Prods. Grp., LLC*,
    879 F.3d 1332 (Fed. Cir. 2018) ............................................................................. 2

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
    No. 13-CV-03999-BLF, 2015 WL 4272870 (N.D. Cal. July 14, 2015) ............................................................................................................. 2, 4

*Finjan, Inc. v. Sophos, Inc.*,
    2016 WL 4268659 (N.D. Cal. Aug. 15, 2016) ..................................................... 4

*i4i Ltd. P'ship v. Microsoft Corp.*,
    598 F.3d 831 (Fed. Cir. 2010) ............................................................................... 3

*In re Innovatio IP Ventures, LLC Patent Lit.*,
    2013 WL 5593609 (N.D. Ill. Oct. 3, 2013) ........................................................... 5

*Kennedy v. Collagen Corp.*,
    161 F.3d 1226 (9th Cir. 1998) ............................................................................... 3

*Realtek Semiconductor Corp. v. LSI Corp. and Agere Systems LLC*,
    No. 12-cv-03451 (N.D. Cal. May 29, 2013) ......................................................... 5

*VirnetX, Inc. v. Cisco Sys., Inc.*,
    767 F.3d 1308 (Fed. Cir. 2014) ................................................................... 1, 2, 11

*Visteon Glob. Techs., Inc. v. Garmin Int'l, Inc.*,
    No. 10-CV-10578, 2016 WL 5956325 (E.D. Mich. Oct. 14, 2016) ..................... 2

-ii-
DEFS.' OPP. TO PL.'S MOT. RE. HITT, STARK, BLANKSBY, AND THOMAS OPINIONS
CASE NO. 2:16-CV-3714-GW-AGRX

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

## I.   INTRODUCTION

Seeking to inflate Caltech's damages claim, Caltech's damages experts fail to isolate the value of the accused features from the value of the multitude of other features in the Wi-Fi 802.11.n/ac standard and accused products. As a result, Dr. Teece's royalty base opinion violates the fundamental requirement to "'apportion the defendant's profits ... between the patented feature and the unpatented features' using 'reliable and tangible' evidence." *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014) (quoting *Garretson v. Clark*, 111 U.S. 120, 121 (1884)). Broadcom and Apple thus have moved to exclude Dr. Teece's opinion. (*See* Dkt. No. 1250-1 at 10-13.)

Having failed to apportion itself, Caltech now seeks to exclude the apportionment opinions of Broadcom and Apple's experts. But apportionment is not only appropriate in a patent case, it is **required**. Each of the four apportionment methodologies Caltech challenges is firmly grounded in the law, economic principles, and record evidence. There is thus no basis to exclude any of them. Moreover, Caltech's challenges to Dr. Hitt's and Mr. Thomas' apportionment opinions are all factual challenges that go to the weight of those opinions, not their admissibility. The law is clear that such challenges should be presented to the jury.

## II.   LEGAL STANDARD

### A.   Apportionment Is Required When Assessing Patent Damages.

The Federal Circuit has consistently held that apportionment is an "essential requirement" because "the ultimate reasonable royalty award must be based on the incremental value that the patented invention adds to the end product." *Ericsson*, 773 F.3d at 1226. To satisfy this requirement, a party "must in every case give evidence tending to separate or apportion the defendant's profits ... between the patented feature and the unpatented features, and such evidence must be reliable and tangible, and not conjectural or speculative...." *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326 (Fed. Cir. 2014). In particular, a party must analyze the mix of

features and "other elements of the [accused product that] affect sales and profits"—both accused and non-accused"—and "indicat[e] the degree to which these considerations impact the market value or profitability of the [accused product] and therefore impacted [the] suggested [] royalty rate." *Exmark Mfg. Co. v. Briggs & Stratton Power Prods. Grp., LLC*, 879 F.3d 1332, 1350 (Fed. Cir. 2018).

