UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 16-3714-GW(AGRx)** | Date | August 9, 2019 |
| --- | --- | --- | --- |

| Title | *The California Institute of Technology v. Broadcom Limited, et al.* | Page | 1 of 1 |
| --- | --- | --- | --- |

Present: The Honorable   **GEORGE H. WU, UNITED STATES DISTRICT JUDGE**

| Javier Gonzalez | None Present |
| --- | --- |
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
| --- | --- |
| None Present | None Present |

Proceedings:        **IN CHAMBERS – FINAL RULINGS ON:**

**CALTECH'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF VALIDITY ON CLAIMS 20 AND 22 OF THE '710 PATENT UNDER 35 U.S.C. § 103 BASED ON IPR ESTOPPEL UNDER 35 U.S.C. § 315(e)(2) [844];**

**PLAINTIFF'S RENEWED MOTION FOR PARTIAL SUMMARY JUDGMENT OF VALIDITY UNDER 35 U.S.C. § 103 BASED ON IPR ESTOPPEL UNDER 35 U.S.C. § 315(E)(2) FOR U.S. PATENT NO. 7,916,781 [845];**

**DEFENDANT'S MOTION FOR CERTIFICATION UNDER 28 U.S.C. § 1292(b) [887];**

**DEFENDANTS' MOTION SEEKING PARTIAL RECONSIDERATION OF THE COURT'S DECEMBER 28, 2018 ORDER REGARDING IPR ESTOPPEL OF CERTAIN CLAIMS OF U.S. PATENT NOS. 7,916,781 AND 7,421,032 [888];**

**CALTECH'S MOTION TO EXCLUDE DEFENDANTS' LATE-PRODUCED DOCUMENTS AND DR. HENRY PFISTER'S UNTIMELY EXPERT DEPOSITION TESTIMONY [1024]**

Attached hereto is the Court's Final Rulings on the Motions above.

_**The California Institute of Technology v. Broadcom Limited et al.**_; Case No. 2:16-cv-03714-GW-(AGRx) Final Rulings on: (1) Plaintiff's Motion for Partial Summary Judgment of Validity of Claims 20 and 22 of the '710 Patent Under 35 U.S.C. § 103 Based on IPR Estoppel under 35 U.S.C. § 315(e)(2); (2) Plaintiff's Renewed Motion for Partial Summary Judgment of Validity Under 35 U.S.C. § 103 Based on IPR Estoppel under 35 U.S.C. § 315(e)(2) for U.S. Patent No. 7,916,781; (3) Defendants' Motion for Reconsideration of the Estoppel Order; (4) Defendants' Motion for Certification Under 28 U.S.C. § 1292(b); and (5) Plaintiff's Motion to Exclude Defendants' Late Produced Documents and Dr. Henry Pfister's Untimely Expert Deposition Testimony.

[Portions of the parties' briefing related to the pending motions addressed by this Tentative Order were filed under seal.  The parties will be expected to state their positions as to whether any material should remain under seal during the hearing on the motions, including the basis for any continued request to seal.]

I.      **Introduction**

Plaintiff The California Institute of Technology currently alleges patent infringement against Defendants Broadcom Limited, Broadcom Corporation, Avago Technologies Limited, and Apple Inc.  _See_ First Amended Complaint ("FAC"), Docket No. 36; _see also_ Docket No. 1. Plaintiff asserts that Defendants infringe fifteen claims from three of its patents: (1) U.S. Patent No. 7,116,710 ("the '710 Patent"); (2) U.S. Patent No. 7,421,032 ("the '032 Patent"); and (3) U.S. Patent No. 7,916,781 ("the '781 Patent") (collectively, the "Asserted Patents").[1]  _See_ Docket No. 409 (Plaintiff's Amended Notice of Withdrawal of Certain Asserted Claims of Asserted Patents); _see also_ Docket No. 953 (Joint Report Regarding Pending Disputed Issues).

On December 28, 2018, the Court issued a Final Ruling resolving Plaintiffs' summary judgment motion regarding _inter partes_ review ("IPR") estoppel under 35 U.S.C. § 315(e)(2) as to certain obviousness invalidity grounds raised by Defendants against the '032 and '781 Patents. "Estoppel Order," Docket No. 830.  The Court held Defendants were estopped from raising all but

---

[1] The fifteen remaining claims in this case are: Claims 20, 22, and 23 of the '710 Patent; Claims 3, 11, 13, 17, and 18 of the '032 Patent; and Claims 5, 6, 9, 10, 13, 19, and 22 of the '781 Patent.  Docket No. 409.  Of those claims, eleven were selected as representative claims for purposes of adjudication in this lawsuit: Claims 20, 22, and 23 of the '710 Patent; Claims 3, 11, 17, and 18 of the '032 Patent; and Claims 6, 9, 13, and 22 of the '781 Patent.  _See id._; _see also_ Docket No. 487, 488.  On March 22, 2019, in a joint report filed by the parties, Plaintiff stated that it intended to file a "formal notice of withdrawal" on the basis that it has "withdrawn its infringement allegations with respect to claims 5, 6, 9, and 10 of the '781 patent and claim 13 of the '032 patent."  Docket No. 953 at 2; _see also_ Docket No. 998 at 2 (Plaintiff's memorandum in support of motion to exclude improper claim construction opinions, stating that it alleges that Defendants infringe Claims 20, 22, and 23 of the '710 Patent, Claims 3, 11, 17, and 18 of the '032 Patent, and Claims 9, 13 and 22 of the '781 Patent).  Plaintiff has not yet filed such a notice, which, once filed, will be understood to remove those five claims from the case entirely given that Plaintiff does not represent that any of the claims "[s]elected for adjudication" are representative of any of the withdrawn claims.

one obviousness invalidity ground (against the '781 Patent involving Divsalar, Ping, and Frey/Frey Slides). The Estoppel Order is incorporated by reference in its entirety, and should hereinafter be understood and interpreted based on the applicable clarifications and statements made in this Order.

One day before the Estoppel Order issued, the Patent Trial and Appeal Board ("PTAB") issued Final Written Decisions finding that Defendants had failed to demonstrate that Claims 20 and 22 of the '710 Patent were invalid as obvious over various prior art combinations. Based on these additional PTAB decisions, Plaintiff filed a Motion for Summary Judgment of Validity of Claims 20 and 22 of the '710 Patent under 35 U.S.C. § 103 Based on IPR Estoppel under 35 U.S.C. § 315(e)(2). *See* Docket No. 844. Plaintiff also filed a Renewed Motion for Partial Summary Judgment of Validity under 35 U.S.C. § 103 Based on IPR Estoppel under 35 U.S.C. § 315(e)(2) for U.S. Patent No. 7,916,781. Docket No. 845-1 (public); Docket No. 852 (sealed). Those Motions were fully briefed[2] and a hearing was held on them on February 7, 2019.[3] Docket No. 884. At the hearing, the parties were permitted leave to submit additional briefing related to some overlapping issues.[4] Defendants filed a motion for reconsideration of portions of the Estoppel Order. Docket No. 888. They also asked the Court to certify the Estoppel Order for interlocutory appeal under 28 U.S.C. § 1292(b) as it relates to one question: "whether IPR estoppel applies to non-petitioned, IPR-eligible invalidity grounds of which the petitioner was aware at the time it filed its IPR petition." Docket No. 887-1 at 1.

