UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-3714-GW (AGRx) | Date | November 25, 2019 |
|---|---|---|---|
| Title | *The California Institute of Technology v. Broadcom Limited, et al.* | | |

Present: The Honorable    GEORGE H. WU, UNITED STATES DISTRICT JUDGE

| Javier Gonzalez | None Present | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:                Attorneys Present for Defendants:

None Present                                None Present

**PROCEEDINGS:**         **IN CHAMBERS - FINAL RULINGS ON:**

**BROADCOM AND APPLE'S MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT FOR U.S. PATENT NO. 7,421,032 [1240]**

**BROADCOM AND APPLE'S MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT OF U.S. PATENT NO. 7,916,781 [1535]**

**DEFENDANTS' OFFER OF PROOF REGARDING SUMMARY JUDGMENT OF NONINFRINGEMENT OF THE '032 AND '781 PATENTS [1237]**

**BROADCOM AND APPLE'S MOTION FOR SUMMARY JUDGMENT FOR PARTIAL SUMMARY JUDGMENT ON CALTECH'S PURPORTED "COPYING" SECONDARY CONSIDERATION OF NON-OBVIOUSNESS [1249]**

**PARTIES' DISPUTE REGARDING THE TESTIMONY OF DR. HENRY PFISTER [1565]**

Attached hereto is the Court's Final Rulings on the above motions.

:

Initials of Preparer    JG

**_The California Institute of Technology v. Broadcom Limited et al._**; Case No. 2:16-cv-03714-GW-(AGRx) Final Rulings on:

(1) Defendants' Motion for Summary Judgment as to Noninfringement for U.S. Patent No. 7,421,032 (Motion, Docket No. 1240 (public), Docket No. 1296 (sealed); Opposition, Docket No. 1337 (public), Docket No. 1379 (sealed); Reply, Docket No. 1396 (public), Docket No. 1444 (sealed)); _see also_ Supplemental Briefs regarding Court's Questions (Plaintiff's Opening Supp. Brief, Docket No. 1527 (public), Docket No. 1570 (sealed); Plaintiff's Responsive Supp. Brief, Docket No. 1540 (public), Docket No. 1572 (sealed); Defendants' Opening Supp. Brief, Docket No. 1524 (public), Docket No. 1526-1 (sealed application); Defendants' Responsive Supp. Brief, Docket No. 1545 (public), Docket No. 1547-1 (sealed application))

(2) Defendants' Motion for Summary Judgment as to Noninfringement of U.S. Patent No. 7,916,781 (Motion, Docket No. 1535 (public), Docket No. 1537-1 (sealed application); Opposition, Docket No. 1562 (public), Docket No. 1564-1 (sealed application); Reply, Docket No. 1602 (public), Docket No. 1604-1 (sealed application))

(3) Defendants' Offer of Proof regarding Summary Judgment of Noninfringement of the '032 and '781 Patents (Offer, Docket No. 1237 (public), Docket No. 1293 (sealed); Response, Docket No. 1473 (public), Docket No. 1569 (sealed))

(4) Defendants' Motion for Partial Summary Judgment as to Caltech's Purported Copying Secondary Consideration of Non-Obviousness, (Motion, Docket No. 1249 (public), Docket No. 1297 (sealed); Opposition, Docket No. 1335 (public), Docket No. 1377 (sealed); Reply, Docket No. 1414 (public), Docket No. 1446 (sealed)); _see also_ Offer of Proof Regarding Purported Copying (Offer, Docket No. 1531 (public), Docket No. 1571 (sealed); Response, Docket No. 1544)

(5) Parties' dispute regarding the testimony of Dr. Henry Pfister (Plaintiff's Brief, Docket No. 1565; Defendants' Brief, Docket No. 1567)

## I.    Introduction

Plaintiff the California Institute of Technology currently alleges patent infringement against Defendants Broadcom Limited, Broadcom Corporation, Avago Technologies Limited, and Apple Inc.  _See_ First Amended Complaint ("FAC"), Docket No. 36; _see also_ Docket No. 1. Plaintiff asserts that Defendants infringe six claims from three of its patents: (1) U.S. Patent No. 7,116,710 ("the '710 Patent"); (2) U.S. Patent No. 7,421,032 ("the '032 Patent"); and (3) U.S. Patent No. 7,916,781 ("the '781 Patent") (collectively, the "Asserted Patents").  _See_ Docket No. 1451 ("Notice of Withdrawal of Claims Not Subject to IPR Estoppel").  Specifically, the following six claims remain in this case:

- Claims 11 and 18 of the '032 Patent;
- Claims 13 and 22 of the '781 Patent; and
- Claims 20 and 22 of the '710 Patent.

