REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

MARK D. SELWYN (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Tel:   (650) 858-6000
Fax:   (650) 858-6100

JAMES M. DOWD (SBN 259578)
james.dowd@wilmerhale.com
AARON S. THOMPSON (SBN 272391)
aaron.thompson@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
350 South Grand Avenue, Suite 2100
Los Angeles, California 90071
Tel:   (213) 443-5300
Fax:   (213) 443-5400

Attorneys for Defendants and Counter-
Claim Plaintiffs *Broadcom Limited,*
*Broadcom Corporation, Avago*
*Technologies Limited, and Apple Inc.*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE CALIFORNIA INSTITUTE OF TECHNOLOGY,<br><br>                Plaintiff,<br><br>   vs.<br><br>BROADCOM LIMITED, BROADCOM CORPORATION, AVAGO TECHNOLOGIES LIMITED, AND APPLE INC.,<br><br>                Defendants. | CASE NO. 2:16-cv-3714-GW(AGRx)<br><br>**DEFENDANTS' OPPOSITION TO CALTECH'S MOTION FOR SUPPLEMENTAL DAMAGES, INTEREST, ATTORNEYS' FEES, AND A PERMANENT INJUNCTION OR ONGOING ROYALTIES**<br><br>Hon. George H. Wu<br>United States District Judge<br>Hearing Date: June 1, 2020<br>Time: 8:30 AM<br>Place: Courtroom 9D |

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1  BROADCOM LIMITED, BROADCOM
2  CORPORATION, AVAGO
   TECHNOLOGIES LIMITED, AND
3  APPLE INC.,

4              Counterclaim-
5              Plaintiffs,

6      vs.
7
8  THE CALIFORNIA INSTITUTE OF
   TECHNOLOGY,
9
10             Counterclaim-
               Defendant.
11

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ............................................................................1

II.     ANY RULING ON SUPPLEMENTAL DAMAGES, INTEREST, AND ONGOING ROYALTIES SHOULD BE DEFERRED. .......................1

III.    CALTECH'S SUPPLEMENTAL DAMAGES REQUEST SHOULD BE DENIED. ..................................................................................2

IV.    CALTECH'S PRE-JUDGMENT INTEREST REQUEST SHOULD BE DENIED. ..................................................................................5

V.     CALTECH'S INJUNCTION REQUEST SHOULD BE DENIED...............8

       A.     Caltech Will Not Suffer Irreparable Harm, And Money Damages Are More Than Adequate Compensation In Any Event. .....................9

       B.     The Balance of Hardships Favors Broadcom and Apple...................12

       C.     An Injunction Would Be Against the Public Interest. ........................13

VI.    CALTECH'S ONGOING ROYALTY REQUEST SHOULD BE DENIED. ..................................................................................16

       A.     The Court Should Defer or Deny Caltech's Request For An Ongoing Royalty. ..................................................................16

       B.     Alternatively, Caltech's Requested Ongoing Royalty Scheme Should Be Rejected. ..................................................................16

VII.   CALTECH'S ATTORNEYS' FEES REQUEST SHOULD BE DENIED. ..................................................................................22

       A.     Caltech Has Not Identified Any Unreasonable Discovery Conduct That Could Serve As The Basis For A Fees Award.............24

       B.     Caltech Has Not Identified Any Other Pre-Trial Litigation Conduct That Could Serve As The Basis For A Fees Award.............29

       C.     Caltech Has Not Identified Any Trial Conduct That Could Serve As The Basis For A Fees Award. ...............................................33

VIII.  CONCLUSION ............................................................................35

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*ActiveVideo Networks, Inc. v. Verizon Communications, Inc.*,
   694 F.3d 1312 (Fed. Cir. 2012) ...........................................................9, 10, 11, 12

*Apple Inc. v. Samsung Electronics Co.*,
   67 F. Supp. 3d 1100 (N.D. Cal. 2014)...............................................................1, 7

*Apple Inc. v. Samsung Electronics Co.*,
   678 F.3d 1314 (Fed. Cir. 2012) ......................................................................9, 12

*Apple Inc. v. Samsung Electronics Co.*,
   735 F.3d 1352 (Fed. Cir. 2013) ................................................................9, 11, 14

*Apple Inc. v. Samsung Electronics Co.*,
   809 F.3d 633 (Fed. Cir. 2015) ..............................................................................11

*Apple Inc. v. Samsung Electronics Co.*,
   926 F. Supp. 2d 1100 (N.D. Cal. 2013).....................................................1, 4, 7, 8

*Ariba, Inc. v. Emptoris, Inc.*,
   567 F. Supp. 2d 914 (E.D. Tex. 2008) ................................................................20

*BASF Plant Science, LP v. Commonwealth Scientific & Industrial
   Research Organisation*,
   2019 WL 8108116 (E.D. Va. Dec. 23, 2019)......................................................10

*Bianco v. Globus Medical, Inc.*,
   2014 WL 1049067 (E.D. Tex. Mar. 17, 2014).....................................................10

*Bianco v. Globus Medical, Inc.*,
   53 F. Supp. 3d 929 (E.D. Tex. 2014) ...................................................................17

*Bio-Rad Laboratories, Inc. v. Nicolet Instrument Corp.*,
   807 F.2d 964 (Fed. Cir. 1986) ................................................................................6

*California Institute of Technology v. Hughes Communications, Inc.*,
   2015 WL 11089495 (C.D. Cal. May 5, 2015)......................................................32

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

*Carnegie Mellon University v. Marvell Technology Group, Ltd.*,
  2014 WL 1320154 (W.D. Pa. Mar. 31, 2014).....................................................13

*Cave Consulting Group, LLC v. Optuminsight, Inc.*,
  2016 WL 4658979 (N.D. Cal. Sept. 7, 2016)........................................................2

*Celsis In Vitro, Inc. v. CellzDirect, Inc.*,
  664 F.3d 922 (Fed. Cir. 2012) ..............................................................................9

*Cioffi v. Google, Inc.*,
  2017 WL 4011143 (E.D. Tex. Sept. 12, 2017) ................................18, 19, 20, 21

*Conceptus, Inc. v. Hologic, Inc.*,
  2012 WL 44064 (N.D. Cal. Jan. 9, 2012) ..........................................................6, 8

*Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*,
  2020 WL 1478396 (E.D. Tex. Mar. 26, 2020).....................................................23

*Crystal Semiconductor Corp. v. TriTech Microelectronics
  International, Inc.*, 246 F.3d 1336 (Fed. Cir. 2001)............................................6

*Cummins-Allison Corp. v. SBM Co.*,
  584 F. Supp. 2d 916 (E.D. Tex. 2008) ................................................................18

*eBay v. MercExchange, LLC*,
  547 U.S. 388 (2006) ..............................................................................................9

*EcoServices, LLC v. Certified Aviation Services, LLC*,
  340 F. Supp. 3d 1004 (C.D. Cal. 2018)...............................................................12

*EMC Corp. v. Zerto, Inc.*,
  2017 WL 3434212 (D. Del. Aug. 10, 2017)...........................................18, 20, 21

*Eolas Technologies Inc. v. Microsoft Corp.*,
  2004 WL 170334 (N.D. Ill. Jan. 15, 2004) ...........................................................2

*Finjan, Inc. v. Secure Computing Corp.*,
  626 F.3d 1197 (Fed. Cir. 2010) .............................................................................3

*General Motors Corp. v. Devex Corp.*,
  461 U.S. 648 (1983) ...........................................................................................5, 6

*Halo Electronics, Inc. v. Pulse Electronics, Inc.*,
  136 S. Ct. 1923 (2016) .........................................................................................21

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

*Hynix Semiconductor Inc. v. Rambus Inc.*,
   609 F. Supp. 2d 951 (N.D. Cal. 2009)............................................................4, 10

*Itron, Inc. v. Benghiat*,
   2003 WL 22037710 (D. Minn. Aug. 29, 2003)..................................................2

*Kaneka Corp. v. SKC Kolon PI, Inc.*,
   198 F. Supp. 3d 1089 (C.D. Cal. 2016)..............................................................6

*Kolcraft Enterprises, Inc. v. Chicco USA, Inc.*,
   2019 WL 4242482 (N.D. Ill. Sept. 6, 2019).....................................................31

*Laitram Corp. v. NEC Corp.*,
   115 F.3d 947 (Fed. Cir. 1997) ........................................................................7, 8

*Lubby Holdings, LLC v. Chung*,
   2019 WL 4284509 (C.D. Cal. June 27, 2019)..............................................23, 33

*Lucent Technologies, Inc. v. Newbridge Networks Corp.*,
   168 F. Supp. 2d 269 (D. Del. 2001) ...................................................................3

*Mars, Inc. v. Coin Acceptors, Inc.*,
   513 F. Supp. 2d 128 (D.N.J. 2007)..................................................................7, 8

*Mass Engineered Design, Inc. v. Planar Systems, Inc.*,
   2019 WL 5856429 (D. Or. Nov. 8, 2019) .........................................................33

*Milwaukee Electric Tool Corp. v. Snap-On Inc.*,
   288 F. Supp. 3d 872 (E.D. Wis. 2017) ...............................................................6

*Monsanto Co. v. Geerston Seed Farms*,
   561 U.S. 139 (2010) ...........................................................................................9

*Munchkin, Inc. v. Luv N' Care, Ltd.*,
   2018 WL 7504404 (C.D. Cal. Dec. 27, 2018) ..................................................24

*Nichia Corp. v. Everlight Americas, Inc.*,
   855 F.3d 1328 (Fed. Cir. 2017) ..........................................................................9

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
   572 U.S. 545 (2014) .........................................................................................22

*Oscar Mayer Foods Corp. v. Conagra, Inc.*,
   869 F. Supp. 656 (W.D. Wis. 1994).....................................................................4

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

*Paice LLC v. Toyota Motor Corp.*,
      504 F.3d 1293 (Fed. Cir. 2007) ........................................................................16

*Power Integrations, Inc. v. Fairchild Semiconductor International,
      Inc.*, 2015 WL 604582 (N.D. Cal. Feb. 12, 2015)........................................ 11-12

*Power Integrations, Inc. v. Fairchild Semiconductor International,
      Inc.*, 711 F.3d 1348 (Fed. Cir. 2013) ................................................................3

*Presidio Components Inc. v. American Technical Ceramics Corp.*,
      2010 WL 3070370 (S.D. Cal. Aug. 5, 2010) ......................................................4

*Read Corp. v. Portec, Inc.*,
      970 F.2d 816 (Fed. Cir. 1992) ..........................................................................21

*Riles v. Shell Exploration & Produdction Co.*,
      298 F.3d 1302 (Fed. Cir. 2002) ........................................................................13

*Southern California Retail Clerks Union & Food Employers Joint
      Pension Trust Fund v. Bjorklund*,
      728 F.2d 1262 (9th Cir. 1984)..............................................................2, 3, 8, 16

*Sociedad Espanola de Electromedicina y Calidad, S.A. v. Blue Ridge
      X-Ray Co.*, 226 F. Supp. 3d 520 (W.D.N.C. 2016).........................................23

*Soverain Software LLC v. J.C. Penney Corp.*,
      899 F. Supp. 2d 574 (E.D. Tex. 2012) ..............................................................17

