**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

1
QUINN EMANUEL URQUHART
 & SULLIVAN, LLP

2
James R. Asperger (Bar No. 083188)
jimasperger@quinnemanuel.com

3
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017

4
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

5

6
Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com

7
Todd M. Briggs (Bar No. 209282)
toddbriggs@quinnemanuel.com

8
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065

9
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

10
Attorneys for Plaintiff the California

11
Institute of Technology

12
UNITED STATES DISTRICT COURT

13
CENTRAL DISTRICT OF CALIFORNIA

14

15
The CALIFORNIA INSTITUTE OF
TECHNOLOGY, a California

16
Corporation,

17
                        Plaintiff,

18
        vs.

19
BROADCOM LIMITED,
BROADCOM CORPORATION,

20
AVAGO TECHNOLOGIES LIMITED,
AND APPLE INC.,

21
                        Defendants.

22

23

24

25

26

27

28

| | |
|---|---|
| | CASE NO. 2:16-cv-3714-GW-AGRx |
| | **CALTECH'S REPLY IN SUPPORT OF MOTION FOR SUPPLEMENTAL DAMAGES, INTEREST, ATTORNEYS' FEES, AND A PERMANENT INJUNCTION OR ON-GOING ROYALTIES** |
| | **FILED UNDER SEAL** |
| | Hon. George H. Wu |
| | United States District Court Judge |
| | Hearing Date: June 1, 2020 |
| | Time: 8:30 a.m. |
| | Place: Courtroom 9D |

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

# Table of Contents

I.  CALTECH'S MOTION SHOULD NOT BE DEFERRED ............................. 1

II.  CALTECH SHOULD BE AWARDED SUPPLEMENTAL DAMAGES AND INTEREST........................................................... 2

  A.  Caltech Should Be Awarded Supplemental Damages ............................ 2

  B.  Caltech Should Be Awarded Prejudgment Interest ................................. 7

  C.  Caltech Should Be Awarded Post-Judgment Interest ............................. 9

III. THE COURT SHOULD ENTER A PERMANENT INJUNCTION OR, IN THE ALTERNATIVE, AWARD AN ONGOING ROYALTY ................. 9

  A.  Caltech Did Not Waive an Injunction or Ongoing Royalties ................. 9

  B.  Caltech Meets The Standard For An Injunction .................................... 11

  C.  Alternatively Caltech is Entitled to Ongoing Royalties ....................... 12

IV. CALTECH SHOULD BE AWARDED ATTORNEYS' FEES ..................... 16

  A.  Defendants' Discovery Conduct Was Unreasonable............................ 17

  B.  Defendants' Defenses Were Unreasonable........................................... 18

  C.  Defendants' Trial Conduct Was Unreasonable .................................... 19

V.  CONCLUSION .......................................................................................... 20

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

## TABLE OF AUTHORITIES

Page

### Cases

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*,
No. 2:10CV248, 2011 WL 4899922 (E.D. Va. Oct. 14, 2011) .......................4

*Aero Prods. Int'l Inc. v. Intex Recreation Corp.*,
466 F.3d 1000 (Fed. Cir. 2006) ....................................................................4

*Affinity Labs of Texas LLC v. BMW N. Am.*,
783 F. Supp. 2d 891 (E.D. Tex. 2011) ........................................................15

*Amado v. Microsoft Corp.*,
517 F.3d 1353 (Fed. Cir. 2008) ..................................................................14

*Apple Inc. v. Samsung Elecs. Co., Ltd.*,
926 F. Supp. 2d 1100 (N.D. Cal. 2013) ........................................................1

*Apple Inc. v. Samsung Elecs. Co., Ltd.*,
No. 12-CV-630, 2014 WL 6687122 (N.D. Cal. Nov. 25, 2014) .............2, 10

*Arctic Cat Inc. v. Bombardier Recreational Prod., Inc.*,
No. 14-cv-62369, 2017 WL 7732873 (S.D. Fla. Jan. 3, 2017),
*aff'd*, 876 F.3d 1350 (Fed. Cir. 2017) .........................................................15

*Asetek Danmark A/S v. CMI USA, Inc.*,
No. 13-cv-00457-JST, 2015 WL 5568360 (N.D. Cal. Sept. 22, 2015)
*vac. on other grounds by* 852 F.3d 1352 ......................................................5

*Bio-Rad Labs., Inc. v. Nicolet Instrument Corp.*,
807 F.2d 964 (Fed. Cir. 1986) ......................................................................7

*Boston Scientific v. Johnson & Johnson*,
No. C 02-00790, 2009 WL 975424 (N.D. Cal. Apr. 9, 2009) ......................14

*Cave Consulting Grp., LLC v. Optuminsight, Inc.*,
2016 WL 4658979 (N.D. Cal. Sept. 7, 2016) ................................................2

*Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*,
246 F.3d 1336 (Fed. Cir. 2001) ....................................................................7

*Drop Stop LLC v. Jian Qing Zhu*,
No. CV 16-07916 AG(SSx), 2018 WL 1407031 (C.D. Cal. Jan. 22, 2018) ...............................................................................................................16

*eBay Inc. v. MercExchange, L.L.C.*,
547 U.S. 388 (2006) .....................................................................................12

*EcoServices, LLC v. Certified Aviation Servs., LLC*,
340 F. Supp. 3d 1004 (C.D. Cal. 2018)..................................................5, 7, 8

*Energy Transp. Group, Inc. v. William Demant Holding*,
697 F.3d 1342 (Fed. Cir. 2012) ....................................................................7

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

*Erfindergemeinschaft Uropep Gbr v. Eli Lilly,*
No. 15-CV-1202-WCB, 2017 WL 3034655 (E.D. Tex. Jul. 18, 2017)........11

*Finjan, Inc. v. Secure Computing Corp.,*
626 F.3d 1197 (Fed. Cir. 2010)......................................................................2, 4

*Fresenius Med. Care Holdings v. Baxter Int'l, Inc.,*
No. C 03-1431, 2008 WL 928535 (N.D. Cal. Apr. 4, 2008) ..........................9

*Fresenius USA, Inc. v. Baxter Int'l, Inc.,*
582 F.3d 1288 (Fed. Cir. 2009).........................................................................2

*Fujifilm Corp. v. Motorola Mobility LLC,*
182 F. Supp. 3d 1014 (N.D. Cal. 2016) ............................................................8

*Gen. Motors Corp. v. Devex Corp.,*
461 U.S. 648 (1983) ...........................................................................................8

*Hynix Semiconductor Inc. v. Rambus Inc.,*
609 F. Supp. 2d 951, 987 (N.D. Cal. 2009) ..................................................5, 6

*Internet Machines LLC v. Alienware Corp.,*
No. 6:10-cv-23, 2013 WL 4056282 (E.D. Tex. Jun. 19, 2013) ....................15

*Kaneka Corp. v. SKC Kolon PI, Inc.,*
198 F. Supp. 3d 1089 (C.D. Cal. 2016)...........................................................8

*Metso Minerals, Inc. v. Powerscreen Int'l Distribution Ltd.,*
833 F. Supp. 2d 333 (E.D.N.Y. 2011)..............................................................4

*Mikohn Gaming Corp. v. Acres Gaming, Inc.,*
No. CV-S-97-1383-EJW, 2001 WL 34778689 (D. Nev. Aug. 2, 2001) ........4

*Miller v. Safeco Title Ins. Co.,*
758 F.2d 364 (9th Cir. 1985)...........................................................................10

