UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-3714-GW-AGRx | Date | May 1, 2023 |
|---|---|---|---|
| Title | *The California Institute of Technology v. Broadcom Limited, et al.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Javier Gonzalez | Suzanne McKennon | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| James R. Asperger | Mark D. Selwyn |
| John Yin | Sarah R. Frazier |
| Todd M. Briggs | Annaleigh E. Curtis |
| John F. Bash | Timothy D. Syrett |
|  | James M Dowd |
|  | Steven J. Horn |

**PROCEEDINGS:** DEFENDANTS' OMNIBUS MOTION ON REMAND TO EXCLUDE OPINIONS OF DAVID TEECE AND CATHARINE LAWTON AND FOR SUMMARY JUDGMENT [2512]; and CALTECH'S MOTION FOR PARTIAL SUMMARY JUDGMENT, TO STRIKE, AND TO EXCLUDE EXPERT TESTIMONY [2514]

The Court's redacted Tentative Ruling is circulated and attached hereto. The Court invites the parties to present arguments in view of the Court's tentative ruling regarding standing. The parties agree to an evidentiary hearing regarding standing. Plaintiff makes arguments for the record concerning the tentative ruling on constitutional and statutory standing. The Court adopts as final the portion of the tentative concerning the need for an evidentiary hearing. The Court does not make other findings and reserves any further findings for after the evidentiary hearing. All trial and pretrial dates are VACATED and the evidentiary hearing regarding standing is SET for June 6, 2023, at 9:00 a.m. in Courtroom 9D. The parties may present direct testimony by declaration or in person, with cross-examination and redirect examination to be conducted in person. The parties shall meet and confer concerning a pre-hearing briefing schedule and file a proposed schedule. The Court advises the parties that it wants simultaneous opening briefs similar to a motion for summary judgment brief, setting out the relevant facts and citing specific support in the record, along with a Statement of Undisputed Facts (SUF). Following the simultaneous opening briefs, the parties shall file simultaneous response briefs, including a response to the SUF. The Court defers setting dates for a further hearing on the remaining MSJ and

| | : | 30 |
|---|---|---|
| | Initials of Preparer | JG |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-3714-GW-AGRx | Date | May 1, 2023 |
|---|---|---|---|
| Title | *The California Institute of Technology v. Broadcom Limited, et al.* | | |

Daubert issues and trial. The Court will discuss further scheduling with the parties after the evidentiary hearing.

| | : | 30 |
|---|---|---|
| Initials of Preparer | JG | |

***The California Institute of Technology v. Broadcom Limited et al.***; Case No. 2:16-cv-03714-GW-(AGRx)
Tentative Ruling/Order Regarding MSJs and *Daubert* Motions (~~sealed~~[1])

I.      **Introduction**

On May 26, 2016, plaintiff The California Institute of Technology ("Plaintiff" or "Caltech") brought this patent infringement action against Defendants Broadcom Limited, Broadcom Corporation, Avago Technologies Limited (collectively, "Broadcom"), and Apple Inc. ("Apple," collectively with Broadcom, "Defendants"). *See* Docket No. 1. After a jury found infringement and awarded damages on January 29, 2020 (*see* Docket No. 2114), the Court entered judgment on August 3, 2022 (*see* Docket No. 2245) and Defendants appealed (*see* Docket No. 2263). Following a partial reversal and remand by the Federal Circuit, *see Cal. Inst. of Tech. v. Broadcom Ltd.*, 25 F.4th 976 (Fed. Cir. 2022), the Court issued an order regarding the scope of the new trial and discovery. *See* Docket Nos. 2412, 2408 (sealed). The Court denied Apple's motion to reopen discovery on a wider basis (*see* Docket Nos. 2439, 2440 (sealed)), and issued a Scheduling Order allowing for limited updated damages expert reports and motions for summary judgment / *Daubert* motions. Docket No. 2453; *see also* Docket Nos. 2474 (resolving dispute concerning Defendants' experts), 2482 (re scheduling), 2504, 2498 (sealed) (re ex parte application concerning experts), 2507 (re MSJ/*Daubert* briefing).