Courts exclude damages opinions that fail to consider and apportion out value attributable to non-accused features. *See, e.g.*, *Enovsys LLC v. AT&T Mobility LLC*, No. 11-cv-5210-SS, 2015 WL 10383057, at *5 (C.D. Cal. Aug. 10, 2015) (expert "fail[ed] to tie damages to specific features of [the accused navigation system]" and failed to exclude value of non-accused features like "'turn-by-turn driving directions, full-color moving maps, a fuel finder feature … and access to [a] database of millions of business locations'"); *Visteon Glob. Techs., Inc. v. Garmin Int'l, Inc.*, No. 10-CV-10578, 2016 WL 5956325, at *19 (E.D. Mich. Oct. 14, 2016) (excluding opinion that "failed to apportion value between the patented features and the vast number of non-patented features"); *Apple v. Wi-Lan, Inc.*, No. 3:14-cv-02235, Dkt. 548 [Order Granting New Trial] at 4, 9-10 (S.D. Cal. Jan. 3, 2019) (ordering a new trial on damages or voluntary remittitur, because "Wi-LAN had the burden to apportion the infringing features of the iPhone from the noninfringing features," and its expert's opinions short of that "should have been excluded").

It is customary for damages experts to offer opinions on apportionment, including based on the methods challenged here. *See, e.g.*, *Chrimar Holding Co., LLC v. ALE USA, Inc.*, 732 Fed Appx. 876, 888 (Fed. Cir. 2018) (upholding apportionment analysis); *Finjan, Inc. v. Blue Coat Sys., Inc.*, No. 13-CV-03999-BLF, 2015 WL 4272870, at *6 (N.D. Cal. July 14, 2015) (refusing to strike opinions regarding source code and feature counting apportionment analyses). The Federal Circuit has recognized that apportionment opinions may contain some degree of "approximation and uncertainty"; "'absolute precision' is not required in the task of apportionment." *See VirnetX*, 767 F.3d at 1328; *CSIRO v. Cisco Sys.*, 809 F.3d

Case 2:16-cv-03714-GW-AGR   Document 1331-2   Filed 07/18/19   Page 7 of 17   Page ID #:103012
**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

1295, 1304 (Fed. Cir. 2015); *Ericsson,* 773 F.3d at 1233 ("[A] royalty … must be apportioned to the value of the patented invention (or at least to the ***approximate value thereof***) …." (emphasis added)).

### B. Factual Objections Go To Weight, Not Admissibility.

When an expert has presented opinions based on sound methodology and grounded in evidence that is "sufficiently related to the case at hand," the gate-keeping requirement of *Daubert* has been satisfied, and any further "disputes about the degree of relevance or accuracy (above this minimum threshold) may go to the testimony's weight, but not its admissibility." *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 852 (Fed. Cir. 2010). As such, a district court "should not exclude expert testimony simply because [it] disagree[s] with the conclusions of the expert." *Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1230 (9th Cir. 1998).

### III. ARGUMENT

Broadcom and Apple's economic and technical experts have determined the portion of profits attributable to the accused features, as distinct from profits attributable to the myriad other features on Broadcom's chips and in Apple's products, using four well-established methodologies: (1) calculating the surface area of Broadcom's accused Wi-Fi chips occupied by the LDPC encoders and decoders as a percentage of the whole (i.e., the "**Die Area**" method), (2) calculating the lines of source code related to LDPC as a percentage of the accused code (i.e., the "**Source Code**" method), (3) calculating the percentage of features in the accused Wi-Fi chipsets that relate to LDPC (i.e., the "**Feature Count**" method); and (4) calculating the number of pages in the accused Wi-Fi standards devoted to LDPC as a percentage of each standard (i.e., the "**Portion of Standard**" method).

Each methodology has been accepted by federal courts and is grounded in cost-benefit economics, and each related opinion is well-supported by the record evidence. Caltech's arguments to the contrary go to weight, not admissibility.

### A. Dr. Hitt And Mr. Thomas Apply Apportionment Methodologies That Have Been Widely Accepted By Courts Across The Country.

-3-
Defs.' Opp. to Pl.'s Mot. Re. Hitt, Stark, Blanksby, and Thomas Opinions
Case No. 2:16-cv-3714-GW-AGRx

Each apportionment methodology Dr. Hitt and Mr. Thomas applies has been accepted by either the Federal Circuit or district courts. Caltech does not identify a single case holding otherwise. In fact, Caltech's expert, Dr. Matthew Shoemake, has used some of the same methods to apportion damages in prior patent cases.

**Die Area.** Apportionment based on die area has been accepted by courts in at least the Eastern District of Texas and the Northern District of New York. For example, *Ziilabs v. Samsung Electronics Co.* allowed an expert's opinion that tied the portion of realizable profit that should be credited to the invention to the **area of the accused chip** dedicated to that feature. 2015 U.S. Dist. LEXIS 191436, at *22-25 (E.D. Tex. Dec. 4, 2015). Similarly, *Cornell University v. Hewlett-Packard Co.* permitted defendant's expert to apply a die area analysis to apportion profits. *See Partial Test. of Robert Wallace*, 2008 WL 8188698 (N.D.N.Y. May 29, 2008).