Another hearing was held on these issues, including the fully-briefed motions for

---

[2] *See* Docket No. 854 (public); Docket No. 871 (sealed) (Defendants' Opposition to '710 Patent Motion for Partial Summary Judgment); Docket No. 864 (public); Docket No. 876 (sealed) (Plaintiff's Reply in Support of '710 Patent Motion for Partial Summary Judgment); Docket No. 857 (public); Docket No. 872 (sealed) (Defendants' Opposition to Renewed '781 Patent Motion for Partial Summary Judgment); Docket No. 863 (public); Docket No. 877 (sealed) (Plaintiff's Reply in Support of Renewed '781 Patent Motion for Partial Summary Judgment).

[3] At the February 7, 2019 hearing, a tentative ruling was issued providing the Court's tentative views on the issues raised by the parties. *See* Docket No. 884. The tentative order has not been adopted as a final ruling of the Court and is not a final determination in this matter.

[4] After the February 2019 hearing, Plaintiff and Defendants each filed a short supplemental brief regarding their proposals for when a patent challenger should be permitted to present an invalidity theory under the "known or used" prong of 35 U.S.C. § 102(a), despite statutory estoppel as to related prior art publication invalidity theories. Docket Nos. 891, 903.

reconsideration[5] and certification,[6] on March 11, 2019.[7]  At the March 11, 2019 hearing, after further discussion, Defendants were directed to file and serve a "listing of particularized evidence for their 'known or used' prior art (Pfister/Pfister Slides and Frey/Frey Slides) in support of their obviousness invalidity theories."  Docket No. 936.  The parties agreed the listing would not be due until after depositions of certain individuals - Pfister and Siegel - had been taken.

After Pfister's deposition, the parties became embroiled in yet another dispute.  Plaintiff filed an *ex parte* application to exclude documents that were produced on the morning of Pfister's deposition and to strike expert testimony during Pfister's deposition.  Docket No. 1018.  Multiple hearings were held in quick succession on this dispute.  *See* Docket Nos. 1042 (Minutes of Hearing April 16, 2019); 1048 (Minutes of Hearing April 18, 2019), 1100 (Minutes of Hearing April 25, 2019).  The parties have submitted supplemental briefs and reports as directed by the Court at those hearings on various issues related to Pfister's and Siegel's depositions.  *See, e.g.* Docket Nos 1083, 1084, 1105, 1191.

After these supplemental briefs were filed, the parties returned again for two more hearings on June 6, 2019 and June 17, 2019.[8]  The parties' "known or used" dispute was discussed at both of these hearings as well before the matters were again taken under submission.

For the reasons stated in this Order, the Court would rule as follows:

- The Court would **GRANT** Defendants' Motion for Reconsideration of the Estoppel Order (Docket No. 888) and accordingly reconsider its determinations in the Estoppel Order with respect to invalidity grounds involving Pfister/Pfister Slides.

- The Court would **CLARIFY** the Estoppel Order as provided herein.

- The Court would **GRANT** Plaintiff's Motion to Exclude (Docket No. 1024) and **EXCLUDE** the documents produced at the depositions of Pfister and Siegel and

---

[5] *See* Docket No. 905 (Plaintiff's Opposition); Docket No. 909 (public), Docket No. 919 (sealed) (Defendants' Reply).

[6] *See* Docket No. 904 (Plaintiff's Opposition); Docket No. 917 (Defendants' Reply).

[7] At the March 2019 hearing, a tentative ruling was issued providing the Court's initial views on the issues then raised by the parties.  The tentative ruling has not been adopted as a final ruling of the Court and is not a final determination in this matter.  Docket No. 936.

[8] At the June 6, 2019 hearing, tentative rulings were issued providing the Court's tentative views on the issues raised by the parties.  The tentative order has not been adopted as a final ruling of the Court and is not a final determination in this matter.

**STRIKE** certain testimony provided at Pfister's deposition as improperly relating to matters of expert opinion.

- The Court would **GRANT** Plaintiff's Motion for Summary Judgment of Validity as to Claims 20 and 22 of the '710 Patent (Docket No. 844) as it relates to each of Defendants' proffered 35 U.S.C. § 103 prior art grounds.

- The Court would **GRANT** Plaintiff's Renewed Motion for Partial Summary Judgment of Validity Under 35 U.S.C. § 103 Based on IPR Estoppel under 35 U.S.C. § 315(e)(2) for U.S. Patent No. 7,916,781 and in doing so **MODIFY** the Estoppel Order as it pertains to that patent such that Defendants are estopped from presenting each of their 35 U.S.C. § 103 obviousness invalidity grounds for Claims 13 and 22 of the '781 Patent and Claims 11 and 22 of the '781 Patent;

- The Court would **DENY** Defendants' Motion for Certification Under 28 U.S.C. § 1292(b).

## II.     Legal Standard

### A.     IPR Statutory Estoppel

The Court specifically incorporates by reference the Legal Standard Section of the Estoppel Order.  Docket No. 830 at 2-4.  The Court also incorporates by reference the legal analysis and determination in the Estoppel Order regarding the scope of IPR estoppel under 35 U.S.C. § 315(e)(2).  *Id.* at 6-15.  Specifically, the Court reiterates its conclusion that "statutory IPR estoppel applies to invalidity grounds that a petitioner 'reasonably could have raised' in its IPR petition, which includes prior art that a 'skilled searcher conducting a diligent search reasonably could have been expected to discover.'"  *Id.* at 15 (citing *SiOnyx, LLC v. Hamamatsu Photonics K.K.*, 330 F. Supp. 3d 574, 601 (D. Mass. 2018)).  For the sake of additional clarity, the Court acknowledges and recognizes that such grounds include only grounds "that could be raised under section 102 or 103 and [that] only . . . consist[ ] of patents or printed publications."  35 U.S.C. § 311(b).

### B.     Rule 37(c)(1)

Under Rule 37(c)(1), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  The burden is on the party facing the sanction to show that the failure to disclose is substantially justified or harmless.  *Yeti by Molly, Ltd. v. Deckers Outdoor*

*Corp.*, 259 F.3d 1101, 1107 (9th Cir. 2001). "Among the factors that may properly guide a district court in determining whether a violation of a discovery deadline is justified or harmless are: (1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith or willfulness involved in not timely disclosing the evidence." *Lanard Toys Ltd. v. Novelty, Inc.*, 375 Fed. App'x. 705, 713 (9th Cir. 2010) (citing *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003)).

Generally, "the district court's discretion to issue sanctions under Rule 37(c)(1)" is given "particularly wide latitude." *Yeti by Molly,*259 F.3d at at 1107. However, the discretion is somewhat limited when the sanction amounts to dismissal of a claim. *R & R Sails, Inc. v. Ins. Co. of Pa.*, 673 F.3d 1240, 1247 (9th Cir. 2012). In such a case, the district court is "required to consider whether the claimed noncompliance involved willfulness, fault, or bad faith, and also to consider the availability of lesser sanctions." *Id.*

## III.   <u>Factual Background Related to IPR Proceedings</u>

The relevant factual background related to the '781 and '032 Patents has already been described in the Estoppel Order, and the Court specifically incorporates that portion of the Estoppel Order by reference. *See* Docket No. 830 at 4-6.