1

The parties filed their second "round" of motions for summary judgment and motions to exclude. Those motions were fully briefed. After briefing was complete and two hearings were held regarding the motions,[1] the parties were directed to file supplemental briefs regarding various issues. Docket No. 1516 (Order after October 22, 2019 hearing calling for supplemental briefs). Defendants were also permitted to file a very short motion for summary judgment of noninfringement of the '781 Patent. *Id.*; *see also* Docket No. 1535 (public motion), Docket No. 1537-1 (sealed application). This ruling addresses two of the six previously-pending summary judgment motions, including the supplemental briefing filed with respect to those motions, as well as Defendants' newly-filed motion, Defendants' previous offer of proof related to the '781 Patent and '032 Patents, and one other matter regarding the proposed testimony of Dr. Pfister. An additional hearing was held on November 21, 2019 regarding these matters.[2]

For the reasons stated herein, the Court would rule as follows:

- Defendants' Motion for Summary Judgment of Noninfringement of the asserted claims of the '032 Patent (Docket No. 1240) is **DENIED**.

- Defendants' Motion for Summary Judgment of Noninfringement of the asserted claims of the '781 Patent (Docket No. 1535) is **DENIED-IN-PART** and **GRANTED-IN-PART**.

- Defendants' Offer of Proof regarding noninfringement of the asserted claims of the '032 Patent and '781 Patent (Docket No. 1237) is **REJECTED**.

- Defendants' Motion for Summary Judgment on Plaintiff's "Copying" Secondary Consideration (Docket No. 1249) is effectively **DENIED AS MOOT** given that Defendants are estopped from raising their earlier-proffered prior art invalidity grounds regarding the asserted claims. Plaintiff's Offer of Proof (Docket No. 1531) is **REJECTED**, **EXCEPT THAT** Plaintiff may refer to the copying evidence only if Defendants open the door by arguing that LDPC codes are "completely separate from and derived independently from Caltech's IRA invention."

## II.    Legal Standard

Under Federal Rule of Civil Procedure ("Rule") 56, a party may move for summary judgment, identifying each claim or defense - or the part of each claim or defense - on which summary judgment is sought, and the court shall grant it when the pleadings, the discovery and

---

[1] Hearings were held on October 10, 2019 and October 22, 2019. At each hearing, the Court issued two tentative rulings, including modified tentative rulings on October 22, 2019 that addressed the parties' supplemental briefs regarding the "five biggest mistakes from each of the Court's two Tentative Rulings." *See* Docket No. 1503 (sealed minutes of October 10, 2019 hearing); *see also* Docket No. 1519 (sealed minutes of October 22, 2019 hearing).

[2] A tentative ruling was also issued at the November 21, 2019 hearing.

disclosure materials on file, and any affidavits show that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Miranda v. City of Cornelius*, 429 F.3d 858, 860 n.1 (9th Cir. 2005).  As to materiality, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  *Id.*

To satisfy its burden at summary judgment, a moving party with the burden of persuasion must establish "beyond controversy every essential element of its [claim or defense]." *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003); O'Connell & Stevenson, *Rutter Group Prac. Guide: Fed. Civ. Proc. Before Trial* ("*Federal Practice Guide*") § 14:126 (2016).  By contrast, a moving party without the burden of persuasion "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos.*, Inc., 210 F.3d 1099, 1102 (9th Cir. 2000); *see also Devereaux v. Abbey,* 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc) ("When the nonmoving party has the burden of proof at trial, the moving party need only point out 'that there is an absence of evidence to support the nonmoving party's case.'") (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986), and citing *Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 532 (9th Cir. 2000) (holding that the *Celotex* "showing" can be made by "pointing out through argument . . . the absence of evidence to support plaintiff's claim")).

> If the party moving for summary judgment meets its initial burden of identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact, the nonmoving party may not rely on the mere allegations in the pleadings in order to preclude summary judgment[, but instead] must set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial.

*T.W. Elec. Serv., Inc., v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (internal citations and quotation marks omitted) (citing, among other cases, *Celotex*, 477 U.S. at 323).  "A non-movant's bald assertions or a mere scintilla of evidence in his favor are both insufficient to withstand summary judgment." *See FTC v. Stefanchik,* 559 F.3d 924, 929 (9th Cir. 2009).  In addition, the evidence presented by the parties must be admissible. *See* Fed. R. Civ. P. 56(e).