*St. Lawrence Communications LLC v. Motorola Mobility LLC*,
      2017 WL 6268735 (E.D. Tex. Dec. 8, 2017) ....................................................18

*Stone Basket Innovations, LLC v. Cook Medical LLC*,
      892 F.3d 1175 (Fed. Cir. 2018) ........................................................................29

*Stragent, LLC v. Intel Corp.*,
      2014 WL 6756304 (E.D. Tex. Aug. 6, 2014)...............................................22, 24

*Tannas v. Multichip Display, Inc.*,
      2018 WL 1033219 (C.D. Cal. Feb. 21, 2018)....................................................24

*Therasense, Inc. v. Becton, Dickinson and Co.*,
      649 F.3d 1276 (Fed. Cir. 2011) ........................................................................32

*TransPerfect Global, Inc. v. MotionPoint Corp.*,
      2014 WL 6068384 (N.D. Cal. Nov. 13, 2014)....................................................3

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

*Tristrata Technology, Inc. v. ICN Pharmaceuticals, Inc.*,
  2004 WL 769357 (D. Del. Apr. 7, 2004) ...............................................................3

*University of Pittsburgh v. Varian Medical Systems, Inc.*,
  2012 WL 1436569 (W.D. Pa. Apr. 25, 2012) ....................................................20

*University of Utah v. Max-Planck-Gesellschaft zur Foerderung der
  Wissenshaften*,
  851 F.3d 1317 (Fed. Cir. 2017) ...............................................................23, 30

*Vectura Ltd. v. GlaxoSmithKline LLC*,
  2019 WL 4346502 (D. Del. Sept. 12, 2019) ....................................................20, 30

*Veracode, Inc. v. Appthority, Inc.*,
  137 F. Supp. 3d 17 (D. Mass. 2015)......................................................................5

*WesternGeco L.L.C. v. ION Geophysical Corp.*,
  953 F. Supp. 2d 731 (S.D. Tex. 2013)................................................................30

*Whitserve, LLC v. Computer Packages, Inc.*,
  694 F.3d 10 (Fed. Cir. 2012) ...........................................................................16

*Winter v. Natural Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) ................................................................................................9

*XpertUniverse, Inc. v. Cisco Systems, Inc.*,
  2013 WL 6118447 (D. Del. Nov. 20, 2013).......................................................16

**Federal Statutes**

35 U.S.C. § 285................................................................................................23, 31

35 U.S.C. § 314(a) ...............................................................................................30

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

## I.      INTRODUCTION

Caltech's motion requests a host of monetary remedies that would drastically multiply its ill-founded and already-exorbitant damages award, plus a permanent injunction.  As an initial matter, no monetary or equitable relief is warranted because Defendants are entitled to judgment as a matter of law or a new trial, as explained in their post-trial motion.  Alternatively, in the interest of judicial economy, a decision on Caltech's newly requested monetary relief should be deferred until after any appeals.  But if the Court reaches the merits now, it should decline to award any additional monetary relief or the requested equitable remedies for the reasons below.

## II.    ANY RULING ON SUPPLEMENTAL DAMAGES, INTEREST, AND ONGOING ROYALTIES SHOULD BE DEFERRED.

In their post-trial motion (Dkt. 2160-1), Defendants explained in detail why they are entitled to judgment of no infringement and no damages, or alternatively, to a new trial.  In addition, Defendants have multiple additional grounds for appeal that, if successful, would separately require vacating any infringement finding and/or damages award, including based on rulings directed to claim construction, the dismissal of Defendants' invalidity and unenforceability defenses, and *Daubert* issues.  Resolution of those issues—by either this Court or the Federal Circuit—could eliminate the need for the Court to *ever* reach Caltech's request for additional money remedies (or at least could drastically change their calculation).

Thus, it would promote judicial economy to defer any accounting involving these requested remedies until after any appeal—as numerous other courts have done in similar circumstances.  *See Apple Inc. v. Samsung Elecs. Co.*, 926 F. Supp. 2d 1100, 1107 (N.D. Cal. 2013) (deferring "consideration of evidence of actual post-verdict sales until after the completion of the appeals in this case"), *vacated in part on other grounds*, 786 F.3d 983 (Fed. Cir. 2015); *Apple Inc. v. Samsung Elecs. Co.*, 67 F. Supp. 3d 1100, 1118, 1122 (N.D. Cal. 2014) (holding "it will be more efficient to calculate prejudgment interest after appeal, when the final amount of the judgment

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

is known," and also delaying calculation of additional damages because "proceeding without the Federal Circuit's guidance may cause unnecessary expenditures of time and resources should the Circuit reverse any part of the jury's verdict on liability"); *Cave Consulting Grp., LLC v. Optuminsight, Inc.*, 2016 WL 4658979, at \*24 (N.D. Cal. Sept. 7, 2016) (deferring "consideration of evidence and calculating the ongoing royalty rate until after the completion of the appeals in this case"), *vacated on other grounds*, 725 F. App'x 988 (Fed. Cir. 2018); *Eolas Techs. Inc. v. Microsoft Corp.*, 2004 WL 170334, at \*8 (N.D. Ill. Jan. 15, 2004) (delaying accounting of supplemental damages and prejudgment interest until "after any appeal"), *vacated in part on other grounds*, 399 F.3d 1325 (Fed. Cir. 2005); *Itron, Inc. v. Benghiat*, 2003 WL 22037710, at \*16 (D. Minn. Aug. 29, 2003) ("To avoid potentially unnecessary expenditures of time and money in preparing … an accounting … the Court will stay pending resolution of all appeals in this case.").[1]

## III. CALTECH'S SUPPLEMENTAL DAMAGES REQUEST SHOULD BE DENIED.

If the Court addresses the issue of supplemental damages now, it should deny Caltech's request for "an accounting of and supplemental damages for Defendants' sales of infringing products from the end-dates of the prior sales data up to the date the Court enters final judgment."  Dkt. 2168-1 ("Mot.") at 5.

***First***, Caltech waived any right to seek supplemental damages by failing to request that remedy in the joint proposed pretrial order.  Dkt. 1664-1 at 3 (only requesting "a reasonable royalty … to compensate for what Caltech believes to be the unlicensed use of its patents ***from December 2009 to the present***").[2]  *See S. Cal. Retail Clerks Union & Food Emp'rs Joint Pension Tr. Fund v. Bjorklund*, 728 F.2d

---

[1] This approach will not delay any damages payment to Caltech, as the parties have agreed that Defendants will not need to pay a judgment, if any, until ***after*** completion of all appeals and remand proceedings.

[2] All bold/italics emphasis in this brief is added.

1262, 1264 (9th Cir. 1984) ("We have consistently held that issues not preserved in the pretrial order have been eliminated from the action."); *Lucent Techs., Inc. v. Newbridge Networks Corp.*, 168 F. Supp. 2d 269, 272-73 (D. Del. 2001) (denying supplemental damages request not in pretrial order); *Tristrata Tech., Inc. v. ICN Pharms., Inc.*, 2004 WL 769357, at *2 (D. Del. Apr. 7, 2004) ("Tristrata waived its right to request an accounting by not including it in its Pretrial Order.").[3]

***Second***, beyond its waiver, Caltech is not entitled to ***any*** damages for the many reasons explained in Defendants' post-trial motion—including because Defendants are entitled to judgment of no infringement and also because Caltech failed to offer a viable and/or factually supported damages theory at trial.  Dkt. 2160-1 at 1-28. Therefore, there is no proper basis to award supplemental damages in any amount.

***Third***, Caltech seeks supplemental damages (for accused Broadcom chips sold between August 2019 and the date of the jury's verdict, and for accused Apple products sold between September 2019 and the date of the jury's verdict) because sales data for those products was "not available from Defendants at the time of trial." Mot. at 5.  If Caltech intended to seek damages based on those added sales, it should have moved to compel production of the underlying sales data before trial, or at least requested its production at trial—but it did neither of those things.  *See TransPerfect Global, Inc. v. MotionPoint Corp.*, 2014 WL 6068384, at *4 (N.D. Cal. Nov. 13, 2014) (denying pre-verdict supplemental damages where patentee "did not move to compel the financial information necessary to calculate [them]").

Caltech alternatively could have asked the jury to adjust its damages award

---

[3] The Federal Circuit has held that no waiver occurred where a party failed to request supplemental damages in a complaint, but has not addressed waiver of supplemental damages requests in the context of the Ninth Circuit rule that "issues not preserved in the ***pretrial order*** have been ***eliminated*** from the action." *S. Cal. Retail Clerks Union*, 728 F.2d at 1264; *see Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1212-13 (Fed. Cir. 2010); *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1380-81 (Fed. Cir. 2013).

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1   upward to account for accused products allegedly missing from the royalty base

2   (due, for example, to incomplete sales data)—which it also did not do.  *See Presidio*

3   *Components Inc. v. Am. Tech. Ceramics Corp.*, 2010 WL 3070370, at *2 n.1 (S.D.

4   Cal. Aug. 5, 2010) (explaining patentee "could have—but did not—argue to the jury

5   that its suggested [damages] amount … should be proportionally increased for the

6   two months not accounted in the sales data," and "[u]nder these circumstances,

7   awarding additional amounts of damages incurred before trial would be an improper

8   invasion of the jury's province to determine actual damages" (citation omitted)),

9   *aff'd in part, vacated in part on other grounds*, 702 F.3d 1351 (Fed. Cir. 2012);

10   *Apple*, 926 F. Supp. 2d at 1104-05 (denying supplemental damages for pre-verdict

11   sales where "nothing precluded [patentee] from arguing that the jury should consider

12   [those] sales [for which data was missing], or from presenting evidence on how to

13   estimate such sales"); *Oscar Mayer Foods Corp. v. Conagra, Inc.*, 869 F. Supp. 656,

14   668 (W.D. Wis. 1994) (denying damages "for that period of time prior to trial for

15   which plaintiff offered no evidence of lost profits").

16        **Fourth**, Caltech cannot justify its request for supplemental damages directed

17   to products "not colorably different" from those accused at trial, including based on

18   the parties' representative products stipulation.  Mot. at 5.  The Court **excluded** those

19   products from trial—**at Caltech's urging**.  12/30/19 Hr'g Tr. 61:16-67:25 (Court:

20   "They're not accused products.  They're not relevant.  They're out.").  Caltech

21   cannot fairly recover supplemental damages based on products that it successfully

22   kept the jury from considering.

23        Further, as Caltech admits, Mot. at 3, when permitted, supplemental damages

24   "serve[] section 284's expressed interest in providing damages 'adequate to

25   compensate for **the infringement**.'"  *Hynix Semiconductor Inc. v. Rambus Inc.*, 609

26   F. Supp. 2d 951, 961 (N.D. Cal. 2009).  Products "not colorably different" from

27   those specifically accused at trial were **not** part of "the infringement" found by the

28   jury, and thus are not a proper basis for supplemental damages.  For that reason, it

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

is not surprising that Caltech fails to cite any decision awarding supplemental damages on products "not colorably different" from those actually accused at trial.