*Milwaukee Elec. Tool Corp. v. Snap-On Inc.,*
288 F. Supp. 3d 872 (E.D. Wis. 2017).............................................................7

*Opticurrent, LLC v. Power Integrations, Inc.,*
No. 17-cv-03597, 2019 WL 2389150 (N.D. Cal. Jun. 5, 2019)..........7, 14, 15

*Oscar Mayer Foods Corp. v. Conagra, Inc.,*
869 F. Supp. 656 (W.D. Wis. 1994)..................................................................5

*Paice LLC v. Toyota Motor Corp.,*
504 F.3d 1293 (Fed. Cir. 2007).........................................................................2

*Paice LLC v. Toyota Motor Corp.,*
609 F. Supp. 2d 620 (E.D. Tex. 2009) ...........................................................14

*Polara Eng'g, Inc. v. Campbell Co.,*
237 F. Supp. 3d 956 (C.D. Cal. 2017)..............................................................9

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.,*
711 F.3d 1348 (Fed. Cir. 2013)......................................................................4, 7

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

*Presidio Components Inc. v. Am. Tech. Ceramics Corp.*,
2010 WL 3070370 (S.D. Cal. Aug. 5, 2010) .................................................... 5

*S. California Retail Clerks Union & Food Employers Joint Pension Tr. Fund v. Bjorklund*,
728 F.2d 1262 (9th Cir. 1984)................................................................. 4

*SCA Hygiene Prods. v. First Quality Baby Prods.*,
807 F.3d 1311 (Fed. Cir. 2015)
*vacated in part on other grounds* 137 S.Ct. 954 (2017) ................................. 11

*Soverain Software v. J.C. Penny Corp.*,
899 F. Supp. 2d 574 (E.D. Tex. 2012) ..................................................... 15

*Spitz Techs. Corp. v. Nobel Biocare USA LLC*,
No. SACV 17-00660 JVS(JCGx), 2018 WL 6164300 (C.D. Cal. June 7, 2018)...................................................................................................... 16

*Stragent, LLC v. Intel Corp.*,
No. 6:11-CV-421, 2014 WL 6756304 (E.D. Tex. Aug. 6, 2014) .....................

*TiVo Inc. v. Echostar Commc'ns Corp.*,
No. 2:04-CV-1-DF, 2006 WL 8440209 (E.D. Tex. Aug. 17, 2006)............... 4

*TransPerfect Global, Inc. v. MotionPoint Corp.*,
2014 WL 6068384 (N.D. Cal. Nov. 13, 2014) ........................................... 5

*Uniroyal, Inc. v. Rudkin-Wiley Corp.*,
939 F.2d 1540 (Fed. Cir. 1991)................................................................. 9

*Univ. of Utah v. Max-Planck*,
851 F.3d 1317 (Fed. Cir. 2017) ............................................................... 16

*Vectura Ltd. v. GlaxoSmithKline LLC*,
No. 16-638, 2019 WL 4346502 (D. Del. Sept. 12, 2019)............................. 1

*Veracode, Inc. v. Appthority, Inc.*,
137 F. Supp. 3d 17 (D. Mass. 2015) ................................................... 2, 4, 6

*Whitserve, LLC v. Computer Packages, Inc.*,
694 F.3d 10 (Fed. Cir. 2012)............................................................. 10, 13

*Wisconsin Alumni Research Found. v. Apple, Inc.*,
261 F. Supp. 3d 900 (W.D. Wis. 2017),
*aff'd in part and rev'd in part on other grounds*,
905 F.3d 1341 (Fed. Cir. 2018)................................................................. 1

*XpertUniverse, Inc. v. Cisco Sys., Inc.*,
No. 09-157, 2013 WL 6118447 (D. Del. Nov. 20, 2013) ............................ 13

*XY, LLC v. Trans Ova Genetics*,
890 F.3d 1282 (Fed. Cir. 2018)......................................................... 13, 14

**Statutory Authorities**

35 U.S.C. § 284 ........................................................................................... 2

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

## <u>Rules and Regulations</u>

Fed. R. Civ. P. 16(e) ................................................................................... 3

Fed.R.Civ.P. 54(d)(2)(C) ........................................................................... 16

Local Rule 16-7 ........................................................................................... 3

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

Defendants' opposition (Dkt. 2181-1 ("Opp.")) to Caltech's motion for supplemental damages, interest, ongoing royalties and attorneys' fees asks the Court to allow continued infringement on a massive scale without any compensation to Caltech and to excuse repeated litigation misconduct.  This Court should reject Defendants' arguments.  Caltech is entitled to fair compensation for Defendants' ongoing disregard of Caltech's patent rights, and to a finding that this case was exceptional, warranting attorneys' fees.  Caltech's motion (Dkt. 2168-1 ("Mot.")) should be granted.

## I.   CALTECH'S MOTION SHOULD NOT BE DEFERRED

Ostensibly in the name of judicial economy, Defendants ask the Court to defer ruling on Caltech's motion.  Opp. 1.  Far from achieving judicial economy, however, deferring Caltech's motion would prevent the Federal Circuit "from taking up the entire case in one appeal."  *Wisconsin Alumni Research Found. v. Apple, Inc.*, 261 F. Supp. 3d 900, 921 (W.D. Wis. 2017) ("Such a piece-meal review on appeal seldom makes sense."), *aff'd in part and rev'd in part on other grounds*, 905 F.3d 1341 (Fed. Cir. 2018); *Vectura Ltd. v. GlaxoSmithKline LLC*, No. 16-638, 2019 WL 4346502, at *6 (D. Del. Sept. 12, 2019) ("Any delay in determining the ongoing royalty rate would delay the entry of final judgment.").  Fracturing the proceedings and forcing serial appeals would needlessly prolong this case and delay satisfaction of the judgment, without any gain in judicial economy.

Defendants rely (Opp. 1-2) on decisions in *Apple v. Samsung* deferring resolution of the amount of supplemental damages and interest.  Defendants fail to note, however, that the court there granted the motions for supplemental damages and interest, deferring only a calculation of the amounts.  Furthermore, unlike in this case, there were "complex issues" that made it difficult to determine an appropriate royalty rate and how supplemental damages should be calculated.  *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 926 F. Supp. 2d 1100, 1106-07 (N.D. Cal. 2013).  In this case, Defendants concede that the jury adopted rates of $0.26 and $1.40 per unit.

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

Defendants also fail to note that in a subsequent *Apple v. Samsung* case the court refused to defer ruling on ongoing royalties because "ongoing royalties ***must be addressed*** before entry of final judgment and appeal of any remaining issues." *Apple Inc. v. Samsung Elecs. Co., Ltd.*, No. 12-CV-630, 2014 WL 6687122, at *7 (N.D. Cal. Nov. 25, 2014) (emphasis added).   As the Federal Circuit ruled in *Warsaw Orthopedic, Inc. v. NuVasive, Inc.*, "even assuming Rule 54(b) would give this court jurisdiction over a claim that is 'final except for an accounting' . . . the case is not 'final' because the district court has not yet determined ongoing royalties." 515 F. App'x 882, 882 (Fed. Cir. 2012).[1]   The Court should address Caltech's motion now so that all issues can be taken up in a single appeal.