The parties' motions for summary judgment and *Daubert* motions concerning the updated damages expert reports are now before the Court, as summarized in the table below.

| Motion | Opposition | Reply |
| --- | --- | --- |
| Defendants' Motion to Exclude Teece & Lawson and MSJ (Docket Nos. 2512, 2521 (sealed)) ("DM"); *see also* Docket No. 2521-25 (SUF) | Docket Nos. 2528, 2535 (sealed) ("PO"); *see also* Docket Nos. 2535-1 (SUF Response), 2535-2 (Evid. Obj.) | Docket Nos. 2539, 2546 (sealed) ("DR"); *see also* Docket Nos. 2546-9 (Reply SUF), 2546-10 (Evid. Obj. Response) |

---

[1] This Tentative Ruling is initially filed under seal as it references materials previously filed by the parties under seal which were designated as "confidential." The parties shall advise the Court whether they request that any portion of this Tentative Ruling remain sealed in the final version of the order. If so, within three days of the hearing, the parties shall submit proposed redactions via email to the Courtroom Deputy Clerk.

1

| Motion | Opposition | Reply |
|---|---|---|
| Caltech's Motion to Strike and MSJ (Docket Nos. 2514, 2522 (sealed)) ("PM"); *see also* Docket No. 2522-1 (SUF) | Docket Nos. 2527, 2534 (sealed) ("DO"); *see also* Docket No. 2534-11 (SUF Response) | Docket Nos. 2540, 2547 (sealed) ("PR"); *see also* Docket Nos. 2547-1 (Reply SUF) |

For the reasons stated herein, the Court would defer ruling on the motions pending an evidentiary hearing to resolve factual disputes underpinning constitutional standing. Accordingly, the Court **VACATES** the remaining pretrial and trial dates and instead **SETS** an evidentiary hearing for Tuesday, June 6, 2023 at 9:00 a.m. The parties should meet and confer and file a joint stipulation setting forth the anticipated witnesses and duration of the hearing. The Court estimates it should last for no more than 1-2 days.

## II.     Background

Post-remand, only two patents remain at issue: U.S. Patent Nos. 7,116,710 (the "'710 Patent") and 7,421,032 (the "'032 Patent"). Docket No. 2337 (Joint Report) at 2-3. The asserted patents disclose circuits that generate and receive irregular repeat and accumulate ("IRA") codes, which is a type of error correction code designed to improve the speed and reliability of data transmissions. Typically, wireless data transmissions are susceptible to corruption from interference, and IRA codes are intended to identify and correct that corruption.

"Before Caltech's patents, error correction codes had already incorporated repetition and irregular repetition. These codes, however, were less than optimally efficient because they were either encoded or decoded in quadratic time, which meant that the number of computations required to correct a given number of bits far exceeded the number of bits ultimately corrected." *Cal. Inst. of Tech.*, 25 F.4th at 980-81. The IRA codes in the asserted patents are "linear-time encodable and decodable rather than quadratic." *Id.* This "[m]inimiz[es] the number of calculations that an encoder or decoder must perform," which in turn "permits smaller, more efficient chips with lower power requirements." *Id.* at 981. "The claimed improvement involves encoding the information bits through a process of irregular repetition, scrambling, summing, and accumulation." *Id.*

Caltech alleged infringement by certain Broadcom WiFi chips and Apple products incorporating those chips, including smartphones, tablets, and computers. As stated, a jury found

2

in Caltech's favor and awarded damages. The Federal Circuit reversed and remanded the damages award and this Court set the matter for a damages retrial. As part of their pending Motion for Summary Judgment, Defendants challenge Caltech's standing to bring this suit on multiple grounds.

### III. Legal Standards

#### A. Summary Judgment

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). A fact is material when, under the governing law, the resolution of that fact might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The burden of establishing the absence of a genuine issue of material fact lies with the moving party, *see Celotex*, 477 U.S. at 322–23, and the court must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party, *Scott v. Harris*, 550 U.S. 372, 378 (2007).

To meet its burden, "[t]he moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1106 (9th Cir. 2000). Once the moving party satisfies its burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). There is no genuine issue for trial where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party. *Id.* at 587.

#### B. Standing

##### 1. Constitutional Standing

"The Constitution of the United States vests judicial power in the federal courts." *Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1234 (Fed. Cir. 2019) (citing U.S. Const. art. III, § 1). Under this power, courts may resolve "cases" or "controversies." *Id.* "'The doctrine of constitutional standing serves to identify which disputes fall within these broad

categories and therefore may be resolved by a federal court.'" *Id.* (quoting *WiAV Sols. LLC v. Motorola, Inc.*, 631 F.3d 1257, 1264 (Fed. Cir. 2010)). "A party must establish standing, *i.e.* show that its case or controversy is amenable to resolution by a federal court, by demonstrating that it suffers an injury which can be fairly traced to the defendant and likely redressed by a favorable judgment." *Id.* (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).