**Source Code.** The Federal Circuit in *Lucent Technologies, Inc. v. Gateway, Inc.* approved of source code apportionment as a way to determine "portion of the profit that can be credited to the infringing use of the date-picker tool [at issue]." 580 F.3d 1301, 1332-33 (Fed. Cir. 2009). Judge Freeman in the Northern District of California similarly refused to strike a source code apportionment analysis, finding that plaintiff's "arguments are really disputes concerning the underlying facts" that are "better left to the jury." *Finjan*, 2015 WL 4272870, at *6.

**Feature Count.** Judge Freeman likewise found that an apportionment method directed to counting features "reasonably ties the value that Defendant places on product features to the accused products in this case" and noted that "[a]ny factual challenges to [expert's] analysis are better presented to the jury." *Id.* at *9. Judge Orrick reached the same conclusion in *Finjan, Inc. v. Sophos, Inc.*, 2016 WL 4268659, at *3 (N.D. Cal. Aug. 15, 2016).

**Portion of Standard.** Apportionment based on the portion of a standard related to an accused feature has particular relevance to this case in light of Caltech's contention that the 802.11n and 802.11ac standards infringe the asserted

claims. (Dkt. 36 [Caltech First Am. Compl.] ¶¶ 32-35 (alleging that the 802.11n and 802.11ac standards implement Caltech's patents); Ex. 1 [Pl.'s Second Am. Infr. Contentions] at 5-6 (alleging that Broadcom's and Apple's 802.11n- and 802.11ac-compliant products "infringe the above identified Asserted Claims by virtue of that implementation and/or compliance").) In a seminal apportionment case also involving 802.11 Wi-Fi standards, Judge Holderman in the Northern District of Illinois held that "determining the importance of [a given set of asserted] patent[s] to the 802.11 standards also determines the importance of those patents to the Wi-Fi chip," and that it is permissible to "merge" an analysis of "the importance of [a given set of asserted] patents to the asserted products" "into the inquiry about the importance of [the] patents to the 802.11 standard." *In re Innovatio IP Ventures, LLC Patent Litig.*, 2013 WL 5593609, at *8 (N.D. Ill. Oct. 3, 2013).

In fact, Caltech's own expert, [REDACTED]

Caltech cites only four cases in its motion, and none of those decisions excludes any of the apportionment methods that Dr. Hitt and Mr. Thomas have applied under *Daubert* or otherwise. There is no basis to do so here.

### B.  The Four Apportionment Methodologies Are Economically Sound.

Each of the apportionment methodologies Dr. Hitt and Mr. Thomas applies is also grounded in well-established economic principles, as evidenced by the ten studies Dr. Hitt cites in his report,[1] as well as Dr. Hitt's deposition testimony that

---

[1] *See* Dkt. 1227-2 [Hitt Rpt.] nn. 293-303; Ex. 7 [*IC Knowledge's IC Cost and Price Model*, https://www.icknowledge.com/products/icmodel.html]; Ex. 8 [Andrew Rassweiler, *IC Cost Model*, IHS Markit (June 27, 2016)]; Ex. 9 [Kenneth Flamm, *Measuring Moore's Law: Evidence from Price, Cost and Quality Indexes*, NBER

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

"the use of cost as a metric of value is pervasive in economics."[2] Caltech has identified no economic study or publication to the contrary. As a result, Caltech's arguments go to weight, not admissibility.

The connection between each apportionment metric and the profits of the accused chips is a cost-benefit analysis. (Dkt. 1227-2 [Hitt Rpt.] ¶¶ 145-158.) As Dr. Hitt explains, if a business is willing to devote scarce resources to a feature, the amount of resources a company devotes to that feature (*e.g.*, cost) indicates how much profit that company believes it can sell that feature for, since companies are not in the business of wasting money. *Id.* This fundamental principle applies equally to the limited space available on a chip, the limited time engineers have to write source code, the limited time and energy companies working together have to develop a specification, and limited amount of space a company has on a datasheet to list features to capture the attention of a customer. *Id.*