As mentioned, the PTAB issued two Final Written Decisions finding that Defendants[9] had failed to demonstrate that Claims 20 and 22 of the '710 Patent are invalid. The PTAB specifically considered prior art "grounds" during this round of '710 Patent IPR proceedings that involved the Frey Paper, Divsalar, and Luby97. *See* Docket No. 844-10 (IPR2017-00210, Paper 77 (Final Written Decision) at 8). In litigation before this Court, the following table summarizes the invalidity grounds Defendants now rely on to assert invalidity of Claims 20 and 22 of the '710 Patent:

| Patent | Claim | References Asserted in District Court |
|--------|-------|---------------------------------------|
| '710 Patent | 20, 22 | Divsalar*, Frey/Frey Slides*, and Luby97 |
| | | Pfister/Pfister Slides*, Frey/Frey Slides*, and Luby97 |
| | | Pfister/Pfister Slides*, Luby97, and Luby98 |
| | | Divsalar*, MacKay, and Luby97 |

---

[9] Plaintiff previously explained: "Apple Inc. ('Apple') is identified as the petitioner in all of the IPRs at issue, and Broadcom Corp. ('Broadcom') is identified as a real party-in-interest. Broadcom Corp. and Avago Technologies Ltd. are each subsidiaries of Broadcom Ltd., which is now known as Broadcom Inc." Docket No. 740-1 at 1.

| | | Divsalar*, Richardson99*, and Luby97 |
|---|---|---|
| | | Divsalar*, MacKay, Luby97, and Pfister/Pfister Slides |
| | | Divsalar*, Luby98, and Luby97 |

Defendants have asserted that the "references" marked with asterisks are being brought under the "known or used" prong of pre-America Invents Act, 35 U.S.C. § 102(a).

## IV.   Analysis

As observed in the Estoppel Order (Docket No. 830 at 15), Defendants again do not dispute that, if IPR estoppel applies to them, it applies to all of them (even though, for instance, Apple filed the petitions).

In addition, Defendants state: "[a]lthough [they] maintain that they should be permitted to present the inventions disclosed in Richardson99 and Divsalar, Defendants understand that the Court's estoppel findings as to these two grounds in its December [28], 2018 ruling are unlikely to be changed."  Docket No. 871 at 10 n.2; *see also id.* at 15 n.4, Docket No. 830 at 17-20.  In their summary judgment briefing, Defendants do not attempt to present any additional evidence or argument regarding these pieces of prior art, although both of them appear in prior art combinations raised by Defendants as to the '710 Patent, which was not previously the subject of a summary judgment motion.  Notably, however, in their first "known or used" prior art listing filed May 3, 2019, Defendants devoted an entire section of their proffer to re-asserting a prior art theory based on Richardson99 as "known or used" prior art.  *See, e.g.*, Docket No. 1118 at 46-57.  Defendants argue that they did so because "Caltech has recently alleged that Richardson99 is not a printed publication that could have been raised in an IPR."  Docket No. 1118 at 54-55.  Defendants' assertion does not support revisiting the parties' dispute relating to Richardson99, which was addressed in the Estoppel Order.  *See* Docket No. 830 at 17-19.  There, the Court observed that "to the extent Defendants would assert that Richardson99 is not a printed publication because it was not publicly accessible, an argument that Richardson99 is prior art 'known or used' before the invention would also fail."  *Id.* at 18.  Defendants do not explain why the Court's determination would no longer apply, nor do they explain their earlier failure to present arguments regarding Richardson99 in their opposition to Plaintiff's IPR estoppel summary judgment motion for the '710 Patent.  Defendants also did not re-raise their arguments regarding Richardson99 in the context of the IPR estoppel dispute at the June hearings.  Defendants have failed to submit evidence that would preclude summary judgment of no invalidity based on estoppel as to their invalidity

6

grounds involving Divsalar and Richardson99 as to Claims 20 and 22 of the '710 Patent.  Plaintiff's summary judgment motion (Docket No. 844) would be **GRANTED-IN-PART** on these bases.

The parties focus their arguments in the briefing for the pending estoppel-related motions on: 1) Pfister/Pfister Slides and 2) Frey/Frey Slides.   Defendants specifically identify "the following invalidity grounds based on inventions that were 'known or used' in the United States before Caltech's alleged conception:"

| Claims | Obviousness Combinations in this Case |
|---|---|
| Claims 20 and 22 of the '710 Patent | Pfister/Pfister Slides*, Frey/Frey Slides*, and Luby97 |
| | Pfister/Pfister Slides*, Luby97, and Luby98 |
| | Divsalar, MacKay, Luby97, and Pfister/Pfister Slides* |
| | Divsalar, Frey/Frey Slides*, and Luby97 |
| Claims 11 and 18 of the '032 Patent | Ping, MacKay, and Pfister/Pfister Slides* |
| | Ping, Luby98, and Pfister/Pfister Slides* |
| Claims 13 and 22 of the '781 Patent | Divsalar, Ping, and Frey/Frey Slides* |
| | Pfister/Pfister Slides*, Luby97, and Luby98 |

Docket No. 871 at 10 ("known or used" prong references identified with asterisks).

### A.   Requests for Reconsideration as to the '781 and '032 Patents

In the round of briefing leading up to the February 2019 hearing, the parties' arguments included explicit or implicit requests for reconsideration of aspects of the Estoppel Order.  *See, e.g.*, Docket No. 871 at 2 (Title of Defendants' opposition as "Defendants' Opposition . . . and Request for Reconsideration as to Pfister" and stating, "[t]o the extent that the Court concluded that the Pfister Slides are a printed publication subject to estoppel . . . Defendants respectfully request reconsideration"); Docket No. 852 (Title of Plaintiff's motion as "Renewed Motion" and referring to "questions and issue[s] raised by the Court in its December 28th Order").  Neither party referenced the legal standard that applies to a motion for reconsideration.[10]  Nor did either party,

---

[10] Local Rule 7-18 states in part:

A motion for reconsideration of the decision on any motion may be made only on the grounds of (a) a material difference in fact or law from that presented to the Court before such decision that in the exercise of reasonable diligence could not have been known to the party moving for reconsideration at the time of such decision, or (b) the emergence of new material facts

through its briefing, otherwise demonstrate that the requirements for bringing a motion for reconsideration had been met. At the hearing, after Defendants renewed their request that portions of the Estoppel Order be modified based on the analysis in the Court's February 2019 tentative ruling, the Court directed Defendants to bring any requests for reconsideration of the Estoppel Order in the form of a proper motion for reconsideration.

Apparently, however, the parties agree that the Court has now been presented with a more complete factual record and "the Court should consistently apply the legal standard it determines to be appropriate to the facts for each of the claims and prior art combinations at issue on all asserted patents." Docket No. 905 at 11-12; *see also* Docket No. 911-1 at 1. In light of this agreement and the particular procedural circumstances in this case, the Court thus **GRANTS** Defendants' request for reconsideration of the Estoppel Order with respect to obviousness combinations asserted against the '781 and '032 Patents involving the Pfister/Pfister Slides.

As Defendants note, Plaintiff takes its opposition to Defendants' reconsideration motion as an opportunity to expound on its arguments regarding when a patent challenger should be permitted to present an invalidity theory under the known or used prong of 35 U.S.C. § 102(a), despite statutory estoppel as to related prior art publication invalidity theories. *See generally* Docket No. 905. Defendants respond in kind in their Reply.[11] Docket No. 911-1. Although the Court has concerns with *both parties* circumventing the page limits that the Court set on supplemental briefing related to this (Docket No. 884), the Court will also consider the parties' arguments on this issue.

**B.      Legal Standard for Distinguishing a Non-Estopped Invalidity Ground from an Estopped Invalidity Ground Involving a Prior Art Patent or Printed Publication**

The parties disagree about what is required to take an invalidity ground out of the realm of

---

or a change of law occurring after the time of such decision, or (c) a manifest showing of a failure to consider material facts presented to the Court before such decision.

C.D. Cal. L.R. 7-18; *see also Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999) ("[A] motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law.").