3

Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *See Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Relatedly, "[a]ny objections to declarations or other evidence must be made at or (preferably) before the hearing, and should be ruled upon by the court before ruling on the motion itself." *Federal Practice Guide* § 14:333 (citing *Hollingsworth Solderless Terminal Co. v. Turley*, 622 F.2d 1324, 1335 n.9 (9th Cir. 1980); *Sigler v. American Honda Motor Co.*, 532 F3d 469, 480 (6th Cir. 2008)). In judging evidence at the summary judgment stage, however, courts do not make credibility determinations or weigh conflicting evidence at the summary judgment stage, and must view all evidence and draw all inferences in the light most favorable to the non-moving party. *See T.W. Elec.*, 809 F.2d at 630-31 (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)); *Anderson*, 477 U.S. at 255 ("The evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in [the non-movant's] favor.").

"If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact – including an item of damages or other relief – that is not genuinely in dispute and treating the fact as established in the case." Fed. R. Civ. P. 56(g); *see also* Federal Practice Guide § 14:352 ("A partial summary judgment may be granted on motion of either party for adjudication of particular claims or defenses.") (citing *id.* § 14:33).

## III.   Analysis[3]

### A.   Defendants' Summary Judgment Motion Regarding Noninfringement of the '032 Patent

Defendants move for summary judgment of noninfringement of the asserted claims of the

---

[3] Some of the underlying "undisputed" facts cited in this ruling have been disputed by Plaintiff or Defendants. The Court has reviewed said disputes and relies only on facts that are supported by the cited evidence, altering the proffered facts if necessary to accurately reflect the uncontroverted evidence. To the extent that the cited underlying "undisputed" facts have been disputed, the Court finds that the stated disputes: (1) fail to controvert the proffered "undisputed" facts, (2) dispute the facts on grounds not germane to the factual statements, and/or (3) fail to cite evidence in support of the disputing party's position. As such, the Court treats such facts as undisputed. Any proffered facts not included in this ruling were found to be: (1) improper opinions or conclusions rather than facts, (2) unsupported by admissible evidence, (3) irrelevant to the Court's present analysis, or (4) some combination thereof. To the extent the Court uses any facts in this ruling and does not note that they are disputed, it has determined that they are undisputed.

Neither party submitted evidentiary objections separated from their statement(s) of disputed facts to the other side's proffered evidence.

'032 Patent.  Docket No. 1240. [4] The Asserted Claims of the '032 Patent state:

11. A device comprising:

an encoder configured to receive a collection of message bits and encode the message bits to generate a collection of parity bits in accordance with the following Tanner graph:



*See also* Certificate of Correction for '032 Patent, Sept. 2, 2008 (replacing "$V_1$" and "$U_1$" in the lower portion of the Tanner Graph with "$V_r$" and "$U_K$," respectively).

18. A device comprising:

a message passing decoder configured to decode a received data stream that includes a collection of parity bits, the message passing decoder comprising two or more check/variable nodes operating in parallel to receive messages from neighboring check/variable nodes and send updated messages to the neighboring variable/check nodes, wherein the message passing decoder is configured to decode the received data stream that has been encoded in accordance with the following Tanner graph:

---

[4] *See* Defendants' Motion for Summary Judgment as to Noninfringement for U.S. Patent No. 7,421,032, Docket No. 1240 (public), Docket No. 1296 (sealed); Opposition, Docket No. 1337 (public), Docket No. 1379 (sealed); Reply, Docket No. 1396 (public), Docket No. 1444 (sealed).  As noted, the parties also filed supplemental briefs relating to this dispute.  *See* Plaintiff's Opening Supp. Brief, Docket No. 1527 (public), Docket No. 1570 (sealed); Plaintiff's Responsive Supp. Brief, Docket No. 1540 (public), Docket No. 1572 (sealed); Defendants' Opening Supp. Brief, Docket No. 1524 (public), Docket No. 1526-1 (sealed application); Defendants' Responsive Supp. Brief, Docket No. 1545 (public), Docket No. 1547-1 (sealed application).



*See also* Certificate of Correction for '032 Patent, Sept. 2, 2008 (replacing "$V_1$" and "$U_1$" in the lower portion of the Tanner Graph with "$V_r$" and "$U_K$," respectively).

Based on arguments presented by the parties during claim construction, the Court construed the Tanner Graph as "a graph representing an IRA code as a set of parity checks where every message bit is repeated, at least two different subsets of message bits are repeated a different number of times, and check nodes, randomly connected to the repeated message bits, enforce constraints that determine the parity bits." Docket No. 213 at 32. Both parties' proposed construction had included this language, and Defendants' proposed construction also included additional language. The Court found that "[t]he part of the proposed constructions over which the parties agree . . . sufficiently describes the edges that connect check nodes with parity nodes, especially in light of the embodiment and related description provided in the specification, and accurately conveys the scope of the claimed invention." *Id.* at 17.