*Finally*, if the Court elects to award supplemental damages for alleged post-verdict infringement, it should reject Caltech's request to use the rates that the jury applied for its damages award.  *See Veracode, Inc. v. Appthority, Inc.*, 137 F. Supp. 3d 17, 84 (D. Mass. 2015) ("The amount of supplemental damages following a jury verdict is a matter committed to the sound discretion of the district court," and "need not necessarily be derived from the royalty rate applied by the jury.").

As explained in Defendants' post-trial motion, the royalty rates that Caltech asserted, and the jury adopted, were legally improper and factually unsupported for many reasons—including because they were (1) premised on the flawed starting point of using two different rates for Broadcom and Apple based on two different hypothetical negotiations (even though Caltech's infringement allegations for both Defendants stemmed from the same accused functionality in the same Broadcom chips), (2) based on non-comparable "anchor" licenses (without any apportionment), (3) imputed incorrectly, and (4) upward adjusted without any proper basis to do so. Dkt. 2160-1 at 11-18.  It would be error to allow Caltech to base a supplemental damages claim on the same flawed rates here.

Nevertheless, if the Court upholds the jury's infringement verdict and the rate that the jury applied for its damages award, and also permits Caltech to seek supplemental damages, any such claim should at most apply a *single* rate for *all* Broadcom *and Apple* accused products—i.e., whatever rate the Court applies to the accused Broadcom chips that the jury found to infringe.  *Id.* at 5-8, 16-18.

## IV.    CALTECH'S PRE-JUDGMENT INTEREST REQUEST SHOULD BE DENIED.

Although pre-judgment interest "should ordinarily be awarded," Section 284 does *not* "requir[e] the award of prejudgment interest whenever infringement is found."  *General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 655-56 (1983).

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1   Instead, whether to award pre-judgment interest (including the rate used and if

2   compounding should occur) is committed to the Court's discretion, and "it may be

3   appropriate to limit prejudgment interest, or perhaps even deny it altogether, where

4   the patent owner has been responsible for undue delay in prosecuting the lawsuit."

5   *Id.* at 656-57; *see Bio-Rad Labs., Inc. v. Nicolet Instrument Corp.*, 807 F.2d 964,

6   969 (Fed. Cir. 1986) ("The rate of prejudgment interest and whether it should be

7   compounded or uncompounded are matters left largely to the discretion of the

8   district court").  Moreover, there "may be other circumstances in which it may be

9   appropriate not to award prejudgment interest."  *General Motors*, 461 U.S. at 657.

10   Here, Caltech's request for pre-judgment interest should be denied because

11   Caltech is not entitled to any damages.  Dkt. 2160-1 at 1-28.  In addition, in the

12   unlikely event the jury's infringement verdict and damages award survive intact,

13   including after any appeals, pre-judgment interest should be denied because an

14   award of more than $1.1 billion already would make Caltech more than "whole" for

15   Broadcom's and Apple's alleged infringement.  *See General Motors*, 461 U.S. at

16   656; *Conceptus, Inc. v. Hologic, Inc.*, 2012 WL 44064, at *4 (N.D. Cal. Jan. 9, 2012)

17   (denying pre-judgment interest where "[the] jury award was generous enough").

18   Pre-judgment interest also should be denied because Caltech waited seven years

19   to file this lawsuit after the first allegedly infringing act by Defendants—which

20   drove up the volume of allegedly infringing sales and the period over which Caltech

21   is now seeking interest, compounded annually.  *See General Motors*, 461 U.S. at

22   657 (pre-judgment interest may not be justified if prevailing party was "responsible

23   for undue delay in prosecuting the lawsuit"); *Crystal Semiconductor Corp. v.

24   TriTech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1361-62 (Fed. Cir. 2001)

25   (affirming denial of pre-judgment interest where patentee delayed two years in

26   bringing suit); *Milwaukee Elec. Tool Corp. v. Snap-On Inc.*, 288 F. Supp. 3d 872,

27   907-08 (E.D. Wis. 2017) (denying pre-judgment interest for pre-suit period where

28   delay in filing suit "needlessly inflated the potential prejudgment interest sum");

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1  *Kaneka Corp. v. SKC Kolon PI, Inc.*, 198 F. Supp. 3d 1089, 1124 (C.D. Cal. 2016)

2  (denying pre-judgment interest where "delay resulted in prejudice to Defendants").

3      Further, even if the Court decides to award pre-judgment interest, it should use

4  the average 52-week U.S. Treasury Bill rate, instead of the prime rate urged by

5  Caltech.  Mot. at 6-8.  Although the Federal Circuit has approved both rates in certain

6  contexts, "the T-Bill rate should be used as a baseline investment rate, absent

7  evidence that the patent holder is entitled to a better rate, either because it had to

8  borrow at a higher rate to cover the lost funds, or because it would have invested at

9  a better rate."  *Mars, Inc. v. Coin Acceptors, Inc.*, 513 F. Supp. 2d 128, 132-33, 136

10  (D.N.J. 2007).

11      Here, the T-Bill rate is better suited because "there [is] no evidence … that there

12  was a causal connection between any borrowing and the loss of the use of the money

13  awarded as a result of [alleged] infringement."  *Laitram Corp. v. NEC Corp.*, 115

14  F.3d 947, 955 (Fed. Cir. 1997); *Mars*, 513 F. Supp. 2d at 136-37 (applying "T-Bill

15  rate as the measure of prejudgment interest" because that rate (1) is "a baseline

16  investment rate," (2) "permits the Court to avoid the speculation involved with

17  determining whether possibly higher-yielding, but riskier, investments would have

18  been successful for the patent holder," and (3) "is the statutorily prescribed measure

19  for *post-judgment* interest").

20      Caltech asserts that the prime rate is justified because it "was forced to engage

21  in years of costly and highly contentious litigation against Defendants."  Mot. at 7.

22  But it cites no authority using the prime rate based on these considerations.  Caltech

23  also states that "Apple itself has advocated for use of the prime rate to calculate

24  prejudgment interest in patent cases," Mot. at 7, but neglects to mention that Apple's

25  requests were denied and the court instead used the T-Bill rate, *see Apple*, 67 F.

26  Supp. 3d at 1121-22; *Apple*, 926 F. Supp. 2d at 1107-08.

27      Caltech also contends that the prime rate is warranted because it "is lower than

28  the interest rate on Caltech's taxable bonds obtained during the damages period."

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1   Mot. at 8.   But Caltech failed to show that it borrowed money *because* it lacked

2   access to money resulting from Defendants' alleged infringement.  *See Laitram*, 115

3   F.3d at 955 (holding patentee must show "a causal connection between any

4   borrowing and the loss of the use of the money awarded as a result of [the]

5   infringement"); *Apple*, 926 F. Supp. 2d at 1107 (holding T-Bill rate appropriate for

6   pre-judgment interest where no evidence patentee "borrowed any money because it

7   was deprived of the damages award"); *Conceptus*, 2012 WL 44064, at *4 (rejecting

8   debt-based pre-judgment interest rate because patentee's debt was "unrelated to

9   infringement").

10      Caltech also argues that the prime rate is warranted because it "earned interest

11   on its endowment over the damages period at an average annual rate of return of

12   6.9%."  Mot. at 8.  But Caltech presents no evidence that it would have invested any

13   damages received from this case to earn that rate (e.g., rather than fund programs).

14   Caltech's mere speculation on this issue is insufficient to show "whether possibly

15   higher-yielding, but riskier, investments would have been successful" if Caltech had

16   access to the damages award.  *See Mars*, 513 F. Supp. 2d at 132-33, 136-37.

17      Therefore, if the Court reaches Caltech's request for pre-judgment interest now,

18   that request should be denied, or at least be based on the T-Bill rate.

19   **V.   CALTECH'S INJUNCTION REQUEST SHOULD BE DENIED.**

20      In a cursory, less-than-two-page argument, Caltech demands the extreme

21   remedy of "an injunction against the future sales of the accused products and any

22   products that are not colorably different."  Mot. at 11.  No injunction should enter

23   because Defendants are entitled to judgment of no infringement (or, alternatively, a

24   new trial) for the reasons explained in their post-trial motion.  Dkt. 2160-1 at 1-4,

25   19-28.  In addition, Caltech waived any right to seek an injunction by failing to

26   request one in its pretrial order submissions.  Dkt. 1664-1 at 3 (only seeking remedy

27   of "a reasonable royalty").  *See S. Cal. Retail Clerks Union*, 728 F.2d at 1264.

28      Caltech's injunction request also fails on the merits—given that Caltech has

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

not, and cannot, even come close to meeting the requirements for injunctive relief:

> [A] plaintiff seeking a permanent injunction "must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*Apple Inc. v. Samsung Elecs. Co.*, 735 F.3d 1352, 1359 (Fed. Cir. 2013) ("*Apple III*") (quoting *eBay v. MercExchange, LLC*, 547 U.S. 388, 391 (2006)); *see Monsanto Co. v. Geerston Seed Farms*, 561 U.S. 139, 165 (2010) ("An injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course.").

## A. Caltech Will Not Suffer Irreparable Harm, And Money Damages Are More Than Adequate Compensation In Any Event.

To secure injunctive relief, Caltech must prove "a likelihood of substantial and immediate irreparable injury." *Apple Inc. v. Samsung Elecs. Co.*, 678 F.3d 1314, 1325 (Fed. Cir. 2012) ("*Apple I*") (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)). A harm is "irreparable" only if it cannot be addressed with monetary relief. *Celsis In Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012) ("[T]he irreparable harm inquiry seeks to measure harms that no damages payment, however great, could address.").

Here, Caltech has not established—and cannot establish—the existence of any irreparable harm for several key reasons.

*First*, Caltech does not claim to practice its own asserted patents or to compete with Defendants in any way—because it does not. 1/21 (PM) Tr. 63:8-25, 65:2-5 ("[W]e don't make products."); Dkt. 1217-1 at 1 ("Caltech has not made or sold any product that practices the Patents-in-Suit."). These undisputed facts alone strongly favor denying injunctive relief. *See Nichia Corp. v. Everlight Am., Inc.*, 855 F.3d 1328, 1342 (Fed. Cir. 2017) (affirming no injunction, in part, based on "absence of actual competition"); *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

F.3d 1312, 1339-40 (Fed. Cir. 2012) (reversing injunction grant, in part, because parties "do not compete"); *Bianco v. Globus Med., Inc.*, 2014 WL 1049067, at *5 (E.D. Tex. Mar. 17, 2014) (Bryson, J.) ("[W]ith only a few exceptions, courts have denied injunctive relief in cases in which the patentee does not practice the patent and compete with the alleged infringer.").

**Second**, none of Caltech's alleged injuries constitute harm that is **irreparable**. For example, Caltech asserts Defendants' "unlicensed use of its inventions" has deprived Caltech of "royalties" that can be "reinvested in research and education." Mot. at 11. But lost royalties are completely and quintessentially reparable with money damages. Caltech further relies on abstract speculation that, without an injunction, some unidentified entities might be less willing to license the asserted Caltech patents. Mot. at 12. But again, Caltech's willingness to ███████████ ████████████████████████████████████████████████████████████████— confirms that any "lost" licensing opportunities are **not** irreparable because they **can** be compensated with money. 1/21 (PM) Tr. 63:8-25, 65:2-5. *See ActiveVideo*, 694 F.3d at 1339-40 (vacating injunction where patentee "sought to broadly and extensively license" because "[s]traight-forward monetary harm of this type is not irreparable harm").