## II.   CALTECH SHOULD BE AWARDED SUPPLEMENTAL DAMAGES AND INTEREST

### A.   Caltech Should Be Awarded Supplemental Damages

Defendants fail (Opp. 2-5) to show why Caltech should not be granted supplemental damages through final judgment.  "Under 35 U.S.C. § 284, 'the court *shall* award . . . in no event less than a reasonable royalty,' and '[w]hen damages are not found by a jury, the court *shall* assess them.'"  *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1212-13 (Fed. Cir. 2010) ("a patentee is 'not fully compensated' if 'the damages award did not include'" uncompensated sales); *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 582 F.3d 1288, 1303 (Fed. Cir. 2009) ("A damages award for pre-verdict sales of the infringing product does not fully compensate the patentee because it fails to account for post-verdict sales of repair parts."); *Veracode, Inc. v. Appthority, Inc.*, 137 F. Supp. 3d 17, 84 (D. Mass. 2015) ("Supplemental damages are permitted—and indeed required—under 35 U.S.C. §

---

[1]   Other than *Cave Consulting Grp., LLC v. Optuminsight, Inc.*, 2016 WL 4658979 (N.D. Cal. Sept. 7, 2016), the cases cited by Defendants (Opp. 2) were all decided pre-*Warsaw*.  And *Cave Consulting* not only did not address the finality issue but also conflicts with Federal Circuit law rejecting any argument that ongoing royalties deprive a patent holder of its Seventh Amendment right to a jury trial.  *See Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1315-16 (Fed. Cir. 2007).

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

1    284.").  Defendants' contrary arguments are unavailing.

2        ***First***, Defendants are wrong to suggest (Opp. 2) that Caltech "waived"
3    supplemental damages by "failing to request [this] remedy" in the proposed Final
4    Pre-Trial Conference Order ("FPCO").  Rule 16(e) gives district courts broad
5    discretion with respect to final pretrial hearings and orders, stating that "[t]he court
6    ***may*** hold a final pretrial conference to formulate a trial plan."  Fed. R. Civ. P. 16(e)
7    (emphasis added).  In this case, a FPCO, if any, would be governed by Local Rule
8    16-7, Appendix A to the Local Rules, and the Court's Standing Order Re Final Pre-
9    Trial Conferences.  Here, however, the Court decided not to enter the proposed
10   FPCO.  Dkt. 2152 at 47:13-48:7.  Without a FPCO there can be no waiver.

11       Even if there had been a FPCO, the C.D. Cal. Form Pretrial Order states that
12   the FPCO "is intended to finalize . . . the claims and defenses ***to be presented at***
13   ***trial***."  *See* C.D. Cal. L.R. App. A, Item 7 (emphasis added).  Plainly, supplemental
14   damages are not an issue "to be presented at trial."  Nor does any Local Rule say
15   anything that mandates that a FPCO contain a statement on supplemental damages,
16   which are within the province of the Court to award following trial.

17       In making their waiver argument (Opp. 2), Defendants also misleadingly cite
18   to Caltech's proposed preliminary statement summarizing issues for the jury, not the
19   Court, to decide.  Dkt. 1664-1 at 3.  Separate and apart from this proposed statement
20   intended for the jury, Caltech stated in the proposed FPCO that "Caltech is entitled
21   to damages in the form of a reasonable royalty," *id*. at 16, and that Caltech is
22   "entitled to at least a reasonable royalty," *id*. at 17, with no limitation on the time
23   period for the damages.  Moreover, Caltech has always made clear that its request
24   for relief includes all royalties and damages permitted by law.  Dkt. 1617 at 3, 4, 6
25   ("Caltech is entitled to at least a reasonable royalty;" "Caltech is entitled to all other
26   damages, fees, or costs allowable by law;" "Caltech has not abandoned any
27   issues.").  Caltech's complaint also broadly requested "[d]amages adequate to
28   compensate Caltech for Defendants' infringement" and "[s]uch other relief as the

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

1    Court deems just and equitable." Dkt. 36 at 38. In short, under both the C.D. Cal.

2    Local Rules and controlling Federal Circuit law, there has been no waiver. *See*

3    *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348,

4    1380-81 (Fed. Cir. 2013) (finding no waiver where the plaintiff's complaint

5    requested "money damages sustained as a result of defendants' infringement" and

6    "such other and further relief as this Court finds just and proper"); *Finjan*, 626 F.3d

7    at 1212-13 (finding no waiver to supplemental damages where amended complaint

8    sought "such damages as [plaintiff] shall prove at trial" and "such further and other

9    relief as the Court and/or jury may deem proper and just").[2]

10        ***Second***, Defendants are incorrect to suggest (Opp. 3) that Caltech waived any

11   right to supplemental damages based on a supposed failure to request additional

---

13    [2] The cases Defendants rely on are inapposite. In *S. California Retail Clerks
Union & Food Employers Joint Pension Tr. Fund v. Bjorklund*, 728 F.2d 1262, 1264
14   (9th Cir. 1984) (Opp. 2-3), the court was not addressing waiver of post-trial
damages issues. That case also has no application here because the Court must
15   apply "Federal Circuit law," such as *Power Integrations*, 711 F.3d at 1380-81, "to
issues of substantive patent law and also with respect to certain procedural issues
16   pertaining to patent law." *Aero Prods. Int'l Inc. v. Intex Recreation Corp.*, 466 F.3d
1000, 1016 (Fed. Cir. 2006) (finding Federal Circuit law applies to "damages for
17   patent infringement"). The two Delaware court decisions Defendants rely on (Opp.
3) were obviously based on different local court rules, and they are of questionable
18   standing after the Federal Circuit's decision in *Power Integrations.* They also are
not in line with the "majority of courts." *See Metso Minerals, Inc. v. Powerscreen
19   Int'l Distribution Ltd.*, 833 F. Supp. 2d 333, 350-51 (E.D.N.Y. 2011) (finding no
waiver and awarding supplemental damages); *ActiveVideo Networks, Inc. v. Verizon
20   Commc'ns, Inc.*, No. 2:10CV248, 2011 WL 4899922, at *4 (E.D. Va. Oct. 14, 2011)
("[C]ourts have held that the failure to include a separate request for 'supplemental'
21   damages does not result in waiver."); *Mikohn Gaming Corp. v. Acres Gaming, Inc.*,
No. CV-S-97-1383-EJW, 2001 WL 34778689, at *19 (D. Nev. Aug. 2, 2001)
22   (finding no waiver and awarding supplemental damages); *TiVo Inc. v. Echostar
Commc'ns Corp.*, No. 2:04-CV-1-DF, 2006 WL 8440209, at *3 (E.D. Tex. Aug. 17,
23   2006) ("Because Plaintiff requested compensatory damages in the pretrial order,
Plaintiff did not waive its right to request [supplemental] damages."); *Veracode*, 137
24   F. Supp. 3d at 83 (finding no waiver of supplemental damages).

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED
UNDER SEAL**

1  sales data.  In September 2019 Caltech did request supplemental sales data.  Briggs

2  Ex. A.  Defendants were unable to complete this production until December 2019,

3  asserting that the delay was caused by the purported "complexity of collecting this

4  information, including without limitation because Broadcom's and Apple's financial

5  data is not organized by whether or not particular chips support the accused LDPC

6  codes."  Briggs Ex. B, C.  Thus, even if Caltech had sought leave for a discovery

7  conference [3] and Defendants were ordered to produce additional sales data,

8  Defendants would not have been able to comply prior to trial.[4]

9       Moreover, there was no reason Caltech should have "asked the jury to adjust

10  its damages award upward" to account for the missing sales data (Opp. 3-4) when

11  supplemental damages are available to address this precise situation.  *EcoServices,*

12  *LLC v. Certified Aviation Servs., LLC*, 340 F. Supp. 3d 1004, 1034 (C.D. Cal.