In the patent context, the Federal Circuit has explained that "those who possess 'exclusionary rights' in a patent suffer an injury when their rights are infringed." *Id.* at 1234 (citing *WiAV*, 631 F.3d at 1264–65 ("[A] party holding one or more of those exclusionary rights – such as an exclusive licensee – suffers a legally cognizable injury when an unauthorized party encroaches upon those rights and therefore has standing to sue.")). Exclusionary rights include the right to "exclude others from practicing an invention" or to "forgive activities that would normally be prohibited under the patent statutes." *Id.* Federal Circuit decisions "have routinely held that [having] constitutional standing requires [holding] at least one exclusionary right." *In re Cirba Inc.*, No. 2021-154, 2021 WL 4302979, at *3 (Fed. Cir. Sept. 22, 2021).

"It is well-established that any party, and even the court sua sponte, can raise the issue of standing for the first time at any stage of the litigation, including on appeal." *Pandrol USA, LP v. Airboss Ry. Prods., Inc.*, 320 F.3d 1354, 1367 (Fed. Cir. 2003). "A [jurisdictional standing] defect may be raised at any time, and neither waiver, estoppel, nor the parties' consent may overcome it." *Uniloc USA, Inc. v. Apple, Inc.*, 2020 WL 7122617, *2 (N.D. Cal. 2020).

2. <u>Statutory Standing</u>

"A patent is a creature of statute, as is the right of a patentee to have a remedy for infringement of his patent. Suit must be brought on the patent, as ownership only of the invention gives no right to exclude, which is obtained only from the patent grant." *Arachnid, Inc. v. Merit Indus., Inc.*, 939 F.2d 1574, 1578-79 (Fed. Cir. 1991). Thus, to bring an infringement action under 35 U.S.C. § 281, a patentee plaintiff that has licensed its patent must show it has retained the "substantial right" to sue for infringement. *Lone Star*, 925 F.3d at 1231. "Determining whether the right to sue for prior infringement has been transferred turns on the proper construction of the assignment agreements, which is a matter of state contract law." *Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1117 (Fed. Cir. 1996). Whether a party has statutory standing does not implicate subject-matter jurisdiction. *Lone Star*, 925 F.3d at 1235-36. Rather, whether a patentee who is a party to a license agreement "lacks any right to exclude or any other exclusionary right,"

4

it follows that the patentee "lacks any statutory right under 35 U.S.C. § 281 to be a patent plaintiff." *In re Cirba Inc.*, 2021 WL 4302979, at *4.

## IV. Analysis

In their motion for summary judgment, Defendants raise constitutional and statutory standing issues, which the Court will address before reaching the rest of the motions.

### A. Constitutional Standing

#### 1. Summary of Arguments

Defendants challenge Caltech's constitutional standing to bring this suit. They argue that Caltech gave Cellular Elements an exclusive license to the '710 and '032 Patents as of April 26, 2005. DM at 27 (citing Docket No. 2293-3 (Cellular Elements License ("CEL")). Through the exclusive license, Defendants contend that Caltech assigned its substantial rights in the asserted patents. *Id.* at 25. Specifically, the CEL granted ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ *See* Docket No. 2293-3, § 3.1. This "includes the right to grant and authorize sublicenses ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ *See* DM at 28 (citing CEL, §§ 1.2, 3.3, 5.3). Even if the CEL was terminated under certain conditions, any sublicense granted under the agreement was not terminated, but rather the ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ *Id.* at 29 (citing CEL, § 3.3). Further, the CEL included an ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ CEL § 3.6.



Defendants argue this transfer of substantial rights deprives the Court of jurisdiction because the asserted patents were included among the patents assigned in the CEL. DM at 25. Defendants aver that the CEL included the 09/922,852 pending application, which Defendants assert was the predecessor to the '710 and '032 Patents. *Id.* (citing Docket No 36-2 ('710 Patent, stating that it is a continuation-in-part of the '852 application), Docket No. 36-3 ('032 Patent, stating that it is a continuation-in-part of the '852 application)). According to Defendants, because the CEL conveyed exclusive rights to ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

5

█████████████████████████████████████████████████████████████
████████████████████████ continuations in part, ██████████████████████████
████████████████████████████████████████████ the '852 application, Defendants conclude that, as of April 26, 2005, Caltech lacks standing to assert the '710 and '032 Patents. *Id.* at 26-28.