Dr. Hitt has both the technical and economic expertise to identify appropriate methodologies to calculate incremental benefit of LDPC in Broadcom's and Apple's products. Dr. Hitt holds both a B.S. and a M.S. in Electrical Engineering from Brown University and a Ph.D. in Management from MIT. In addition, Dr. Hitt worked in microprocessor testing and semiconductor fabrication and design, and is currently a chaired professor in the Wharton School of Business at the University of Pennsylvania, with numerous publications on the subjects of the economic valuation of individual features in information technology products, as well as product pricing

---

Working Paper w24553 (April 2018)]; Ex. 10 [Kenneth Flamm, *Has Moore's Law Been Repealed? An Economist's Perspective*, 19 COMPUTING IN SCI. & ENG.] at 29-40; Ex. 11 [Ana Aizcorbe, *et al.*, *The Role of Semiconductor Inputs in IT Hardware Price Decline: Computers versus Communications, Hard-to-Measure Goods and Services,* Univ. Chicago (2007)] at 351–381; Ex. 12 [Barry Boehm, *Software Engineering Economics*, Upper Saddle River NJ: Prentice Hall (1981)] at Ch. 10-17, 21-22, and 31-33; Ex. 13 [Steve McConnell, *Rapid Development*, Microsoft Press (1996)] at Ch. 8; Ex. 14 [Carnegie Mellon University, *Cost Benefit Analysis Method*, SOFTWARE ENG. INST. (2018)]; Ex. 15 [Barry Boehm, *Value-Based Software Engineering*, ACM SIGSOFT SOFTWARE ENG. NOTES (2003)]; Ex. 16 [Neil Weste and David Harris, *CMOS VLSI Design: A Circuits and Systems Approach* (Pearson Education, 4th ed. 2011)] at §§14.2, 14.5.
[2] Ex. 17 [Hitt Tr.] at 252:15-21.

and consumer behavior.  (Dkt. 1227-2 [Hitt Rpt.] ¶¶ 1-9; Ex. 3 [Hitt CV].)

Moreover, Dr. Hitt's opinion that the value of a specific feature in software can be derived from a cost-benefit analysis is supported by numerous studies cited in his report.  The studies Dr. Hitt relies on include software-specific, published research from the Carnegie Mellon University Software Engineering Institute[3], "Value-Based Software Engineering" by Professor Barry Boehm[4], and "CMOS VLSI Design: A Circuits and Systems Approach" by Professors Neil Weste and David Harris.[5]  Caltech's brief identifies no studies or publications suggesting that any of the apportionment methodologies Dr. Hitt applies is unreliable.

### C. Dr. Hitt's And Mr. Thomas' Apportionment Opinions Are Grounded In The Record Evidence.

Having selected well-established methodologies, Dr. Hitt then identifies ample factual support for his apportionment analysis in the record, including the opinions of Dr. Blanksby and Dr. Stark, and discussions with Broadcom and Apple engineers.  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  Dr. Stark has offered opinions regarding non-infringement, and identified the relevant pages in the accused Wi-Fi Standards and the accused features in Broadcom's chips.  (Dkt. 1242-8 [Stark Reb. Rpt.] ¶¶ 1070-1184 (identifying chip features), 1263-1278 (identifying Wi-Fi Standards pages); Ex. 4 [Stark Reb. Rpt. Ex. H].)  In short, Dr. Hitt identified the appropriate apportionment metrics, and then consulted with technical and valuation experts to collect the appropriate record evidence to calculate value according to each method.  To the extent Caltech takes issue with that approach, its critiques can be explored in cross-

---

[3] Dkt. 1227-2 [Hitt Rpt.] nn.293, 301 (citing Ex. 14 [Carnegie Mellon Univ., *Cost Benefit Analysis Method*, SOFTWARE ENG. INSTITUTE (2018))].
[4] Dkt. 1227-2 [Hitt Rpt.] nn.293, 301 (citing Ex. 15 [Barry Boehm, *Value-Based Software Engineering*, ACM SIGSOFT SOFTWARE ENG. NOTES (2003))].
[5] Dkt. 1227-2 [Hitt Rpt.] n.293 (citing Ex. 16 [Neil Weste and David Harris, *CMOS VLSI Design: A Circuits and Systems Approach* (Pearson Education, 4th ed. 2011))].

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

examination.

Caltech is also incorrect that the four apportionment methodologies are based on conjecture. Rather, each methodology is tied to how Broadcom and Apple evaluate the cost-benefit tradeoffs of features and the indicators used.