[11] Defendants also argue that Plaintiff is again raising reconsideration arguments without meeting the procedural requirements for reconsideration. Docket No. 911-1. Although the Court tends to agree with Defendants' contention, given both parties' emphasis and request for consistent determinations across the three asserted patents, the Court will consider all arguments presented to the extent they are deemed relevant.

a prior art patent or printed publication theory of invalidity (where such patent or printed publication has been presented to and reviewed by PTAB) and into the realm of some other related invalidity theory not subject to IPR statutory estoppel (*e.g.* a speech at an industry conference or a physical product).  To the Court and the parties' knowledge, this dispute has never been addressed by the Federal Circuit.  A handful of district court cases have considered whether IPR statutory estoppel can preclude a patent challenger from relying on a prior art product or system, where that product or system is related to a prior art printed publication that could have been asserted in an IPR.  Notably, of those district court decisions, none have extended estoppel to prior art grounds involving the product or system.  No cases have dealt with the specific issue presented here: when/if statutory IPR estoppel can preclude a patent challenger from relying on a "known or used" invalidity theory that is related to a prior art printed publication that could have been asserted in an IPR.

In *Star Envirotech*, the court declined to extend statutory estoppel to preclude an invalidity argument based on a machine, finding that "the physical machine itself discloses features claimed in the '808 Patent that are not included in the instruction manual, and it is therefore a superior and separate reference."  *Star Envirotech, Inc. v. Redline Detection, LLC*, No. SACV 12-01861 JGB (DFMx), 2015 WL 4744394, at *4 (C.D. Cal. Jan. 29, 2015).  The *SRAM* case, cited by Plaintiff, followed *Star Envirotech's* "superior and separate reference" standard in declining to apply statutory estoppel.  *SRAM, LLC v. RFE Holding (Can.) Corp.*, No. 15-cv-11362, Docket No. 102 at 11-12 (N.D. Ill. Jan. 25, 2019).

Similarly in *SiOnyx*, the court found that estoppel would not apply to a prior art obviousness invalidity ground involving a product, noting that the defendants had consistently relied on a certain aspect of the product, as reflected in a potentially non-public manufacturing specification, as "the only citation for certain claim limitations."  *SiOnyx, LLC v. Hamamatsu Photonics K.K.*, 330 F. Supp. 3d 574, 602, 603-04 (D. Mass. 2018).  Although at first blush *SiOnyx's* conclusion thus appears to similarly adopt the *Star Envirotech* standard, elsewhere, the court more generally stated that the plaintiff had not "carried its burden to show that publicly available materials are the 'real' references that defendants are now trying to pass off as the product itself."  *Id.*

The court in *Clearlamp* also mentioned *Star Envirotech's* "superior and separate" standard, but observed, "[s]ince *Star Envirotech* found that the product was not cumulative of other prior

art, the court did not reach the issue of when cumulative prior art would not be allowed in district court proceedings." *Clearlamp, LLC v. LKQ Corp.*, No. 12 C 2533, 2016 WL 4734389, at *8 (N.D. Ill. Mar. 18, 2016).  After considering a PTAB decision where the PTAB found estoppel did not attach to a prior art reference found "redundant" in a previous IPR proceeding, the court found, "[t]he relevant inquiry . . . is not whether the ground is redundant of a ground that was asserted but, rather, whether the ground reasonably could have been raised." *Id.*  In considering the dispute at hand, the district court found that the defendant was attempting to "cloak" its prior art ground based on a datasheet by characterizing it as a prior art ground based on a product itself.  *Id.* at *9 ("While LKQ seeks to cloak its reliance upon UVHC3000 as a product, so as to avoid § 315(e)(2) estoppel, such an argument is disingenuous as it is the UVHC3000 datasheet upon which LKQ relies to invalidate the asserted claims").  Ultimately, estoppel did not attach because the plaintiff failed to meet its burden of showing that the product datasheet could have been found by a searcher performing a reasonable search at the time the IPR petition was prepared. *Id.* at *9-10.

*Milwaukee Elec. Tool Corp. v. Snap-On Inc.*, 271 F. Supp. 3d 990, 1032 (E.D. Wis. 2017), *appeal pending*, No. 18-1516 (Fed. Cir. Feb. 5, 2018), is consistent with *Clearlamp* and *SiOnyx*. In that case, the court similarly expressed concerns that the defendant should not be allowed to "skirt" estoppel "by purporting to rely on a device without actually relying on the device itself," but otherwise found that estoppel would not extend to prior art grounds including products. Indeed, considering an argument that a party should be estopped from relying on a prior art product because a diligent searcher could be expected locate the underlying printed publications, the court in *Milwaukee Electric* stated it was "not convinced that the principle of excluding non-petitioned grounds should be extended so far, given the clear limitation of Section 311(b) to written materials." *Id.*

The same is true for *Biscotti*.  In that case, the plaintiff characterized the defendant's system prior art "as printed subject matter in disguise."  *Biscotti Inc. v. Microsoft Corp.*, No. 2:13 CV 01015 JRG-RSP, 2017 WL 2526231, at *8 (E.D. Tex. May 11, 2017).  The court noted that the defendant "could not have raised a prior art 'system' during IPR proceedings.  If, however, [defendant's] purported system prior art relies on or is based on patents or printed publications that [defendant] would otherwise be estopped from pursuing at trial . . . then [defendant] should be estopped from presenting those patents and printed publications at trial." *Id.*  The court did not make an ultimate determination on the issue beyond that observation.

After considering the two apparent schools of thought on the issue, the Court declines to adopt a "superior and separate reference" standard or any other higher standard that would require, for instance, that certain claim limitations be independently satisfied by prior art in a way that is different from an associated prior art patent or printed publication.  The statute does not include such requirements, and they would likely extend the reach of statutory IPR estoppel beyond its intended scope.  As Defendants noted at the hearing, "redundant" prior art grounds appear commonly in patent litigation.  For instance, a primary reference may be used to argue that the majority of claim limitations are disclosed, and a patent challenger may then simply swap out secondary references to show that one final limitation is also disclosed in the prior art.  Finding that a patent challenger should be estopped from relying on a piece of prior art because that piece of prior art is used to meet the same claim limitations as a related prior art printed publication would be contrary to this practice and ignore the importance of the difference in the underlying evidence used to support the prior art theory.  Instead, the Court agrees with *Clearlamp*, *Milwaukee Electric* and other decisions that attempt to discern if a patent challenge is simply swapping labels for what is otherwise a patent or printed publication invalidity ground in order to "cloak" its prior art ground and "skirt" estoppel.[12]

There can be, of course, a unique connection between prior art invalidity theories that requires closer scrutiny.  For instance, in a classic example of a "known or used" prior art invalidity theory, a scientist presents their research at a scientific conference to others in the field.  What if the scientist simply read his or her slide presentation – and those slides were publicly available the same day – verbatim out loud to the conference attendees?  In such circumstances, a "known or used" invalidity theory based on the presenter's oral statements would seem to be an exact duplicate of the invalidity theory based on the printed document itself.  Although the Court does not believe that a "known or used" invalidity theory need be "superior" to a printed publication invalidity theory to survive estoppel (or similarly, that it needs to provide some disclosure of an independent claim limitation that was not provided by the printed publication), there must be *some*

---

[12] That being said, in certain circumstances the Court recognizes that if a piece of prior art is indeed "superior and separate," this may be a helpful benchmark to a court considering whether a patent or printed publication has merely been "cloaked."  *Clearlamp*, for instance, suggests that might have been the case in *Star Envirotech*.  *See Clearlamp*, 2016 WL 4734389, at *8.

*substantive* difference between the two theories that is germane to the invalidity dispute at hand.[13]

The analysis in the Estoppel Order was somewhat ambiguous on this issue and thus the Court specifically **CLARIFIES** the Estoppel Order, and specifically its analysis of the same cases and issue, to reflect this conclusion.  Docket No. 830 at 26-27.