The Court separately considered the parties' claim construction disputes for the term "random"/"randomly" and concluded that the term "random" was used in the asserted patents consistent with its plain meaning to a person of skill in the art and "the named inventors did not attach any specialized meaning to 'random' . . . , specifically not 'non-deterministic' as Defendants improperly suggest, and intended only its plain and ordinary meaning." Docket No. 213 at 24. During the first round of summary judgment motions, the parties presented a further dispute regarding the meaning of the term "random" and the apparent interpretation of that term taken by

6

Defendants' expert, Stark. Docket No. 1213 at 10-13; *see id.* at 13 ("The Court does not find that exercising its gatekeeping function to exclude Stark's opinions regarding whether the accused products satisfy the randomness requirement of the asserted claims of the '032 Patent is warranted at this time."). The parties did not clearly state that their dispute was related to the phrase "random permutation."

Defendants now argue that Plaintiff has failed to show that the accused products meet the requirement that "check nodes, *randomly connected* to the repeated message bits, enforce constraints" in the Court's construction of the Tanner Graph present in both of the remaining asserted claims.[5]

The parties' dispute involves a matter of claim construction. Specifically, the issue is whether the "Random Permutation" block shown in the Tanner Graph requires a purely random *process* of permuting bits to connect them to check nodes and form parity bits. In particular, while true that the Court's claim construction, based on language that both parties included in their proposed constructions, does not use the term "random permutation," the Tanner Graph itself as included in Claims 11 and 18 of the '032 Patent refers to "RANDOM PERMUTATION:"



The Court did not specifically construe the term "random permutation" during claim construction, and the parties separately agreed to a construction of "permutation" as "chang[e] the order of data elements." Docket No. 125 at 1.

The specification supports the conclusion that the phrase "random permutation" as it appears in the Tanner Graph does not require the equivalent of a random number generator, *i.e.* a

---

[5] Defendants' motion also addresses other claims of the '032 Patent that actually include the word "random" in the claim language itself. *See, e.g.* Docket No. 1296 at 1 (referencing Claims 1 and 3 of the '032 Patent). Those claims are no longer asserted in this case and thus are not addressed. *See* Docket No. 1451.

process that usually leads to a different result in the relationship between information bits and check nodes each time.

The '032 Patent describes Figure 3, which depicts the Tanner Graph that also appears in the asserted claims, by stating:

> Each check node **304** is connected to exactly "a" information nodes **302**. In FIG. 3, a=3. These connections can be made in many ways, as indicated by the arbitrary permutation of the ra edges joining information nodes **302** and check nodes **304** in permutation block **310**. These connections correspond to the scrambling performed by the interleaver 204.

*Id.* at 3:50-55. In other words, although Figure 3 itself does not label the "RANDOM PERMUTATION" block as **310**, the patent specification effectively refers to it as such. The specification goes on to state, "[i]f the permutation performed in permutation block **310** *is fixed*, the Tanner graph represents a binary linear block code with k information bits ($u_1, \ldots, u_k$) and r parity bits ($x_1, \ldots, x_r$) . . ." '032 Patent at 3:65-66 (emphasis added).

The idea that there can be a fixed, yet "random," permutation depicted in the "RANDOM PERMUTATION" block of Figure 3 is also marginally supported by other language in the specification. For instance, the '032 Patent explains that the connections between information nodes **302** and check nodes **304** "correspond to the scrambling performed by the interleaver **204**." *Id.* at 3:55. Earlier, the specification states, "[t]his scrambling may be performed by the interleaver **204**, which performs a *pseudo* random permutation of an input block v, yielding an output block w having the same length as v." *Id.* at 3:25-29 (emphasis added). At the least, this disclosure appears to acknowledge that the permutation performed by an interleaver, which the Tanner Graph represents graphically as a "RANDOM PERMUTATION" block, is not necessarily perfectly random, but instead may be "pseudo" random.

Finally, incorporated into its discussion of the interleaver **204** and the Tanner Graph, the specification includes a paragraph stating that "[i]n an alternate embodiment, the outer coder **202** may be a low-density generator matrix (LDGM) coder that performs an irregular repeat of the k bits in the block . . . . The interleaver **204** in FIG. 2 may be excluded due to the randomness already present in the structure of the LDGM code." *Id.* at 3:62-64. Of further note, Claim 13, which depends from Claim 11, specifically contemplates that the device claimed in Claim 11 comprises "a low-density generator matrix (LDGM) coder configured to perform an irregular repeat on message bits having a first sequence in a source data stream to output a random sequence of repeats

of the message bits." *See* '032 Patent, Claim 13. At least in the current record, there is no evidence to show that LDGM coders exist that act like random number generators, *i.e.* output different sequences even when they receive the same inputs. A construction of "random permutation" that would exclude *all* LDGMs would be inconsistent with the patent record.