Caltech further speculates (again, without evidence) that (1) the lack of an injunction might cause other entities to be "dissuaded from taking a license" and "encouraged to continue their infringement," and (2) if "Caltech is forced to again litigate to enforce its patent rights, more money is diverted away." Mot. at 12. But weakened bargaining leverage is not irreparable harm, especially when the claimed harm merely concerns "money." *See BASF Plant Sci., LP v. Commonwealth Sci. & Indus. Research Org.*, 2019 WL 8108116, at *19 (E.D. Va. Dec. 23, 2019) ("[B]argaining leverage is neither an appropriate reason to seek an injunction, nor an appropriate reason to grant an injunction."); *Hynix Semiconductor*, 609 F. Supp. 2d at 966-68, 983 n.29 (denying injunction where patentee's "motivation in seeking

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1  an injunction is less about preventing irreparable harm and more about extracting …

2  leverage in negotiating").

3      Nor can Caltech satisfy the irreparable harm requirement based on supposed

4  risks of future litigation costs to enforce its patents against others.  *See ActiveVideo*,

5  694 F.3d at 1337 ("[I]t was legal error for the district court to determine [patentee's]

6  litigation costs supported irreparable harm and favored granting an injunction.

7  Litigation costs are undoubtedly undesirable and may take funds away from other

8  endeavors, but they are not an irreparable harm in the injunction calculus.").[4]

9      ***Third***, the Federal Circuit has repeatedly made clear that if an accused product

10  contains features beyond those alleged to infringe, no injunction can issue unless a

11  "causal nexus" exists between the alleged infringement and alleged irreparable

12  harm.  *See Apple Inc. v. Samsung Elecs. Co.*, 809 F.3d 633, 640 (Fed. Cir. 2015)

13  ("The purpose of the causal nexus requirement is to establish the link between the

14  infringement and the harm …."); *Apple III*, 735 F.3d at 1361 ("[T]he causal nexus

15  inquiry is indeed part of the irreparable harm calculus: it informs whether the

16  patentee's allegations of irreparable harm are pertinent to the injunctive relief

17  analysis, or whether the patentee seeks to leverage its patent for competitive gain

18  beyond that which the inventive contribution and value of the patent warrant.").

19      Here, however, even though the accused Broadcom chips and Apple products

20  indisputably contain numerous features not accused of infringement, Caltech does

21  not even try to argue that a "causal nexus" exists between the accused LDPC

22  functionality and any harm Caltech claims it will suffer without an injunction; in

23  fact, its motion ***does not even mention the causal nexus requirement at all***.  This

24  missing proof separately precludes injunctive relief.  *See Power Integrations, Inc. v.*

25

26  ———————————
[4] Caltech vaguely asserts that "the strength of the intellectual property that is

27  developed by Caltech" helps it compete with other universities.  Mot. at 11.  But it

28  tellingly does not even attempt to explain how any form of relief in this case might affect the "strength" of its patents or how it supposedly "competes" with others.

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

*Fairchild Semiconductor Int'l, Inc.*, 2015 WL 604582, at *2-5 (N.D. Cal. Feb. 12, 2015) (denying injunction for failure to prove causal nexus existed); *EcoServices, LLC v. Certified Aviation Servs., LLC*, 340 F. Supp. 3d 1004, 1025-26 (C.D. Cal. 2018) (similar).

*Finally*, Caltech waited until 2016 to bring this lawsuit—based on allegations that Defendants began infringing seven years earlier—and then waited another four years (until after the jury verdict) to first request an injunction.  Dkt. 1 ¶ 29; 1/17 (AM) Tr. 35:3-13.  These lengthy delays further undermine any claim of irreparable harm.  *See Apple I*, 678 F.3d at 1325 ("[D]elay in bringing an infringement action … suggest[s] that the patentee is not irreparably harmed by the infringement.").

In sum, Caltech has not identified a valid irreparable harm, much less one backed with evidence.  It is not entitled to injunctive relief for this reason alone.

## B.    The Balance of Hardships Favors Broadcom and Apple.

Caltech's six-line balance-of-hardships discussion fails to identify even a single alleged hardship to Caltech, and therefore "balances" nothing.  Nor is there any need for the Court to conduct a balancing given that, as discussed above, with no injunction, Caltech will not suffer *any* irreparable injury that money cannot fully compensate—particularly where the parties do not compete.  *See ActiveVideo*, 694 F.3d at 1341 (fact that parties "do not compete in the same market" suggests balancing of harms does not favor patentee).

Nonetheless, real hardship to Defendants will result if Broadcom is enjoined from selling its accused chips, and Apple is enjoined from selling its accused products containing the chips—including for existing inventories of those products. That resulting harm also would be exacerbated by Caltech's overbroad and improper request to enjoin sales of *entire* Broadcom chips and *entire* Apple products containing the chips—based solely on the allegedly infringing nature of the accused LDPC functionality, which involves just a very small portion of the overall accused Broadcom chips, and an even smaller portion of the overall accused Apple products.

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1/23 Tr. 117:20-118:8; Dkt. 2026-3 at 83:13-15, 83:17; 1/17 (AM) Tr. 52:18-54:1; 1/21 (AM) Tr. 43:25-44:14; JTX-24.323-24. *See Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd*., 2014 WL 1320154, at \*35 (W.D. Pa. Mar. 31, 2014) (holding balance of hardships favored infringer where "the Accused Chips are multi-feature products with many non-infringing features and any injunction would bar these non-infringing features as well as the infringing ones"), *rev'd in part on other grounds*, 807 F.3d 1283 (Fed. Cir. 2015); *Riles v. Shell Exploration & Prod. Co.*, 298 F.3d 1302, 1311 (Fed. Cir. 2002) (court "must narrowly tailor an injunction to fit the specific adjudged violations").[5]

That result does not change based on Caltech's cursory argument that any harm to Defendants can be avoided by a mere "switch" to Broadcom chips (not accused of infringement) ██████████████████. Mot. at 12. Caltech offers no evidence about the current state of ████████. Nor does Caltech identify any evidence suggesting that Apple could quickly or easily "switch" its existing product designs to incorporate ████████. The trial record instead shows ████████████████████████████████████████████████████████████ ████████████████ Dkt. 2026-2 at 82:25-83:6, 84:5-8, 84:10, 84:15-18, 85:1-4, 85:7-9.

Because Caltech would suffer no irreparable harm without an injunction, while an injunction would have serious harmful implications for Defendants, the balance of hardships weighs strongly against injunctive relief.

## C.   An Injunction Would Be Against the Public Interest.

An injunction also would be against the public interest.  The only supposed

---

[5] Caltech did not submit a proposed form of injunction or otherwise identify any specific terms for its requested injunctive relief.  While no injunction should enter at all, if the Court decides to enter one, Defendants reserve the right to address the specific scope of any such relief (including if Caltech seeks to enjoin foreign sales).

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

public benefit that Caltech identifies is its *own* "investment in research," which Caltech says "leads to the development of new products and processes that greatly benefit society." Mot. at 12. But no such benefit occurred here, given that IEEE developed the accused LDPC functionality without any input from Caltech. 1/16 (AM) Tr. 37:11-18; 1/21 (AM) Tr. 47:18-23. Caltech also notably fails to explain how an injunction *preventing* Defendants from selling their accused products (and those "not colorably different") would further Caltech's ability to invest in research or "benefit society."

By contrast, barring consumers in the United States from purchasing accused Broadcom chips and accused Apple iPhones, iPads, and computers containing those chips (and those not more than colorably different) would cause substantial and lasting harm to the public—especially by barring consumer access to the thousands of features in Defendants' accused products *not* accused of infringement in this case. 1/23 Tr. 117:20-118:8; Dkt. 2026-3 at 83:13-15, 83:17; 1/17 (AM) Tr. 52:18-54:1; 1/21 (AM) Tr. 43:25-44:14; JTX-24.323-24. *See Apple III*, 735 F.3d at 1372-73 ("[T]he public interest does not support removing phones from the market when the infringing components constituted such limited parts of complex, multi-featured products.").

Indeed, the Apple accused products (and included accused Broadcom chips) support numerous widely-used personal health applications (e.g., heart-rate monitoring, atrial fibrillation detection, and glucose monitoring); are being used during this public health crisis by governments and health agencies to track and reduce the spread of COVID-19; and are also used by many first responders, hospitals, public health and safety agencies, health studies, and physically-disabled individuals.[6] Entry of an injunction also would risk disrupting the operations of a

---

[6] *E.g.*, https://www.apple.com/healthcare/ (iPhones used in hospitals, for patient care at home, and for medical research); https://www.apple.com/researchkit/ (iPhones used in medical research); https://www.apple.com/healthcare/health-records/ (iPhones used for health records); https://www.heartline.com/ (study with

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

broad array of businesses, schools, healthcare institutions, and state and local governments that also use the accused products.[7]   Finally, an injunction would threaten U.S. employment, as Broadcom and Apple have thousands of employees in the United States, and Apple's iOS and App Store ecosystem have separately created millions of jobs in the United States.[8]

At bottom, Caltech's half-hearted request for an injunction is meritless. Caltech makes no products, does not compete with Defendants, and is willing to license (███████████████) the asserted patents in return for money—facts that alone warrant the denial of any injunctive relief.  But here, the record is even more overwhelming against the entry of an injunction given that: (1) Caltech has failed to identify any harm that could be deemed irreparable, or even attempt to explain how it can satisfy the mandatory casual nexus element; (2) Caltech's alleged harms actually demonstrate the adequacy of monetary damages; (3) a balancing of harms analysis tilts drastically against any award of injunctive relief; and (4) Caltech

---

Johnson & Johnson on Afib detection); https://www.apple.com/covid19/contacttracing (documentation for an Exposure Notification system in service of privacy preserving contact tracing, including a preliminary Bluetooth Specification for Exposure Notification); https://www.apple.com/accessibility/ (accessibility features for disabled); https://www.broadcom.com/case-studies (listing "customer success" examples); Ex. 1 (explaining that Apple's devices are uniquely user friendly to the blind and visually impaired community).

[7]  *E.g.*, https://www.apple.com/business/success-stories/ (describing real-life examples of customers whose businesses have been transformed by Apple devices); Ex. 2 (explaining that distributing Apple iPads to students and parking Wi-Fi enabled buses in the district has transformed student learning and engagement); ████████████████████████████████████████████████

[8]  *E.g.*, https://www.apple.com/job-creation/ (explaining that Apple, either through direct employment or through its suppliers and app developers, is responsible for more than two million U.S. jobs).

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

cannot articulate any legitimate basis to justify the serious harm to the public interest that would result if the accused products suddenly become unavailable.