13  2018); *Hynix Semiconductor Inc. v. Rambus Inc.*, 609 F. Supp. 2d 951, 959-65, 987

14  (N.D. Cal. 2009); *Asetek Danmark A/S v. CMI USA, Inc.*, No. 13-cv-00457-JST,

15  2015 WL 5568360, at *21 (N.D. Cal. Sept. 22, 2015), *vac. on other grounds by* 852

16  F.3d 1352.  The cases Defendants cite (Opp. 4) included jury verdicts awarding lost

17  profits that (unlike here) *may* have included damages up until the time of verdict.[5]

18  Here, by contrast, Defendants do not dispute that the jury did not account for sales

19  that occurred after production of the sales data.[6]  *See* Mot. 5.  In any event,

---

20  [3]  The magistrate judge had previously instructed that no further discovery
21  conferences would be conducted after the close of fact discovery.  Dkt. 292.
    [4]  Defendants' citation to *TransPerfect Global, Inc. v. MotionPoint Corp.*, 2014 WL
22  6068384, at *1, 3-4 (N.D. Cal. Nov. 13, 2014) (Opp. 3)—where no sales data was
    produced after discovery and there was over a year-and-a-half gap in produced sales
23  data before trial—is inapposite.
    [5]  *See Apple*, 926 F. Supp. 2d at 1104 ("it [was] also possible that the jury
24  considered" sales up until the time of verdict "in arriving at its ultimate award");
    *Presidio Components Inc. v. Am. Tech. Ceramics Corp.*, 2010 WL 3070370, at *2
25  n.1 (S.D. Cal. Aug. 5, 2010) (stating that it is only "arguabl[e]" that sales data for
    the period prior to trial was not produced); *Oscar Mayer Foods Corp. v. Conagra,*
26  *Inc.*, 869 F. Supp. 656, 668 (W.D. Wis. 1994) ("[I]t is not clear whether the jury
    awarded damages for the period of time up to and including the date of trial.").
27  [6]  The August and September 2019 cutoff for damages assessed by the jury is clear
    from the jury notes and fact that the damages match exactly to what Caltech's
28  experts calculated using these cutoff dates.  *See* Dkts. 2105 and 2107.

---

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

1  Defendants' argument solely challenges supplemental damages for the few months

2  before the verdict, *not* supplemental damages for post-verdict sales.

3      ***Third***, Defendants are wrong to assert (Opp. 4) that "[t]he Court [] excluded

4  from trial" products that are not colorably different "*at Caltech's urging*." Those

5  products were not part of the trial only because Defendants blocked Caltech from

6  taking discovery on them. But Defendants have since admitted that the products are

7  not colorably different. Dkt. 2157, 12/30/19 Pretrial Conf. at 67:6-9. Thus, there is

8  no basis for Defendants to seek to shield those products from damages and force

9  Caltech to file a separate lawsuit. *Apple*, 926 F. Supp. 2d at 1105 ("supplemental

10  damages serve to prevent the 'inefficient and unhelpful' outcome of a second suit

11  being filed to collect damages") (citing *Hynix*, 609 F. Supp. 2d at 961). Apple itself

12  has successfully requested that products *not* part of trial but sold prior to judgment

13  be subject to supplemental damages to "eliminate[] the need" for a second lawsuit.

14  *See* Briggs Ex. D, *WARF*, No. 3:14-cv-00062, Dkt. 717 at 9 (W.D. Wis. Dec. 21,

15  2015); *WARF*, 261 F. Supp. 3d at 923.

16      ***Finally***, there is no basis to "reject" (Opp. 5) the jury's awarded royalty rates.

17  Courts universally apply the jury's existing verdict, finding it improper to

18  "reexamine the reasonable royalty rates found by the jury." *Hynix*, 609 F. Supp. 2d

19  at 964-65. Defendants cite *Veracode*, 137 F. Supp. 3d at 84 (Opp. 5), but in that

20  case (unlike here) there was no way to determine what rate the jury applied. *See id.*

21  (recognizing that "[t]ypically, supplemental damages are calculated based on the

22  jury's damages verdict"). Here, by contrast, Defendants concede that the jury

23  determined rates of $1.40 and $0.26. *See* Opp. 17. Defendants do not cite any

24  authority supporting their argument that the Court should deviate from the

25  undisputed jury-determined rates. Nor do Defendants attempt to rebut or distinguish

26  the cases Caltech cited holding that supplemental damages should extend the jury's

27  verdict without revisiting or reevaluating its methods or conclusions. *See* Mot. 3-4.

28      Caltech respectfully requests that supplemental damages be calculated based

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

1    on the jury's awarded royalty rates up until final judgment.

2         **B.    Caltech Should Be Awarded Prejudgment Interest**

3         Contrary to Defendants' position (Opp. 5-8), "[t]he award of pre-judgment

4    interest is 'the rule, not the exception.'" *Energy Transp. Group, Inc. v. William*

5    *Demant Holding*, 697 F.3d 1342, 1358 (Fed. Cir. 2012) (citation omitted).[7]

6    Prejudgment interest is intended to place the patent owner "in as good a position as

7    he would have been had the infringer entered into a reasonable royalty agreement."

8    *Bio-Rad Labs., Inc. v. Nicolet Instrument Corp.*, 807 F.2d 964, 969 (Fed. Cir. 1986).

9         Defendants erroneously argue (Opp. 6) that "Caltech waited seven years to

10    file this lawsuit." But there is no evidence that Caltech waited any amount of time

11    to file this lawsuit. Although Defendants began using the technology in 2009, the

12    evidence showed that Caltech did not learn about potential infringement in the Wi-

13    Fi space until 2014 or early 2015, less than two years before the lawsuit was filed.

14    Dkt. 2119 at 58:6-7; Dkt. 2155 at 32:7-10. Thus, Defendants' request that the Court

15    deny prejudgment interest should be rejected because there was no undue delay in

16    prosecuting this lawsuit and Defendants did not articulate any particular prejudice

17    they suffered. *See Opticurrent, LLC v. Power Integrations, Inc.*, No. 17-cv-03597,

18    2019 WL 2389150, at *18-19 (N.D. Cal. Jun. 5, 2019) (rejecting undue delay

19    argument because "[i]n most cases in which courts have refused to award

20    prejudgment interest because of undue delay, the delay was longer than the one-and-

21    a-half-year period here, and there was some indication that the delay was self-

22    serving or a litigation tactic"); *EcoServices*, 340 F. Supp. 3d at 1032 (no undue

23    delay where defendant put forth no evidence that plaintiff's delay was a litigation

24    tactic or that defendant was prejudiced in any way).[8]

---

25    [7]   As Apple has argued elsewhere, "a prevailing patent holder is entitled to prejudgment interest on damages." Briggs Ex. I.

26    [8]   Defendants' cases (Opp. 6-7) do not suggest that prejudgment interest should be

27    withheld here. *See, e.g., Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1361-62 (Fed. Cir. 2001) ("delay was a litigation tactic");

28    *Milwaukee Elec. Tool Corp. v. Snap-On Inc.*, 288 F. Supp. 3d 872, 906 (E.D. Wis. (footnote continued)

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

Moreover, Defendants err in suggesting (Opp. 6) that the magnitude of the damages award should have any impact on prejudgment interest.  As was explained during trial, the damages here reflect the large number of infringing sales.  Dkt. 2127 at 26:14-22 ("[I]t's the huge amount of sales . . . the base is very, very large.  And that is why we're looking at quite large numbers here.").  The purpose of prejudgment interest is to compensate the patent owner for "use of [its] money between the time of infringement and the date of the judgment" and is "necessary" "to ensure that the patent owner is placed in as good a position as he would have been in had the infringer entered into a reasonable royalty agreement." *Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648, 655-56 (1983); *EcoServices*, 340 F. Supp. 3d at 1032.  Caltech should not be denied this compensation for the time value of money merely because of the magnitude of Defendants' infringement.  *See Fujifilm Corp. v. Motorola Mobility LLC*, 182 F. Supp. 3d 1014, 1043-44 (N.D. Cal. 2016) (rejecting argument that "[g]iven the size of the jury's award, the Court should deny prejudgment interest all together").