Defendants acknowledges that, in September 2011, Caltech and Cellular Elements amended the CEL to remove the '710 and '032 Patents, but they contend the September 2011 amendment did not convey back to Caltech the right to recover for past damages. *Id.* at 31-32. Since Caltech never received that right back, Defendants contend it lacks standing to assert the patents here. *Id.* at 32. Defendants therefore seek summary judgment and dismissal on the grounds that Caltech lacks exclusionary rights in the asserted patents under the CEL, and standing can be raised at any time, and must exist at all stages of a case. *Id.* at 32-33. Defendants argue that any dispute concerning the scope of the CEL presents a question of law for the Court to resolve, and the Court must resolve standing before the case can proceed. *Id.* at 33.[2] Separately, at the very least, Defendants argue Caltech is not entitled to recover damages against Apple or Broadcom for the relevant period before the 2011 amendment to the CEL that removed the asserted patents going forward (*i.e.*, May 26, 2010 through September 30, 2011). *Id.* at 37-38.

Plaintiff responds that it is too late for Defendants' standing argument. PO at 23. This is because, Plaintiff asserts, "Defendants are evidently attempting to frame a routine license defense as a question of subject matter jurisdiction to circumvent the fact that they waived this argument by failing to raise it in their pleadings, during the trial, or even on appeal." *Id.* Plaintiff contends that, "[a]lthough the Federal Circuit has held that a licensee has Article III standing only to the extent of its 'exclusive rights' with respect to the patent, it has long been settled that the actual patentee has Article III standing simply by virtue of owning the patent." *Id.* (citation omitted). Plaintiff argues that the fact that "Caltech owned the IRA Patents at the time this lawsuit was filed, as reflected in the 2011 Amendment confirming that the[] [asserted patents] were 'excluded' from the CE Agreement . . . suffices to establish Article III standing." *Id.* at 24. Plaintiff argues that a license provides a defense to patent infringement, it does not deprive a court of subject matter

---

[2] Separately, Defendants argue that considering this issue on remand is timely and proper because, "before the liability trial, Caltech misrepresented the scope of its license to Cellular Elements by claiming '[t]he asserted patents were not included' in that license. DM at 38 (quoting Docket No. 2293-6 (Amend. Interrog. Resp.)).

6

jurisdiction. *Id.*

Even if the defense raises a subject-matter-jurisdiction question, Plaintiff argues the Court can hold Defendants to "any admissions of jurisdictional facts made in the course of litigation." *Id.* at 26. For example, Plaintiff argues that "Defendants stipulated to jurisdiction in the joint proposed pretrial order" (Docket No. 1664-1 at 8), and they effectively admitted ▇▇▇▇▇▇ by failing to assert a ▇▇▇▇▇▇▇▇ in the Answer; when their expert admitted Caltech did not license the patents to Cellular Elements; and when they failed to raise a ▇▇▇▇▇▇ at any point. *Id.* In any event, Plaintiff argues the CEL never included the asserted patents so the standing argument fails for this additional reason. *Id.* at 26-31 (citing, *e.g.*, testimony of Caltech witnesses; the fact that the application covers a different "invention" than the patents; the parties' intent, conduct, and course of performance; the asserted patents are not continuations-in-part of the relevant licensed application; and the absence of the patents from any list shared between Intellectual Ventures and any sublicensee▇▇▇▇▇▇▇▇. Plaintiff argues it made no "misrepresentations" on this point and has consistently argued that the CEL never included the asserted patents. *Id.* at 35. Further, Plaintiff contends that additional documents produced by ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *Id.* at 36.