**Die Area.** ████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████ Dr. Hitt also relies on Dr. Stark's opinion that "die area is generally a reasonable indicator of the importance attributed to any particular feature" because "[i]f a designer is allocated more die area for a feature, it suggests that the feature is important." (Dkt. 1242-8 [Stark Reb. Rpt.] ¶ 1296.) ████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████

Caltech argues that Broadcom does not consider die space or engineering effort as related to the value of a feature, citing Dr. Blanksby's deposition. (Mot. at 9.) ████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████

-8-

1 ████████████████████████████████████████████████████████████
2 ████████████████████████████████████████████████████████████
3 ██████████████████████████████████████████████

**Source Code.** Dr. Hitt explains, based on his experience in semiconductor fabrication and design, that (1) under standard software development practices, "the optimal allocation of resources trades the marginal benefits of further investment in a feature [such as source code] against the marginal costs of developing the feature" (Dkt. 1227-2 [Hitt. Rpt.] ¶ 153), (2) "it is common practice in software project management to make estimates of development cost based on estimates of the amount of code that is to be written," and that "[i]n the case of products that are already complete, the same methods can be used to make estimates of the cost of [a particular] feature" (*id.* ¶ 154), and (3) "the fraction of the number of lines of source code [in this case] can provide both an estimate of the relative proportion of the fixed costs (development) as well as the variable costs of the device." (*Id.* ¶ 155.)

Dr. Stark likewise explains that number of lines of source code for a given feature reflect the value of that feature. (Dkt. 1242-8 [Stark Reb. Rpt.] ¶ 1299 ("[T]he more effort and time put into source code design, and the amount of source code generated tends to indicate the overall importance of any particular feature.").)

**Feature Count.** Drs. Hitt and Stark each provides opinions and analysis to support their use of the Feature Count method. Dr. Hitt explicitly addresses the relevance of a feature count apportionment method and explains that "an objective count of features" can make it "possible to get a sense of the relative importance of a particular feature." (Dkt. 1227-2 [Hitt Rpt.] ¶ 157.) He further notes that objective feature counts "can be obtained if a company uses a consistent method for identifying features in product documents such as Datasheets." (*Id.*)

Dr. Stark supports Dr. Hitt's analysis with his opinion that "the Accused Devices contain numerous additional features that are more important than the accused functionality, and in many instances significantly more important than the

accused functionality," which demonstrates that "[i]n the context of the Accused Devices as a whole, the accused functionality is at best a minor technical feature...." (Dkt. 1242-8 [Stark Reb. Rpt.] ¶ 1070.) And Dr. Stark explicitly compares LDPC against other features in Broadcom's Wi-Fi chipsets, and concludes it is no more valuable than any other feature. (*Id.* ¶¶ 1070-1084). This is reinforced by Dr. Stark's review of the accused 802.11n/ac standards, from which he concludes that "[m]any of the mandatory and optional features in the 802.11n and 802.11ac ... have more impact than LDPC in the overall improvement to Wi-Fi performance." (*Id.* ¶ 1220.) Finally, Mr. Thomas relies on Dr. Hitt and Dr. Stark and agrees that ███████████████████████████████████████████████████████████████ He offers further explanation that a feature count is appropriate in this case because, as Dr. Stark concluded, LDPC is no more valuable than any of the other features it is compared against. (*Id.* ¶ 267.)

**Portion of Standard.** Dr. Hitt explains "the amount of technical description devoted to [a feature] relative to all functionality in [an accused device]" is "[a]nother figure that may be useful in corroborating an apportionment analysis...." (Dkt. 1227-2 [Hitt Rpt.] ¶ 158.) Dr. Stark confirms that the 802.11n and .11ac standards are relevant because Caltech has directly accused them of infringement, and he counts pages that are allegedly relevant to LDPC, as identified by Caltech's infringement contentions. (*See* Dkt. 1242-8 [Stark Reb. Rpt.] ¶¶ 1220, 1274-1277, 1287-1290.) He further explains that his percentages conservatively overestimate the value of LDPC because, compared to other features that are standard-essential, LDPC "adds no discernible benefit for the typical user." (*Id.* ¶¶ 1278, 1291.) Mr. Thomas relies on this analysis and explains that the number of pages in the 802.11 standards are relevant because "[i]n support of its infringement contentions, Caltech identifies the pages from the various standards that each of the patents-in-suit

reads," and these are the same pages Dr. Stark uses to count the pages allegedly relevant to LDPC. (Dkt. 1250-5 [Thomas Corr. Reb. Rpt.] ¶ 264.) Mr. Thomas also agrees this method should produces reliable results because "the LDPC codes included in these standards are of no greater importance than the other instructions included in the Wi-Fi standards." (*Id.* ¶ 265.)