### C. Procedural Background and Analysis of Procedural Issues Related to Defendants' Remaining Purported "Known or Used" Prior Art

As early as May 2018, Defendants were suggesting in filings that they were asserting certain prior art invalidity grounds, including "Pfister Slides/Paper," under a "known or used" theory.  Docket No. 517 at 9, 11-12.  But despite these assertions, the invalidity expert report that Defendants served in August 2018 did not meaningfully disclose a "known or used" theory of invalidity separate and apart from a review of the prior art documents themselves.  Instead, the Frey Report simply stated:

> [i]n the event that the Court finds that the patents-in-suit are entitled to a date of invention that predates the publication of Frey, and the Frey paper is deemed not to be prior art to the patents-in-suit, then the Frey Slides may be substituted for the Frey paper in all of the positions explained below.

Original Opening Invalidity Expert Report of Dr. Brendan Frey, Docket No. 599-4 ("Original Frey Report") at ¶ 242 (emphasis added).  In resolving Plaintiff's motion to strike portions of the Frey Report, the Court found, "[t]his is not the language of an expert purporting to use the Frey Paper/Frey Slides as a single reference. Instead, Defendants/Frey appear to be hedging their bets and trying to maintain two alternative prior art references until a priority date dispute is resolved." Docket No. 673 at 9.  Defendants were permitted to file a supplemental Frey Report.  In a "Notice" filed with the Court soon after, and purportedly in response to discussion at the hearing, Defendants also stated that they "intend[ed] to present the Pfister Paper and Pfister Slides and the Frey Paper and Frey Slides as evidence of inventions 'known or used by others in this country' under 35 U.S.C. § 102(a)."  Docket No. 682.

In Volume I of the supplemental Frey Report, however, Frey did not provide opinions that integrated paper and slides, let alone present invalidity theories that considered, first and foremost, what was known or used in the United States at the time the invention was filed.  *See generally* Amended Opening Invalidity Expert Report of Dr. Brendan Frey, Docket No. 740-25 ("Amended

---

[13] At the hearing, the parties should be prepared to present their positions on this issue, and particularly their positions on the example of the scientist reading his or her slides verbatim out loud at a conference.

Frey Report Vol. I").  Instead, supplemental Frey Report, Volume I goes through substantially the same analysis of the specific documents in question that was present in the original Frey Report. *Compare, e.g.* Original Frey Report ¶¶ 225-242 *with* Amended Frey Report Vol. I ¶¶ 225-241.  Only two real differences separate Volume I of the supplemental Frey Report from the original Frey Report with respect to Pfister/Pfister Slides and Frey/Frey Slides – *i.e.* (1) Frey conveniently omits his statement that the Frey/Pfister Slides could be substituted for the Frey/Pfister Paper (*Compare, e.g.* Original Frey Report ¶ 241-42 *with* Amended Frey Report Vol. I ¶¶ 241-42); and (2) Frey adds three perfunctory sentences that reference a "known or used" theory (Amended Frey Report Vol. I ¶¶ 225, 230, 244).

At the June 17 hearing, Defendants observed, however, that the supplemental Frey Report spans at least five separate volumes.  *See* Docket Nos. 1081-37 (Amended Frey Report Vol. II), 1081-38 (Amended Frey Report Vol. IV), 1081-39 (Amended Frey Report Vol. V), 1081-41 (Amended Frey Report Vol. III).  Volumes II through IV include Frey's invalidity opinions patent-by-patent.  Volume V includes Frey's inequitable conduct opinions.  Taking Volume II as an example, Frey presents his invalidity opinions with respect to the '710 Patent.  Early in this volume, Frey introduces Pfister/Pfister Slides and Frey/Frey Slides as "known or used" prior art. For instance, he states:

> As an initial matter, Pfister and the Pfister Slides are authored by the same individuals and are both directed to the same methods and systems for encoding signals involving repeat-accumulate codes.  Accordingly, one of ordinary skill in the art would have considered these documents together as evidence of what was known and used by persons of ordinary skill in the art.

Amended Frey Report Vol. II, Docket No. 1081-37 ¶ 2; *see also id.* ¶ 6 (similar opinions presented for Frey/Frey Slides).  Beyond statements relating to a motivation to combine the prior art, however, Frey's limitation-by-limitation invalidity analysis again focuses on the disclosure within the text of the documents themselves.  *See, e.g.*, *id.* ¶¶ 23-35 (considering the disclosure of Pfister/Pfister Slides as it relates to the preamble of Claim 20 as part of a combination including Pfister/Pfister Slides, Frey/Frey Slides, and Luby97).  Also notably, as Plaintiff observed at the June 17 hearing, Frey states in Volume I of his amended report that his Allerton Conference presentation "covered the contents disclosed in Frey/Frey Slides."  Amended Frey Report Vol. I ¶ 226.

After this early chain of events, Plaintiff filed its motion for partial summary judgment of

13

no invalidity based on IPR estoppel for two of the three asserted patents. At the first (of many) hearings that would be held on the IPR estoppel dispute, the Court issued a tentative ruling that voiced concerns with the supplemental Frey Report's failure to present a meaningful "known or used" invalidity theory, as well as concerns with the lack of any other factual evidence submitted by Defendants to support such an alternative theory. Docket No. 828. In the latest Estoppel Order issued on December 28, 2019, the Court permitted Defendants to maintain one "known or used" invalidity theory based on certain documentary evidence that they had raised at the hearing. The IPR estoppel summary judgment motion for the third asserted patent followed. And soon after, supplemental briefing the motion for reconsideration of the Estoppel Order were filed.

In the meantime, some of the parties' earlier agreements in this case began coming back to complicate the prosecution of this litigation. Back in 2017 while fact discovery was still open, the parties struck a deal regarding the depositions of certain witnesses. The deal, somewhat ironic in retrospect, apparently sought to cut down on the time and expense of taking depositions of certain witnesses twice. The parties agreed that "certain fact witnesses who will also be providing expert reports" should only have their depositions taken during expert discovery after they had submitted their expert reports. Docket No. 685-7. The parties specifically agreed that Frey, Siegel, Pfister, and Jacobsen, each identified on Defendants' Initial Disclosures, would not be deposed during fact discovery. Defendants only ultimately served expert reports for Frey and Siegel. Defendants attempted to block Plaintiff from taking Pfister's deposition on a technicality, requiring the Court's intervention in October 2018. Docket No. 746. But apparently, delays continued for the depositions of some of these individuals. Frey's deposition was not taken until December 2018, and Pfister's and Siegel's depositions were delayed until April 2019, after the parties had even filed their first round of summary judgment motions in March 2019.

And therein lies the rub: Despite the grave concerns raised by Defendants' earlier shifts in arguments and failure to present an expert report that meaningfully laid out a "known or used" invalidity theory, since January 2019, the Court has allowed significant additional briefing and argument on the topic of Defendants' supposed "known or used" invalidity theories because of fairness concerns. The difficulty with a "known or used" invalidity theory is that, unlike an invalidity theory that simply relies on one or more prior art reference documents, "known or used" is more likely to implicate highly factual evidence in the form of testimony and contemporaneous documentation. The parties *agreed* to delay the depositions of witnesses with significant factual

14

information relating to these "known or used" invalidity theories, and ultimately delayed them significantly.  As testimonial evidence continued trickling in, Defendants continued to add it to their filings to support their assertions about "known or used" invalidity theories.

But ultimately, agreeing to delay the depositions of witnesses known to possess material factual information relating to an invalidity theory cannot excuse, as a general matter: (1) Defendants' failure to search for and disclose other evidence, such as documents, that factually support that invalidity theory and (2) Defendants' failure to timely disclose the general contours of a "known or used" invalidity theory.  With numerous submissions now before the Court, these procedural shortcomings control the outcome.