At the November 21, 2019 hearing, Defendants reiterated an argument that the word "random" loses meaning if "random permutation" can cover circumstances where the same input always has the same output. But this position does not address Plaintiff's argument that whether "random permutation" is random is a fact question that depends on how much permutation has occurred. Defendants made a similar argument for "pseudo random," arguing that even in the context of that phrase, the same input should not always lead to the same output. Defendants, however, did not have evidence in the record to support this assertion. Defendants also discounted the patent's reference to the term "fixed," arguing that there is no disclosure stating that a *random* permutation block can be fixed. Defendants' position did not address the surrounding disclosure in the '032 Patent relating to Figure 3 and "permutation block **310**."

Overall, when balanced against the evidence in the patent intrinsic record, Defendants have not sufficiently shown that their interpretation of "random" in the context of the claims of the '032 Patent is supported. Based on its understanding of the intrinsic record, the Court understands "random permutation" to encompass not just a purely random process of connecting information bits and check nodes, but also pseudo random processes that result in an output that appears random.

Based on this conclusion regarding the meaning of the term, the Court finds that the question of whether the accused products satisfy this aspect of the Tanner Graph limitation presents a question of fact for a jury to decide. Plaintiff has presented sufficient evidence to support its position with respect to infringement, both literally and under the doctrine of equivalents. *See* Docket No. 1498-1 at 3 (citing Shoemake Report, Vol. II, Docket No. 1294-18 ¶¶ 714, 716, 698, 1308-10, 1344, 1894), 4 (referring to statements made by one of Defendants' experts and in a former Apple employee's book to support its argument that the accused products satisfy the "random permutation" limitation).

For these reasons, the Court would **DENY** Defendants' Motion for Summary Judgment of Noninfringement of the asserted claims of the '032 Patent (Docket No. 1240).

At the November 21, 2019 hearing, Defendants also re-raised an argument that Plaintiff

9

should not be permitted to bring a doctrine of equivalents ("DOE") argument for this claim term. Defendants argue, among other things, that prosecution history estoppel would bar a DOE theory relating to the "random permutation" limitation. Defendants' argument was not raised in their opening motion brief, but solely in their reply brief. *See* Docket No. 1379 at 10 (Plaintiff's opposition, observing that Defendants' motion does not refer to Plaintiff's DOE theory for the "random permutation" limitation in the claims); Docket No. 1444 at 5. The burden is on the patent holder "to establish the reason for an amendment required during patent prosecution" such that "the court [can] decide whether that reason is sufficient to overcome prosecution history estoppel as a bar to application of the doctrine of equivalents to the element added by that amendment." *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 33 (1997). Defendants effectively deprived Plaintiff of an opportunity to meet that burden in briefing by failing to raise the issue until their reply brief. The Court declines to consider the issue on this record, finding it waived by Defendants' untimely reference to it.

**B.      Defendants' Motion for Summary Judgment Regarding Noninfringement of the '781 Patent**

In the Court's October 11 and October 22 tentative rulings, it included a footnote expressing some skepticism regarding Plaintiff's infringement position for the '781 Patent. It stated:

> Plaintiffs' expert's theories on the issue appear to be a bit tenuous, relying on referring to an information bit with a value of zero as the "addition identity" such that adding a bit with a zero value to a second bit results in an output of just the second bit (as opposed to calling the output a "parity bit" that is the result of adding the two information bits together). The parties should provide more information regarding this dispute at the summary judgment hearing, including how it squares with Judge Pfaelzer's order on a similar dispute in the *Hughes* case and whether it is indeed a factual dispute. *See California Inst. Of Tech. v. Hughes Commc'ns Inc.*, LACV13-07245-MRP-(JEMx), Docket No. 370 (C.D. Cal. May 5, 2015); *see also* Docket No. 1500-1 (Defendants' supplemental brief, citing their own proffer and asserting "[t]here is no dispute about how the accused products work with regard to the 'sum of bits' limitations in the asserted '781 claims.").