## VI.   CALTECH'S ONGOING ROYALTY REQUEST SHOULD BE DENIED.

"There are several types of relief for ongoing infringement that a court can consider," including "exercis[ing] its discretion to conclude that ***no forward-looking relief is appropriate*** in the circumstances." *Whitserve, LLC v. Comput. Packages, Inc.*, 694 F.3d 10, 35 (Fed. Cir. 2012); *Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1314-15 (Fed. Cir. 2007) (confirming ongoing royalty is not available "as a matter of course"); *XpertUniverse, Inc. v. Cisco Sys., Inc.*, 2013 WL 6118447, at *14 (D. Del. Nov. 20, 2013) ("[I]t is within the court's equitable discretion to determine whether an ongoing royalty need be imposed.").[9]

### A.   The Court Should Defer or Deny Caltech's Request For An Ongoing Royalty.

As discussed in Section II, the Court should defer a decision on any ongoing royalties until after any appeals.  But if the Court reaches the issue now, it should deny that request because: (1) Caltech waived it by failing to request an ongoing royalty remedy in the joint proposed pretrial order (Dkt. 1664-1), *see S. Cal. Retail Clerks Union*, 728 F.2d at 1264; (2) Caltech is not entitled to any damages—both because the jury had no proper basis to find infringement and Caltech offered no valid and factually supported damages theory at trial, Dkt. 2160-1 at 1-28; and (3) the jury's already-exorbitant damages award is more than adequate compensation for Defendants' alleged infringement

### B.   Alternatively, Caltech's Requested Ongoing Royalty Scheme Should Be Rejected.

If the Court addresses ongoing royalties now, it should reject Caltech's request for "ongoing royalties at two times the rates determined by the jury," Mot.

---

[9] For these reasons, Caltech is wrong to contend that, in all cases, "[o]ngoing royalties are ***necessary*** in the absence of an injunction …." Mot. at 13.

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1  at 20—which would impose a penalty so massive that the rate for Apple ($2.80)

2  alone would ███████████████████████████████████████

3  ████████████████████████████████████████████████████

4  ████████████████████████████ Dkt. 1779-6 ¶ 225.

5       Specifically, to determine an ongoing royalty rate, courts often "look[] to the

6  jury's verdict as the 'starting point.'"  *Bianco v. Globus Med., Inc.*, 53 F. Supp. 3d

7  929, 933 (E.D. Tex. 2014) (Bryson, J.); *Soverain Software LLC v. J.C. Penney*

8  *Corp.*, 899 F. Supp. 2d 574, 589 (E.D. Tex. 2012) ("The jury's implied royalty rate

9  provides a starting point for determining the ongoing post-judgment royalty rate."),

10  *rev'd on other grounds*, 778 F.3d 1311 (Fed. Cir. 2015).  Here, the jury adopted per

11  unit royalty rates of $0.26 for Broadcom and $1.40 for Apple.  As explained in

12  Defendants' post-trial motion, however, the source of those rates was Caltech's

13  legally improper and factually unsupported damages theory—which wrongly

14  applied two very different rates based on infringement allegations directed to the

15  *same* accused functionality in Broadcom chips, and despite ███████████████

16  ██████████—which violated a proper hypothetical negotiation construct, the doctrine

17  of patent exhaustion, the principle that royalties must be based on the smallest

18  salable patent-practicing unit, and common sense.  Dkt. 2160-1 at 5-11.

19       The same host of errors would exist if Caltech's two-license approach were

20  applied in an ongoing royalty context, including because ████████████████████

21  ████████████████████████████████████████████████████

22  ████████████████████████████████████ As a result, if the

23  Court upholds the jury's infringement verdict and damages award, and also awards

24  ongoing royalties, it should at most apply whatever ***single rate*** the Court applies to

25  the Broadcom products that the jury found to infringe at trial.  It would make no

26  legal or practical sense to apply different royalty rates based on the ***same*** accused

27  functionality found in the ***same*** accused Broadcom chips.  Dkt. 2160-1 at 5-11.

28       Caltech raises several arguments in support of its request to ***double*** the jury's

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

per-unit rates, none of which has merit.

*First*, Caltech cites as "changed circumstances" (1) the "great[] increase[]" over the past ten years of "the established profitability of the accused products, their commercial success, and their popularity" and "the extent of Defendants' use of the patented inventions"; (2) that "the utility and advantages of the patented invention over old modes has been more firmly established since December 2009"; and (3) that "Caltech's bargaining position post-verdict … has been substantially strengthened by the jury's findings on infringement and damages." Mot. at 16-18.

But none of these allegations constitute ***changed circumstances*** that the jury ***did not already consider*** when awarding damages—and certainly none justifies doubling the jury's damages rate. *See St. Lawrence Commc'n LLC v. Motorola Mobility LLC*, 2017 WL 6268735, at \*4 (E.D. Tex. Dec. 8, 2017) ("[T]he Court is not persuaded that the facts relied on by the Parties reflect circumstances not already considered by the jury," "including 'information about the success of the products.'"); *Cioffi v. Google, Inc.*, 2017 WL 4011143, at \*6-7 (E.D. Tex. Sept. 12, 2017) ("The relative importance of the patented technology, both from Google's perspective and from its users' perspective, has already been considered by the jury and has been incorporated into the jury's implied rate."); *Cummins-Allison Corp. v. SBM Co.*, 584 F. Supp. 2d 916, 918 (E.D. Tex. 2008) ("Naturally, a successful Plaintiff wants to argue that 'everything has changed.' This conveniently ignores the fact that even a minimally competent damages expert will have included in pre-trial calculations every advantageous change in profits, sales, and other conditions that occurred prior to trial under the 'book of wisdom' rubric.").[10]

---

[10] Caltech's attempt to ratchet up the jury's per-unit rates based on claims of changed circumstances also fails because Caltech has not even suggested that these "changes" were attributable to Defendants' alleged infringement. *See Cioffi*, 2017 WL 4011143, at \*7 (holding although changed circumstances "could theoretically favor a higher ongoing royalty rate, the evidence of causation is insufficient to warrant a higher royalty rate"); *EMC Corp. v. Zerto, Inc.*, 2017 WL 3434212, at \*4 (D. Del. Aug. 10, 2017) (rejecting higher royalty based on growth of competitor

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1       Indeed, Dr. Teece admitted in his expert reports that ███████████

2 ████████████████████████████████████████████████

3 ████████████████████████████████████████████████

4 ████████████████████████████████████████████████

5 ██████████████████   Dkt. 1250-2 ¶¶ 417-18, 425-26, 432.   Caltech has not

6 identified any changed revenue, use, or advantages that were not (or could not have

7 been) presented to the jury as part of Caltech's trial damages case.  In fact, Caltech's

8 motion itself explicitly relies on "changes" from many years ago—i.e., "[b]y 2012,"

9 "since December 2009," █████████████ and "over 10 years."  Mot. at 16.[11]

10       *Second*, Caltech argues that doubling the jury's per-unit rate is needed

11 because Caltech's post-verdict bargaining position is "substantially strengthened"

12 now that Defendants' infringement is no longer in dispute.  Mot. at 17.  But that

13 purported post-trial "change" is no change at all given (1) Dr. Teece's trial testimony

14 that, for the 2009 hypothetical negotiation, there would have been "perfect certainty"

15 that Caltech's patents were infringed, 1/22 (PM) Tr. 100:4-11, and (2) the Court's

16 instruction that, for the hypothetical negotiation, the jury "must … assume that both

17 parties believed the patent was valid and infringed," Dkt. 2112 at 14.  Indeed, Dr.

18 Teece even used a presumption of infringement as a basis to upward adjust rates.

19 1/22 (PM) Tr. 151:19-23, 163:7-8; 1/23 Tr. 14:25-15:3; *see* Dkt. 2160-1 at 12-18.

20       There is no legitimate basis for Caltech to repackage an argument that the jury

21 *already considered*—and Dr. Teece *already used* to justify and then increase his

22     ——————————————

23 because "bald [growth] assertion does nothing to demonstrate how Zerto's success as a company could be attributed to the profitability of the patented features").

24 [11] Caltech dismisses Broadcom's ████████████████—which Caltech did

25 not accuse at trial—based on claims that "Defendants offered no evidence that this alternative has been implemented in any Apple products …."  Mot. at 16-17.  This

26 ongoing royalty argument conflicts with Caltech's injunction argument (discussed above) that Defendants could easily and quickly shift to ███████████.  But in any

27 event, "the ability for a defendant to switch to a non-infringing alternative actually

28 weighs *against* a higher royalty rate."  *Cioffi*, 2017 WL 4011143, at *7.

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1  per-unit rates offered at trial—as a supposed post-verdict "changed" circumstance

2  that justifies an added 100% increase.  *See Ariba, Inc. v. Emptoris, Inc.*, 567 F. Supp.

3  2d 914, 918 (E.D. Tex. 2008) ("[I]t is logically inconsistent to argue that a

4  calculation based upon assumptions of infringement and validity would change

5  when those assumptions are replaced by jury findings of the same facts."); *Univ. of*

6  *Pittsburgh v. Varian Med. Sys., Inc.*, 2012 WL 1436569, at *11 (W.D. Pa. Apr. 25,

7  2012) (rejecting changed circumstances argument seeking higher ongoing royalty

8  than set by the jury because "[t]he jury was instructed to assume … that the

9  [asserted] patent was valid and was being infringed").[12]

10  **Third**, Caltech attempts to support its attempted rate doubling based on a

11  claim "that Defendants' infringement is now willful" after the jury verdict.  Mot. at

12  17-19.   However, the jury found that Defendants' conduct was **not willful**, and

13  willfulness does not necessarily follow from an infringement verdict—particularly

14  where, as here, the parties do not directly compete.  *Vectura Ltd. v. GlaxoSmithKline*

15  *LLC*, 2019 WL 4346502, at *8 (D. Del. Sept. 12, 2019) ("[W]illfulness is not an

16  appropriate ground to enhance an ongoing royalty rate where the plaintiff is a non-

17  competitor who benefits from the defendant's ongoing infringement."); *Cioffi*, 2017

18  WL 4011143, at *7-9 (finding "willfulness" irrelevant for ongoing royalty analysis);

19  *EMC Corp. v. Zerto, Inc.*, 2017 WL 3434212, at *5 (D. Del. Aug. 10, 2017) (finding

20  no ongoing royalties based on willful infringement theory because it is "improper"

21  to consider willfulness "where the court already decided that the equities did not

22  weigh in favor of granting EMC an injunction").  Moreover, even under a willfulness

23  theory, there would be no basis for the Court to enhance because there is no evidence

24  or allegation that Defendants' conduct is "willful, wanton, malicious, bad-faith,

---

25  

26  [12] If anything, the cited presumption further undermines Caltech's two-hypothetical
negotiation model and confirms there should be just one rate for all accused

27  products—because Dr. Teece's purported reason for ignoring ███████████

28  ████████████████  at trial was that it "assumes infringement[,] [a]nd in the
hypothetical negotiation there isn't infringement."  1/23 Tr. 58:24-59:10, 97:17-23.

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1    deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate."
2    *See Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1932 (2016).

3         ***Finally***, Caltech contends that upward enhancement is required under the
4    factors set forth in *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 827 (Fed. Cir. 1992).
5    It is unnecessary for the Court to apply the *Read* factors because there is no willful
6    infringement. *See Halo*, 136 S. Ct. at 1932; *Cioffi*, 2017 WL 4011143, at *8; *EMC*,
7    2017 WL 3434212, at *5. But even under *Read*, Caltech is wrong to assert that
8    "factors 1 and 8-9 are neutral, but factors 2-7 each favor enhancement of the royalty
9    rates," Mot. at 19-20—because none of the factors favors enhancement here.