Defendants likewise err (Opp. 7-8) in arguing that if supplemental damage are awarded the Court should use the T-Bill rate—essentially the lowest interest award in this context.  Such a rate would dramatically undercompensate Caltech and result in a windfall to Defendants.  The T-Bill rate for portions of the damages period was at historically low rates—about two tenths of one percent.  Briggs Ex. E, F.  There is also no evidence that Caltech could have borrowed over $1 billion at the T-Bill rate.

In contrast, Caltech's request for prejudgment interest at the prime rate better reflects actual borrowing costs during the relevant period.  As courts have frequently recognized, the prime rate "is appropriate for calculating prejudgment interest in a

2017) (five year delay); *Kaneka Corp. v. SKC Kolon PI, Inc.*, 198 F. Supp. 3d 1089, 1124 (C.D. Cal. 2016) (four year delay). Here, there was no unreasonable delay as, even after learning of potential infringement in the Wi-Fi space, Caltech had to retain counsel, marshal resources and conduct due diligence to determine who was using the technology and whether there was infringement.

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED
UNDER SEAL**

patent case." *Fresenius Med. Care Holdings v. Baxter Int'l, Inc.*, No. C 03-1431, 2008 WL 928535, at *3 (N.D. Cal. Apr. 4, 2008); *see also Polara Eng'g, Inc. v. Campbell Co.*, 237 F. Supp. 3d 956, 996 (C.D. Cal. 2017).  Moreover, although Caltech presented evidence (Mot. 8) of borrowing at interest rates and interest on its endowment around the prime rate, it was not required to do so in order to be to be "entitled" to an award of prejudgment interest at the prime rate.  *See Uniroyal, Inc. v. Rudkin-Wiley Corp.*, 939 F.2d 1540, 1545 (Fed. Cir. 1991).  Caltech respectfully requests an award of prejudgment interest at the prime rate compounded annually. Defendants do not dispute annual compounding is appropriate.

### C.    Caltech Should Be Awarded Post-Judgment Interest

Defendants do not dispute or otherwise address Caltech's request for post-judgment interest.  Caltech respectfully requests that post-judgment interest be awarded as set forth in Caltech's opening brief.  Mot. 9-10.

## III.    THE COURT SHOULD ENTER A PERMANENT INJUNCTION OR, IN THE ALTERNATIVE, AWARD AN ONGOING ROYALTY

There is no dispute that the jury awarded damages only for Defendants' past infringement, or that Defendants continue to infringe.  Nevertheless, Defendants ask the Court (Opp. 8-22) to deny Caltech all prospective relief.  There is no authority for Defendants' position, which is contrary to law that Apple has cited as a plaintiff in other cases.  Accordingly, Caltech respectfully requests that the Court either enjoin Defendants' continuing infringement, or impose an ongoing royalty.

### A.    Caltech Did Not Waive an Injunction or Ongoing Royalties

As they did with respect to supplemental damages, Defendants argue (Opp. 8, 16) that Caltech waived its right to an injunction or ongoing royalties by not explicitly referencing them in the proposed FPCO.  For the same reasons discussed *supra*, pp. 3-4, this argument should be rejected.  Indeed, Defendants do not cite a single case holding that a request for ongoing royalties or an injunction must be included in a pretrial order, nor do they cite any case denying a motion for an

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

1  injunction or ongoing royalties on the grounds of waiver.

2  As noted above, Caltech indicated in the proposed FPCO that, "[a]s a result of

3  Defendants' infringement, Caltech is entitled to damages in the form of a reasonable

4  royalty." Dkt. 1664-1 at 16.[9]  Apple itself has argued "[t]hat is precisely what an

5  ongoing royalty is—a reasonable royalty to compensate, at least in part, for an

6  adjudicated infringer's continuing acts of infringement." Briggs Ex. G at 2.[10]  Thus,

7  Caltech adequately requested the relief of an ongoing royalty in the proposed FPCO.

8  *Miller v. Safeco Title Ins. Co.*, 758 F.2d 364, 368 (9th Cir. 1985) ("A pretrial order

9  … should be liberally construed to permit any issues at trial that are 'embraced

10  within its language.'")  In fact, Apple cited several exemplary cases in *Apple v.*

11  *Samsung* where ongoing royalties were awarded despite not being separately called

12  out in the pretrial order.  *See* Briggs Ex. G at 2-3.

13  Moreover, as discussed above, the law does not require that the pretrial order

14  specify remedies that are not to be decided at trial.  *See supra*, p. 3.  Caltech made

15  clear throughout the case, in its Amended Complaint and in its discovery responses,

16  that it was entitled to an injunction or ongoing royalties.  *See* Dkt. 1 at 29; Dkt. 36 at

17  38; Ex. H at 11-13.  Those are remedies that Caltech could only ask the Court to

18  impose after obtaining a favorable verdict.

19  Defendants' waiver argument should also be rejected because awarding

20  ongoing royalties promotes judicial economy by avoiding serial lawsuits.  *See, e.g.*,

21  *Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 34-36 (Fed. Cir. 2012)

22  (finding it was an abuse of discretion to deny an injunction or ongoing royalties,

---

[9]  Likewise, Caltech's Memorandum of Contentions of Fact and Law specified that Caltech was seeking a "reasonable royalty to compensate it" for Defendants' infringement and that "Caltech is entitled to all other damages, fees, or costs allowable by law." Dkt. 1617 at 3-4.

[10]  Apple argued that failure to reference an ongoing royalty in the pretrial order was not a waiver because "[t]here is no requirement that Apple separately specify an ongoing royalty as a distinct remedy." Briggs Ex. G at 1.  Judge Koh agreed, finding that, just as Caltech has in this case, Apple had "consistently sought compensatory royalties for all infringing activity." *Apple*, 2014 WL 6687122 at 4.

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

leaving the patentee "uncompensated for future acts of infringement by CPi except via resort to serial litigation"); *Erfindergemeinschaft Uropep Gbr v. Eli Lilly*, No. 15-CV-1202-WCB, 2017 WL 3034655, at *3 (E.D. Tex. Jul. 18, 2017) (finding "no reason to deny UroPep relief for Lilly's ongoing infringement and consign UroPep to the inefficient process of initiating follow-on litigation to seek damages."). It is undisputed that the jury's verdict covers only past infringement, and Caltech is entitled to relief for Defendants' continuing acts of infringement. *See, e.g.*, *id.* at *2-3 ("[I]t would be improper for the Court first to conclude that the damages awarded by the jury do not cover the post-verdict period, but then to rule that UroPep is not entitled to any relief for that period."). If the Court denies Caltech's motion, Caltech would have to file another lawsuit seeking damages for Defendants' post-judgment infringement. At a minimum, the interests of justice support rejection of Defendants' waiver argument. Moreover, even if the Court found Caltech waived its right to an injunction, this would not prevent the Court from awarding ongoing royalties. *See SCA Hygiene Prods. v. First Quality Baby Prods.*, 807 F.3d 1311, 1332-33 (Fed. Cir. 2015) ("[A]bsent egregious circumstances, when injunctive relief is inappropriate, the patentee remains entitled to an ongoing royalty."), *vacated in part on other grounds* 137 S.Ct. 954 (2017); *see also Lilly*, 2017 WL 3034655 at *2-3 (finding that the failure to pursue an injunction or reference ongoing royalties in the pretrial order did not waive rights to ongoing royalties).