    2.    <u>Analysis</u>

A patentee "derives its standing from the exclusionary rights it holds," and "its standing will ordinarily be coterminous with those rights;" for example, "an exclusive licensee lacks standing to sue a party who has the ability to obtain such a license from another party with the right to grant it."[3] *WiAV*, 631 F.3d at 1266. "That same logic applies even if it is the patent owner holding the nonexclusive right and the licensee hold[ing] the exclusionary rights." *Uniloc USA, Inc. v. Apple, Inc.*, No. C 18-00358 WHA, 2020 WL 7122617, at *7 (N.D. Cal. Dec. 4, 2020) (where licensee had "unfettered right" to license patent, patent owner could not "have had an expectation that others would not practice the [patent] and would not have been injured if and when others did so"). "This bears restating" because a plaintiff's "continual self-characterization as the 'patent owner,' as though Article III standing appears at the utterance of a magic phrase," is insufficient to establish Article III standing. *Id.* Someone may be a patent owner and yet lack

---

[3] "But if an exclusive licensee has the right to exclude others from practicing a patent, and a party accused of infringement does not possess, and is incapable of obtaining, a license of those rights from any other party, the exclusive licensee's exclusionary right is violated." *WiAV*, 631 F.3d at 1266-67.

Article III standing. For example, "[a] patent licensee's right to grant an unencumbered sublicense renders even the *patent owner's* right to exclude (and, thus, to sue) illusory." *Id.* (emphasis in original); *see also Uniloc USA, Inc. v. Motorola Mobility*, LLC, No. CV 17-1658-CFC, 2020 WL 7771219, at *8 (D. Del. Dec. 30, 2020) (license granting "both retrospective and prospective rights to sublicense the asserted patent . . . deprived the [patentee] of standing to sue [accused infringer] for infringement of the asserted patent before and after [the date of the license]), *aff'd on other grounds*, 52 F.4th 1340 (Fed. Cir. 2022).

It is undisputed that, in the CEL, Caltech granted Cellular Elements "the right to grant and authorize sublicenses" ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Docket No. 2293-3 at p. 2, § 3.3. If Cellular Elements had the "unfettered right" to license the enumerated Patents, then arguably Caltech could not "have had an expectation that others would not practice the [Patents] and would not have been injured if and when others did so." *Uniloc*, 2020 WL 7122617, at *7.[4]

This lack of injury is relevant here only if "Patents," as defined in the CEL, includes the asserted patents. Defendants argue the asserted patents are included for various reasons, including that they are continuations in part of the '852 application, ▬▬▬▬▬▬▬▬▬▬ and because the 2011 Amendment sought to remove the patents, meaning they were there in the first place. Plaintiff challenges Defendants' interpretation of the lineage of the patents, including by reference to the disputed Certificates of Correction that were filed much later, as well as other factors such as the definition of ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ the parties' intent and course of conduct. *See* Docket No. 2535-1, Response to SUF ¶¶ 2-3, 8-9.

Although constitutional standing presents a question of law which the Court must resolve, the Court finds that the current record presents underlying factual issues concerning the scope of the CEL that must be decided to determine whether the CEL included the asserted patents, and thus whether Caltech lacks injury and thus constitutional standing to bring this suit (or perhaps lacks standing for the portion of the damages period before the 2011 Amendment).

When a moving party invokes subject matter jurisdiction under Rule 12(b)(1), if there is a genuine dispute of material fact concerning jurisdiction, the Court may conduct an evidentiary hearing to resolve jurisdiction-related factual disputes. *See Augustine v. United States*, 704 F.2d

---

4 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

8

1074, 1079 (9th Cir. 1983) (reversing a district court's dismissal for lack of subject matter jurisdiction where the district court declined to hold an evidentiary hearing even though the parties disputed jurisdictional facts); *see also Alpine PCS, Inc. v. United States*, 128 Fed. Cl. 303, 306 (2016) (a court whose jurisdiction is challenged "has discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve disputed jurisdictional facts"). Considering the disputes of material fact presented here, the Court concludes that conducting a jurisdiction-based evidentiary hearing is the appropriate course.

The Court finds unpersuasive Defendants argument that the CEL terms are clear and unambiguous and the Court may resolve these issues based on the language of the document. Under California law, "[w]hen a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, *if possible*; subject, however, to the other provisions of this Title." Cal. Civ. Code § 1639 (emphasis added). But, "[w]hen, through fraud, mistake, or accident, a written contract fails to express the real intention of the parties, such intention is to be regarded, and the erroneous parts of the writing disregarded." Cal. Civ. Code § 1640. The Court finds that, considering the nature of the disputed material jurisdictional facts, it is not possible to determine the scope of the CEL, and relatedly, the intent of the parties based on the writing alone.