Each of Broadcom and Apple's experts thus identifies the factual basis for his opinion, including record evidence, and the opinions of Broadcom and Apple's experts support each other. Caltech's motion, on the other hand, simply makes a series of attorney arguments with no citation to case law or any published research.

Caltech argues that Dr. Hitt and Mr. Thomas' apportionment methods are "unreliable because they are not based on any actual cost." (Mot. at 6.) But there is no evidence that anyone has ever calculated the "actual cost" of LDPC, and the entire point of apportionment is to estimate the value of an accused feature that is difficult to quantify. *VirnetX*, 767 F.3d at 1328. The Federal Circuit has recognized "the difficulty ... [of] assigning value to a feature that may not have ever been individually sold," and "ha[s] never required absolute precision in this task[.]" *Id.* Instead, "this process may involve some degree of approximation and uncertainty." *Id.* (citation omitted). As noted above, each of the apportionment methods that Caltech challenges has been accepted by courts as an appropriate way to quantify the value of one feature in a multi-faceted product like the accused chips here.[6]

Caltech also argues that Dr. Hitt does not know what portion of Broadcom's costs is attributable to die and source code costs (Mot. at 6-7.), but this is irrelevant because it is Mr. Thomas–not Dr. Hitt–who performs an apportionment calculation

---

[6] ████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████ maining analysis improper. Here
████████████████████████████████████████████

using Dr. Blanksby's die area and source code figures. (Ex. 6 [Thomas Second Suppl. Rpt.] at Schedules 3.1, 3.2, 3.5.) This criticism also goes to weight, not admissibility.

Caltech next argues, again without citation to case law or any published research, that "Defendants' apportionment methods are also unreliable because there is no evidence that Broadcom conducts a cost-benefit tradeoff based on the indicators used (e.g., die area or lines of source code)." (Mot. at 8.) But, as noted above, ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

Caltech argues that the apportionment methods "simply assume" profit has a one-to-one relationship for every feature. (Mot. at 7, 11-12.) Not so. Dr. Stark provides a lengthy technical analysis that concludes—taking everything in Caltech's favor—that LDPC is at most equivalent in technical value to the average feature of a product with Wi-Fi, and therefore a conservative estimate is that LDPC is equal in value to the average feature. (Dkt. 1242-8 [Stark Reb. Rpt.] ¶¶ 1220-1291.)

Finally, Caltech argues—without any support from its experts—that the results of the four apportionment methodologies "vary substantially." (Mot. at 12.) To the contrary, the variance between the apportionment calculations is very modest, and Defendants' experts considered the clustering of the results as corroboration that the methods are appropriate to calculate the value of the accused feature. (*See generally* Dkt. 1250-5 [Thomas Corr. Reb. Rpt.] at ¶¶ 260-272.)

---

[7] Dkt. 1227-2 [Hitt. Rpt.] ¶ 146 nn. 294-295 (citing Ex. 5 [Broadcom "Market Reqs. Doc.] at 7-8 (evaluating die area as a "Chip Cost Requirement[]" and part of a "Margin Estimate" analysis); Ex. 18 [BRCM Negotiation Presentation] at 3-5 (evaluating die area as one factor in Wi-Fi chip "Cost Comparison" slides)).

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

## IV. CONCLUSION

For the foregoing reasons, Broadcom and Apple respectfully request that the Court deny Caltech's Motion to Exclude Certain Opinions of Dr. Hitt, Dr. Stark, Dr. Blanksby, and Mr. Thomas Relating to Damages.

DATED: July 18, 2019

Respectfully submitted,

By: /s/ *Aaron Thompson*
AARON S. THOMPSON
aaron.thompson@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
JAMES M. DOWD
james.dowd@wilmerhale.com
350 South Grand Avenue, Suite 2100
Los Angeles, California 90071
Tel:   (213) 443-5300
Fax:   (213) 443-5400

MARK D. SELWYN
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Tel:   (650) 858-6000
Fax:   (650) 858-6100

Attorneys for Defendants and Counter-Claim Plaintiffs *Broadcom Limited, Broadcom Corporation, Avago Technologies Limited, and Apple Inc.*