### a.      Late Disclosure of the Pfister and Siegel Documents

Regarding the first issue, the Court and parties have now conferred multiple times on the issue of whether documents produced on the morning of Pfister's and Siegel's depositions should be excluded from this case.  During the most recent of the numerous hearings on the dispute, the Court asked the parties to respond in writing to the following question:

> If a party has retained an individual as an independent contractor / expert consultant such that the other party is not permitted to contact that individual independently, and that individual has relevant factual information pertaining to the retaining party's claims or defenses, does the retaining party have an obligation to direct the individual to search for relevant documents for production in a timely fashion?

Tr. at 31:22-32:4.  The parties attack this "prompt" from two opposing angles.  Plaintiff focuses on a party's obligations to search for and produce evidence that supports that party's claims and defenses.  Defendants focus on the scope of a party's discovery obligations with respect to third-party material that is not technically in the party's custody or control.  Other peripheral arguments abound, but the core dispute begins with whether the question is best viewed from one of these two angles.

Although Defendants ultimately did not ask Pfister to prepare an expert report, Defendants retained Pfister, Siegel, and Frey as expert consultants.  At least when Defendants retained Pfister in January 2017, Pfister was instructed to contact Defendants if he was contacted by Plaintiff or its attorneys regarding the case.[14]  In their amended initial disclosures listing Pfister, Siegel, and

---

[14] Defendants submitted Pfister's engagement agreement for *in camera* review after the April 18, 2019 hearing on the dispute.

15

Frey, Defendants further stated that these individuals should be contacted via Defendants' counsel. Docket No. 1030-1 at 2, 4.

The issue of whether these facts meant that Defendants did or did not have "control" over these consultants and their documents, however, is not the central concern.  Nor is Plaintiff's ability to request documents from these individuals a central concern (although, arguably, Plaintiff's ability to do so was limited by those individuals' relationships with Defendants).  In this case, at least since May 2018, Defendants have stated that they intend to assert "known or used" invalidity theories based on the work of these three men.  Indeed, Defendants have stated at hearings that they chose to have Siegel serve an expert report (rather than Pfister) because Siegel is the person who actually presented his and Pfister's work at a particular conference.  In other words, Defendants have known for quite some time that the factual knowledge of their expert consultants was relevant - indeed, central - to some of Defendants' invalidity arguments.  Why, then, did Defendants fail to at least request that Pfister, Siegel, and Frey fully search their files for all relevant material in a timely fashion for materials that might factually support Defendants' invalidity claims?  And, moreover, why did Defendants fail to timely produce such documents if obtained?

The issue regarding these documents is not that they were not disclosed in invalidity contentions or expert reports.  It is that they were not sought after for disclosure in a timely manner *at all*.  Defendants argue that placing a duty on them to search their experts' documents creates an unfair double standard and expands the scope of their obligations under the Federal Rules.  Docket No. 1169 at 5-6.  The issue is not that Defendants had a duty to search their experts' documents.  The issue is that Defendants, if they wished to rely on certain factual evidence to support particular claims, should have timely sought discovery from the witnesses likely in possession of that factual evidence so that it, in turn, could be timely disclosed to Plaintiff.  For these reasons, the Court finds that the documents produced at Pfister's and Siegel's depositions were not timely disclosed, and that their late disclosure was not substantially justified or harmless.  Indeed, the Court finds the timing of disclosure of the documents highly prejudicial to Plaintiff, strongly supporting

exclusion.[15]

Defendants make other arguments, including that Pfister and Siegel fully complied with the subpoenas Plaintiff served on them.[16]   This argument is insufficient in the current circumstances.  The Court is concerned by the technical reading of the subpoenas that inspired Defendants' counsel to wait to produce the documents on behalf of Pfister and Siegel until the morning of their depositions.  Defendants' counsel's decision to delay in sharing with Plaintiff's counsel hundreds of pages of substantive factual material from its expert consultants on the morning of those consultants' depositions does not support a finding of lack of prejudice.  It also fails to excuse Defendants' earlier shortcomings and lack of diligence in their discovery efforts.

At the hearing, Defendants emphasized that they *did* make an earlier request of their experts and consultants to search their files for relevant materials.  Indeed, Pfister did produce a collection of documents before the fact discovery cutoff.  However, Defendants represented at the hearing that at least Pfister misunderstood the scope of relevant documents he was being asked to produce at the time, which is why the collection of documents the parties dispute now were not produced at the time.[17]   Defendants argued that their experts' and consultants' honest misunderstanding about the material they were expected to identify and produce should not be held against Defendants themselves.  But this argument does not negate the undue prejudice Plaintiff faces by this late disclosure, and the Court finds it insufficient to support permitting production and use of these documents in this case.

For these reasons, the Court would adhere to the tentative views that it expressed during the April 25, 2019 hearing (*see* Docket No. 1100) regarding exclusion of the Pfister and Siegel documents and the other matters related to the depositions of those two individuals.  It would **EXCLUDE** the late-produced documents and **STRIKE** certain portions of Pfister's deposition

---

[15] Defendants' counsel also stated at a previous hearing that it would be willing to withdraw any reliance on the Siegel documents.  Defendants' have apparently gone back on this statement.  The Court finds Defendants' statement at the hearing as an independent basis for exclusion of the Siegel documents.

[16] Defendants also argue about Plaintiff's conduct in relying on 28 *public* documents (that had not been earlier disclosed) during the deposition of Jacobsen.  Docket No. 1169 at 6.  Defendants did not originally request that those *public* documents be excluded, and Defendants' current arguments regarding the circumstances of Jacobsen's deposition are not persuasive.

[17] At the hearing, Plaintiff observed that Pfister was also an expert in the *Hughes* case before Judge Pfaelzer and an expert in at least some of the IPR proceedings.

that implicate expert opinion.[18]   The parties should be prepared to discuss at the hearing issues including whether Defendants would still seek to reopen the deposition of Siegel based on these determinations.

> **b.**     **Whether Disclosure of "Known or Used" Invalidity Theories Now Asserted Was Timely and Whether Current Theories Include Germane Differences Compared to Printed Publication Invalidity Theories**

Regarding the second issue - whether Defendants timely disclosed the general contours of a "known or used" invalidity theory such that they can now assert that particular theory - the analysis has not been easy.   In addition to the shortcomings in Frey's expert reports, the Court agrees with Plaintiff that meaningful review of the dispute has been obscured by how Defendants have opted to present information in their recent proffers for those theories.   Although Defendants may have opted to include additional information for completeness, the Court agrees, for instance, that it is irrelevant and indeed unhelpful to the present inquiry for Defendants to include in their supplemental charts information relating to Divsalar, Luby97, Luby98, Ping, and MacKay.   *See* Docket No. 1196 at 23.   The Court had hoped that Defendants would submit just two charts - one for Pfister / Pfister Slides and one for Frey / Frey Slides - that focused specifically on showing how evidence related to these two specific pieces of "§ 102(a) known or used prior art" would be used to support Defendants' invalidity theories.   Having determined that the late-disclosed Pfister