*See* Docket No. 1519 at 12 n.9 (adding citation to Defendants' supplemental brief). At the October 22, 2019 hearing, Plaintiff clarified that its position that the accused products do not include "an *information bit* with a value of zero" that is first added to another bit, but instead that they include a "reset value" of zero that is first added to another bit in the first step of an accumulation, such

that the second step of the accumulation still involves the information bit from the first step (as a result of the "addition identity" when it was added to the "reset value" of zero) and a new information bit.  After further discussion at the October 22, 2019 hearing, Defendants were permitted to file a motion for summary judgment with respect to the '781 Patent.  Docket No. 1516.  Defendants' motion has been fully briefed.[6]

Plaintiff states, "Defendants essentially argue that two or more information bits must be added together *in a single operation*."  Docket No. 1564-1 at 4 (emphasis in original).  It then asserts that "[t]his reading is not supported by the claim language, the agreed constructions, or the intrinsic evidence."  *Id.*  But the Court previously stated:

> Plaintiff agreed to the same construction of the phrase "sums of bits in subsets of information bits" in this case that the parties in the *Hughes* case had agreed to, despite the fact that, approximately two years earlier, Judge Pfaelzer had effectively interpreted the "sums of bits" term (and the parties' same agreed construction for that term) in her summary judgment order adverse to Plaintiff.  Having reviewed the parties' agreed construction, which requires "adding *together* two or more *information* bits," the Court agrees with Judge Pfaelzer that adding an outputted bit and an information bit would not satisfy this construction.  The Court has also reviewed Plaintiff's citations to the intrinsic and extrinsic record and is not persuaded that they warrant a different outcome.
>
> At the hearing, Plaintiff reiterated that it "disagree[d] vehemently" with the analysis and conclusion reached by Judge Pfaelzer in *Hughes*.  Indeed, Plaintiff argued that the Hughes decision is "contrary to the most basic principles of math and science."  In framing the dispute, Plaintiff [consistently] focused on the fact that no matter how information is added together (be it through a pure sum or a series of accumulation steps), the output value is the same.  ***The issue here, however, is not just the final output, but the steps used to arrive at that output and the inputs used for each of those steps.***  Ultimately, the Court does not disagree with Plaintiff that accumulation is a form of summing.  But the parties' agreed construction of "sum[s of bits in subsets of information bits]," which the Court finds consistent with the intrinsic record and Judge Pfaelzer's analysis, requires adding together "*information bits.*" In making this determination, the Court is leaving open the possibility at this time that accumulation steps could exist that satisfy the claim language, *i.e.* where the accumulation step includes adding together information bits rather than solely an information bit and some newly-created bit. That is just not the case in Plaintiff's example or the

---

[6] *See* Defendants' Motion for Summary Judgment as to Noninfringement of U.S. Patent No. 7,916,781 (Motion, Docket No. 1535 (public), Docket No. 1537-1 (sealed application); Opposition, Docket No. 1562 (public), Docket No. 1564-1 (sealed application); Reply, Docket No. 1602 (public), Docket No. 1604-1 (sealed application)).

one Judge Pfaelzer references in *Hughes*.

Docket No. 1213 (second attached ruling) at 16-17 (ECF27-28) (some emphasis in original and some emphasis added).  In other words, the Court has already rejected Plaintiff's position, and is not persuaded by Plaintiff's arguments now that it should reverse course on this issue.

But Plaintiff also argues that whether the addition of an information bit to the reset value results in an outputted bit or the original information bit itself is a fact question.  Docket No. 1564-1 at 2 ("Defendants contend that the initial summation step creates a new bit that is not an information bit, whereas Caltech contends this step results in an information bit – and thus the subsequent sums are sums of information bits."); *see also id.* at 3 ("Caltech's argument is that the reset state of an accumulator is not considered part of the sum.  That is consistent with the '781 specification and the testimony of Defendants' experts, all of which state that an accumulator outputs the sum *of its inputs*, not the sum of its inputs *and a reset value*." (emphasis in original)).

Having considered the parties' dispute, the Court agrees with Plaintiff that Defendants have not shown an absence of a dispute of material fact regarding infringement of this aspect of the '781 Patent.  In particular, one question – *i.e.* whether the addition of the reset value and an information bit outputs an information bit that is then added to a second information bit such that the "second" summation involves summing two information bits (as opposed to the addition of the reset value and an information bit outputting a new bit) – precludes a summary judgment determination at this time.  Defendants' motion for summary judgment of noninfringement of the '781 Patent is **DENIED** with respect to literal infringement.