10        ***Factor 1***: *Read* factor one (deliberate copying) weighs against enhancement
11   because no evidence of copying was presented to the jury. The record instead shows
12   that the IEEE 802.11 standard-setting organizations developed the accused
13   functionality, and Broadcom developed the accused chips, without any participation
14   by Caltech. 1/23 Tr. 127:4-21, 131:8-132:7, 132:16-20, 133:2-21, 135:24-138:20,
15   185:8-20, 186:15-191:24, 194:4-7, 199:21-201:1, 206:10-207:16, 208:21-212:9;
16   1/16 (AM) Tr. 37:11-18; 1/21 (AM) Tr. 47:18-23.

17        ***Factors 2 and 5***: For *Read* factors two (knowledge of patents and belief in
18   noninfringement and/or invalidity) and five (closeness of case), Defendants offered
19   significant evidence of their good-faith belief of noninfringement, including trial
20   testimony from Drs. Blanksby and Stark. And Defendants' post-trial motion at least
21   demonstrates a close case, Dkt. 2160-1 at 1-4, 20-30—as further confirmed by
22   Caltech's failure to secure (or even request) a preliminary injunction and/or to fully
23   prevail on summary judgment before trial. These factors cut against enhancement.

24        ***Factor 3***: As discussed in Section VII below, Defendants did not engage in
25   litigation misconduct. Therefore, *Read* factor three (infringer's litigation behavior)
26   weighs against enhancement.

27        ***Factor 4***: For *Read* factor four (infringer's size and financial condition),
28   Caltech points to Defendants' "tremendous size and wealth," Mot. at 19—but

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

without alleging that their size and wealth have anything to do with Caltech. Defendants were successful long before the alleged infringement, and no evidence attributes that success to the accused LDPC functionality.  Caltech also claims a "disparity in size and wealth," *id.*, but neglects to mention that it has an endowment of nearly $3 billion.[13]  Thus, this factor does not merit enhancement.

**Factors 6 and 7**: Caltech argues that *Read* factors six (duration of Defendants' accused conduct) and seven (remedial measures taken) justify enhancement, Mot. at 20, but the opposite is true.  That a decade of allegedly infringing conduct was at issue in this case stemmed directly from Caltech's failure to accuse Defendants of infringement for more than seven years after the accused conduct first began.  And Dr. Blanksby's unrefuted trial testimony established that Broadcom has developed and is implementing ████████████ "in the next generation of WiFi chips." 1/24 (AM) Tr. 26:4-27:2.  Therefore, these factors do not justify enhancement.

**Factors 8 and 9**: Caltech offered no evidence that Defendants were motivated to harm (factor eight) or attempted to conceal their conduct (factor nine).  Thus, both factors weigh against enhancement.

Therefore, neither changed circumstances nor the *Read* factors warrant Caltech's request to double the flawed royalty rates that the jury applied.

## VII.  CALTECH'S ATTORNEYS' FEES REQUEST SHOULD BE DENIED.

Attorneys' fees may be awarded only "***in the rare case*** in which a party's unreasonable conduct" is "exceptional" because the litigation "present[s] either subjective bad faith or exceptionally meritless claims [that] sufficiently set[s] itself apart from mine-run cases." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554-55 (2014); *see Stragent, LLC v. Intel Corp.*, 2014 WL 6756304, at *3 (E.D. Tex. Aug. 6, 2014) (Dyk, J.) ("[A]wards of attorney's fees [under *Octane*] in patent cases should be reserved for rare and unusual circumstances.").

---

[13] Caltech Endowment Report Fiscal Year 2018, http://investments.caltech.edu/documents/353-caltech_endowment_brochure_fy18-d02_hires_pages.pdf.

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1   This is not such a case.[14]

2          Rather, during summary judgment, the Court cast this case as "incredibly

3   litigious"—but on ***both*** sides.  Dkt. 1099 at 2 (noting "the incredibly litigious nature

4   of this case has put ***the parties*** (and the Court) in a 'trust no one' state of mind," and

5   expressing "frustration with ***the parties'*** litigation tactics").  And even closer to trial

6   the Court stated that, while "litigation tactics by one or ***both parties*** have led the

7   Court to make a comment regarding fees, ***the overall circumstances surrounding***

8   ***the prosecution of this case should not lead either party to expect them***."  Dkt.

9   1214 at 2 n.1 ("[T]he Court warns that the chances of a successful request for fees

10  under 35 U.S.C. § 285 ***will be low***.").

11         Nothing in Caltech's motion requires a different conclusion now, just because

12  the jury has since found in Caltech's favor.  To the contrary, when viewed in full

13  context—which Caltech selectively ignores—the record confirms that there is no

14  legitimate basis to award fees because Defendants have acted reasonably and

15  professionally throughout this hard-fought litigation.  *See Univ. of Utah v. Max-*

16  *Planck-Gesellschaft zur Foerderung der Wissenschaften*, 851 F.3d 1317, 1323 (Fed.

17  Cir. 2017) (affirming fee denial despite infringer's "weak" case because arguments

18  were not "objectively unreasonable"); *Core Wireless Licensing S.A.R.L. v. LG*

19  *Elecs., Inc.*, 2020 WL 1478396, at *4 (E.D. Tex. Mar. 26, 2020) (holding awarding

20  fees just for "losing a hard-fought and contentious trial" would "eviscerate the

21  longstanding 'American rule' against fee-shifting"); *Lubby Holdings, LLC v. Chung*,

22  2019 WL 4284509, at *2 (C.D. Cal. June 27, 2019) ("For a case to stand out under

23  the *Octane* standard, a party's litigating position must be objectively meritless rather

24

25  _____

26  [14] Fees must also be denied because Caltech "failed to prove that its claimed fees …
    are reasonable"; in fact, Caltech failed to identify what fees it even seeks.  *Sociedad*
27  *Espanola de Electromedicina, S.A. v. Blue Ridge X-Ray Co.*, 226 F. Supp. 3d 520,
    533-34 (W.D.N.C. 2016) (holding "the Court need not determine whether the case
28  is exceptional" under § 285 because party failed to support its request with affidavits
    establishing fees), *aff'd*, 721 F. App'x 989 (Fed. Cir. 2018).

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

than merely unpersuasive."); *Stragent*, 2014 WL 6756304, at *3 (rejecting fees "primarily based on the fact that [party] made losing arguments").[15]

## A.   Caltech Has Not Identified Any Unreasonable Discovery Conduct That Could Serve As The Basis For A Fees Award.

Caltech tries to paint this case as a completely one-sided affair in which Defendants knew that they would not prevail at trial, and thus sought to preclude Caltech from securing relevant discovery at every turn. Mot. at 21-34. This is untrue. During discovery, Defendants (1) produced three million pages of documents, including sensitive technical materials, financial information, and source code; (2) provided thousands of pages of written discovery responses; and (3) made nearly thirty witnesses available for deposition. In so doing, neither Defendant was sanctioned, held in contempt, or otherwise punished for discovery abuses—because there were none.[16] This record does not support a claim for fees; instead, it confirms that Defendants provided Caltech with a full and fair opportunity to discover the facts needed to prepare for trial.

Ignoring this history, Caltech's motion focuses on three isolated discovery issues, none of which supports an award of attorneys' fees.

***First***, Caltech alleges that Defendants wrongfully "refused to produce" third-party documents from the Wi-Fi Alliance. Mot. at 25-26. In making that argument,

---

[15] Caltech misleadingly states that this District has twice awarded fees under "facts similar to those present here." Mot. at 22. Unlike here, the *Tannas* defendants were sanctioned, "held in contempt, stalled discovery, created a conflicting factual record, failed to appear in court on several occasions, and habitually submitted untimely or procedurally non-compliant papers." *Tannas v. Multichip Display, Inc.*, 2018 WL 1033219, at *4 (C.D. Cal. Feb. 21, 2018). And in *Munchkin*, the court gave "great weight" to the ***patent owner's*** awareness of the "substantive weakness" of ***its own patent***, including for failing to disclose prior art during prosecution—facts not close to those at issue here. *Munchkin, Inc. v. Luv N' Care, Ltd.*, 2018 WL 7504404, at *5-6 (C.D. Cal. Dec. 27, 2018).

[16] Caltech filed seven motions to compel discovery, but the Court completely denied four of them (Dkts. 273, 451, 595, 510), and denied two in-part (Dkts. 142, 419).

---

however, Caltech neglects to mention that it directly subpoenaed the Wi-Fi Alliance, and *never* moved to compel when the Wi-Fi Alliance failed to produce responsive documents before fact discovery closed.  Dkts. 563-1 at 2, 563-3.  Caltech also ignores that, when it later sought to compel Defendants to locate/produce Wi-Fi Alliance documents, Judge Rosenberg *denied* that request.  Dkt. 563-5 at 40:20-23 ("[T]he question [before] me today is just whether the defendants can be required to produce [the] information of a third party, and I think under the case law the answer is no.").  Caltech cannot properly demand fees based on the non-production of documents that occurred *in compliance with* a ruling from this Court.

Caltech further complains that, when it later obtained and produced Wi-Fi Alliance documents on its own (long after the close of fact discovery), Defendants "sought to bar" a deposition of the Wi-Fi Alliance.  Mot. at 25.  But the Wi-Fi Alliance itself objected to that deposition.  Dkt. 563-1 at 3-4.  And although the Court allowed the deposition to proceed, it permitted just two hours of questioning and criticized *Caltech* for its handling of the issue.  Dkt. 673 at 5-6 ("Plaintiff could have been more forthcoming … regarding its correspondence with WFA and its intent to subsequently take WFA's deposition.").  Caltech also complains about the number of objections asserted at the deposition; but once questioning established that the Wi-Fi Alliance witness ██████████████████████████████ ██████████  Dkt. 2168-8 at 20:13-22:22, including for the document cited in Caltech's motion, *id.* at 34:18-21, 35:23-37:8 (testifying he was ████████████ ████████████████████████████), Defendants properly objected.

Caltech also suggests that Defendants somehow acted improperly by refusing to stipulate to the admissibility of the late-produced and unauthenticated Wi-Fi Alliance documents.  Mot. at 25.  But at trial, the Court *rejected* Caltech's attempt to admit those documents, except for one.  1/17 (AM) Tr. at 148:3-15.  Objecting to the admissibility of documents that the Court itself refused to admit is hardly

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1  egregious litigation behavior sufficient to trigger a payment of attorneys' fees.

2      ***Second***, Caltech argues that Defendants "played games" by failing to produce

3  prior art until shortly before depositions of two consulting experts.  Mot. at 26.  As

4  Defendants explained at the time, however, both experts had been asked during fact

5  discovery to collect and produce potential prior art, but neither realized the relevance

6  of certain non-printed publication art in their possession until later responding to

7  Caltech's subpoena.  Dkt. 1470 at 65:10-18, 67:1-21, 69:5-70:24.  Caltech's motion

8  does not identify any reason to doubt the veracity of those representations of a good-

9  faith mistake.[17]

10     ***Finally***, Defendants made ***28 fact witnesses*** available for deposition, whom

11  Caltech questioned at length across thousands of pages of testimony.  For 27 of these

12  depositions, Caltech does not identify even a single instance of allegedly improper

13  behavior.  It instead focuses entirely on the deposition of Broadcom engineer Alvin

14  Lin—who showed obvious discomfort at his first-ever deposition, which at times

15  led to awkward lengthy pauses and frequent requests for more precise questioning

16  (which Mr. Lin typically expressed in terms of stating that he did not understand a

17  question, which Caltech wrongly describes as "refus[al]s" to answer).  Mot. at 24.