### B.   Caltech Meets The Standard For An Injunction

Defendants' arguments (Opp. 8-15) against injunctive relief suggest that Caltech suffers no irreparable harm from Defendants' infringement simply because it is devoted to research and education as opposed to competition with Defendants in commerce. But as the Supreme Court noted in the *eBay* case,

> some patent holders, such as university researchers or self-made inventors, might reasonably prefer to license their patents, rather than undertake efforts to secure the financing necessary to bring their works to market themselves. Such patent holders may be able to satisfy the traditional four-factor test, and we see no basis for categorically denying them the opportunity to do so.

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

1   *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 393 (2006).  Moreover, it is not

2   the lost royalties that are unquantifiable; rather, it is the lost opportunity for students

3   and faculty to use those royalties for additional research.  In this respect Defendants

4   are wrong (Opp. 11) that Caltech has not shown a causal nexus.  Caltech's opening

5   brief cited evidence that Caltech's royalties from licensing are "reinvested in

6   research and education . . . putting the money into new projects that can result in

7   new inventions and again new knowledge for the world to use." Mot. 11.[11]

8        On the balance of the hardships and public interest, Defendants now abandon

9   (Opp. 12-15) the argument about the alleged non-infringing alternative they

10  advanced throughout this case and at trial.  In an effort to minimize damages,

11  Defendants' trial representative, Dr. Blanksby, informed Defendants' damages

12  expert that they could easily switch ███████████████████████ Dkt. 2168-6 at

13  ¶95 ████████████████████████████████████████████████████████

14  ████████████████████████████████████████████████████████████

15  ████████████████████████████") If true, an injunction would impose

16  little hardship.  Now that damages are decided, however, Apple claims that the same

17  switch would be a hardship.  Notably, this is not the first case in which Apple has

18  changed its position in this manner.  In *VirnetX v. Apple*, the district court found that

19  "Apple grossly misrepresented its ability to implement a non-infringing alternative

20  to the jury." No. 6:13-CV-211, 2014 WL 12672822, at *4 (E.D. Tex. Mar. 6, 2014).

21  Although the *VirnetX* court denied an injunction, it found that Apple's change in

22  position justified an increase in the ongoing royalty.  *Id.*

23  **C.   Alternatively Caltech is Entitled to Ongoing Royalties**

24       Even if the Court denies injunctive relief, Defendants' arguments against

25

─────────────────────────────

26  [11]  Defendants are also incorrect to assert (Opp. 12) that "Caltech waited until 2016 to bring this lawsuit . . . and then waited another four years (until after the jury verdict) to first request an injunction."  As discussed on p. 7 *supra*, Caltech filed this

27  lawsuit shortly after learning of Defendants' infringement.  And Caltech's original Complaint requested an injunction.  *See* Dkt. 1 at 29.

28

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

1   ongoing royalties (Opp. 18-22) are unavailing.  When a jury's verdict encompasses

2   only past infringement and no injunction is entered, courts consistently award

3   ongoing royalties.  Although the award is within the court's discretion (Opp. 16), the

4   Federal Circuit has found denial of ongoing royalties in the face of ongoing

5   infringement to be an abuse of discretion.  *See Whitserve*, 694 F.3d at 34-36.

6   Indeed, the sole case Defendants cite that denied an ongoing royalty did so because

7   the defendant stopped selling the infringing product.  *See XpertUniverse, Inc. v.*

8   *Cisco Sys., Inc.*, No. 09-157, 2013 WL 6118447, at *14 (D. Del. Nov. 20, 2013).[12]

9   Here, Defendants continue to infringe.  As Apple itself has argued, denying an

10  ongoing royalty in these circumstances would amount to "a license to free, willful

11  infringement." Briggs Ex. G at 11.  Thus, the question for the Court should not be

12  whether to award an ongoing royalty, but rather what amount to award.

13          Defendants' only arguments against adopting the jury's rates as a starting

14  point here are a rehash of their JMOL and new trial arguments.  If the Court upholds

15  the verdict, however, Defendants present no justification for the Court to impose

16  lower rates.  Nor do Defendants point to any case that would support such a finding.

17  In fact, the only case Caltech is aware of where an ongoing royalty was set below

18  the jury's rate was reversed for abuse of discretion.  *XY, LLC v. Trans Ova Genetics*,

19  890 F.3d 1282, 1298 (Fed. Cir. 2018).

20          With respect to Caltech's request that the Court enhance the jury's royalty

21  rate going forward, Defendants are incorrect (Opp. 18) that the changed

22  circumstances identified by Caltech were already considered by the jury.  ***First***,

23  Defendants incorrectly argue (Opp. 19) that "Dr. Teece admitted ***in his expert***

24  ***reports*** that the rates he ultimately offered at trial (and that the jury adopted) already

25  took into account the 'significant revenue' generated by Broadcom and Apple

26  

---

27  [12]  Apple itself has distinguished *XpertUniverse* on these grounds, and argued that the case "does not support leaving the patent holder without ***any*** remedy for ongoing

28  infringement."  Briggs Ex. G at 11.

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

1   (emphasis added).   Neither these facts, nor Dr. Teece's expert reports, were

2   considered by the jury.[13]

3         ***Second***, Defendants err in arguing (Opp. 19) that the change in the parties'

4   bargaining positions was already considered because of the assumption at the

5   hypothetical negotiation that the patents are valid and infringed.  This argument has

6   been rejected by numerous courts.  *See, e.g.*, *Paice LLC v. Toyota Motor Corp.*, 609

7   F. Supp. 2d 620, 626-27 (E.D. Tex. 2009) ("Injunction or no injunction, pre-suit and

8   post-judgment licensing negotiations are necessarily different due at least to the

9   change in legal status of the parties."); *Boston Scientific v. Johnson & Johnson*, No.

10  C 02-00790, 2009 WL 975424, at *3-5 (N.D. Cal. Apr. 9, 2009) (rejecting argument

11  that jury's verdict of infringement is not a changed circumstance); *Opticurrent*, 2019

12  WL 2389150, at *17-18 (same).  In fact, the Federal Circuit requires that a district

13  court's "assessment of damages for infringements taking place after the injunction

14  should take into account the change in the parties' bargaining positions, and the

15  resulting change in economic circumstances, resulting from the determination of

16  liability."  *Amado v. Microsoft Corp.*, 517 F.3d 1353, 1362 (Fed. Cir. 2008).  That

17  precedent has been reaffirmed by the Federal Circuit multiple times, including

18  subsequent to the district court cases cited by Defendants.  *See XY*, 890 F.3d at 1297

19  ("When patent claims are held to be not invalid and infringed, this amounts to a

20  'substantial shift in the bargaining position of the parties.'") (citation omitted).