The Court also finds unpersuasive Plaintiff's argument that Defendants have admitted "jurisdictional facts" sufficient to demonstrate Article III standing and the Court can hold them to those admissions to satisfy standing. It is not clear to the Court that the cited "admissions" actually admit jurisdictional facts. For example, Defendants did not dispute federal question jurisdiction in the Final Pretrial Order (*i.e.*, they did not dispute this is a patent case). Relatedly, Caltech's expert's prior opinion concerning whether the CEL contained the asserted patents is not a position that can be ascribed to Defendants.

Although the Court is reluctant to explore the CEL for jurisdictional purposes as a detour away from the damages retrial, the Court acknowledges the Supreme Court's advisement that "federal courts are under an independent obligation to examine their own jurisdiction," with standing being "perhaps the most important of [the jurisdictional] doctrines." *See FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990).

    **B.**     **Statutory Standing**

        1.     <u>Summary of Arguments</u>

Defendants also seek summary judgment that Caltech lacks statutory standing to enforce

9

the asserted patents against Apple because, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮ Specifically, Apple contends that, after the first trial in this case, it learned that a ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ to the '852 application, from which the asserted patents were each a continuation-in-part, Apple argues. DM at 29-30. Thus, Apple concludes ▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* at 30-31 (citing Docket No. 2293-4, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

Plaintiff responds that the Court also has statutory standing because: (1) ▮▮▮ waived any argument to the contrary by failing to raise its purported ▮▮▮▮▮▮▮ "several times over;" (2) Caltech never licensed the asserted patents to Cellular Elements and therefore the sublicense preservation clause cannot apply to the patents; and (3) even if the asserted patents were once deemed licensed, the 2011 amendment clarified that they were not, and it was not limited to ▮▮▮▮▮ PO at 30-34.

2. <u>Analysis</u>

As stated, whether a party has statutory standing does not implicate subject-matter jurisdiction. *Lone Star*, 925 F.3d at 1235-36. Thus, it follows that a defendant raising a license defense may achieve a judgment of non-infringement, but not a dismissal for lack of subject matter jurisdiction. *See, e.g.*, *FireBlok IP Holdings, LLC v. Hilti, Inc.*, 855 F. App'x 735, 738 (Fed. Cir. 2021) (affirming summary judgment of non-infringement based on license). Furthermore, a license defense may be forfeited or waived. *See, e.g.*, *Imperium IP Holdings (Cayman), Ltd. v. Samsung Elecs. Co.*, 203 F. Supp. 3d 755, 759-60 (E.D. Tex. 2016) (license defense raised for the first time after summary judgment deadline was waived); *Ciena Corp. v. Corvis Corp.*, 352 F. Supp. 2d 526, 529 (D. Del. 2005) (defendant waived license defense by not pursuing it at trial).

The Court has already found that ▮▮▮ was not diligent in raising this defense. *See* Docket Nos. 2366 (sealed), 2375 (redacted) at 3-5 (Rule 60 Order); Docket Nos. 2440 (sealed), 2439

10

(redacted) (Order Denying Motion to Reopen Discovery).⁵ The Court will not revisit the question. As stated, ▮ failed to provide discovery on its ▮ or explore the matter for its own benefit. Thus, the Court finds this issue is waived and ▮ may not raise a ▮ and a means to attack statutory standing now. Therefore, nothing in the present record undermines the presence of statutory standing.

The Court's obligation to assure itself of subject-matter jurisdiction (*i.e.*, constitutional standing) does not extend to allowing ▮ to explore its ▮ flowing from ▮. Accordingly, this Order should not be interpreted as revising any of the Court's prior rulings stating that it is too late for ▮ to raise a ▮ to infringement; infringement has already been decided by the jury and will not be revisited based on the merits (or lack thereof) of an untimely defense.

## V. Conclusion

Accordingly, for the reasons stated, the Court would defer ruling on the merits of the motions and set an evidentiary hearing concerning constitutional standing only. The Court will discuss with the parties the procedure and schedule for that hearing.



---

⁵ As the Court has explained multiple times, "[i]t is inconceivable to this Court how Defendants can presently (with a straight face) raise a contention that ▮ and yet also claim that the existence of a purported sublicense between Microsoft and Cellular Elements based upon the original license agreement constitutes 'newly discovered evidence which by due diligence could not have been discovered before the court's decision.'" Docket No. 2366 at 6 n.6.