---

[18] The parties have filed ongoing briefing regarding objections to portions of Pfister's deposition testimony on the basis that it is impermissible expert testimony. *See, e.g.*, Docket No. 1084, 1105, 1191. Defendants have also filed an *ex parte* application attaching another extensive report in response to Plaintiff's most recent iteration of Pfister objections. Docket No. 1201. In excluding Pfister's and Siegel's late-disclosed documents, the Court would further exclude any testimony about those documents. This determination moots many of Plaintiff's objections to specific Pfister testimony. In addition, Plaintiff's objections to the following portions of Pfister's testimony would be tentatively granted at this time: 145:33-146:15, 161:24-165:8, 172:17-172:23, 174:1-174:10, 190:7-190:10, 209:2-215:2, 217:10-220:7, 220:19-221:4, 226:11-227:20, 228:18-231:14, 245:6-247:20, 264:7-266:11, 268:11-269:6. These portions of Pfister's testimony largely relate to characterizations of the Pfister Slides and Pfister Paper, as well as comparison to and characterization of other prior art references. In this case, the Court finds these matters slip too far into the realm of expert testimony regarding the scope of the prior art. Plaintiff also presented objections to some of Pfister's testimony as impermissibly interpreting the meaning or scope of terms that appear in the asserted patent claims. Although the Court does not find that wholesale exclusion of this testimony is appropriate at this time, the Court cautions Defendants that use of this testimony for certain purposes (such as evidence to support a particular interpretation of a claim term or as evidence to support an infringement analysis) may later warrant an objection. The Court overrules Plaintiff's objections to Pfister's testimony in response to Plaintiff's own questioning. *See* Docket No. 1191 at 5 n.5, 6; *see also* Docket No. 1202-2 at 4-5. Plaintiff's other objections to Pfister's testimony in response to Defendants' questioning are otherwise overruled at this time.

The parties are to resolve the practical effects as to the scope of the Court's rulings on the evidence to be proffered at trial. In that regard, any disagreement should be presented to the Court thirty days before the pre-trial conference.

and Frey documents must be excluded, Defendants' current listing also includes many now-irrelevant references to those documents.

What should remain for review is: (1) (expected) *factual* testimony from Frey, Siegel, and Pfister (that is not tied to excluded documents); and (2) timely-produced documents and evidence relating to the "inventions known or used in the art" due to the work of these individuals, including, as corroborating evidence, their papers and slides themselves.  The specific information from these sources that pertains to a particular claim limitation should be identified.  And while the Court does not find it improper in this exercise for Defendants to also identify, for instance, where information from these sources supports motivation to combine references or expectation of success, the Court agrees with Plaintiff that such evidence could have been submitted to the PTAB for those purposes, and thus does not support the conclusion that Defendants' "known or used" invalidity theory is different from a prior art printed publication theory.[19]  *Yeda Research v. Mylan Pharm. Inc.*, 906 F.3d 1031, 1041 (Fed. Cir. 2018).

The Court notes that it disagrees with Plaintiff's suggestion that under a proper "known or used" invalidity theory, Defendants should be wholly precluded from referencing or relying on the papers and slides themselves.  However, the Court agrees (and Defendants' statements at previous hearing suggest they also agree) that the papers and slides themselves cannot serve as the primary source of information for a known or used theory that is not precluded by IPR estoppel.  Instead, for a "known or used" theory to possibly take on any meaningful difference from an invalidity theory based on a printed publication itself, these documents should merely play a corroborating or supportive role to other evidentiary sources.[20]

The Court has endeavored to sift through Defendants' hundreds of pages of tables to focus on this key information.  Once parsed out, two new problems emerge.  First, in their organization of evidence, Defendants rely primarily on the papers and slides themselves for substantive

---

[19] On this basis, the Court would also find, in reconsidering the Estoppel Order, that Plaintiff has shown that the emails and deposition evidence that Defendants submitted to support the "Frey/Frey Slides" "known or used" invalidity theory, which related to motivation to combine these references with Divsalar, are insufficient to preclude the application of IPR estoppel.

[20] Plaintiff additionally observed at the hearing that there must also be some indication from these evidentiary sources that they are related to corroborating information that was indeed *publicly* known or used at the time of the invention.  Of course, although not a ripe consideration at this time, introducing indisputably non-public evidence to demonstrate that certain other evidence was publicly known raises a host of additional concerns with respect to the understanding of a jury.

disclosure of the limitations of the asserted claims.  Only after Defendants walk through the disclosure in these publications do they identify for each claim limitation a separate sub-section of additional "known or used" evidence.  Second, the Court requested that Defendants "include a column stating where, in their final invalidity contentions and/or final Frey Invalidity Report and/or Siegel Invalidity Report, Defendants disclosed the specific portion of their invalidity *theory* underlying each portion of their new evidentiary listing." Docket No. 1172 (emphasis in original). The Court explained that "Defendants are expected to perform this identification on a limitation-by-limitation basis with specificity, not just by identifying previous disclosures at a generalized level." *Id.*  Defendants provide a range of pin citations to these earlier sources on a limitation-by-limitation basis, but within each of these chart rows, Defendants are alleging multiple invalidity theories based on different evidentiary sources.  Defendants do not separate out their citations theory-by-theory.

The stakes in this case are high, and Defendants may have feared that if they did not throw the "kitchen sink" at the Court, Plaintiff would later by crying "waiver."  However, despite litigants' unexpressed beliefs, "Judges are not like pigs, hunting for truffles buried in briefs." *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991).  Defendants' choices in how they have organized and presented their proffer for the Court's review in this dispute create concerns, and ultimately, the Court is unable to conduct a full and meaningful review of the actual dispute between the parties because of those concerns.

After over half a year litigating this particular dispute in this now three year old lawsuit, the Court's tentative order questioned whether Defendants should be permitted yet another opportunity to argue that they can present a "known or used" invalidity theory in this case that is meaningfully different from the invalidity theories they reasonably raised or could have raised before the PTAB.  The Court expressed ongoing concerns about the timing of disclosure of certain known or used *theories* as well as the nature of the evidence that Defendants proffer to support those theories.

For example, one of the parties' current disputes relates to one of Defendants' current "known or used" theories involving Pfister/Pfister Slides.  As Plaintiff explains, "[t]hroughout this case, Defendants have always conceded that Pfister/Pfister Slides do not disclose irregular repetition of information bits." Docket No. 1196 at 18.  According to Plaintiff, "[n]ow, however, Defendants apparently contend that Dr. Pfister developed some sort of IRA codes by February

20

2000, and that their 'known or used' evidence for RAA codes thus discloses irregular repetition of bits." *Id.* at 19. Indeed, in a 14-page brief attached to an *ex parte* application, Defendants took the opportunity to include some responsive arguments to Plaintiff's assertions that Defendants are presenting "new invalidity theories," and specifically this Pfister theory. *See* Docket No. 1201-2 at 8. Defendants assert that they have consistently contended that "it would have been obvious to combine prior art related to repeat-accumulate codes . . . with the concept of using irregular repetition." *Id.* at 7. Defendants state, "Dr. Pfister's testimony . . . demonstrates that, before the claimed conception of the '710 patent, practitioners in this field in fact made the exact combination identified in [Defendants'] invalidity contentions and in Dr. Frey's expert reports." *Id.* at 8. In other words, Defendants effectively concede that they did not disclose a theory where Pfister/Pfister slides disclosed irregularity, but they argue that they are not disclosing a new invalidity theory because Defendants previously identified other references unrelated to Pfister/Pfister slides as disclosing irregularity and being combine-able with Pfister/Pfister slides. ***But*** Defendants have also insisted that it is the "Pfister/Pfister Slides" itself that was their "known or used" prior art, and that they previously disclosed it as such. Defendants' logic would essentially extend to say that because Defendants disclosed prior art that is combine-able to meet all the limitations of the claims, they have adequately disclosed an invalidity theory where their "known or used" evidence discloses a particular limitation of the claims. This position is not persuasive. Because Defendants failed to disclose an invalidity theory where ***Pfister/Pfister Slides***, as the "known or used" prior art, disclosed irregular repetition, they cannot assert such an invalidity theory now.