Defendants also argued that Plaintiff should not be permitted to bring an infringement theory under the doctrine of equivalents for this claim limitation.  *See* Docket No. 1537-1 at 5 (Defendants' opening motion brief, raising the issue in a paragraph).  "Whether prosecution history estoppel applies to bar a doctrine of equivalents claim is a question of law."  *Eli Lilly & Co. v. Hospira, Inc.*, 933 F.3d 1320, 1330 (Fed. Cir. 2019).  "Prosecution history estoppel arises when a patent applicant narrows the scope of his claims during prosecution for a reason 'substantial[ly] relating to patentability.'"  *Id.* (citing *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 344 F.3d 1359, 1366 (Fed. Cir. 2003)).  During prosecution, the applicant presented a dependent claim, Claim 18, that included the "sums of bits" limitation.  Claim 18 was never rejected during prosecution.  To secure allowance, the independent claim was rewritten to incorporate the limitation of Claim 18 as well as to add an additional amendment involving an unrelated limitation.

12

The Court agrees with Defendants that the circumstances presented are similar to the circumstances present in *Honeywell Int'l, Inc. v. Hamilton Sundstrand Corp.*, 523 F.3d 1304, 1316 (Fed. Cir. 2008).  In that case, "[t]he original dependent claims were . . . rewritten into independent form and incorporated the limitations of the rejected independent claims."  The Federal Circuit found that Plaintiff did not overcome the presumption of prosecution history estoppel with respect to an alleged equivalent for the limitation that was rewritten from the dependent claims into the independent claims.  Because largely the same circumstances are present here, prosecution history estoppel applies.[7]

Defendants' motion for summary judgment of noninfringement of the '781 Patent is **GRANTED** with respect to infringement under the doctrine of equivalents.

### C.   Defendants' Offer of Proof Regarding Summary Judgment Motion of Noninfringement of the '032 Patent and the '781 Patent

Defendants were previously permitted to file an offer of proof for a proposed summary judgment motion regarding noninfringement of the asserted claims of the '032 and '781 Patents.  Docket No. 1237 (public), Docket No. 1293 (sealed).  Plaintiff was directed to file a response.  Docket No. 1473 (public), Docket No. 1569 (sealed).  Plaintiff's response regarding the '032 Patent supports the conclusion that possible factual issues exist regarding whether the accused products satisfy the limitations of the asserted claims of that patent.  Defendants were permitted to raise their noninfringement challenge regarding the '781 Patent in a late summary judgment motion, which has been denied.  Defendants' offer of proof would be accordingly **REJECTED** as to both patents.

### D.   Defendants' Motion for Partial Summary Judgment as to Plaintiff's Purported Secondary Considerations of Non-Obviousness

Plaintiff previously disclosed a theory that the 802.11 Working Group members copied Plaintiff's patented IRA code from a paper written by one of the patent inventors.  Plaintiff argued that this copying theory should be considered as part of Plaintiff's asserted secondary considerations of non-obviousness of the asserted patents.  Defendants moved for summary

---

[7] The Court is not persuaded that this case is distinguishable from *Honeywell* because the patent applicant here *also* added an additional, unrelated limitation to the rewritten independent claim.  The Court also notes that even if it were to find that prosecution history estoppel does not apply, the conclusory nature of Plaintiff's expert's opinions in presenting a DOE theory for this claim limitation would be insufficient to support the presentation of a DOE theory by the expert at trial.

judgment regarding this copying theory on the basis that Plaintiff has offered insufficient evidence to support it.[8]

In a footnote in their reply, Defendants state, "[t]o the extent that Broadcom and Apple cannot or do not present their invalidity obviousness defenses at trial, then Caltech should not be permitted to present any of its alleged 'copying' evidence given that secondary considerations of non-obviousness would be irrelevant."  Docket No. 1446 at 1 n.1.  After Defendants filed their reply, Plaintiff withdrew all asserted claims except for six asserted claims that are the proper subject of *inter partes* review statutory estoppel.  *See* Docket No. 1451; *see also* Docket Nos. 830, 1432.

In the tentative rulings, the Court agreed with Defendants "that Plaintiff has provided no basis for why its copying allegations would remain relevant given that the Court has found Defendants estopped from presenting their previously-disclosed obviousness invalidity defenses for the remaining asserted claims at trial" and found that they should be excluded under Fed. R. Evid. 402 and 403.  *See, e.g.* Docket No. 1519 at 17.