18     But even in singling-out Mr. Lin, Caltech does not identify: (1) any deposition

19  testimony that supposedly was untruthful or inconsistent with evidence either party

20  offered at trial; (2) a single way in which Caltech claims to have suffered any

21  prejudice as a result of Mr. Lin's deposition; or (3) any instance before trial in which

22  it moved to compel further testimony from Mr. Lin or otherwise complained to the

23

24  _____

[17] Defendants were not required to collect responsive documents from independent
25  consultants.  Dkt. 1122.  Regardless, this honest mistake ultimately ***prejudiced***
***Defendants*** after the Court barred use of the documents as "known or used"
26  invalidity evidence at trial.  Caltech also incorrectly contends that Defendants made
an "invalidity proffer" for these documents.  Mot. at 26, 33.  Defendants included
27  them as state of the art evidence (and to preserve appellate arguments), Dkt. 1763 at
1-2, not as prior art rendering the asserted claims invalid.
28

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1  Court about his deposition behavior.  This is because Caltech's attempt to focus the

2  jury on Mr. Lin was a mere sideshow having nothing to do with the merits of the

3  case or any resulting prejudice to Caltech.

4      Caltech also ignores that Defendants produced **extensive** discovery directed

5  to the accused LDPC functionality, including the controlling source code and

6  testimony from multiple other witnesses (including from Dr. Blanksby, who was the

7  30(b)(6) designee concerning operation of the accused functionality) beyond Mr.

8  Lin (who was not a 30(b)(6) witness on any issue).[18]  That discovery left no doubt

9  about how the accused LDPC functionality works, and nothing at Mr. Lin's

10  deposition changed that fact.

11      The remainder of Caltech's criticisms levied at Mr. Lin are both inaccurate

12  and unfair.  The cited testimony merely reflects that, rather than try to help a first-

13  time deponent navigate questions that Mr. Lin had identified as unclear to him,

14  Caltech's counsel instead sought to compound that confusion.  For example, at the

15  outset of his deposition, Mr. Lin testified that he did not "understand what you mean

16  by the term 'where'"—a term that the Court itself recognized in reviewing the

17  proposed jury questionnaire can refer to different things in different contexts (e.g.,

18  a physical location versus the name of a company)[19]—and that he more broadly did

19  not "understand the procedure that we're going through right now [involving his

20  desire for more precise questions]."  Dkt. 2168-7 at 9:13-18, 10:18-29, 11:4-8.

21      Rather than trying to clarify, Caltech's counsel spent the next ten minutes

22  asking irrelevant questions using the exact term that Mr. Lin had identified as the

---

24  [18] Even so, Mr. Lin provided substantive testimony about the operation of the
25  accused functionality and source code—which Caltech just ignores. *E.g.*, Dkt. 2168-
   7 at 89:18-22, 90:7-15, 112:9-113:20, 133:9-141:15, 142:1-25.

26  [19] The Court advised the parties to revise the jury questionnaire because the proposed
27  question "where do you work currently" was unclear and "a lot of jurors are gonna
   put down the location of where they work rather than what it is they do."  12/30/19
28  Hr'g Tr. at 5:5-10.

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

source of his need for clarification.  *Id.* at 10:25-12:19 ("***Where*** do you work? … ***Where*** are we right now? … ***Where*** did you get your master's degree? … ***Where*** were you born? … ***Where*** are you right now?").  Having poisoned the well at the outset, Caltech cannot proclaim innocence at having created a nervous and incredibly careful witness for the remainder of the deposition.[20]

Caltech relatedly complains that Broadcom's counsel reminded Mr. Lin of his right to review documents for context when he felt the need to do so.  Mot. at 24.  But these instructions largely occurred when Caltech's counsel prodded the witness to hurry up and skip ahead.  *E.g.*, Dkt. 2168-7 at 55:10-56:8 ("WITNESS: I will let you know when I'm ready to start answering questions.  Q:  (By Mr. Briggs:)  Have you turned to that page, yet?  A: (No verbal response.)  Q: Are you concerned about turning to that page and answering questions about it?  MR. DOWD:  Objection.  Argumentative.  …  Again, Mr. Lin, you have the opportunity to review the document to understand the context before you are required to start answering questions about some line or page out of context."); *id*. at 53:15-54:4 ("A.  Could you please wait until I indicate that I'm ready?  Q.  I think you are looking at a presentation that I haven't asked you to look at.  Can you turn to the presentation ….  Mr. DOWD:  Mr. Lin, you have whatever time you need to review the document that has been [] put in front of you ….").

Equally unfounded is Caltech's claim that Broadcom's counsel encouraged Mr. Lin to be obstructionist.  The deposition record shows that Broadcom's counsel encouraged Mr. Lin to do his best to answer questions, including by referring to the

---

[20] Also untrue is Caltech's assertion that Mr. Lin conducted "lengthy reviews of blank pages."  Mr. Lin was asked to opine on a 55-page technical presentation with out-of-order note pages attached, some that contained substantive content and some that did not.  Ex. 4; Dkt. 2168-7 at 78:4-10, 79:14-20.  Mr. Lin cannot be faulted for taking time to understand such a complicated and disorganized document before offering sworn testimony under oath about it—regardless of whether Caltech's counsel would have preferred for Mr. Lin to review just the isolated snippets that Caltech cared about.  There was nothing "exceptional" about this conduct.

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

source code, even after Caltech's time on the record had expired.  Dkt. 2168-7 at 108:5-6 ("We have hit the seven-hour mark."); *id.* at 130:4-131:2 ("do your best to sort through this on the fly"); *id.* at 134:4-143:4 (witness using source code computer); *id.* at 22:9-11, 32:2-3, 119:24-120:3 (assisting with code computer).[21]

In sum, none of Caltech's cited discovery conduct was improper, and certainly none amounts to "exceptional" behavior sufficient to justify a fees award.  Fees also should be rejected because, at the time of each supposed act of misconduct, Caltech "fail[ed] to provide early, focused, and supported notice of its belief that it was being subjected to exceptional litigation behavior."  *Stone Basket Innovations, LLC v. Cook Med. LLC*, 892 F.3d 1175, 1181 (Fed. Cir. 2018).

### B.   Caltech Has Not Identified Any Other Pre-Trial Litigation Conduct That Could Serve As The Basis For A Fees Award.

Caltech implies that Defendants' case was "frivolous" because "Defendants had one remaining defense [at trial] – non-infringement."  Mot. at 27.  But Defendants offered many reasonable noninfringement defenses at trial—on which Caltech did not secure summary judgment or JMOL—which alone confirms that the merits of Defendants' case were not "frivolous."  The same result is confirmed by the Patent Office's decision to institute *seven inter partes* reviews (IPRs) directed to the asserted claims—after finding each petition presented a "reasonable likelihood"

---

[21] Caltech also criticizes an instruction directed to a question about Mr. Lin's prior grades.  Mot. at 24 n.9.  The full context shows that, when asked about his education, Mr. Lin explained he has a Master's of Engineering degree, but was asked questions about a different "master's of science degree" (which he does not have).  Dkt. 2168-7 at 46:2-4, 49:4-11, 49:21-24, 50:21-24, 52:12-18.  Caltech's counsel continued to pester Mr. Lin with questions about his GPA for a nonexistent degree until Broadcom's counsel objected on relevance grounds, *id.* at 51:5-24, just as Caltech had done at depositions for its own witnesses, Ex. 5 at 68:1-4 (Caltech's counsel "instructing [named inventor Dr. Jin] not to answer on grounds of … total irrelevancy to this case").  Caltech also refers to a privilege objection the Court overruled at trial involving when Mr. Lin first learned of the Caltech patents.  Mot. at 23.  But Caltech has not explained how that objection makes this case "exceptional," just because it was overruled.

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

that the challenged claims were invalid.  *See* 35 U.S.C. § 314(a).  That "reasonable" invalidity defense did not become unreasonable merely because the Patent Office invalidated certain claims, but not those asserted at trial.  *Vectura*, 2019 WL 4346502, at *6 (denying fees request where "close case" invalidity theories were not "frivolous or unreasonable").

Caltech next argues that Defendants asserted three "frivolous" defenses.  Mot. at 27-31.  But each involved ***good-faith*** arguments directed to ***closely-contested*** issues, including ***unsettled areas of law***—far from the type of exceptional behavior needed to award fees.  *See Univ. of Utah*, 851 F.3d at 1323 ("weak" case not "objectively unreasonable"); *WesternGeco L.L.C. v. ION Geophysical Corp.*, 953 F. Supp. 2d 731, 755 (S.D. Tex. 2013) ("complicated case" not exceptional where "issues were close questions of law and fact"), *aff'd in part, rev'd in part on other grounds*, 837 F.3d 1358 (Fed. Cir. 2016).[22]

***First***, Caltech characterizes Defendants' assertion of their "known or used" invalidity defense as "egregious."  Mot. at 27.  But the Court initially (1) ***authorized*** Defendants to rely on "known or used" evidence, and to include documents related to that defense in their selection of prior art, Dkt. 673 at 9, (2) noted the "***dearth*** of guidance from the Federal Circuit on the issues," Dkt. 830 at 15, and (3) ***denied*** Caltech's motion for summary judgment on one "known or used" ground, *id.* at 28.

---

[22] Caltech ignores its own losses and criticisms from the Court on numerous substantive issues before and during trial.  For example: (1) the Court struck Caltech's final infringement contentions as "deficient" because, inter alia, Caltech's response left Defendants "to piece together Plaintiff's contentions" and lacked key "additional detail," Dkt. 393 at 3; (2) in granting Defendants summary judgment of no joint infringement, the Court found Caltech's arguments were both "troubling and insufficient," Dkt. 1213 at 4; and (3) just days before trial, the Court admonished Caltech for obfuscating its infringement theory: "I don't understand why you guys are making it so difficult.  You know, you're supposed to provide a high level … limitation by limitation explanation of your infringement theory as it relates to the accused products, and you constantly are not doing that.  You know, I don't know what I'm supposed to do at this point in time," 1/13/20 Hr'g Tr. 16:23-17:4.

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

These rulings alone refute Caltech's claim of frivolous conduct, even though the Court later barred the defense.  Dkt. 1929-1 at 8 (noting parties' dispute "has never been addressed by the Federal Circuit" and "[n]o cases have dealt with the specific issue"); 12/6/18 Hr'g Tr. at 56:11-15 ("Obviously, there are splits in the district court within the state if I go that way and also across the country.").

Caltech points to a comment in which the Court stated that the "known or used" dispute "will be on the Court's mind if this case reaches the point of requiring an exceptionality determination."  Mot. at 27.   But Caltech omits the related clarification that the Court made just a few days later:  "Although other litigation tactics by one or both parties have led the Court to make a comment regarding fees, *the overall circumstances surrounding the prosecution of this case should not lead either party to expect them*."  Dkt. 1214 at 2 n.1 ("[T]he Court warns that the chances of a successful request for fees under 35 U.S.C. § 285 *will be low*.").