21        ***Third***, Defendants argue there is no willful infringement (Opp. 20-21) but do

22  not dispute that they are knowingly continuing to infringe and cite no case

23  supporting a finding that their infringement is not willful.  At best they cite a few

24  cases concluding that willfulness was insufficient to justify an enhanced ongoing

25  royalty.  However, other cases have found that post-trial willfulness does

---

[13]   Defendants' argument (Opp. 19) that Caltech is relying on "'changes' from many years ago" is irrelevant because an ongoing royalty "focuses on the changed circumstances from the original hypothetical negotiation and the negotiation that would occur post-judgment." *VirnetX*, 2014 WL 12672822, at *2, n.2.

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

1  support an enhanced ongoing royalty rate, including at least one that was affirmed

2  by the Federal Circuit. *See, e.g.*, *Arctic Cat Inc. v. Bombardier Recreational Prod.,*

3  *Inc.*, No. 14-cv-62369, 2017 WL 7732873, at *4 (S.D. Fla. Jan. 3, 2017), *aff'd* 876

4  F.3d 1350 (Fed. Cir. 2017); *Opticurrent*, 2019 WL 2389150 at *18.

5        Likewise, Defendants' treatment of the *Read* factors (Opp. 21-22) is

6  inconsistent with the law and the facts.[14]  For example, for Factors 2 and 5,

7  Defendants argue that their positions at trial demonstrate a belief in non-

8  infringement/invalidity and closeness of the case.  Opp. 21.  But the *Read* factors

9  focus on the post-trial time period, not pre-trial.  Defendants fail to address

10  Caltech's case law holding that after the jury's verdict "Defendants cannot assert a

11  good-faith belief of non-infringement or invalidity, and the case is no longer a close

12  one." *Soverain Software v. J.C. Penny Corp.*, 899 F. Supp. 2d 574, 589 (E.D. Tex.

13  2012); *Internet Machines LLC v. Alienware Corp.*, No. 6:10-cv-23, 2013 WL

14  4056282, at *20 (E.D. Tex. Jun. 19, 2013).  For Factor 4, Defendants argue (Opp.

15  22) that Defendants' "size and wealth [does not] have anything to do with Caltech."

16  But there is no law requiring such a relationship.  To the contrary, the fact that

17  "Defendants are large companies while [Caltech] is considerably smaller by

18  comparison . . . alone would balance in favor of enhanced royalties." *Internet*

19  *Machines*, 2013 WL 4056282 at *20.  For Factors 6 and 7, as discussed above, the

20  duration of Defendants' infringement cannot be blamed on Caltech, particularly

21  given that Defendants continued to infringe for almost four years after the case was

22  filed and are continuing to do so following the jury's verdict.  Likewise,

23  Defendants' failure to switch to an allegedly available non-infringing alternative

24

---

25  [14]  Defendants argue that Factors 1, 8 and 9 all weigh against enhancement because there is no evidence to support the existence of any of these factors.  But in

26  situations where there is an absence of evidence, courts find the factor to be neutral. *See, e.g.*, *Affinity Labs of Texas LLC v. BMW N. Am.*, 783 F. Supp. 2d 891, 902

27  (E.D. Tex. 2011) ("The first *Read* factor is neutral, as there has been no evidence of deliberate copying in this case.").  Defendants' argument that there was no litigation

28  misconduct (Opp. 21) is addressed in Section IV.

-15-

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

1 favors enhancement.

2     Finally, Defendants did not respond to Caltech's request that the award of
3 ongoing royalties extend not only to infringing products but also to products not
4 colorably different from the infringing products.  Mot. 20-21.  Accordingly, Caltech
5 respectfully requests that ongoing royalties be awarded at twice the jury's rates from
6 the entry of judgment to expiration of the patents, including for products not
7 colorably different from the infringing products.

8 **IV.   CALTECH SHOULD BE AWARDED ATTORNEYS' FEES**

9     Contrary to Defendants' arguments (Opp. 22-24), courts in this district
10 routinely find that misconduct like Defendants' warrants a finding of exceptionality.
11 *See, e.g.*, *Spitz Techs. Corp. v. Nobel Biocare USA LLC*, No. SACV 17-00660 JVS
12 (JCGx), 2018 WL 6164300, at *5-6 (C.D. Cal. June 7, 2018) (finding case
13 exceptional due to assertion of previously-rejected claim construction argument);
14 *Drop Stop LLC v. Jian Qing Zhu*, No. CV 16-07916 AG (SSx), 2018 WL 1407031,
15 at *6 (C.D. Cal. Jan. 22, 2018) (finding case exceptional where defendants re-raised
16 "affirmatively waived arguments and defenses previously struck by Court Order").[15]

17     The case law Defendants cite is inapt, given that they did not just litigate a
18 "hard fought case," but instead disregarded Court orders and asserted meritless
19 positions that prolonged and complicated this case.  For example, *CoreWireless*
20 found that the defendant "did not intentionally trespass Court orders."  No. 2:14-
21 CV-00912-JRG, 2020 WL 1478396, at *3 (E.D. Tex. Mar. 26, 2020).  Similarly, in
22 *University of Utah*, the non-prevailing party had "withdraw[n] [a losing] argument
23 prior to summary judgment."  *Univ. of Utah v. Max-Planck*, 851 F.3d 1317, 1322

---

24 [15]   Defendants attempt to quibble with authority in the opening brief, but the fact
25 they engaged some different conduct than cases found to be exceptional does not
excuse the fact they also engaged *in the same* conduct other courts find exceptional.
26 Defendants also incorrectly claim (Opp. 23 n.14) that failure to submit billing
records requires denial.  Caltech will submit its claimed fees if the Court finds fees
27 warranted, as contemplated by the Federal Rules.  Fed.R.Civ.P. 54(d)(2)(C) ("court
may decide issues of liability for fees before receiving submissions on the value of
28 services.").

CALTECH'S REPLY IN SUPPORT OF MOTION FOR POST-TRIAL RELIEF

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

(Fed. Cir. 2017).[16]  Here, Defendants engaged in the exact conduct their own cases suggest warrants a finding of exceptionality.

### A.  Defendants' Discovery Conduct Was Unreasonable

Defendants' responses (Opp. 24-29) to the examples of their discovery misconduct miss the point.  *First*, Defendants assert (Opp. 26, n.17) there was no harm[17] from their failure to produce prior art indisputably within the control of their experts (Drs. Pfister and Siegel) because the exclusion of those documents weakened their defense.  But Defendants ignore the fact that Caltech was forced to engage in multiple rounds of briefing to exclude those documents – and expend additional effort after obtaining a Court order excluding them *for all purposes* (Dkt. 1432 at 17) when Defendants nonetheless disclosed them for use at trial.

*Second*, Defendants mischaracterize their Wi-Fi Alliance ("WFA") discovery misconduct by casting it as an issue of document production and suggesting the Magistrate Judge somehow authorized their conduct.  Opp. 24-26.  This is not the case.  Defendants forced Caltech to engage in multiple rounds of briefing and a deposition to obtain and authenticate WFA documents that Defendants themselves possessed through their participation in the WFA.[18]  Defendants also fail to provide a reasonable explanation for raising over 300 meritless objections during Caltech's one hour and 40 minute authentication examination of the WFA's corporate

---

[16]  Similarly, in *Stragent*, the prevailing party failed to move for summary judgment on the issue it identified as frivolous and supporting fees.  *Stragent, LLC v. Intel Corp.*, No. 6:11-CV-421, 2014 WL 6756304, at *5 (E.D. Tex. Aug. 6, 2014).  Here, Caltech did move.