For the "known or used" theories that Defendants ***did*** timely disclose, it is not possible to tell from Defendants' proffer of evidence how Defendants would intend to present information in a way such that it includes germane differences to the prior art publications that were reviewable by the PTAB. On the current record, the Court is not persuaded that Defendants have made such a showing. [21] In the tentative order, the Court stated that it would "leave this final question - and

---

[21] Defendants argue that judicial estoppel should be applied against Plaintiff with respect to their arguments regarding the Frey Slides (and Pfister Slides). Docket No. 871 at 8-10, 22-24. They essentially present an estoppel argument as a basis to preclude an estoppel argument. Defendants assert that because Plaintiff successfully argued that the Frey Slides (and Pfister Slides) did not qualify as prior art printed publications before the PTAB, Plaintiff cannot now argue that the Frey Slides and Pfister Slides do qualify as prior art printed publications and thus that statutory estoppel is appropriate. Judicial estoppel is a discretionary, equitable doctrine intended to "protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies

the question of whether Defendants should be permitted yet another opportunity to demonstrate as much - for additional discussion at the hearing."  At the hearing, although Defendants generally listed off evidence they would suggest supports their invalidity theory, Defendants did not persuasively explain – setting aside the excluded, late-disclosed evidence from Siegel and Pfister – what timely-disclosed evidence beyond the four corners of the prior art documents that is germanely, substantively different from the documents themselves would support their purported known or used invalidity theories.[22]  Ultimately, the Court finds that Defendants failed to show that estoppel should not be applied as to Defendants' obviousness invalidity theories for the asserted claims that were addressed in IPR proceedings in final written decisions.

The Court notes that at the June 17, 2019 hearing, as a basis to support the argument that they should be permitted to present their "known or used" invalidity grounds, Defendants emphasized that they should be permitted to rebut certain of Plaintiff's experts' "counter-factual

---

of the moment." *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (internal citations and quotations omitted).  The record in this case does not support the conclusion that Plaintiff has improperly used judicial machinery in its presentation of arguments before the PTAB and this Court regarding the public availability of certain prior art.  The Court is not persuaded, for instance, that Plaintiff has taken "clearly inconsistent" positions between the two proceedings (or that Defendants' characterizations of Plaintiff's position is strictly correct).  The Court also incorporates by reference the portions of the Estoppel Order explaining that in determining whether statutory estoppel applies to the invalidity grounds presented by Defendants, it is Defendants' actions, not Plaintiff's, that matter.  Docket No. 830 at 25-26.  In this regard, the Court reconsiders and again rejects Defendants' renewed arguments that (1) the Pfister slides were different from the Pfister paper and (2) were not and could not have been addressed by the PTAB.  Defendants themselves submitted the Pfister slides to the PTAB as a prior art reference in part of their obviousness grounds for IPR, and have not withdrawn their position.  *See* Docket No. 830 at 22-24 ("Defendants have not withdrawn the position they advanced before the PTAB that the slides were publicly available prior art printed publications.").

[22] The Court notes that Defendants were in receipt of the Court's tentative ruling on June 6, 2019 and had until the June 17, 2019 to ruminate on it in preparing their oral presentation regarding this dispute. In a new set of slides provided to the Court at the beginning of the June 17, 2019 hearing, Defendants included what they referred to as specific examples showing how they would prove invalidity under a known or used theory for one of the asserted claims.  However, Defendants' first example, spanning fifteen slides, focused almost exclusively on explaining how Defendants' "known or used" evidence supported a motivation to combine the various prior art references.  As Plaintiff has previously observed, however, evidence of "the knowledge, motivations, and expectations of a POSITA regarding the prior art" can be considered by the PTAB.  *Yeda*, 906 F.3d at 1041.  The same is true for other "proper supporting roles" previously served by non-prior art reference evidence, "e.g., indicating the level of ordinary skill in the art, what certain terms would mean to one with ordinary skill in the art, and how one with ordinary skill in the art would have under-stood a prior art disclosure."  *Id.* (quotations omitted). The Court finds that evidence used for such a purpose does not take an invalidity theory outside of the estoppel realm on the basis that it becomes a "known or used" invalidity theory, and for that reason evidence of this type (including certain of Dr. Mitzenmacher's testimony) is found unpersuasive to support Defendants' argument here.  In addition to these concerns, the Court also notes that Plaintiff properly raised issues regarding Defendants' failure to demonstrate that certain aspects of their proffered evidence were publicly available during the relevant timeframe.

assertions."   Although the Court does not find Defendants' arguments sufficient to support permitting Defendants to present certain invalidity theories or to rely on late-disclosed factual evidence from its experts, the Court is not at this time ruling that Defendants may not rely on timely-disclosed evidence to rebut statements made by Plaintiff's experts.   The Court finds this to be a different issue that may more properly be addressed in the context of motions *in limine*.[23]  Its determination here is simply that Defendants are estopped from raising certain invalidity grounds, not certain individual pieces of timely-produced evidence.

### D.      Request to Certify Pending Interlocutory Appeal

There are three statutory requirements for certifying an order for interlocutory appeal: (1) there must be a "controlling question of law"; (2) there must be "substantial ground[s] for difference of opinion" on this question; and (3) it must appear that "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b)[24]; *see also Jang v. Bos. Sci. Corp.*, 767 F.3d 1334, 1338 (Fed. Cir. 2014).

Previously, the Court expressed a willingness to certify this matter for interlocutory appeal. The Estoppel Order initially found that Defendants would be precluded from presenting all but one invalidity argument with respect to the '032 and '781 Patents.  The Court is now leaning towards finding that all of Defendants' obviousness arguments with respect to all of the asserted patents would properly be estopped.  However, the primary basis for that latter determination is the procedural shortcomings in Defendants' discovery and disclosure of evidence and theories to support its "known or used" invalidity arguments.  On the record before it, the Court finds that the three statutory requirements for certifying an order for interlocutory appeal have not been met.

### V.      Conclusion

For the reasons stated in this Order, the Court would rule as follows:

---

[23] At the June 17 hearing, Plaintiff represented that it was not intending to make certain assertions at trial in the manner suggested by Defendants, and further stated that it was "certainly . . . not going to open up the door" at trial by asserting, for instance, "if it was so obvious why didn't Pfister do it."  6/17/2019 Tr. at 82.

[24] 28 U.S.C. § 1292(b) provides, in part, as follows:

When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.... That application for an appeal ... shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

- The Court would **GRANT** Defendants' Motion for Reconsideration of the Estoppel Order (Docket No. 888) and accordingly reconsider its determinations in the Estoppel Order with respect to invalidity grounds involving Pfister/Pfister Slides.

- The Court would **CLARIFY** the Estoppel Order as provided herein.

- The Court would **GRANT** Plaintiff's Motion to Exclude (Docket No. 1024) and **EXCLUDE** the documents produced at the depositions of Pfister and Siegel and **STRIKE** certain testimony provided at Pfister's deposition as improperly relating to matters of expert opinion.

- The Court would **GRANT** Plaintiff's Motion for Summary Judgment of Validity as to Claims 20 and 22 of the '710 Patent (Docket No. 844) as it relates to each of Defendants' proffered 35 U.S.C. § 103 prior art grounds.

- The Court would **GRANT** Plaintiff's Renewed Motion for Partial Summary Judgment of Validity Under 35 U.S.C. § 103 Based on IPR Estoppel under 35 U.S.C. § 315(e)(2) for U.S. Patent No. 7,916,781 and in doing so **MODIFY** the Estoppel Order as it pertains to that patent such that Defendants are estopped from presenting each of their 35 U.S.C. § 103 obviousness invalidity grounds for Claims 13 and 22 of the '781 Patent and Claims 11 and 22 of the '781 Patent;

- The Court would **DENY** Defendants' Motion for Certification Under 28 U.S.C. § 1292(b).