In its supplemental brief regarding the "five biggest mistakes" in the Court's tentative rulings, Plaintiff argued that copying evidence remains relevant to (1) refute an argument by Defendants that LDPC codes used in the 802.11n/ac standard are not IRA codes and instead are LDPC codes; (2) damages, including *Georgia Pacific* factor 11 and "the importance and value of the technology to Defendants as well as to the industry generally;" and (3) induced infringement. Docket No. 1498-1 at 5.  Notably, Plaintiff did not cite to any of its experts' reports to show that it previously presented opinions from its experts relying on its copying evidence for these newly-raised bases.  Defendants assert that "Dr. Shoemake does not cite evidence of alleged copying in his infringement report, nor do Dr. Teece or Ms. Lawton cite it in their reports on damages." Docket No. 1500-1 at 9.  At the October 22, 2019 after hearing further argument regarding the dispute, Plaintiff was directed to file an offer of proof providing "how, aside from its secondary considerations of non-obviousness argument, it would rely on evidence of purported copying at trial to support aspects of its claims and defenses."  Docket No. 1516.  The parties subsequently filed their briefs on the issue.  Offer, Docket No. 1531 (public), Docket No. 1571 (sealed);

---

[8] *See* Defendants' Motion for Partial Summary Judgment as to Caltech's Purported Copying Secondary Consideration of Non-Obviousness, Docket No. 1249 (public), Docket No. 1297 (sealed); Opposition, Docket No. 1335 (public), Docket No. 1377 (sealed); Reply, Docket No. 1414 (public), Docket No. 1446 (sealed).

Response, Docket No. 1544.  The parties did not further address this dispute at the November 21, 2019 hearing.

Plaintiff argues that it should be permitted to present evidence of copying to rebut Defendants' argument that "LDPC codes are fundamentally different from IRA codes."  Docket No. 1571 at 2; *see also id.* ("Defendants will argue that the 802.11 LDPC codes are completely separate from and derived independently from Caltech's IRA invention.").  The Court finds that only to the extent Defendants open the door by presenting such an argument, Plaintiff can respond consistent with the opinions disclosed in Shoemake's supplemental expert report and only to the extent necessary to rebut Defendants' position.  *See* Docket No. 906-1 ¶¶ 109-119.

The Court otherwise excludes reference to copying to support Plaintiffs' other arguments in this case, including to support Plaintiff's damages claim, indirect infringement claim, or otherwise to demonstrate the benefits and advantages of "IRA-LDPC codes," including over Defendants' alleged noninfringing alternatives.  Plaintiff effectively conceded at the hearing that none of its experts had disclosed damages theories relying on this copying theory, and Plaintiff will not be permitted to short-circuit its expert discovery obligations by referring to Jacobsen's testimony in this regard without having offered an expert on the relevant subject.  The Court also continues to have concerns regarding prejudice and jury confusion relating to Plaintiff's offer of proof on these bases.

Defendants' summary judgment motion (Docket No. 1249) is **DENIED AS MOOT**.  Plaintiff's Offer of Proof (Docket No. 1531) is **REJECTED**, except that Plaintiff may refer to the copying evidence if Defendants open the door by arguing that LDPC codes are "completely separate from and derived independently from Caltech's IRA invention."

### E.    Parties' Dispute Regarding the Testimony of Dr. Henry Pfister

Although not submitted as a separate motion or in the context of a motion *in limine*, the parties apparently dispute whether Dr. Pfister should be permitted to testify at trial and have submitted briefs on the issue.  Joint Report re '781 Patent Dispute, Docket No. 1521 at 4 (listing a deadline for "[p]arties to raise any disputes with the Court regarding Pfister trial testimony"); Plaintiff's Pfister Brief, Docket No. 1565; Defendants' Pfister Brief, Docket No. 1567; *see also* Docket No. 1432 at 17-18, 18 n.18 (August 9, 2019 Order regarding parties' estoppel issues).

The parties did not raise this dispute at the hearing, and the Court will assume unless it hears otherwise that the issue is resolved.

IV.     **Conclusion**

For the reasons stated herein, the Court would rule as follows:

- Defendants' Motion for Summary Judgment of Noninfringement of the asserted claims of the '032 Patent (Docket No. 1240) is **DENIED**.

- Defendants' Motion for Summary Judgment of Noninfringement of the asserted claims of the '781 Patent (Docket No. 1535) is **DENIED-IN-PART** and **GRANTED-IN-PART**.

- Defendants' Offer of Proof regarding noninfringement of the asserted claims of the '032 Patent and '781 Patent (Docket No. 1237) is **REJECTED**.

- Defendants' Motion for Summary Judgment on Plaintiff's "Copying" Secondary Consideration (Docket No. 1249) is effectively **DENIED AS MOOT** given that Defendants are estopped from raising their earlier-proffered prior art invalidity grounds regarding the asserted claims.  Plaintiff's Offer of Proof (Docket No. 1531) is **REJECTED**, **EXCEPT THAT** Plaintiff may refer to the copying evidence only if Defendants open the door by arguing that LDPC codes are "completely separate from and derived independently from Caltech's IRA invention."