Caltech further argues that Defendants' "known or used" disclosures were too voluminous—which it portrays as an effort to "obfuscate."  Mot. at 28-29.  But the Court sympathetically noted at the time the risk Defendants faced if they had under-disclosed evidence supporting the defense: "The stakes in this case are high, and Defendants may have feared that if they did not throw the 'kitchen sink' … Plaintiff would later by crying 'waiver.'"  Dkt. 1929-1 at 18-19.  *See Kolcraft Enters., Inc. v. Chicco USA, Inc.*, 2019 WL 4242482, at *21 (N.D. Ill. Sept. 6, 2019) (denying fees even though plaintiff's "victory at trial was decisive" because the "overall case … was relatively close" and defendant's "kitchen-sink approach to many issues" did not "stand far enough apart from other high-stakes, high-cost litigation").[23]

---

[23] Caltech incorrectly claims that Defendants failed to disclose the basis for their "known or used" defense.  *E.g.*, Dkt. 1779-3 ¶¶ 226, 230, 238, 242, 244, 250 (describing content of the documents, comparing them to the asserted claims, and explaining how the content was communicated without confidentiality restrictions).  Caltech also gripes about documents directed to this defense produced shortly before depositions, Mot. at 27, but those are the same documents discussed above that Defendants' consulting experts mistakenly failed to identify earlier.  Further,

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

***Second***, Caltech cites the Court's grant of summary judgment against Defendants on their inequitable conduct defense. Mot. at 29. But that defense was not frivolous—as confirmed by Judge Pfaelzer's decision in the *Hughes* litigation ***denying*** summary judgment directed to the same inequitable conduct defense (based on the same undisclosed Richardson99 reference). *Cal. Inst. of Tech. v. Hughes Commc'ns*, 2015 WL 11089495, at *7 (C.D. Cal. May 5, 2015). Nor was it unreasonable for Defendants to continue pressing that unenforceability defense after the final IPR decisions issued—particularly given that, as the Court noted, Richardson99 was "never raised … in an IPR petition" (and, thus, the Patent Office had never addressed its disclosure or materiality). Dkt. 830 at 17.[24]

Caltech also complains about "unpled" inequitable conduct theories. Mot. at 29. But Defendants promptly supplemented their interrogatory responses to disclose an additional basis for inequitable conduct after learning in discovery ▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Dkt. 1104 at 9-10. Although the Court ultimately found Defendants' supplementation procedurally insufficient, that result was far from certain and does not transform a good-faith effort at timely disclosure into exceptional misconduct. And it makes no sense for Caltech to argue (Mot. at 29) that Defendants "violated the Court's express order

---

whether Defendants were obligated to search for those documents was at best a close call, as confirmed by the Court's request for supplemental briefing. 4/25/19 Hr'g Tr. at 31:20-32:5. Once Defendants uncovered those materials, they promptly supplemented their discovery responses, Dkt. 944-4, to which Caltech did not object for more than one year.

[24] Caltech wrongly suggests that Defendants relied on the Luby97/98 references as the basis for a material omission claim. Mot. at 29 n.16. Defendants instead relied on those references to show that Caltech made a false representation during prosecution (that the prior art did not disclose "irregular repetition")—which does not require a "but-for" showing. *Therasense, Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276, 1292-93 (Fed. Cir. 2011) ("When the patentee has engaged in affirmative acts of egregious misconduct, such as the filing of an unmistakably false affidavit, the misconduct is material."); *Hughes*, 2015 WL 11089495, at *7 (finding disputed facts about whether falsity was established based on Luby references).

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

not to file additional motions *without leave*" by filing a "*motion for leave* to amend their answer."

 *Finally*, Caltech criticizes Defendants for "continued pursuit" of their Section 101 patent-ineligibility defenses for the '032 and '710 patents after the Court denied their Section 101 summary judgment motion for the '781 patent. Mot. at 29-30. But Defendants merely opposed *Caltech's* motion for summary judgment (in part to preserve its appellate rights), Dkt. 1319-1 at 6-7, and stopped pressing the defense for both patents after the Court granted the motion, *e.g.*, Dkt. 1500-1. And as explained in Defendants' post-trial motion, Caltech's shifting trial arguments confirmed the merits of the dismissed Section 101 defenses. Dkt. 2160-1 at 28-30.

 Therefore, there was nothing unreasonable about any of the litigation conduct cited in Caltech's motion. *See Mass Engineered Design, Inc. v. Planar Sys., Inc.*, 2019 WL 5856429, at *3 (D. Or. Nov. 8, 2019) (holding rejection of a party's "arguments during this complex, hard-fought patent litigation does not mean [the party] unreasonably litigated this case to the point that it rises to the level of an exceptional case warranting an award of attorney's fees"); *Lubby Holdings*, 2019 WL 4284509, at *2 ("For a case to stand out under the *Octane* standard, a party's litigating position must be objectively meritless rather than merely unpersuasive.").

## C. Caltech Has Not Identified Any Trial Conduct That Could Serve As The Basis For A Fees Award.

 Caltech's fees request also accuses Defendants of "flagrant disregard for Court orders during trial." Mot. at 31. But the record refutes those claims.

 *First*, Caltech argues that Defendants advanced "untenable non-infringement theories" at trial based on "rejected constructions" of the "random" limitation. Mot. at 31. But at trial, Defendants (1) applied the precise construction that the Court had issued for the term at summary judgment—i.e., as requiring either "a *purely random process* of connecting information bits and check nodes" or "*pseudo random processes* that result in an output that appears random," Dkt. 1639 at 9; (2)

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

established through Dr. Stark that the accused matrices in the 802.11 standards were *not* generated using a "random process," as claimed, 1/24 (PM) Tr. at 114:11-115:17; and (3) confirmed with Dr. Shoemake on cross-examination that he did not know "how" the matrices were constructed—and, thus, had no basis to opine that they had resulted from a "random" process, 1/21 (AM) Tr. at 100:4-6, 100:23-25.[25]

*Second*, Caltech alleges that "Defendants attempted to elicit undisclosed non-infringement opinions from Dr. Blanksby." Mot. at 32. But Caltech tellingly fails to identify a single noninfringement *opinion* that Dr. Blanksby tried to offer that was not disclosed in his report. Rather, the only testimony that Caltech cites relates to *factual testimony* sought from Dr. Blanksby about the accused functionality *that he personally helped design*. 1/23 Tr. 145:20-146:24, 151:5-151:20, 152:8-13 ("I don't want you to compare to any other techniques right now. Just explain to us how this particular technique works as a factual matter."). As to those fact issues, he was a proper fact witness.

When requiring Dr. Blanksby to submit an expert report before trial, the Court repeatedly made clear that the report only needed to disclose *opinions* "related to [how] the accused products … do not infringe particular claim elements of the asserted patents," and litigation-specific analyses on certain other issues. Dkt. 746 at 2. At the time, the Court made clear that the report *did not* need to cover *facts* within Dr. Blanksby's personal knowledge. *Id.* at 3 n.2 (explaining Dr. Blanksby was "not required to provide disclosures for any identified topics on which he will opine as purely a fact witness"). Indeed, at trial, the Court overruled at least certain objections directed to facts for which Dr. Blanksby had percipient knowledge. 1/23

---

[25] The Court sustained Caltech's cited objection based on the mistaken belief that Defendants' questions were directed to "*why* [the matrices] were originally chosen." 1/21 (AM) Tr. 102:20-24. The record shows that Defendants asked about "*how* … these matrices were constructed," *id.* at 100:23-24, which bears directly on whether the matrices were the result of a random or pseudo-random process under the Court's claim construction ruling.

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1  Tr. 116:14-19, 117:10-18, 126:8-14, 130:25-131:1, 146:3-13, 147:23-148:5.[26]

2     Further, the record does not support Caltech's charge that Broadcom "falsely

3  represented" that Dr. Blanksby disclosed an opinion in his report about whether

4  LDPC parity check matrices practice the "random" limitation.  Mot. at 32.  Multiple

5  sections of the report disclosed that opinion.  Dkt. 996-15 ¶¶ 152, 183, 201, 206.  In

6  fact, immediately after the sidebar addressing that issue, counsel showed a paragraph

7  from Dr. Blanksby's report and obtained his testimony regarding the described

8  parity-check matrix—without objection.  1/23 Tr. 178:19-179:19.  Caltech has thus

9  failed to identify *any* undisclosed expert testimony elicited from Dr. Blanksby.[27]

10     ***Finally***, Caltech makes a baseless argument that Defendants sought to

11  "backdoor their invalidity defenses" in violation of the Court's orders.  Mot. at 33.

12  Defendants never argued invalidity to the jury.  Instead, Defendants repeatedly made

13  clear—both on the record and in briefing—that they only intended to offer state of

14  the art evidence for other permissible purposes, including to establish the context of

15  the invention and its relative value—which is exactly what they did, to the limited

16  extent that the Court permitted.  *E.g.*, 1/16 (AM) Tr. 7:3-10; Dkt. 1927 at 2.

17     In sum, Caltech has identified nothing that occurred at trial—or during any

18  other phase of the case—that could justify an award of attorneys' fees.

19  **VIII.  CONCLUSION**

20     For the foregoing reasons, Defendants respectfully ask the Court to deny

21  Caltech's post-trial motions.

22

23  _____

24  [26] Despite Caltech's claim, it is not surprising that Defendants' counsel raised the prospect of a mistrial when the Court suggested it would not allow Dr. Blanksby to

25  offer other key fact testimony relevant to Broadcom's accused products—especially after allowing Dr. Jin to testify extensively about the background of the claimed

26  invention (without *any* expert report from him), and letting Dr. Hassibi testify on multiple subjects *not disclosed* in his expert report.  Dkt. 2160-1 at 32-35.

27  [27] Caltech's own experts had testimony excluded because it was not disclosed in an

28  expert report.  *E.g.*, 1/23 Tr. 12:2-7 (striking portions of Dr. Teece's testimony).

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

DATED: April 30, 2020                    Respectfully submitted,

                                         By:    /s/ Jason F. Choy
                                         MARK D. SELWYN
                                         mark.selwyn@wilmerhale.com
                                         WILMER CUTLER PICKERING
                                            HALE AND DORR LLP
                                         950 Page Mill Road
                                         Palo Alto, California 94304
                                         Tel:    (650) 858-6000
                                         Fax:    (650) 858-6100

                                         JAMES M. DOWD
                                         james.dowd@wilmerhale.com
                                         AARON S. THOMPSON
                                         aaron.thompson@wilmerhale.com
                                         WILMER CUTLER PICKERING
                                            HALE AND DORR LLP
                                         350 South Grand Avenue, Suite 2100
                                         Los Angeles, California 90071
                                         Tel:    (213) 443-5300
                                         Fax:    (213) 443-5400

                                         Attorneys for Defendants and Counter-
                                         Claim Plaintiffs *Broadcom Limited,*
                                         *Broadcom Corporation, Avago*
                                         *Technologies Limited, and Apple Inc.*