[17]  The Court rejected the idea there was no harm to Caltech.  *See* Dkt. 1432 at 16.  The claim that Defendants, and their experts *on prior art*, did not understand the significance of prior art strains credulity

[18]  Defendants misleadingly claim the Court said Caltech "could have been more forthcoming" without the full quote, which concluded that "Defendants were aware that the Magistrate Judge did not believe it was necessary for Plaintiff to include Defendants on its correspondence with WFA."  Dkt. 673 at 8.

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

1   witness.[19]  In short, Defendants engaged in a wide-range of unreasonable conduct in

2   an effort to improperly suppress the harmful WFA documents.

3        *Third*, the deposition of Mr. Lin, who wrote infringing source code, speaks

4   for itself.  He was coached over five days to be evasive and waste excessive

5   amounts of time to run the clock down.  This conduct occurred with Defendants'

6   other witnesses as well.  In total, Broadcom and Apple witnesses contended that

7   they did not understand Caltech's questions ***nearly 330 times*** in 13 depositions,

8   including 85 times during the deposition of David Garrett, a Broadcom engineer.  In

9   contrast, Caltech witnesses did so fewer than 25 times.  Briggs Decl. ¶ 11.

10       **B.    Defendants' Defenses Were Unreasonable**

11       Defendants maintained their defenses of invalidity and inequitable conduct

12   long after they became objectively unreasonable, forcing Caltech to engage in

13   prolonged and unnecessary litigation for months to secure summary judgment and

14   making this case exceptional.[20]  ***First***, Defendants suggest their "known or used"

15   invalidity theories were reasonable because they were authorized by the Court and

16   involved unresolved questions of law.  Opp. 30-31.  But Defendants ignore that

17   these theories were ultimately rejected because they were never timely disclosed

18   during fact or expert discovery.  Mot. 27-29; Dkt. 1432 at 18-23.[21]  The fact that

19

20

21

22   [19]   Defendants point to the fact the Court did not admit one WFA document to justify their conduct.  Opp. 25.  However, the objection (*see, e.g.*, Dkt. 2153 at

23   147:7-20) was whether there was live witness testimony about the document, such that it qualified under the parties' evidentiary stipulation.  The Court did not find

24   that the document was inauthentic or inadmissible and specifically noted that Dr. Shoemake could testify about the document.  *Id.* at 147:21-148:2.

25   [20]   That Defendants' non-infringement defenses survived summary judgment (*see* Opp. 29-30) is not a basis, in itself, to deny Caltech attorneys' fees.  The Court may

26   award fees because Caltech prevailed on "nearly every substantive issue." *Id.* at *4, The isolated counterexamples cited by Defendants do not suggest otherwise.

27   [21]   Indeed, the Court itself expressed "grave concerns" about the Defendants' "shifts in arguments" and their "failure to present an expert report that meaningfully laid

28   out a 'known or used' invalidity theory."  Dkt. 1432 at 14.

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

1  Defendants' misled the Court into initially allowing these theories by insisting that

2  they were timely disclosed confirms their unreasonable litigation conduct.[22]

3       ***Second***, Defendants argue that their inequitable conduct theories were

4  reasonable because Judge Pfaelzer denied summary judgment in *Hughes*.  Opp. 32.

5  But Defendants were unreasonable for continuing to assert these theories after the

6  PTAB confirmed that the asserted claims were patentable over the cited prior art—a

7  development that had not yet occurred when Judge Pfaelzer issued her ruling.  *See*

8  Mot. 29.[23]   Defendants compounded their misconduct by pursuing unpled

9  inequitable conduct theories and then moving to add those theories ***after*** Caltech's

10  motion for summary judgment was briefed and heard, and by violating the Court's

11  order precluding additional motions without leave.  Dkt. 1301 at 1-2.

12       ***Third***, Defendants contend they did not pursue Section 101 for the '710 and

13  '032 patents because they "merely opposed ***Caltech's*** motion for summary

14  judgment."  Opp. 33.  But it was Defendants' unreasonable refusal to withdraw

15  those defenses—after effectively conceding their patent eligibility in prior

16  briefing—that forced Caltech to move for summary judgment.  *See* Mot. 29-30.

17       **C.    Defendants' Trial Conduct Was Unreasonable**

18       Defendants' opposition also mischaracterizes the record in an effort (Opp. 33-

19  35) to excuse their misconduct during trial.  None of their excuses has merit.  ***First***,

20  Defendants elicited testimony regarding "random" to support a non-infringement

21  argument that had explicitly been rejected by the Court.  Mot. 30-31.  Defendants'

22  arguments (Opp. 33-34) ignore the trial record, which clearly illustrates Defendants'

---

23  [22]   Contrary to Defendants' claim (Opp. 30), the Court granted summary judgment
24  on ***all*** of Defendants' prior art invalidity theories.  *See* Dkt. 1432 at 18-23.
   Defendants argue otherwise by citing to an early, now superseded, order (Dkt. 830
25  at 21-22) before Caltech had an opportunity to fully respond to Defendants'
   untimely "known or used" theories.
26  [23]   Defendants argue, for the first time, that they were not required to prove "but-
   for" materiality.  Opp. 32 n.24.  This argument was not raised during summary
27  judgment.  *See* Dkt. 1104 at 20-25 (arguing but-for materiality).  Regardless, the
   PTAB rejected the very premise of Defendants' pled inequitable conduct theory—
28  *i.e.*, that the prior art does not disclose irregular repetition.  *See* Dkt. 1305 at 8 n.7.

---

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

improper conduct. Dkt. 2154 at 100:23-101:6 ("Q: Sir, you don't even know how the left-hand side of these matrices were constructed, do you. A: That's irrelevant to my analysis. Q: But -- but you -- … don't even know whether they were selected randomly or with a particular purpose."). Moreover, Defendants raised this argument after the Court warned Defendants that sanctions might result from raising rejected theories at trial. Dkt. 1853 at 3 n.1.

*Second*, Defendants elicited expert opinions from Dr. Blanksby that were not disclosed in his expert report, violating another Court order. *See* Mot. 31-33. This order required Dr. Blanksby to disclose his opinions formed within and outside his regular employment duties. Dkt. 746 at 3. As one example, Dr. Blanksby provided highly technical testimony regarding the 802.11 parity check matrices that was not disclosed in his expert report. Defendants contend this testimony did not need to be disclosed in Dr. Blanksby's expert report because it was allegedly "factual testimony." Opp. 34-35. This contention is not credible. Dr. Blanksby's testimony was directed to extremely technical subject matter and is clearly expert testimony.

*Finally*, Defendants improperly sought to raise invalidity defenses at trial, in violation of multiple Court orders. Mot. 33. Defendants claim (Opp. 35) that they only raised prior art for permissible purposes, but fail to explain their attempted introduction of the Luby97 reference which was excluded at trial for all purposes. Defendants' attempt to introduce Luby97 following clear direction from the Court as to the use of prior art during trial exemplifies Defendants' repeated disregard for this Court's orders, and supports a finding of exceptionality.

## V. CONCLUSION

For the reasons set forth above, and in its Motion, Caltech respectfully requests that the Court award supplemental damages, pre- and post-judgment interest, a permanent injunction or on-going royalties and attorneys' fees.

DATED: May 14, 2020                    Respectfully submitted,

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

1

2

3      By _/s/ Jim Asperger_

4         James R. Asperger
          jimasperger@quinnemanuel.com

5         QUINN EMANUEL URQUHART &
          SULLIVAN, LLP

6         865 S. Figueroa St., 10th Floor
          Los Angeles, California 90017

7         Telephone:  (213) 443-3000
          Facsimile:  (213) 443-3100

8

9         *Attorneys for Plaintiff California*
          *Institute of Technology*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28